Eric H. Gibbs (SBN 178658)
David Stein (SBN 257465)
Amanda M. Karl (SBN 301088)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
amk@classlawgroup.com

William H. Anderson *(to apply pro hac vice)*
**HANDLEY FARAH & ANDERSON PLLC**
4730 Table Mesa Drive, Suite G-200
Boulder, CO 80305
Telephone: (303) 800-9109
Facsimile: (866) 912-8897
wanderson@hfajustice.com

Rebecca P. Chang *(to apply pro hac vice)*
**HANDLEY FARAH & ANDERSON PLLC**
81 Prospect Street
Brooklyn, NY 11201
Telephone: (347) 480-1030
Facsimile: (866) 912-8897
rchang@hfajustice.com

*Counsel for Plaintiff Shuman and the Proposed Class*

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA**

MICHAEL SHUMAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SQUARETRADE, INC.

Defendant.

Case No.

**CLASS ACTION COMPLAINT**

DEMAND FOR JURY TRIAL

Plaintiff Michael Shuman brings this action against Defendant SquareTrade Inc. ("Defendant" or "SquareTrade"), by and through his attorneys, individually and on behalf of all others similarly situated, and alleges as follows:

## INTRODUCTION

1. SquareTrade sells service-contract "protection plans" for consumer goods. These protection plans effectively act as insurance. If a covered item breaks within a specified period, SquareTrade must repair, replace, or reimburse the cost of the covered item.

2. SquareTrade consistently fails, however, to provide purchasers of the protection plans with a full set of terms and conditions that would apply to the plans. Later, when items are damaged or break and consumers make claims, if SquareTrade cannot (or will not) repair or replace the item, SquareTrade has systemically provided reimbursement in amounts below the product's purchase price (and below the price at which a comparable product could be purchased).

3. SquareTrade's systemic decision to deny protection plan holders the full benefits owed has been immensely profitable for the company, to the detriment of consumers. In late 2016, SquareTrade was acquired by The Allstate Corporation for $1.4 billion. For the five years leading up to this acquisition, SquareTrade had reported five consistent years of losses. In 2015, SquareTrade reported $26.5 million in losses. By 2018—after the implementation of SquareTrade's new policies denying full purchase price reimbursement—SquareTrade's adjusted net income had turned around to $23 million, reflecting full-year improvement of $45 million.

4. Because of SquareTrade's unlawful conduct, Plaintiff and the other members of the Class have incurred damages, including in connection with buying the protection plans and then later not receiving reimbursement in the amounts owed. SquareTrade's conduct thus violates the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, The Song-Beverly Consumer Warranty Act, Cal Civ. Code § 1790, *et seq.*, consumer protection law, and common law duties. Plaintiff, on behalf of himself and other proposed Class members, seeks remuneration as well as injunctive and declaratory relief.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an

1  aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is

2  minimal diversity because at least one plaintiff and one defendant are citizens of different States.

3       6.     Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in

4  this District. Venue is also proper in this District because Defendant conducts substantial business in

5  this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of

6  the markets in this District, through the distribution, promotion, sale, and marketing of their products in

7  this District.

8                      **INTRADISTRICT ASSIGNMENT**

9       7.     Assignment to the Oakland Division or the San Francisco Division would be proper

10 because SquareTrade is headquartered in San Francisco, California, and a substantial part of the events

11 or omissions which give rise to the claims alleged herein occurred there.

12                           **PARTIES**

13      8.     Plaintiff Michael Shuman is a resident of Silver Spring, Maryland.

14      9.     SquareTrade's principal place of business is located in San Francisco, California.

15                     **FACTUAL ALLEGATIONS**

16                   **<u>SquareTrade's Protection Plans</u>**

17      10.     Defendant SquareTrade, Inc., is one the United States' largest providers of service

18 contracts for consumer goods. Defendant claims to have sold some 25 million such contracts, marketed

19 as "Protection Plans."

20      11.     SquareTrade's protection plans cover consumer products ranging from electronics and

21 appliances to office chairs and backpacks. For some flat price at the time of product sale, frequently

22 $9.99 or $19.99, these service contracts entitle purchasers to reimbursement, repair, or replacement if

23 the product is damaged or breaks.

24      12.     SquareTrade protection plans are sold at many large retailers, including Staples,

25 Walmart, Sam's Club, and Costco, in connection with their sale of consumer products. These plans are

26 sold to consumers at the time consumers purchase products.

27      13.     SquareTrade does not provide complete terms and conditions of their coverage when

28 consumers purchase a SquareTrade protection plan. Rather, it conveys generally (including through

instructions to the retailers who communicate with consumers) that purchasing a protection plan will entitle a consumer to repair, product replacement, or reimbursement of purchase price.

14.    Federal and some states' laws require those who sell service contracts, like the SquareTrade protection plans, to clearly and conspicuously disclose the applicable terms and conditions. This requirement provides several benefits to consumers: it ensures that consumers receive complete information about terms and conditions before buying a protection plan; it ensures that consumers are able to compare coverage; it encourages competition among companies who cover consumer products; and it promotes proper performance by the companies selling service contracts.[1] Without a clear understanding of the applicable terms and conditions, consumers are less able to enforce the contracts when needed or to detect under-performance by the company that sold them the protection plan. At no time in connection with the initial sale of SquareTrade protection plans are purchasers told to visit SquareTrade's website to find applicable terms and conditions, nor do SquareTrade brochures state that any such terms exist (let alone that they can be found on SquareTrade's website).

15.    Historically, in the event that a product covered by one of its protection plans failed during the applicable period, SquareTrade either repaired or replaced the product, or provided reimbursement in the amount of the full purchase price. Multiple former SquareTrade specialists, interviewed in connection with the preparation of this complaint, confirmed that protection plan holders historically would receive reimbursement for the full purchase price of a product if repairs or replacements were not provided.

16.    Although not provided to consumers at the point of sale, on its website, SquareTrade posts documents that it identifies as Terms and Conditions applicable to its protection plans. The documents generally state that once consumers pay for a protection plan, in the event of a covered product failure, SquareTrade will be obligated to repair, replace, or reimburse the cost of the product. With respect to reimbursements, the documents consistently define "coverage amount" as "the purchase

---

[1] Federal Trade Commission, *Businesspersons' Guide to Federal Warranty Law*, https://www.ftc.gov/tips-advice/business-center/guidance/businesspersons-guide-federal-warranty-law (last visited April 9, 2020).

CLASS ACTION COMPLAINT

price of the Covered Product."[2] The documents thus state that reimbursement will be for the

replacement cost of the product, up to the purchase price.

17.     SquareTrade's plan descriptions also repeatedly indicate that protection plans include

coverage up to the original purchase price of an item. For example, under the new plan FAQ "How

much am I covered?" SquareTrade explicitly notes: "You are covered for up to the amount you paid for

your item."[3]

18.     SquareTrade also promulgates brochures and other information to retailers that sell

SquareTrade protection plans. Those documents likewise convey that the benefit provided by the plan

is full protection—in the form of repair, replacement, or reimbursement of the cost of the product.

**<u>SquareTrade Changes Its Policy and Decreases Reimbursement Payments</u>**

19.     According to numerous former SquareTrade employees, SquareTrade has changed its

internal policies so that it no longer reimburses protection plan holders their full purchase price, instead

paying them substantially less. As a result, when SquareTrade receives a claim and opts not to repair or

replace the covered product, SquareTrade's system generates a reimbursement amount less than what

SquareTrade owes and less than what SquareTrade would have paid in the past.

20.     These changes in policies did not coincide with any outward changes in SquareTrade's

business practices—there is no disclosure on SquareTrade's website, at the point of sale when

protection plans are purchased, or otherwise. Nor did SquareTrade notify current protection plan

holders.

21.     According to a former employee, SquareTrade did not make any changes to the

purported Terms and Conditions posted on SquareTrade's website to reflect the change in

reimbursement policy. In early to mid-2018, a former SquareTrade Claims Specialist asked the

---

[2] *See* SquareTrade "Terms and Conditions." Available at https://www.squaretrade.com/all-plans, Last accessed Nov. 21, 2019. ("Click a retailer below for the Terms & Conditions of SquareTrade Protection Plans sold online and in stores (as of April 10, 2018).")

[3] *See, e.g.*, "I Just Bought a New Plan…" SquareTrade. Last Modified Oct. 9, 2019, available at https://help.squaretrade.com/support/s/article/I-just-bought-a-new-plan-What-do-I-need-to-know-now; "What Does a SquareTrade Plan Cover?" SquareTrade. Last Modified Jul. 11, 2017, available at https://help.squaretrade.com/support/s/article/What-does-a-SquareTrade-plan-cover. ("Coverage lasts for the term of your plan or until the coverage amount of your plan (generally equal to item purchase price) is used up.")

CLASS ACTION COMPLAINT

1  Department Director of one of SquareTrade's customer service center why reimbursement procedures

2  changed, but not the purported Terms and Conditions. In reply, the Director noted that changing the

3  Terms and Conditions "required a lot of work by the legal department, and they may be out of date

4  again by the time they were changed."

5       22.    When questioning why customers were being denied full reimbursement, one former

6  SquareTrade employee was told to just "trust the system." SquareTrade's Learning and Development

7  Team in San Francisco developed and implemented these new policies.

8       23.    SquareTrade often applies a fixed cap on reimbursement amounts. For example,

9  SquareTrade may impose a $99.99 cap on reimbursement for a particular product, even though no such

10 cap is mentioned in SquareTrade's brochure, on its website, or by purveyors of the protection plans,

11 and even though SquareTrade previously would have reimbursed the full purchase price.

12      24.    Similarly, beginning around February 2018, SquareTrade changed its system to begin

13 reimbursing an amount that it refers to internally as "current market value." This "current market

14 value" is routinely 10%-30% less than the purchase price or replacement price of a product, and can be

15 as much as 50% lower. Internally, this change was considered part of new "Asset Manage Rapid" and

16 "Fast Cash" programs, with the latter no longer requiring customers to submit an affidavit of product

17 failure as well as faster mailing of payments. But SquareTrade did not inform customers about the

18 change or that they would be receiving less than what they were entitled to in reimbursement. Instead,

19 SquareTrade developed internal algorithms that led to lower payments to consumers.

20      25.    Multiple former SquareTrade claims specialists described having no understanding of

21 how the "current market value" was determined. One former SquareTrade Claims Specialist

22 independently researched the prices of customers' covered products online, and noted that these did not

23 match the value of the SquareTrade reimbursements to the customers. Another former SquareTrade

24 Claims Specialist echoed that SquareTrade management directed associates to explain to customers that

25 the reimbursement they received was the current value of the product, but understood that "it's really

26 not. It's [SquareTrade] trying not to pay out the full price." If the SquareTrade processing system

27 assigned Asset Manage Rapid to a claim, the reimbursement amount would similarly be switched from

28 the original purchase price to the "current market value" determined by the system.

5

CLASS ACTION COMPLAINT

**SquareTrade Customer Complaints About Decreased Reimbursement Payments**

26.    Several former SquareTrade Claims Specialists noted a high volume of complaints from consumers after SquareTrade began systematically paying less than purchase price as reimbursement. One former employee described up to half of his daily customer calls in 2018 as being such complaints.

27.    Routinely, Claims Specialists noted that customers expected to be reimbursed the full purchase price of the product because both the employees at the retail store where they purchased the SquareTrade plan, and the SquareTrade brochure itself, communicated to the customer that "they were covered for everything."

28.    Even after the internal policy changes, SquareTrade recognized that customers were entitled to the full purchase amount, and at times still paid that amount particularly if a customer lodged multiple complaints. At that point, a supervisor override of the system was required to provide the correct reimbursement amount.

29.    On information and belief, on average, over one thousand complaints are made per day directly to SquareTrade regarding its failure to reimburse the full amount owed under protection plans.

30.    One former SquareTrade Claims Specialist, working in SquareTrade's call center, estimated that on any given day, over half of the customers funneled into "Fast Cash" called to complain about their partial reimbursement. As noted above by several former employees, Claims Specialists were directed to tell complaining customers—falsely—that the reimbursement already made was the available resolution. The vast majority of customers did not seek further escalation in light of these representations. By one former Claims Specialist's estimation, perhaps one customer a day would succeed in fighting for their full entitled reimbursement.

31.    One former SquareTrade Claims Specialist estimated that over half of the customers funneled into "Fast Cash" called back to complain about receiving less than full reimbursement. With 250 Claims Specialists working per day, based on the experience of this Claims Specialist, it is estimated that about 1,250 protection plan holders would have complained, per day, to SquareTrade that they had received only a partial reimbursement.

32.    SquareTrade's failure to reimburse Class members the full purchase price owed has also been described in hundreds of online consumer complaints. Consistent with the descriptions of former

SquareTrade employees, SquareTrade frequently responds to public complaints regarding partial

reimbursements, while continuing an internal policy of falsely representing to certain protection plan

holders that their coverage was limited. Indeed, one former SquareTrade employee noted the

SquareTrade maintained full time staff specifically for the purpose of responding to online complaints.

33.    Below are examples of consumer complaints:

| AVgeek | I have been using square trade for a number of years for products that typically have failed past warranty but less than 3 or 4 years. I was upset today when Square Trade offered my a "fast cash" offer that was about 15% less than full price. I reviewed my contract and it listed three options of which one was to provide a cash settlement or a Gift Card reflecting the replacement cost of a new product of equal features and functionality up to the coverage amount, or; replace your [my] product with a product of the like kind, quality and functionality. |
|---|---|
| Original Review: April 24, 2019 | |
| Verified Purchase | |
| | However, this replacement offer made today was for a used or refurbished product. I took exception to this and was told that the fast cash offer was computer generated and could not be overwritten. |
| | I asked for escalation to a supervisor or manager. The agent returned and said that her team decided that as a long term and valued customer I would receive full value, however, the difference between fast cash and full value would be made by check and mailed to me. |
| | Funny that right before calling them I received an email advising me of a class action lawsuit against square trade for customer deception. In the future I will closely review |

7

| | |
|---|---|
| | contracts to ensure that they offer full replacement value or I will take my business to Asurion.[4] |
| **Lesley**<br><br>Original Review: Jul 30, 2019<br><br>Verified order | The claims process was very easy and the representative was very nice, but I don't feel like it was fully explained to me that I would not be getting the entire amount that I paid for my television. My television failed after 14 months and we originally paid $369.99 for it plus another $33.73 for the warranty. I was told that we would be receiving a gift card in the amount of $317.00 towards the purchase of another television and warranty. It says that I can submit receipts that equal up to the purchase amount on the website and be reimbursed for the total amount, but I cannot afford to that. I now have to purchase a television that is smaller and not comparable to the model I had. I would purchase the warranty again in the future because without it, I would have nothing, but I am not super happy. I also got sent a check instead of a gift card. My experience was not terrible, but I am not happy about things overall because the lesser amount was not explained to me during the phone call properly. I was told I was getting enough to replace my television and purchase another warranty.[5] |
| **Phillip Tait**<br><br>Original review: Jan 3, 2019 | Never again!<br><br>My latest experience has resulted in my decision never to use SquareTrade again. I purchased a used camcorder from a reputable supplier on eBay I didn't |

---

[4] https://www.amazon.com/gp/customer-reviews/RJKR0BNZTF5JC/ref=cm_cr_arp_d_viewpnt?ie=UTF8&ASIN=B003V5B76C#RJKR0BNZTF5JC

[5] https://www.trustpilot.com/review/www.squaretrade.com

CLASS ACTION COMPLAINT

| | |
|---|---|
| | get around to using it until after the eBay protection had expired, but I didn't worry about it because of the ST coverage I purchased. The camcorder stopped working completely after using it for one tape. I submitted a claim to SquareTrade. They initially offered me a refund 15% less than the purchase price of the camcorder. No explanation was given why I could not be reimbursed the full purchase price. I selected the option of having it repaired or replaced. After a week of no further response, I called again, and was told I could either accept the partial refund, or wait even longer for them to come up with a repair or replacement option. I decided to cut my losses and accept the partial refund. In the past, I have added ST coverage to cellphones and tablets I purchased for my department where I work. Never again! [6] |
| **Ken Aste**<br><br>Original review: Jul 30, 2019<br><br>Verified order | I could not replace the chair with the funds u returned the chair cost me $230.00 WITH TAX AND warranty fee. u offered $169.00 and only paid me $145.00.[7] |
| **Susan of Highlands Ranch, CO**<br><br>Original review: Dec. 6, 2018 | I don't understand why I wasn't refunded the exact amount of the cost of my item. I thought I should have been refunded the total originally paid, so I am very disappointed in this service. Not sure if I will purchase this again.[8] |

---

[6] https://www.trustpilot.com/reviews/5c2ea5f59d37800b040cb9c0
[7] https://ie.trustpilot.com/reviews/5d406465f01869069cc58805
[8] https://www.consumeraffairs.com/electronics/squaretrade.html?page=42

9

CLASS ACTION COMPLAINT

| 1 | **Shonda of Homestead, FL** | This entire ordeal has been extremely frustrating. What |
|---|---|---|
| 2 | Original review: Jan. 8, 2019 | should've been a quick claim turned into weeks of |
| 3 | | aggravation and discouragement. For starters, I've been |
| 4 | | trying to complete this claim for over two months now. I've |
| 5 | | made multiple calls to SquareTrade attempting to receive a |
| 6 | | reimbursement for the covered item after making an online |
| 7 | | claim but I ended up getting the runaround. I was promised |
| 8 | | a callback twice to include a promise from the supervisor |
| 9 | | Jermaine and neither time did I get a callback! In the end, a |
| 10 | | representative offered to reimburse me a PARTIAL credit |
| 11 | | for the covered item although the original purchase price of |
| 12 | | the item should've been reimbursed in full. Now I won't |
| 13 | | even have enough to purchase a replacement! I am LIVID! |
| 14 | | I will NEVER ever use this company for coverage and I'll |
| 15 | | definitely, without hesitation, reach out to all major |
| 16 | | partnering companies to notify them of this horrible |
| 17 | | experience. [9] |
| 18 | | |
| 19 | **Kajsa of Tabernash, CO** | We bought a new jackhammer and it didn't last even 3 |
| 20 | Original review: June 18, 2019 | months. We called numerous times and emailed, from |
| 21 | | April 5, 2019 and it is now June 18, 2019 and they haven't |
| 22 | | paid us the total amount due. They sent a check and |
| 23 | | shorted us some of the funds, have given us the runaround |
| 24 | | and now are saying they reissued a check. This company is |
| 25 | | a joke and I would highly recommend you not purchase |
| 26 | | insurance through them. Smoke and mirrors for follow |
| 27 | | through. Kj **, General Manager of Mountain Storage |

[9] https://www.consumeraffairs.com/electronics/squaretrade.html

CLASS ACTION COMPLAINT

| | |
|---|---|
| | Management. [10] |
| **Pam of San Antonio, TX**<br><br>Original review: Jan. 29, 2019 | Bought an electronic with the additional warranty. When it quit working I sent in online claim. They decided, without further input other than the receipt, that they would send out a replacement check and told me not to send the item. WELL, they shorted me 14.09. SO I am out the 14.99 I paid on the warranty plus 14.09, so 29.08 total for an item that quit working about 2 months after I bought it! Contacted online chat, got 3 different generic answers. Tried call customer service and end up in an endless loop. The written contract I read through, says the coverage amount is the purchase price of the item. NO other terms about deductions. So they took out money, and can't explain it. Can't get anyone to talk to on the phone. Used to be good company, but I am afraid things have drastically changed now that they were bought out by Allstate. [11] |
| **Tiffany of Earlsboro, OK**<br><br>Original review: Jan. 31, 2019 | Bought a protection plan for a headset. Try to replace it. Went back and forth between SquareTrade and Walmart neither wanted to replace it. Then SquareTrade decided that they wanted to give me less for the amount of the product then they said that they would replace it with a used item. This product is no more than a month old. The lady on the other phone was rude. Nobody took care of this product. They are thiefs. They take money from people saying that they're going to replace items protect items and they do not do it. This company is a thief. Do not purchase |

---

[10] https://www.consumeraffairs.com/electronics/squaretrade.html
[11] https://www.consumeraffairs.com/electronics/squaretrade.html

CLASS ACTION COMPLAINT

| | |
|---|---|
| | warranties through them. [12] |
| **Rhea of Upland, CA**<br><br>Original review: Feb. 6, 2019 | They do not provide any customer service, I had to call them 3 months after I filed my claim. NO ONE CALLED OR EMAILED ME. I call and talked to "Samantha" who tells me that my claim was invalid! My warranty purchase isn't the right package for a printer that cost me $484.86. Yet I purchased a Printer Protection 4 yr. $200.00 and above item price. What a lying bunch of thieves this company is. She asked me if I willing to accept only $200 for a $485 printer. I said no! The Warranty states: "If they can't repair your item, we'll reimburse you its replacement cost up to the coverage amount." Then after arguing with Samantha that my warranty is for $200.00 and Above Item price. She said she would have to get approval for my replacement refund, because she called Staples to confirm that the Warranty, I purchased did cover the cost of my $484.86 printer. Then she said she would call me back. I did hear back from her, so I had to call back 2 more times the 2nd time I called asked for her extension number. Which I never did get. But I was referred to a Manager "Jessabelle" who assured me I wasn't being Ignored AND she would be sure to take care of my claim. RIGHT! She said she would call me back the next day. THAT DIDN'T HAPPEN!<br><br>7 days later she finally calls me back and said they would be sending me $200.00. I said NO that not my replacement purchase price. So, she said they never got the printer back, |

---

[12] https://www.consumeraffairs.com/electronics/squaretrade.html

CLASS ACTION COMPLAINT

| | |
|---|---|
| | I told her she could have it. "Send me the FREE shipping label and I will be happy to send it to you." And she said they will be getting me replacement USED/RECONDITIONED PRINTER within 10 days, again Really! Today is Feb 6, 2019. We are now going on 4 months and nothing has been resolved. Nothing they say is true, the brochure makes you think you are getting a great deal for your money. You are throwing your $$$ away on this warranty. Shame on you Allstate for supporting a horrible company. [13] |
| **Thomas of Grants Pass, OR**<br>Original review: April 15, 2019 | I spoke with the agent and was told I would receive a full refund of $99.99 however I received a check for 85.88. Based on my conversation with SquareTrade I went to Staples and the manager sold me a new chair for 99.99. [14] |
| **Jackie of Elkhart, IN**<br>Original review: June 28, 2019 | I'm not a happy camper. I waited for about three weeks to get SquareTrade to honor their warranty. I had a coffee maker and it failed so Amazon sent me a new one. Amazon sent me a new one with no charge on it. Since I had problems with the first one, I bought the SquareTrade warranty for the second one. It started leaking and filing the claim was easy. I paid $39.99 for the coffee pot and I bought the warranty, but all they refunded me was $34. I asked if that was because of depreciation. I've never had SquareTrade do that. They really dropped the ball on that one. They kept saying that I didn't pay anything for the coffee maker and asked what the problem was. |

---

[13] https://www.consumeraffairs.com/electronics/squaretrade.html
[14] https://www.consumeraffairs.com/electronics/squaretrade.html

CLASS ACTION COMPLAINT

| | |
|---|---|
| | They would say that they'd call me back, but nobody ever returned a call. Then they'd ask me to fax them something and say that as soon as I send it in, to call back and ask for so and so and they will get things straightened out. Every time they told me to send them something, I sent it to them. Then, they would say no, they needed something else. It was just on and on. That was when I told them that I wasn't asking for the world. All I wanted them to do was honor their warranty that I paid for. At one point, they offered to send me the $6.37 that I paid for the warranty. It has been three weeks, and it got to be a little bit aggravating. [15] |
| **D. of Winterport, ME**<br>Original review: July 23, 2019 | I purchased a Vizio 55 inch TV in November of 2017 from Sam's Club along with a SquareTrade 2 year warranty. The screen on the TV has malfunctioned, the claims department stated this is common with the TV and they would issue me a refund. They failed to tell me the refund would not be the purchase price which my receipt shows was $428 + tax, instead they sent me a check for $299.99. [16] |
| **Richard Mahue**<br>Original review: May 21, 2019 | squaretrade=thieves<br>They refused to cover an item that no longer work due to its own being faulty for whatever reason it stopped working in less than a year and I have a two year warranty through this garbage Square trade bull crap. After speaking to them they refused to cover the item |

[15] https://www.consumeraffairs.com/electronics/squaretrade.html
[16] https://www.consumeraffairs.com/electronics/squaretrade.html

14

CLASS ACTION COMPLAINT

| | 100% and only sent a refund for a little over $120. Including the cost of the extremely crappy Square trade deal I paid $192 for the id they refused to cover an item that no longer worked due to its own being faulty for whatever reason it stopped working in less than a year and I have a two year warranty through this garbage square trade bull crap. After speaking to them they refused to cover the item 100% and only sent a refund for a little over $120. Including the cost of the extremely crappy square trade deal I paid $192 for the item Square trade is a thief in my book [17] |
|---|---|
| **Polly of Oceanside, CA**<br>**Verified Reviewer**<br>Original review: July 2, 2018 | SquareTrade and Staples are NOT truthful re: full refund warranty. My refund was PRORATED by nearly 20% for a 4 month old printer. ST confirmed that pro-rated reimbursement is their policy, even though no reference to said policy exists in the paperwork received. I call FOUL to both SquareTrade and Staples.[18] |

**Plaintiff Shuman's Transactions**

34.     On July 17, 2017, Plaintiff Shuman purchased a 17" Samsonite rolling luggage bag from a Staples in Philadelphia, Pennsylvania, for $129.99. At the same time, he paid $19.99 for a two-year

---

[17] https://www.trustpilot.com/users/5ce46d22a5274ee12925010d
 https://www.trustpilot.com/users/5ce46d22a5274ee12925010d
[18] https://www.consumeraffairs.com/electronics/squaretrade.html%3Fpage%3D45+&cd=5&hl=en&ct=clnk&gl=us

CLASS ACTION COMPLAINT

1    SquareTrade protection plan for the bag. Plaintiff's protection plan warranty number was

2    040727193227.

3        35.    At the time of his purchase, Plaintiff Shuman was told by the Staples clerk that for

4    $19.99 he would be entitled to a complete replacement if anything went wrong over the next two years,

5    or alternatively, that the full purchase price of the bag would be paid if Plaintiff received a

6    reimbursement.

7        36.    In addition to a paper receipt, Plaintiff Shuman received a short brochure (depicted

8    below) after buying the protection plan. He did not receive any terms and conditions that may have

9    applied to his purchase plan either at the point of sale or afterward, beyond the language in the

10    brochure. As the brochure reflects, consumers like Plaintiff Shuman who bought a protection plan were

11    told doing so would "protect" the item purchased.



CLASS ACTION COMPLAINT

37.    The brochure contains no other information about the amount to be reimbursed in the event of a subsequent claim and does not state that the reimbursement amount would be less than the price paid for the product—instead touting the lack of any deductibles or hidden fees.

38.    In early February 2019, within the applicable service contract period, the handle of the Samsonite luggage broke. Plaintiff visited the SquareTrade website to look into submitting a claim, and SquareTrade sent Plaintiff an email on February 21, 2019 (attached as **Exhibit 1**). The email confirmed Plaintiff Shuman's coverage term ran from July 18, 2017 through July 18, 2019. The coverage type was listed as "accidental damage from handling." In the same email, SquareTrade included language entitled "PROTECTION PLAN TERMS & CONDITIONS," under which was written "Congratulations on purchasing this Protection Plan." Although Plaintiff had bought the protection plan well over a year earlier, SquareTrade had never previously sent him any terms or conditions that ostensibly applied to the plan he purchased. The email lists the "Coverage Amount" as "up to the maximum coverage price of this Protection Plan, or the purchase price of your item, whichever is lower." Later in the same email, "Coverage Amount" is defined as "The purchase price of the Covered Product." Later still, the email states that SquareTrade will either repair or replace the product or reimburse "the replacement cost of a new product of equal features and functionality up to the Coverage Amount."

39.    On February 23, 2019, Plaintiff Shuman filed a claim under his SquareTrade protection plan. SquareTrade confirmed receipt by email on the same day, and assigned the claim #034486911130.

40.    Because Plaintiff's bag broke well within the two-year coverage period, and the accidental damage sustained  ("broken straps & handles") was among the types of coverage explicitly covered by the Plan, Plaintiff Shuman was entitled to receive either a repair, replacement, or reimbursement of the purchase price of the bag ($129.99).

41.    On February 25, 2019, SquareTrade emailed Plaintiff and said that SquareTrade had reviewed the claim and "determined that the best solution is to reimburse you directly for the replacement of your item since it's not feasible to send your item in for repair." Plaintiff was directed to electronically sign an affidavit that the information he had shared on the bag's condition and damage were true to the best of his knowledge. Plaintiff Shuman completed and submitted the Affidavit, and

1  SquareTrade confirmed receipt by email on February 25, 2019. Nothing in this Affidavit indicated that

2  Plaintiff's reimbursement would be less than his purchase price.

3      42.    That same day, SquareTrade notified Plaintiff by email that it had approved his claim.

4  SquareTrade noted, however, that they "could not find an exact replacement or model[19] that was

5  comparable to your current item." SquareTrade promised, consistent with Plaintiff's original

6  understanding of his Purchase Plan, that "[t]herefore, we'll be sending you a check for the purchase

7  cost of the item instead…" On February 26, 2019, Plaintiff Shuman received notice that his payment

8  was processed.

9      43.    On or about March 1, 2019, however, when Plaintiff received his SquareTrade

10  protection plan payment, it was not for the purchase cost of the item as promised. Instead, it was just

11  76% of the cost—$99.99, instead of $129.99.

12      44.    In subsequent calls with at least three different SquareTrade Claims Specialists, Plaintiff

13  objected to this reimbursement, noting it was $30 short of his full purchase price. Plaintiff was told

14  repeatedly that his protection plan only covered $99.99.

15      45.    On March 3, 2019, Plaintiff returned to a Staples store in Bethesda, Maryland, and

16  purchased an identical 17" Samsonite roller bag himself, at the same price as he had originally

17  purchased it in 2017 ($129.99). Plaintiff was again offered a SquareTrade protection plan for the bag at

18  $19.99. At this time, Plaintiff asked whether, if the bag broke, he would receive reimbursement of the

19  purchase price or some lesser amount. Plaintiff was assured he would be entitled to receive full

20  reimbursement of the purchase price, and he purchased a second SquareTrade protection plan for this

21  new bag.

22      46.    Immediately following his purchase, Plaintiff Shuman wrote the SquareTrade Appeals

23  Division regarding his denied claim. In a letter, Plaintiff Shuman described his purchase, the original

24  representations about the protection plan's coverage, SquareTrade's initial representation that no

25  replacement was available, and SquareTrade's insistence his plan only covered $99.99, rather than the

26  full purchase price. Plaintiff Shuman requested in this letter that SquareTrade reimburse him for the

27

28

---

[19] As noted in paragraph 45, *infra*, this assertion was false.

CLASS ACTION COMPLAINT

additional $30 covered under his original protection plan. Plaintiff Shuman also noted that absent

resolution, he intended to take legal action.

47.    Plaintiff Shuman's March 2019 letter was ignored for nearly a year.  In February 2020—

weeks after his demand letter was received by SquareTrade and he was represented by counsel—

Plaintiff was improperly contacted by Squaretrade. Nevertheless, Plaintiff has never received full

reimbursement for his bag's purchase price under the protection plan.

### CHOICE OF LAW ALLEGATIONS

48.    Because this Complaint is brought in California, California's choice of law regime

governs the state law allegations in this Complaint.

49.    Under California's choice of law rules, California law applies to the claims of all Class

Members, regardless of their state of residence or state of purchase.

50.    Because SquareTrade is headquartered—and made all decisions relevant to these

claims—in California, California has a substantial connection to, and materially greater interest in, the

rights, interests, and policies involved in this action than any other state. The wrongful conduct herein,

including but not limited to SquareTrade's decisions regarding the marketing, development and sale of

the protection plan, occurred in the state of California. All decisions relating to providing (or failing to

provide) terms and conditions with protection plans at the point of sale are made in California, and it is

employees in the California headquarters who failed to disseminate terms and conditions to protection-

plan purchasers.

51.    According to former SquareTrade employees, protection-plan reimbursement policies,

including the processes for determining the amounts to be paid to protection-plan claimants, were also

developed, implemented, and communicated to Claim Specialists by SquareTrade's Learning and

Development Team in San Francisco. Thus, the decision to not pay the amounts owed under the

protection plans was made in, and continues to be directed from, California.

52.    SquareTrade also processes and sends wrongful underpayments to Class members from

its California offices. Plaintiff Shuman's partial reimbursement check, dated February 26, 2019, was

sent from SquareTrade's California offices located at 360 3rd Street, Suite 600, San Francisco,

CLASS ACTION COMPLAINT

1  California, 94107, with funds drawn from a Citibank bank branch located at 451 Montgomery Drive,

2  San Francisco, California, 94104.

3       53.    The application of California law to SquareTrade and the claims of all Class Members

4  would not be arbitrary, unfair, or otherwise improper. Indeed, as discussed above, SquareTrade posts

5  purported Terms and Conditions applicable to its plans online and also emailed similar language to

6  Plaintiff (well over a year after he bought the protection plan). Language in those documents states that

7  "[t]he laws of the state of California (without giving effect to its conflict of laws principles) govern all

8  matters arising out of or relating to this Protection Plan and all transactions contemplated by this

9  Protection Plan, including, without limitation, the validity, interpretation, construction, performance

10  and enforcement of this Protection Plan."

11  **CLASS ACTION ALLEGATIONS**

12       54.    Plaintiff brings this action pursuant to the provisions of Rules 23(a), 23(b)(2), and

13  23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and the following proposed class:

14      <u>Nationwide Class</u>

15      All purchasers of a SquareTrade protection plan in the United States.

16      <u>Contract Subclass</u>

17      All purchasers of a SquareTrade protection plan in the United States who made a claim with

18      SquareTrade for product purchase price and were paid less than product purchase price.

19       55.    Excluded from the Class are SquareTrade, its employees, co-conspirators, officers,

20  directors, legal representatives, heirs, successors, wholly- or partly-owned, and its subsidiaries and

21  affiliates; proposed Class counsel and their employees; the judicial officers and associated court staff

22  assigned to this case and their immediate family members; all persons who make a timely election to be

23  excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her

24  immediate family.

25       56.    Certification of Plaintiff's claims for class-wide treatment is appropriate because

26  Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would

27  be used to prove those elements in individual actions alleging the same claim.

28

CLASS ACTION COMPLAINT

57.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

58.     <u>Numerosity</u>. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Millions of SquareTrade protection plans have been sold in the United States. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

59.     <u>Commonality and Predominance</u>. Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a.  Whether SquareTrade was obligated to provide the terms and conditions for its service contracts at the point of sale;

    b.  Whether SquareTrade failed to provide the terms and conditions for its service contracts at the point of sale;

    c.  Whether SquareTrade is obligated to reimburse full purchase price (or cost of replacement) upon receipt of a valid protection plan claim to the extent SquareTrade opts not to repair or replace the item;

    d.  Whether SquareTrade fails to reimburse the full purchase price (or cost of replacement) upon receipt of a valid protection plan claim to the extent SquareTrade opts not to repair or replace the item;

    e.  Whether SquareTrade has engaged in unlawful and unfair business practices;

    f.  Whether SquareTrade has breached contractual obligations owed to Plaintiff and Class members;

    g.  Whether SquareTrade has been unjustly enriched;

    h.  Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

    i.  Whether Plaintiff and the other Class members are entitled to declaratory relief, including, but not limited to, a declaration of their rights under their SquareTrade protection plans.

60.     <u>Typicality</u>. Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the claims of the proposed Class. Plaintiff and the members of the proposed Class all purchased a SquareTrade protection plan, giving rise to substantially the same legal rights and claims.

61.    <u>Adequacy</u>. Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

62.    <u>Declaratory and Injunctive Relief</u>. Federal Rule of Civil Procedure 23(b)(2): SquareTrade has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

63.    <u>Superiority</u>. Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against SquareTrade, so it would be impracticable for the members of the Class to individually seek redress for SquareTrade's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**COUNT I**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT,**
**15 U.S.C. § 2301, *et seq*.**
**(On Behalf of the Class)**

64.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

65.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

66.     SquareTrade's protection plan is a "service contract" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6), and SquareTrade is a "service contractor" as that term is used within the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et. seq.

67.     Under the Magnuson-Moss Warranty Act, as a service contractor, SquareTrade was required to disclose to consumers "fully, clearly, and conspicuously … [the applicable] terms and conditions in simple and readily understood language." 15 U.S.C. § 2306(b). This requirement prohibits SquareTrade and other service contract providers from failing to clearly and conspicuously disclose material terms and conditions or otherwise deceiving consumers with respect to the scope and nature of service contracts.

68.     As detailed above, SquareTrade makes its protection plan service contracts available for purchase through a number of different retailers, including Staples and Walmart. Yet SquareTrade fails to fully, clearly, and conspicuously disclose any applicable terms and conditions of its service contracts to or at those retailers. As a result Plaintiff and other Class members do not receive the terms and conditions that apply to the protection plans, beyond what is set forth in the SquareTrade brochure and the information generally available at the retailer (including that the protection plans provide for replacement, repair, or reimbursement of purchase price in the event of a product failure within the applicable period). SquareTrade thus consistently violates the Magnuson-Moss Warranty Act by failing to disclose terms and conditions for its service contracts.

69.     Before proceeding with this action, Plaintiff afforded SquareTrade a reasonable opportunity to cure its failures to comply with the Magnuson-Moss Warranty Act, including by sending a pre-suit notice of unlawful conduct to SquareTrade's headquarters, which arrived on or about January 22, 2020, and notified SquareTrade that Plaintiff was acting on behalf of the proposed Class. SquareTrade has not provided the relief requested by Plaintiff.

70.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $5,000,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

71.     Plaintiff, individually and on behalf of the other Class members, seeks all damages permitted by law, in an amount to be proven at trial. Plaintiff further seeks a declaratory judgment

clarifying consumers' rights and SquareTrade's obligations under the protection plans with respect to the amount owed when SquareTrade receives a valid claim and neither replaces nor repairs the covered item. Plaintiff also seeks a sum equal to the aggregate amount of cost and expenses (including attorneys' fees) reasonably incurred by Plaintiff for or in connection with the commencement and prosecution of this action.

**COUNT II**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT,**
**15 U.S.C. § 2301, *et seq*.**
**(On Behalf of the Contract Subclass)**

72.     Plaintiff and the Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

73.     Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

74.     SquareTrade's protection plan is a "service contract" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6), and SquareTrade is a "service contractor" as that term is used within the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et. seq*.

75.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a service contractor to comply with the terms of a service contract.

76.     SquareTrade, on the one hand, and Plaintiff and Subclass members, on the other, formed contracts (irrespective of whether the formation, contracts, and/or terms are deemed express and/or implied), through which SquareTrade offered Plaintiff and Subclass members product protection that provided reimbursement of purchase price (or reimbursement of the cost of replacing the product), repair, or replacement, if the protected product were damaged during the applicable period, and Plaintiff and Subclass members accepted SquareTrade's offer. SquareTrade conveyed its offer impliedly and/or expressly, including through its brochures, instructions to retailers (who then communicated to consumers), and its course of conduct, including its historical practice of, and online statements about, replacing, repairing, or providing full reimbursement of purchase price (or cost of replacement) upon receiving valid claims.

77.     SquareTrade, Plaintiff, and Subclass members were all capable of contracting.

78.     Plaintiff and Subclass members upheld their obligations under the service contract, in that they paid one-time flat fees to purchase SquareTrade protection plans. They also followed SquareTrade's claims processes for reimbursement under those plans.

79.     In breach of its service contract obligations, SquareTrade did not fully reimburse Plaintiff and Subclass members as promised under the service contract, nor did SquareTrade repair or replace the covered products.

80.     Because SquareTrade only partially reimbursed Plaintiff and Subclass members, Plaintiff and Subclass members were harmed.

81.     SquareTrade's breaches of service contract as to Plaintiff and Subclass members was a substantial factor in causing their harm.

82.     Before proceeding with this action, Plaintiff afforded SquareTrade a reasonable opportunity to cure its failures to comply with the Magnuson-Moss Warranty Act, including by sending a pre-suit notice of unlawful conduct to SquareTrade's headquarters, which arrived and was signed for on January 22, 2020, and notified SquareTrade that Plaintiff was acting on behalf of the proposed Class.

83.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $5,000,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

84.     Plaintiff, individually and on behalf of the other Subclass members, seeks all damages permitted by law, including unpaid protection plan coverage denied to Plaintiff and Subclass members, in an amount to be proven at trial. Plaintiff further seeks a declaratory judgment clarifying consumers' rights and SquareTrade's obligations under the protection plans with respect to the amount owed when SquareTrade receives a valid claim and neither replaces nor repairs the covered item. Plaintiff also seeks a sum equal to the aggregate amount of cost and expenses (including attorneys' fees) reasonably incurred by Plaintiff for or in connection with the commencement and prosecution of this action.

1
2

**<u>COUNT III</u>**
**BREACH OF CONTRACT**
**(On behalf of the Contract Subclass)**

3       85.     Plaintiff and the Subclass incorporate by reference each preceding and succeeding

4 paragraph as though fully set forth at length herein.

5       86.     SquareTrade, on the one hand, and Plaintiff and Subclass members, on the other, formed

6 contracts (irrespective of whether the formation, contracts, and/or terms are deemed express and/or

7 implied), through which SquareTrade offered Plaintiff and Subclass members product protection that

8 provided reimbursement of purchase price (or reimbursement of the cost of replacing the product),

9 repair, or replacement, if the protected product were damaged during the applicable period, and

10 Plaintiff and Subclass members accepted SquareTrade's offer. SquareTrade conveyed its offer

11 impliedly and/or expressly, including through its brochures, instructions to retailers (who then

12 communicated to consumers), and its course of conduct, including its historical practice of, and online

13 statements about, replacing, repairing, or providing full reimbursement of purchase price (or cost of

14 replacement) upon receiving valid claims.

15       87.     SquareTrade, Plaintiff, and Subclass members were all capable of contracting.

16       88.     Plaintiff and Subclass members upheld their obligations under the contract, in that they

17 paid one-time flat fees to purchase SquareTrade protection plans. They also followed SquareTrade's

18 claims processes for reimbursement under those plans.

19       89.     In breach of its contractual obligations, SquareTrade did not fully reimburse Plaintiff

20 and Subclass members as promised under the contract, nor did SquareTrade repair or replace the

21 covered products.

22       90.     Because SquareTrade only partially reimbursed Plaintiff and Subclass members after

23 contracting for purchase price reimbursement, Plaintiff and Subclass members were harmed.

24       91.     SquareTrade's breaches of contract as to Plaintiff and Subclass members was a

25 substantial factor in causing their harm.

26       92.     Plaintiff and Subclass members are entitled to damages in an amount to be proven at

27 trial.

28

26

**CLASS ACTION COMPLAINT**

**COUNT IV**
**VIOLATION OF THE CALIFORNIA SONG-BEVERLY CONSUMER WARRANTY ACT,**
**Cal. Civ. Code § 1790, *et seq.***
**(On Behalf of the Class)**

93.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

94.     SquareTrade's protection plans constitute "service contracts" as defined in Cal. Civ. Code § 1791(o).

95.     By selling a service contract to Plaintiff and other Class members, SquareTrade was obligated to provide that contract and to fully and conspicuously disclose in simple and readily understood language the terms, conditions, and exclusions of that contract. *See* Cal. Civ. Code § 1794.4. Among other things, this requires that SquareTrade's service contract contain:

    a.   A clear description and identification of the covered product;

    b.   The point in time or event when the term of the service contract commences, and its duration measured by elapsed time or an objective measure of use;

    c.   A statement of the general obligation of the service contractor;

    d.   A step-by-step explanation of the procedure that the buyer should follow in order to obtain performance of any obligation under the service contract; and

    e.   An explanation of the steps that the service contractor will take to carry out its obligations under the service contract.

96.     As detailed above, SquareTrade makes its protection plan service contracts available for purchase through a number of different retailers, including Staples and Walmart. Yet SquareTrade fails to fully, clearly, and conspicuously disclose any applicable terms and conditions of its service contracts to or at those retailers and as a result Plaintiff and other Class members do not receive the terms and conditions that apply to the protection plans, beyond what is set forth in the SquareTrade brochure and the information generally available at the retailer (including that the protection plans provide for replacement, repair, or reimbursement of purchase price in the event of a product failure within the applicable period). SquareTrade thus consistently violates the Song-Beverly Consumer Warranty Act by failing to disclose terms and conditions for its service contracts.

97.     Plaintiff and the other members of the Class have been damaged by SquareTrade's failure to comply with its obligations under the Song-Beverly Consumer Warranty Act, including because they received less in reimbursement from SquareTrade than what they were owed and because they paid for service contracts that were not supplied in accordance with the law.

98.     Plaintiff, on behalf of the Class, therefore seeks the recovery of damages and all other available legal and equitable relief, as well as a declaration of Plaintiff's and Class members' rights and SquareTrade's obligations under the service contracts. In addition, because SquareTrade's failures to comply with the law have been willful, Plaintiff and the Class seek a civil penalty not to exceed two times the amount of actual damages. Plaintiff further seeks a sum equal to the aggregate amount of costs and expenses, including attorney's fees, incurred in connection with the commencement and prosecution of this action.

## COUNT V
### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW,
### Cal. Bus. & Profs. Code § 17200, *et seq.*
### (On Behalf of the Class)

99.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

100.     SquareTrade has violated and continues to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits unlawful and unfair business acts and practices.

101.     SquareTrade's acts and practices, as alleged in this complaint, constitute unlawful and unfair business acts and practices, in violation of the Unfair Competition Law. In particular, SquareTrade sold service contracts to Plaintiff and Class members without disclosing terms and conditions and adopted policies of systematically underpaying reimbursement amounts owed.

102.     SquareTrade's business acts and practices are unlawful in that they violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, and the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*, for the reasons set forth above.

103.     SquareTrade's conduct also constitutes unfair business practices for at least the following reasons:

A.  The gravity of harm to Plaintiff and Class members from SquareTrade's acts and practices far outweighs any legitimate utility of that conduct;

B.  SquareTrade's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and Class members; and

C.  SquareTrade's conduct undermines or violates the stated policies underlying the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, and the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*,—to ensure purchasers of service contracts understand and have the ability to enforce their rights in connection with those contracts, and to generally protect consumers against unfair and sharp business practices relating to the sale of service contracts in the marketplace.

104.    As a direct and proximate result of SquareTrade's business practices, Plaintiff and Class members suffered injury in fact and lost money or property, because they purchased and paid for service contracts that were not supplied in accordance with applicable law and because SquareTrade reimbursed them less than the amounts owed to them under those service contracts.

105.    Plaintiff and Class members are entitled to restitution and equitable relief, including an order directing SquareTrade to clearly and conspicuously provide the complete terms of its service contracts at the point of sale going forward, and to honor the terms of those contracts, including by providing full reimbursement of purchase price (or replacement price) in those instances where SquareTrade does not repair or replace the covered item.

**COUNT VI**
**UNJUST ENRICHMENT**
**(ALSO KNOWN AS A QUASI-CONTRACTUAL CLAIM FOR RESTITUTION)**
**(On Behalf of the Class)**

106.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein. This count is pled in the alternative to the contract-based claims.

107.    Plaintiff and Class members conferred a benefit upon SquareTrade by purchasing protection plans. Although the protection plans are sold by third-party retailers, SquareTrade profits from the sale of each such plan. Plaintiff and members of the Class are entitled to payment by

1   SquareTrade of full reimbursement of the purchase price (or replacement cost) of the goods covered

2   by SquareTrade protection plans, in those instances where SquareTrade does not repair or replace the

3   covered item, yet SquareTrade paid Plaintiff and other Class members less than the amount owed,

4   retaining the excess funds for itself, keeping the excess funds as an unfair benefit for itself..

5       108.    SquareTrade had knowledge that these benefits were conferred upon it.

6       109.    SquareTrade, having received these benefits, is required to provide remuneration under

7   the circumstances. It is unjust for SquareTrade to retain such monies obtained by the illegal conduct

8   described above. Such money or property belongs in good conscience to Plaintiff and Class members

9   and can be traced to funds or property in SquareTrade's possession. Plaintiff's and Class members'

10  detriment and SquareTrade's enrichment are related to and flow from the conduct challenged in this

11  Complaint.

12      110.    Plaintiff and Class members are entitled to remuneration, as it would be inequitable and

13  unjust for SquareTrade to retain such benefits, and other remedies and claims may not permit them to

14  obtain such relief, leaving them without an adequate remedy at law.

15                              **REQUEST FOR RELIEF**

16      WHEREFORE, Plaintiff, individually and on behalf of members of the Class, respectfully

17  requests that the Court enter judgment against SquareTrade and in favor of Plaintiff and the Class, and

18  award the following relief:

19      A.      Certification of this action as a class action pursuant to Rule 23 of the Federal Rules of

20  Civil Procedure and appointment of Plaintiff's counsel as counsel for the Class;

21      B.      An order awarding declaratory relief and temporarily and permanently enjoining

22  SquareTrade from continuing the unlawful and unfair business practices alleged in this Complaint;

23      C.      An order awarding damages, civil penalties, and restitution to Plaintiff and the Class;

24      D.      An order requiring SquareTrade to pay both pre- and post-judgment interest on any

25  amounts awarded;

26      E.      An award of costs, expenses, and attorneys' fees as permitted by law; and

27      F.      Such other or further relief as the Court may deem appropriate, just, and equitable.

28

CLASS ACTION COMPLAINT

1    **DEMAND FOR JURY TRIAL**

2    Plaintiff hereby demands a jury trial for all claims so triable.

3

4    Dated: April 20, 2020                              */s/ David Stein*

5                                                        Eric H. Gibbs (SBN 178658)
                                                         Amanda M. Karl (SBN 301088)
6                                                        **GIBBS LAW GROUP LLP**
                                                         505 14th Street, Suite 1110
7                                                        Oakland, California 94612
                                                         Telephone: (510) 350-9700
8                                                        Facsimile: (510) 350-9701
                                                         ehg@classlawgroup.com
9                                                        ds@classlawgroup.com
                                                         amk@classlawgroup.com
10

11

12                                                       William H. Anderson *(to apply pro hac vice)*
                                                         **HANDLEY FARAH & ANDERSON PLLC**
13                                                       4730 Table Mesa Drive, Suite G-200
                                                         Boulder, CO 80305
14                                                       Telephone: (303) 800-9109
                                                         Facsimile: (866) 912-8897
15                                                       wanderson@hfajustice.com

16

17                                                       Rebecca P. Chang *(to apply pro hac vice)*
                                                         **HANDLEY FARAH & ANDERSON PLLC**
18                                                       81 Prospect Street
                                                         Brooklyn, NY 11201
19                                                       Telephone: (347) 480-1030
                                                         Facsimile: (866) 912-8897
20                                                       rchang@hfajustice.com

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

# EXHIBIT 1

**From:**      SquareTrade Protection Plans <purchaseconfirmation@squaretrade.com>
**Sent:**      Thursday, February 21, 2019 6:07 PM
**To:**        shuman@igc.org
**Subject:**   Thank You for Your SquareTrade Protection Plan Purchase

Don't miss out on important emails. Add purchaseconfirmation@squaretrade.com to your address book.



Need help?

## Dear Michael,

Thank you for purchasing your new **Backpack** protection plan. You're all set! If you'd like to manage your SquareTrade account online, just click the link below.

**Log In**

## Your Protection Plan

| Plan Number: | 040727193227 | Coverage Term: | 2 Years |
|---|---|---|---|
| Coverage Amount: | Up to the maximum coverage price of this Protection Plan, or the purchase price of your item, whichever is lower | Coverage Starts*: | 07/18/2017 |
| Protection Plan Price: | $19.99 | Coverage Ends: | 07/18/2019 |
| Coverage Type: | Accidental Damage from Handling (ADH) | Waiting Period: | 1 Day |
| Covered Product: | Backpack | Quantity: | 1 |
| Deductible: | None | | |

*During manufacturer warranty period, mechanical and electrical failures are covered by manufacturer rather than SquareTrade.

# PROTECTION PLAN
# TERMS & CONDITIONS

Congratulations on purchasing this Protection Plan. Please read these Terms and Conditions carefully so that You fully understand Your coverage under this Protection Plan.

Please also review the Order Summary or purchase receipt provided to You at the time You purchased this Protection Plan. The Order Summary defines the Covered Product, Coverage Amount and the Coverage Term of this Protection Plan.

1. **DEFINITIONS:**

    **"We", "Us" and "Our"** shall mean the obligor of this Protection Plan, CE Care Plan Corp except as follows: In **California, "We", "Us" and "Our"** shall mean SquareTrade, Inc.; in **Arizona, Oklahoma, and Wyoming, "We", "Us" and "Our"** shall mean Complete Product Care Corp. The aforementioned are located at 360 3rd Street, Suite 600, San Francisco, CA 94107. In **Florida, "We", "Us" and "Our"** shall mean First Colonial Insurance Company, 1776 American Heritage Life Drive, Jacksonville, FL 32224. You may reach Us at 1-877-927-7268. In **Washington,"We", "Us" and "Our"** shall mean Starr Technical Risks Agency, Inc., 399 Park Avenue, 8th Floor, New York, NY 10022. You may reach Us at 1-877-927-7268.

    **Administrator** shall mean SquareTrade, Inc. located at 360 3rd Street, Suite 600, San Francisco, CA 94107 with a telephone number: 1-877-927-7268.

    **"You", "Your"** shall mean the individual or entity who purchased this Protection Plan or the individual or entity to whom this Protection Plan was properly transferred in accordance with these Terms and Conditions.

    **The following terms are used in the Order Summary**

    Protection Plan Price: The price You paid for this Protection Plan.

    Coverage Start Date: This is the date when coverage starts under this Protection Plan.

    Waiting Period: This is the amount of time, varying from zero (0) to thirty (30) days, between the Protection Plan purchase date and the Coverage Start Date, during which if any issues occur, they are considered pre-existing conditions and render the item ineligible for coverage under this Protection Plan. A Waiting Period applies to Protection Plans purchased for refurbished items and Protection Plans purchased subsequent to the purchase of Your Covered Product. Any applicable Waiting Period does not affect Your coverage under any manufacturer's warranty. If during the Waiting Period a pre-existing condition renders the item ineligible for coverage We will cancel Your Protection Plan and provide You with a full refund of the Protection Plan Price.

    Coverage Term *or* Term: This is the years of coverage, varying from one (1) to five (5) year(s), You receive under this Protection Plan, starting on the Coverage Start Date which begins after any Waiting Period. The Protection Plan is inclusive of any US manufacturer's warranty that may exist during the Coverage Term. It does not replace the manufacturer's warranty, but provides certain additional benefits during the term of the manufacturer's warranty. The Term of this Protection Plan is extended for the duration of any time that the item is being repaired under this Protection Plan.

    Covered Product *or* Product: The product or type of product covered by this Protection Plan.

    Coverage Amount: The purchase price of the Covered Product.

    Coverage Type: This defines the level of coverage You purchased, such as whether Your Protection Plan includes Optional Coverage, such as Accidental Damage from Handling (ADH) coverage.

Deductible: The applicable deductible, if any, for claims.

2. **COVERAGES AND TERMS:** This Protection Plan will cover a mechanical or electrical failure of the Covered Product(s) in subsections A, B, C and D below during normal usage for the Term of this Protection Plan. This Protection Plan is inclusive of any manufacturer's warranty that may exist during the Coverage Term. It does not replace the manufacturer's warranty, but provides certain additional benefits during the term of the manufacturer's warranty. Replacement parts will be new, rebuilt or non-original manufacturer's parts that perform to the factory specifications of the product at Our sole option.

This Protection Plan does not cover repair or replacement of Your Product for any of the causes or provide coverage for any losses set forth below in Section 9, **"WHAT IS NOT COVERED."** Specific details about Your coverage under this Protection Plan are provided in the Order Summary. For online assistance and hardware troubleshooting tips, visit www.squaretrade.com and select the Support option.

A. **CELL PHONES AND TABLETS:**
1. This Protection Plan provides coverage for parts and labor costs to repair or replace Your Product where the problem is the result of a failure caused by:
   a. Normal wear and tear;
   b. Accidental damage from handling (ADH), such asdamage from drops, spills and liquid damage associated with the handling and use of Your Product, if the coverage has been offered and purchased at the time of sale with your Protection Plan;
   c. One (1) battery repair or replacement, when the original rechargeable battery is defective as determined by Us and at Our sole discretion. We may require You to return your original defective battery to Us to receive a replacement battery;
   d. Damaged or defective buttons or connectivity ports located on Your Product;
   e. For defective pixels We will match the manufacturer's warranty for the Term of Your Protection Plan. In the absence of a manufacturer's dead pixel policy, We will cover a failure of three (3) or more defective pixels within a one square inch area of the display;
   f. Dust, internal overheating, internal humidity/condensation;
   g. Defects in materials or workmanship;
   h. Operational failure resulting from a power surge while properly connected to a surge protector. You may be asked to provide Your surge protector for examination.

B. **JEWELRY AND WATCH PLANS:**
1. JEWELRY: This Protection Plan provides coverage for parts and labor costs to repair the Jewelry where the problem is a result of a failure caused by defects in workmanship and/or materials, including those resulting from normal wear and tear such as: cracks, chips, scratches, dents, kinks, breaks, and thinning.  You will be reimbursed for SquareTrade-authorized repairs to, or replacement of the Jewelry, at Our discretion, when required due to a problem which is not covered under any other warranty, service plan or insurance.
2. WATCHES: This Protection Plan provides coverage for parts and labor costs to repair the Watch where the problem is the result of a failure caused by defects in workmanship and/or materials, including those resulting from normal wear and tear such as: watch band, case, clasp, crown, cracked crystal, inner movement and stem. For watch band failure, We may elect to replace either segments of the band, the complete band, or the watch, at Our discretion. You will be reimbursed for Square Trade-authorized repairs to or replacement of the Watch, at Our discretion, when required due to a problem which is not covered under any other warranty, service plan or insurance.

C. **FURNITURE:**
1. This Protection Plan covers only products used primarily for personal, family or household purposes or in a small office or home office setting.
2. UPHOLSTERED WOOD AND METAL FURNITURE: This Protection Plan provides coverage for damage due to seam separation; broken hardware and pulls; seam separation of joints and welds; cracks; peeling of veneers; broken hinges, casters, slides, drawer pull/guides or swivels; damaged mechanical elements; scratches; chips; gouges; cracking, warping or

peeling of finish due to normal use. The Protection Plan also covers breakage, chips and scratches to glass on tables, desks, wall units and cabinets, and breakage, chipping and/or loss of silvering to mirrors due to normal use or accidental damage.

3. FABRIC AND LEATHER COVERAGE: This Protection Plan provides coverage for damage due to separation or peeling of topcoat finish.

D. **ALL OTHER PRODUCTS:**

1. This Protection Plan provides coverage for parts and labor costs to repair or replace Your Product where the problem is the result of a failure caused by:

   a. Normal wear and tear;
   b. Accidental damage from handling (ADH), such as damage from drops, spills and liquid damage associated with the handling and use of Your Product, if the coverage has been offered and purchased at the time of sale with your Protection Plan;
   c. One (1) battery repair or replacement, when the original rechargeable battery is defective as determined by Us and at Our sole discretion, if the coverage has been offered and purchased at the time of sale with your Protection Plan;
   d. One (1) bulb replacement, replacement of a faulty bulb during the first three (3) years of the Term, if the coverage has been offered and purchased at the time of sale with your Protection Plan;
   e. For defective pixels We will match the manufacturer's warranty for the Term of Your Protection Plan. In the absence of a manufacturer's dead pixel policy, We will cover:
      a. Six (6) or more defective pixels for displays up to 17";
      b. Eight (8) or more defective pixels for displays greater than 17".
   f. Dust, internal overheating, internal humidity/condensation;
   g. Defects in materials or workmanship;
   h. Operational failure resulting from a power surge while properly connected to a surge protector. You may be asked to provide Your surge protector for examination.

3. **OPTIONAL COVERAGES:**

A. **ACCIDENTAL DAMAGE FROM HANDLING (ADH):**

If You were offered and elected to include accidental damage from handling (ADH) as an integral part of Your coverage, it augments Your Protection Plan by providing additional protection for damage from drops, spills and liquid damage associated with the handling and use of Your Product.

ADH does not provide protection against theft, loss, reckless, or abusive conduct associated with handling and use of the product, cosmetic damage and/or other damage that does not affect unit functionality, or damage caused during shipment between You and Our service providers.

B. **BULB COVERAGE:**

If You were offered and elected to include Bulb Coverage on Your rear-projection or DLP Television, Your Protection Plan shall also include up to one (1) replacement of a faulty bulb during the first three (3) years of the Coverage Term. You will be responsible for installing the replacement bulb, which We will provide to You in most occurrences. If, at Our discretion, We do not provide You with a replacement bulb, We will reimburse You for the cost of the bulb. Bulb Coverage will terminate either at the end of three (3) years or when You have received a replacement bulb or reimbursement for the cost of a replacement bulb from Us, whichever occurs first. You may be required to return the defective bulb to Us.

C. **BATTERY COVERAGE:**

If You were offered and elected to include Battery Coverage on Your Product, Your Protection Plan shall also include up to one (1) battery repair or replacement during the first two (2) years of the Coverage Term, when the original rechargeable battery is defective as determined by Us and at Our sole discretion. We may require You to return Your original defective battery to Us to receive a replacement battery. Battery

4

Coverage is only available for Covered Products that are new or newly manufacturer refurbished.

4. **WHAT TO DO IF A COVERED PRODUCT REQUIRES SERVICE**:

File a claim online at www.squaretrade.com/claim or call Us toll-free at 1-877-927-7268 and explain the problem. We will attempt to troubleshoot the problem You are experiencing. If We cannot resolve the problem, You will be directed to an authorized service center.

5. **HOW WE WILL SERVICE YOUR PRODUCT**:

Depending on the Product and failure circumstances, at Our discretion, We will either:

A. Repair Your Product, or;
B. Provide a cash settlement or a Gift Card reflecting the replacement cost of a new product of equal features and functionality up to the Coverage Amount, or;
C. Replace Your Product with a product of like kind, quality and functionality.

6. **PLACE OF SERVICE**:

At Our discretion, large items will receive on-site service. Within five (5) business days of determining Your Product requires on-site service, We will assign You an authorized service center technician and arrange to repair or replace the Product at Your location during normal business hours. If We fail to have an authorized service center technician assigned within five (5) business days, We will continue to service Your Product and the cost of Your Protection Plan will be refunded to You at Your request. On-site service may occasionally necessitate the authorized service center technician to bring the Product back to their shop to complete repairs.

For shippable items, We will provide a free prepaid shipping label to Our authorized service center for repair, replacement or settlement. You will be responsible for safe packaging and shipment of Your Product. If, upon inspection, Your Product is determined to have experienced a failure which is covered by Your Protection Plan, We will service Your Product, in accordance with Section 5, **"HOW WE WILL SERVICE YOUR PRODUCT"**, within five (5) days of our authorized service center's receipt of Your Product. If We fail to repair, payout or replace the Product within five (5) business days of receiving it, We will continue to service Your Product and the cost of Your Protection Plan will be refunded to You at Your request. If the authorized service center determines Your Product is in working condition or is not covered by Your Protection Plan, We will return Your Product to You or dispose of it at Your request.

7. **LIMIT OF LIABILITY**:

The total amount that We will pay for repairs or replacement made in connection with all claims that You make pursuant to this Protection Plan shall not exceed the Coverage Amount. In the event that We make payments for repairs or replacements, which in the aggregate, are equal to the Coverage Amount, or if We provide a cash settlement reflecting the replacement cost of a new item of equal features and functionality, then We will have no further obligations under this Protection Plan.

WE SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO, PROPERTY DAMAGE, LOST TIME, OR LOST DATA RESULTING FROM THE FAILURE OF ANY PRODUCT OR EQUIPMENT OR FROM DELAYS IN SERVICE OR THE INABILITY TO RENDER SERVICE.

8. **YOUR RESPONSIBILITIES**:
A. Provide Us with a complete copy of proof of purchase. You can send Us a digital copy through www.squaretrade.com and We can store it for You, or You can provide such proof of purchase at the time You make a claim.
B. Purchase the correct SquareTrade Protection Plan for Your Product based on condition, price or purchase location.
C. Properly maintain, store and use Your Product according to the manufacturer instructions.
9. **WHAT IS NOT COVERED**:

A. Any and all pre-existing conditions that occur prior to the Coverage Start Date of this Protection Plan;
B. Intentional damage;
C. Lost, stolen, or irretrievable items;
D. Any product that is fraudulently described or materially misrepresented;
E. Maintenance, repair, or replacement necessitated by loss or damage resulting from any cause other than normal use and operation of the product in accordance with the manufacturer's specifications and owner's manual, including, but not limited to, exposure to weather conditions, failure to properly clean, maintain or lubricate, operator negligence, misuse, abuse, improper electrical/power supply, improper equipment modifications, attachments or installation or assembly, vandalism, animal or insect infestation, battery leakage, act of nature (any accident caused or produced by any physical cause which cannot be foreseen or prevented, such as storms, perils of the sea, tornadoes, hurricanes, floods and earthquakes), or any other peril originating from outside the product;
F. Defects due to the initial installation, assembly or hookup of Your Product;
G. Cases wherein the manufacturer acknowledges the existence of a valid manufacturer's warranty and denies a claim against the manufacturer's warranty;
H. Claims made under any improperly or incorrectly purchased Protection Plan;
I. Cosmetic damage to case or cabinetry or other non-operating parts or components which does not affect the functionality of the covered product;
J. Television or personal computer monitor screen imperfections, including "burn-in" or burned CRT phosphor;
K. Accidental damage, cracked or damaged monitor, laptop or display screens, liquid damage, lost buttons or knobs etc., unless optional accidental damage from handling (ADH) coverage was offered and purchased at the time of sale with Your Protection Plan;
L. Projector or rear projection TV bulbs unless Bulb Coverage has been offered and purchased at the time of sale with Your Protection Plan;
M. Consumer replaceable or consumable batteries unless Battery Coverage has been offered and purchased at the time of sale with Your Protection Plan;
N. Consumer replaceable or consumable items such as but not limited to toner, ribbons, ink cartridges, drums, belts, printer heads, belts, blades, strings, trim etc.;
O. All equipment intended for heavy commercial or industrial use such as industrial printers or IT equipment; riding mowers or backhoe type products;
P. Product(s) with removed or altered serial numbers;
Q. Manufacturer defects or equipment failure which is covered by manufacturer's warranty, manufacturer's recall, or factory bulletins (regardless of whether or not the manufacturer is doing business as an ongoing enterprise);
R. Damage to computer hardware, software and data caused by, including, but not limited to, viruses, application programs, network drivers, source code, object code or proprietary data, or any support, configuration, installation or reinstallation of any software or data;
S. Failures related to shipping damage, cleaning, preventive maintenance, "No Problem Found" diagnosis, intermittent and non-intermittent issues that are not product failures (such as poor cell phone reception);
T. Jewelry or watches that are used or refurbished at the time of purchase;
U. Rattan, wicker, plastic, or non-colorfast fabric furniture; or inherent furniture design defects including, but not limited to, natural inconsistencies in wood grains, fabrics, coloring or leathers; fading due to sunlight; or dust corrosion;
V. Stains, water marks or rings on furniture caused by consumable beverages, smoke or other materials deemed by Us to be caustic;
W. Items sold in a private sale (e.g. flea market, yard sale, estate sale, craigslist).

10. **NO LEMON POLICY:**

If Your Covered Product has two (2) service repairs completed for the same problem and a third (3rd) repair is needed for the same problem, within any twelve (12) month period, the Covered Product will be replaced with a comparable product or a cash settlement will be provided. The cost of the replacement will not exceed Your Product's original purchase price.

11. **FREE SHIPPING:**

This Protection Plan covers all shipping charges to authorized service centers during the Coverage Term, including shipping to the manufacturer if the manufacturer does not cover shipping charges to their facilities.

6

12. **Worldwide Service:**

   The coverage provided in this Protection Plan also applies when You travel outside of the United States. If Your Product needs repair while traveling abroad, You may file a claim online at www.squaretrade.com to obtain a claim authorization number. At this time You will be instructed on how to proceed to obtain service and You will also receive a fax number and an email address for You to submit Your service repair invoice to Us after the repair is completed. Once You have obtained Your claim authorization number, You will need to carry Your Product into a service center and then submit to Us a copy of the detailed service repair invoice that identifies Your Product, the claim authorization number, and includes a thorough description of the repair made. This documentation should be faxed or emailed to Us and We will reimburse You within five (5) business days of receipt of all necessary paperwork, provided a covered repair was performed.

13. **TRANSFER OF PROTECTION PLAN:**

   This Protection Plan may be transferred at no charge. To transfer this Plan log in to www.squaretrade.com, or contact Us toll-free at 1-877-927-7268 24 hours a day, 7 days a week.

14. **CANCELLATION:**

   You may cancel this Protection Plan for any reason at any time. To cancel it, log in to www.squaretrade.com or contact Us toll-free at 1-877-927-7268 24 hours a day, 7 days a week. If You cancel this Protection Plan within the first thirty (30) days after purchase of this Protection Plan You will receive a 100% refund of the Protection Plan Price. If You cancel after the first thirty (30) days from purchase of this Protection Plan, You will receive a pro rata refund based on the time remaining on Your Protection Plan. No fees or past claims shall be deducted from the refund and the refund will be sent to You within ten (10) business days from the cancellation request or else a ten percent (10%) penalty per month shall be applied to the refund.

   **We may cancel this Protection Plan at Our option on the basis of nonpayment, fraud, or material misrepresentation by You.** If We cancel Your Protection Plan, You will receive a pro rata refund. If this Protection Plan was inadvertently sold to You on a product which was not intended to be covered by this Protection Plan, We will cancel this Protection Plan and return the full purchase price of the Protection Plan to You. Written notice which includes the effective date of cancellation and reason for cancellation, will be mailed to You at least thirty (30) days prior to termination. If We cancel this Protection Plan for nonpayment then We will provide notice at time of cancellation.

15. **ARBITRATION:**

   Any controversy or claim arising out of or relating to this Protection Plan, or breach thereof, will be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Under this Arbitration provision, We both give up the right to resolve any controversy or claim arising out of or relating to this Protection Plan by a judge and/or a jury. Prior to filing any arbitration, We jointly agree to seek to resolve any dispute between us by mediation conducted by the AAA, with all mediator fees and expenses paid by Us. If You are successful in obtaining an arbitration award against us greater than $500, We agree to pay all arbitrator fees and expenses.

   We also both agree not to participate as a class representative or class member in any class action litigation, any class arbitration or any consolidation of individual arbitrations against each other. The laws of the state of California (without giving effect to its conflict of laws principles) govern all matters arising out of or relating to this Protection Plan and all transactions contemplated by this Protection Plan, including, without limitation, the validity, interpretation, construction, performance and enforcement of this Protection Plan. A judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The parties specifically agree to the binding nature of the arbitration.

16. **GUARANTEE:**

This is not an insurance policy. Our obligations under this Protection Plan are guaranteed under a reimbursement insurance policy issued by Allstate Insurance Company, 2775 Sanders Rd, Northbrook, Illinois 60062 and You may contact them toll free at 1-800-669-9313. If We fail to pay or provide service on a claim within sixty (60) days after proof of loss has been filed, You are entitled to make a claim directly against Allstate Insurance Company.

17. **ENTIRE CONTRACT:**

Unless amended by the State Specific Provisions or revised by Us with at least thirty (30) days advance written notice to You, this Protection Plan sets forth the entire contract between the parties and no representation, promise or condition not contained herein shall modify these terms.

**State Variations:**

The following state variations shall apply if inconsistent with any other terms and conditions.

**Alabama:** If You are a resident of Alabama, the following shall replace Section 15 "Arbitration" of these Terms and Conditions: The laws of the state of Alabama (without giving effect to its conflict of laws principles) govern all matters arising out of or relating to this Protection Plan and all transactions contemplated by this Protection Plan, including, without limitation, the validity, interpretation, construction, performance and enforcement of this Protection Plan. A judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The parties specifically agree to the binding nature of the arbitration.

**Arizona:** Section 9 (A) "What is Not Covered" of these Terms and Conditions is deleted in its entirety.

**California:** If You decide to cancel Your Protection Plan for a product other than a home appliance or electronics item within sixty (60) days after the receipt of the Protection Plan You will be refunded the full price paid for the Protection Plan. If You decide to cancel your Protection Plan for this type of item after sixty (60) days after the receipt of the Protection Plan You will receive a pro-rated refund based on the time remaining on Your Protection Plan. All Protection Plans for home appliance or home electronics are covered by the "Cancellation" section of the Protection Plan. **Arbitration:** For California residents the Arbitration provision is amended to state the following: (1) Pursuant to California Civil Code sections 51.7 (Ralph Civil Rights Act) and 52.1 (Bane Civil Rights Act), the option to enter into Arbitration is solely at the discretion of the contract holder; (2) if Arbitration is elected, this does not waive the right of California consumers to file and pursue civil action or complaint; (3) if any statement found within this contract contradicts this section, this section shall take precedence. To learn more about this process, You may contact BEAR at 1-800-952-5210, or You may write to Department of Consumer Affairs, 4244 S. Market Court, Suite D, Sacramento, California, 95834, or You may visit their website at www.bearhfti.ca.gov.

**Connecticut: Resolution of Disputes**: If You purchased this Protection Plan in Connecticut and a dispute arises between You and the provider of this Protection Plan. You may mail Your complaint to: State of Connecticut, Insurance Department, P.O. Box 816, Hartford, CT 06142-0816, Attn: Consumer Affairs. The written complaint must describe the dispute, identify the price of the product and cost of repair, and include a copy of this Protection Plan. You must first attempt to mediate any dispute. In the event that mediation is unsuccessful You may pursue arbitration to settle disputes between You and the provider of this Protection Plan. You have the right to cancel this Protection Plan if You return the product or if the product is sold, lost, stolen, or destroyed. If We cancel this Protection Plan, written notice including effective date and reason for cancellation will be mailed to You electronically or by U.S. Mail at least 30 days prior to termination.

**Florida:** The rates charged to You for this Protection Plan are not subject to regulation by the Florida Office of Insurance Regulation. The Guarantee, in Section 16, does not apply to Protection Plans sold in Florida as this Protection Plan is directly issued by the insurer, First Colonial Insurance Company, 1776 American Heritage Life Drive, Jacksonville, FL 32224, 1-800-621-4871.

**Georgia:** Cancellation will comply with Section 33-24-44 of the Georgia Code. Failure to refund in accordance with the aforementioned Section will make Us liable for penalty equal to 25% of refund and interest of 18% per annum until refund is paid, not to exceed 50% of refund. The waiting period will not exceed 30 days. Arbitration is non-binding. Section 9 (A) "What is Not Covered" of these Terms and

Conditions is deleted in its entirety and replaced with the following: Any and all pre-existing conditions known to You that occur prior to the Coverage Start Date of this Protection Plan.

**Maine:** With respect to Maine contract holders, the Obligor under this Protection Plan is the Dealer.

**Nevada:** This Protection Plan is not renewable. If We cancel this Protection Plan for nonpayment by You, then We will provide notice at least 15 days prior to the effective date of cancellation. We may cancel this Protection Plan at Our option on the basis of nonpayment, fraud, or material misrepresentation by You. If We cancel this Protection Plan for any of these reasons, then written notice including the effective date and reason for cancellation will be mailed to You at least 30 days prior to termination. Prior approval of service should be obtained as outlined in "WHAT TO DO IF A COVERED PRODUCT REQUIRES SERVICE" or "WORLDWIDE SERVICE" in the Protection Plan. Section 15 "Arbitration" of these Terms and Conditions is deleted in its entirety. **WAITING PERIOD: THIS IS THE AMOUNT OF TIME, VARYING FROM ZERO (0) TO THIRTY (30) DAYS, BETWEEN THE PROTECTION PLAN PURCHASE DATE AND THE COVERAGE START DATE.**

**New Jersey**: If you are a resident of New Jersey, the following shall replace Section 16 "Guarantee" of these Terms and Conditions: This is not an insurance policy. Our obligations under this Protection Plan are guaranteed under a reimbursement insurance policy issued by First Colonial Insurance Company. 1776 American Heritage Life Drive, Jacksonville, FL 32224, 1-800-621-4871. If We fail to pay or provide service on a claim within sixty (60) days after proof of loss has been filed, You are entitled to make a claim directly against First Colonial Insurance Company.

**New Mexico:** This service contract is insured by Allstate Insurance Company. If the service contract provider fails to pay you or otherwise provide you with the covered service within 60 days of your submission of a valid claim, you may submit your claim to Allstate Insurance Company at 2775 Sanders Rd, Northbrook, Illinois 60062, 1-800-669-9313. If you have any concerns regarding the handling of your claim, you may contact the Office of Superintendent of Insurance at 855-427-5674.

**Oklahoma:** This Protection Plan is not issued by the manufacturer or wholesale company marketing the product. This Protection Plan will not be honored by such manufacturer or wholesale company. The Oklahoma Service Agreement statutes do not apply to commercial use references in Protection Plan contracts. Coverage afforded under this Protection Plan is not guaranteed by the Oklahoma Insurance Guaranty Association. If You cancel after the first thirty (30) days from purchase of this Protection Plan, You will receive a one hundred percent (100%) unearned pro rata refund based on the time remaining of Your Protection Plan. The Service Warranty Provider for this Protection Plan is Complete Product Care Corp, 360 3rd Street, Suite 600, San Francisco, CA 94107, License Number 864208.

**Oregon**: **Arbitration:** If You are a resident of Oregon, the following shall replace Section 15 "Arbitration" of these Terms and Conditions: Any arbitration occurring under this Protection Plan shall occur in an agreed upon location by both parties and be administered in accordance with the Arbitration Rules unless any procedural requirement of the Arbitration Rules is inconsistent with the Oregon Uniform Arbitration Act in which case the Oregon Uniform Arbitration Act shall control as to such procedural requirement. Any award rendered shall be a nonbinding award against You.

**South Carolina:** In the event of a dispute with the provider of this Protection Plan, You may contact the South Carolina Department of Insurance, Capitol Center, 1201 Main Street, Ste. 1000, Columbia, South Carolina 29201 or 1-800-768-3467. This Protection Plan is not an insurance contract.

**Texas:** The administrator for this Protection Plan is SquareTrade, Inc. registration number 155.

**Utah:** Replacement parts will be new, rebuilt or non-original manufacturer's parts that perform to the factory specifications of the Covered Product at Our sole option. Coverage afforded under this Protection Plan is not guaranteed by the Property and Casualty Guaranty Association. This Protection Plan is subject to limited regulation by the Utah Insurance Department. To file a complaint, contact the Utah Insurance Department. Notice of cancellation for nonpayment of the purchase price of this Protection Plan will be in writing given at least ten (10) days prior to cancellation. **Arbitration:** If You are a resident of Utah, the following shall replace Section 15 "Arbitration" of these Terms and Conditions: ANY MATTER IN DISPUTE BETWEEN YOU AND THE COMPANY MAY BE SUBJECT TO ARBITRATION AS AN ALTERNATIVE TO COURT ACTION PURSUANT TO THE RULES OF (THE AMERICAN ARBITRATION ASSOCIATION OR OTHER RECOGNIZED ARBITRATOR), A COPY OF WHICH IS AVAILABLE ON REQUEST FROM THE COMPANY. ANY DECISION REACHED BY ARBITRATION SHALL BE BINDING UPON BOTH YOU AND THE COMPANY. THE

ARBITRATION AWARD MAY INCLUDE ATTORNEY'S FEES IF ALLOWED BY STATE LAW AND MAY BE ENTERED AS A JUDGEMENT IN ANY COURT OF PROPER JURISDICTION.

<u>Washington:</u> Section 16 of these Terms and Conditions is deleted in its entirety and replaced with the following: This is not an insurance policy. Obligations of the service contract provider under this contract are back by the full faith and credit of the service contract provider, Starr Technical Risks Agency, Inc. Starr Technical Risk Agency, Inc. is located at 399 Park Avenue, 8th Floor, New York, NY 10022 and You may contact them toll-free at 1-855-438-2390.

<u>Wisconsin:</u> The term "Protection Plan" in these terms and conditions shall be understood to mean "Service Contract". **This Contract is subject to limited regulation by the Office of the Commissioner of Insurance.** No claim will be denied solely because You failed to obtain preauthorization. This Service Contract, including optional ADH coverage, does not provide coverage for intentional damage and/or pre-existing conditions that occur prior to the Coverage Start Date. Our obligations under this Protection Plan are guaranteed under a reimbursement insurance policy issued by Allstate Insurance Company. Allstate Insurance Company is located at 2775 Sanders Rd, Northbrook, Illinois 60062 and You may contact them toll free at 1-800-669-9313. If We fail to pay or provide service on a claim within sixty (60) days after proof of loss has been filed, or if We become insolvent or financially impaired, You are entitled to make a claim directly against Allstate Insurance Company. **Arbitration:** The laws of the state of Wisconsin shall govern all matters arising out of or relating to this Service Contract. Arbitration is non-binding. Under no circumstances shall a legal proceeding be filed in a federal, state or local court until such time as both You and We first address our disagreement in an arbitration proceeding and obtain an arbitration award pursuant to this arbitration provision. **Cancellation:** We shall mail a written notice to You at the last-known address contained in our records at least five (5) days prior to cancellation by Us. This notice will include the effective date of and reason for the cancellation. In the event of a total loss of property covered by a Service Contract that is not covered by a replacement of the property pursuant to the terms of the Service Contract, You shall be entitled to cancel the Service Contract and receive a pro rata refund on any unearned provider fee, less any claims paid. If a claim has been made under this Service Contract, You may cancel the Service Contract and We shall refund to You one hundred percent (100%) of the unearned pro rata provider fee, less any claims paid. We may charge a reasonable administrative fee for the cancellation, which may not exceed ten percent (10%) of the provider fee.

<u>Wyoming</u>: The provider of the service contract shall mail a written notice to the service contract holder at the last known address of the service contract holder contained in the records of the provider at least ten (10) days prior to cancellation by the provider. Prior notice is not required if the reason for cancellation is nonpayment of the provider fee, a material misrepresentation by the service contract holder to the provider or a substantial breach of duties by the service contract holder relating to the covered product or its use. A ten percent (10%) penalty per month shall be added to a refund that is not paid or credited within forty-five (45) days after return of the service contract to the provider.
**Arbitration:** If You are a resident of Wyoming, the following shall replace Section 15 "Arbitration" of these Terms and Conditions: At the time of any disagreement, the parties may mutually agree to submit any matters of difference to arbitration by executing a separate written agreement. Any arbitration shall be conducted within the state of Wyoming.

© 2015 SquareTrade. All Rights Reserved
How to Contact Us
Please, please don't reply to this email. We're unable to respond to messages sent to this address, and we absolutely, positively want to respond if you've got questions. Instead, <u>email us by clicking here</u>. Thanks!

