1
2
3
4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    MICHAEL SHUMAN,                          Case No.  20-cv-02725-JCS
              Plaintiff,
8
                                             **ORDER GRANTING IN PART AND**
9        v.                                  **DENYING IN PART MOTION TO**
                                             **DISMISS**
10   SQUARETRADE INC.,
                                             Re: Dkt. No. 30
              Defendant.
11

12

13   **I.      INTRODUCTION**

14          In this putative class action, Plaintiff Michael Shuman alleges that Defendant SquareTrade,

15   Inc. ("SquareTrade"), which sells service contracts for the protection of consumer goods,

16   consistently fails to provide consumers with the full terms and conditions of the contract at the

17   time of purchase and systematically pays reimbursement in an amount that is less than the

18   purchase price of the covered item when claims are filed.  In his complaint, he asserts claims

19   under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. (Claims One and Two), the

20   Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 (Claim Four), and California's

21   Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*. (Claim Five).   He also

22   asserts claims for breach of contract (Claim Three) and unjust enrichment (Claim Six).  Presently

23   before the Court is SquareTrade's Motion to Dismiss Counts I, II, IV, V and VI ("Motion").

24   Because Shuman has stipulated to the dismissal of the claims asserted under the Magnuson-Moss

25   Warranty Act and the Song-Beverly Consumer Warranty Act, *see* dkt. no. 42 at p. 1, the Court

26   considers herein only the challenges to Claims Five and Six.  A hearing on the Motion was held on

27   December 18, 2020 at 9:30 a.m.  For the reasons stated below, the Motion is GRANTED in part

28

United States District Court
Northern District of California

and DENIED in part.[1]

## II.   CONTENTIONS OF THE PARTIES[2]

In the Motion, SquareTrade asks the Court to dismiss both Claim Five ("the UCL Claim") and Claim Six ("the Unjust Enrichment Claim").  SquareTrade contends the UCL Claim must be dismissed because Shuman is not a resident of California and he did not purchase the service contract that is the basis for his claims in California.  Motion at 6.  According to SquareTrade, numerous courts have held under similar circumstances that the UCL does not apply, applying California's three-step governmental interest test to determine which state's law should apply.  *Id.* at 6-7 (citing *Frezza v. Google Inc.*, No. 5:12-cv-00237-RMW, 2013 WL 1736788, at *1 (N.D. Cal. Apr. 22, 2013); *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1004 (N.D. Cal. 2014); *Granfield v. NVIDIA Corp.*, No. C11–05403–JW, 2012 WL 2847575, at *3 (N.D. Cal. July 11, 2012); *Littlehale v. Hain Celestial Grp., Inc.*, No. 11–cv–06342–PJH, 2012 WL 5458400, at *1–2 (N.D. Cal. July 2, 2012); *Horvath v. LG Elecs. Mobilecom. U.S.A., Inc.*, 2012 WL 2861160, at *3–4 (S.D. Cal. Feb.13, 2012)).

Applying California's government interest test, SquareTrade argues that the consumer protection laws of the three states that have an interest in having their laws applied – California (where SquareTrade has its headquarters), Pennsylvania (where the service contract was purchased), and Maryland (where Shuman resides) – are materially different with respect to the remedies that are available, the grounds upon which liability can be established and scienter requirements.  *Id.* at 7-9. It further contends that while all three states have an interest in having their laws applied, the interests of Pennsylvania would be most impaired if its law were not applied because that is where the wrong occurred, that is, it is "'the state where the last event necessary to make the actor liable occurred[.]'" *Id.*  at 6-7 (quoting *Frezza*, 2013 WL 1736788, at *7);  *see also id.* at 10 (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593 (9th Cir. 2012)

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

[2] Because the Court provided a detailed summary of the allegations in the Complaint in its order on SquareTrade's motion to compel arbitration, *see* dkt. no. 25, it does not repeat that summary here.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   ("California recognizes that 'with respect to regulating or affecting conduct within its borders, the

2   place of the wrong has the predominant interest.")).   In particular, SquareTrade contends, the

3   alleged misconduct – the purchase of the roller bag and Protection Plan, "the alleged non-

4   disclosure of written Terms and Conditions, the conversation with the store clerk and the receipt

5   of the brochure – all occurred in Pennsylvania." *Id.* (citing Complaint ¶¶ 34-35).

6       SquareTrade also argues that the choice of law question can be decided on the pleadings,

7   pointing out that in many of the cases upon which it relies (in particular, *Frenzel*, *Granfield*,

8   *Littlehale*, *Horvath* and *Frezza*), the courts "applied the California choice-of-law test to dismiss

9   UCL claims at the pleading stage." *Id.* at 11. Here, SquareTrade contends, it "is apparent that

10  plaintiff's UCL claim is precluded" and therefore should be dismissed. *Id.*

11      SquareTrade also argues that Shuman's unjust enrichment claim should be dismissed,

12  pointing to the rule under California law that "an action for unjust enrichment cannot lie when the

13  parties' rights are set out in an express agreement." *Id.* at 11 (citing *Ellis v. JPMorgan Chase &*

14  *Co.*, 752 F. App'x 380, 383 (9th Cir. 2018) ("Unjust enrichment is a quasi-contract claim, which is

15  not available when a contract defines the rights of the parties.") (*citing Paracor Fin., Inc. v. Gen'l*

16  *Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1995)).  According to SquareTrade, because

17  Shuman "alleges the existence of a contract between himself and SquareTrade[,]" *id.* at 12 (citing

18  Complaint ¶¶66, 74, 86), he "cannot also seek to proceed in quasi-contract." *Id.* (citing *Paracor*,

19  96 F.3d at 1167). SquareTrade acknowledges that in his complaint Shuman alleges that his claim

20  for unjust enrichment is pled in the alternative, *id.* at 12 (citing Complaint ¶ 106), but argues that

21  such alternative pleading is not permitted when an express contract covers the dispute. *Id.* (citing

22  *Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 F. App'x 123, 126 (9th Cir.

23  2007); *Yang v. Dar Al–Handash Consultants*, 250 Fed. App'x 771, 773 (9th Cir. 2007);

24  *VIZIO, Inc. v. Gemtek Tech. Co.*, No. SACV 13-160-JLS(RNBx), 2014 WL 12691575, at *2 (C.D.

25  Cal. Jan. 21, 2014)).

26      Shuman argues in his Opposition that neither his UCL Claim nor his Unjust Enrichment

27  Claim should be dismissed.  With respect to the UCL Claim, Shuman rejects SquareTrade's

28  choice-of-law analysis, arguing that although he agrees that California, Pennsylvania and

United States District Court
Northern District of California

1   Maryland all have an interest in having their consumer protection laws applied and that their laws

2   are materially different, SquareTrade is incorrect with respect to its conclusion that Pennsylvania's

3   interest would be most impaired if its law were not applied.   Opposition at 7.  Shuman does not

4   dispute that under *Mazza*, "the state with the predominant interest is the 'place of the wrong,'

5   which it defines as 'the state where the last event necessary to make the actor liable occurred.'"

6   *Id.* (quoting *Mazza*, 666 F.3d. at 593). He argues, however, that the state where the last event

7   giving rise to liability occurred is California, where Shuman alleges SquareTrade made the

8   changes to its  internal policies and practices that resulted in his receiving less than was promised

9   to him when he purchased a protection plan from SquareTrade.  *Id.* at 7-8.  He distinguishes

10   *Mazza*, *Frezza*  and *Frenzel*, where the place of the wrong was found to be the state in which the

11   alleged pre-sale misrepresentations were made, on the basis that SquareTrade changed its policies

12   and practices *after* Shuman had already purchased the protection plan.  *Id.* at 8-9.  He argues that

13   the theory of his UCL claim now that he has dismissed his claims under the Magnuson-Moss

14   Warranty Act and the Song-Beverly Consumer Warranty Act (which were based on the alleged

15   failure to disclosure the full terms of the plan at the time Shuman purchased it) is not that he was

16   misled at the time of sale but that SquareTrade engaged in *post-sale* conduct (in California) that

17   injured him.  *Id.*

18        Shuman argues that this case is similar to *In re TFT-LCD (Flat Panel) Antitrust Litig.*, in

19   which Judge Illston rejected the defendant's argument that "Virginia law should apply because the

20   last event necessary for liability occurred when it allegedly sold price-fixed goods to a retailer in

21   Virginia." *Id.*  at 9 (citing No. 10-cv-05625, 2013 WL 6327490, at *5, *6, n.3 (N.D. Cal. Dec. 3,

22   2013)). Instead, Shuman contends, she found that the "last event" necessary to make the defendant

23   liable occurred in California, where the last steps to implement the price-fixing policy were taken,

24   and therefore, that California's interest in having its law applied predominated.  *Id.*  Shuman

25   contends that here, as in *Flat Panel*, the "last steps giving rise to liability occurred in California

26   rather than at the point of sale." *Id.*  at 10.  In particular, "[a]fter selling Shuman his protection

27   plan and obligating itself to reimburse him the full purchase price should he later submit a claim,

28   SquareTrade processed Plaintiff's claim for reimbursement in San Francisco following revised

1    reimbursement policies in San Francisco." *Id.* "And then it completed the wrongful conduct by

2    sending Plaintiff a check for $99.99 from San Francisco drawn from a California bank." *Id.*

3    Shuman also cites *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1064-65 (1999)

4    in support of this argument. *Id.* According to Shuman, in that case the court found that California

5    law applied to non-residents' claims where the alleged misconduct occurred at the defendant's

6    headquarters in California.

7    With respect to his Unjust Enrichment Claim, Shuman acknowledges that as a general rule

8    "'[a]n action based on quasi-contract cannot lie where a valid express contract covering the same

9    subject matter exists between the parties.'" *Id.* (quoting *Gerlinger v. Amazon.com, Inc.*, 311 F.

10   Supp. 2d 838, 856 (N.D. Cal. 2004)). He argues, however, that it is permissible to plead both an

11   unjust enrichment claim and a breach of contract claim in the alternative because there is a dispute

12   about the enforceability of the contract. *Id.* (citing *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp.

13   2d 1111, 1133 (N.D. Cal. 2009) ("Under an unjust enrichment theory, restitution may be

14   awarded… in lieu of breach of contract damages where an asserted contract is found to be

15   unenforceable or ineffective…."); *High v. Choice Mfg. Co.*, No. 11-cv-5478, 2012 WL 3025922,

16   at *13 (N.D. Cal. July 24, 2012) ("even though a plaintiff may not ultimately prevail under both

17   unjust enrichment and breach of contract … it may plead both in the alternative.")).

18   In its Reply, SquareTrade rejects Shuman's distinction between pre-sale conduct and post-

19   sale conduct in support of his UCL claim, arguing that *Mazza* draws no such distinction. Reply at

20   2. SquareTrade also rejects Shuman's reliance on *Flat Panel* and *Diamond*. *Id.* at *2-3*. As to

21   *Flat Panel*, SquareTrade argues that the court did not rely on any post-sale conduct in support of

22   its conclusion, which was instead based on the fact that the anticompetitive behavior in that case

23   occurred within California. *Id.* In particular, SquareTrade contends, key to the court's conclusion

24   with respect to choice of law was that "Circuit City took receipt of the artificially high-priced LCD

25   TVs in California and sold them to California consumers." *Id.* at 2. Moreover, it notes, the

26   misconduct alleged in that case was price-fixing, which occurred *before* the goods were sold to

27   consumers. *Id.* at 3. SquareTrade argues that *Diamond* also is not on point because it did not

28   conduct any choice of law analysis, was decided before *Mazza* and focused on the text and

1 legislative history of the statute that was at issue in that case, which have no bearing on the issues

2 before the Court here. *Id.*

3 **III.    ANALYSIS**

4     **A.    Legal Standards Under Rule 12(b)(6)**

5     A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure

6 for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss

7 under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp.*

8 *Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage

9 is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which

10 sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing

11 that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

12     In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and

13 takes "all allegations of material fact as true and construe[s] them in the light most favorable to the

14 non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

15 Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that

16 would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

17 1990). A complaint must "contain either direct or inferential allegations respecting all the material

18 elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v.*

19 *Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101,

20 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

21 of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

22 (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion

23 couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S.

24 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

25 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)

26 (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the

27 plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable

28 inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S.

United States District Court
Northern District of California

6

1 │ at 570).

2 │     **B.**    **The UCL Claim**

3 │     SquareTrade argues that under *Mazza*, Shuman's claims are governed by the law of

4 │ Pennsylvania because that is where he allegedly purchased the service contract at issue in this case

5 │ and therefore, the interests of Pennsylvania in having its law applied predominate.  The Court

6 │ agrees.

7 │     A federal district court that sits in diversity applies the law of the state in which it sits,

8 │ including its choice-of-law rules. *Klaxon Co. v. Stentor Electric Mfg. Co*., 313 U.S. 487, 496

9 │ (1941).  In California, courts apply the governmental interest approach to determine what law

10 │ should govern the case. *Kearney v. Salomon Smith Barney, Inc*., 39 Cal.4th 95, 107-108 (2006).

11 │ That approach involves the following three-step analysis:

12 │     First, the court determines whether the relevant law of each of the
13 │     potentially affected jurisdictions with regard to the particular issue in
    question is the same or different. Second, if there is a difference, the
14 │     court examines each jurisdiction's interest in the application of its own
    law under the circumstances of the particular case to determine
15 │     whether a true conflict exists. Third, if the court finds that there is a
    true conflict, it carefully evaluates and compares the nature and
16 │     strength of the interest of each jurisdiction in the application of its
    own law 'to determine which state's interest would be more impaired
17 │     if its policy were subordinated to the policy of the other state'
    [citation] and then ultimately applies 'the law of the state whose
18 │     interest would be more impaired if its law were not applied.

19 │ *Id.*  (internal quotations and citations omitted).

20 │     In *Mazza*, the court applied the governmental interest approach in the context of a motion

21 │ for class certification.  666 F.3d at 585.  In that case, a putative class sued Honda for violations of

22 │ the UCL and other California statutes based on alleged misrepresentations to individuals who

23 │ purchased or leased Honda's vehicles.  *Id*.  The misrepresentations emanated from California,

24 │ where Honda had its headquarters, but some of the putative class members had purchased or

25 │ leased their vehicles in other states with materially different consumer protection laws from those

26 │ in California.  *Id.* at 590. The district court certified the class based, in part, on its conclusion that

27 │ California law could be applied to the class as a whole, but the Court of Appeals disagreed.  *Id.*

28 │     Applying California's governmental interest test, the court in *Mazza* concluded that there

United States District Court
Northern District of California

were material differences between the consumer protection laws of California and those of other states where putative class members purchased or leased their vehicles. *Id.* at 591. It further found that each of the 44 states in which Honda vehicles were leased or purchase had an interest in having its law applied because under principals of federalism, "'each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders.'" *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003)). Finally, at the third step of the analysis, the court found that the district court had "not adequately recognize[d] that each foreign state ha[d] an interest in applying its law to transactions within its borders and that, if California law were applied to the entire class, foreign states would be impaired in their ability to calibrate liability to foster commerce." *Id.* Moreover, the court found, the interests of the states in which the transactions took place predominated over California's interest in regulating the conduct of a company located within its borders. *Id.* at 594.

The *Mazza* court reasoned as follows:

> California recognizes that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." *See Hernandez v. Burger*, 102 Cal.App.3d 795, 802, 162 Cal.Rptr. 564 (1980), cited with approval by *Abogados v. AT & T, Inc.*, 223 F.3d 932, 935 (9th Cir. 2000). California considers the "place of the wrong" to be the state where the last event necessary to make the actor liable occurred. *See McCann*, 48 Cal.4th at 94 n. 12, 105 Cal.Rptr.3d 378, 225 P.3d 516 (pointing out that the geographic location of an omission is the place of the transaction where it should have been disclosed); *Zinn v. Ex–Cell–O Corp.*, 148 Cal.App.2d 56, 80 n. 6, 306 P.2d 1017 (1957) (concluding in fraud case that the place of the wrong was the state where the misrepresentations were communicated to the plaintiffs, not the state where the intention to misrepresent was formed or where the misrepresented acts took place). Here, the last events necessary for liability as to the foreign class members—communication of the advertisements to the claimants and their reliance thereon in purchasing vehicles—took place in the various foreign states, not in California. These foreign states have a strong interest in the application of their laws to transactions between their citizens and corporations doing business within their state. Conversely, California's interest in applying its law to residents of foreign states is attenuated. *See Edgar v. MITE Corp.*, 457 U.S. 624, 644, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982) ("While protecting local investors is plainly a legitimate state objective, the State has no legitimate interest in protecting nonresident shareholders." (emphasis added)).

*Id.* The Court of Appeals therefore reversed the district court's certification of a national class,

8

concluding that, under California's choice of law rules, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.*

In *Frezza*, which SquareTrade contends is directly on point, the court relied on the choice-of-law analysis in *Mazza* to conclude on the pleadings that the plaintiffs in that case could not assert a UCL claim.  2013 WL 1736788, at *5.   There, the plaintiffs' claims were based on alleged misrepresentations in advertising promulgated by Google (based in California) that were relied upon by plaintiffs who were North Carolina citizens and were therefore injured in North Carolina.   *Id.*  at *5-7.  The court found that the laws of California and North Carolina were materially different and further concluded based on the federalism concerns recognized in *Mazza* that "North Carolina had an interest in being able to delineate the appropriate standard of liability and the scope of recovery based on its understanding of the balance between the interests of individuals and corporate entities operating within its territory." *Id.*  at * 7.  At the third step of the governmental interest analysis, the court concluded that "North Carolina's interests would be more impaired than California's if the other state's law were applied" because the place of the wrong, which typically predominates, was North Carolina. *Id.*  The court explained that "[a]s in *Mazza*, the last events necessary for liability—the communication of the advertisements to the plaintiffs and their reliance thereon in signing up for the trial period—took place in North Carolina, not in California." *Id.*  Therefore, the court concluded, North Carolina's consumer protection laws, and not California's, should apply to the plaintiffs' claims. *Id.*

A very similar analysis applies here.  Shuman does not dispute that there are material differences between the consumer protection laws of the states whose interests are implicated, namely, California, Maryland and Pennsylvania.  The only dispute relates to which state's interest would be most impaired if its law was not applied.  The parties agree that under *Mazza*, the place of the wrong determines which state has the predominant interest but disagree about which state is the place of the wrong.   The Court concludes it is Pennsylvania, where Shuman purchased the protection plan based on representations that if he purchased a SquareTrade protection plan on his suitcase, he would receive full reimbursement or replacement if the suitcase were subsequently

United States District Court
Northern District of California

1  damaged – a representation that later turned out to be false, he alleges.

2         As in *Mazza* and *Frezza*, courts applying California choice of law rules have repeatedly

3  held in cases involving misrepresentations that the place of the wrong is where the transaction in

4  which the misrepresentation occurred and not where the intention to misrepresent was formed.

5  *See Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1010 (N.D. Cal. 2014)  (holding that UCL claim

6  must be dismissed under *Mazza* where the plaintiff conceded he did not purchase the product in

7  California); *Littlehale v. Hain Celestial Grp., Inc.*, No. C 11-6342 PJH, 2012 WL 5458400, at *1

8  (N.D. Cal. July 2, 2012) ("Because plaintiff Littlehale's claims are based on transactions that

9  occurred in Pennsylvania, and because under *Mazza*, the 'place of wrong has the predominant

10  interest,' the court finds that Pennsylvania's fraud law should apply to her cause of action for

11  fraud."); *Horvath v. LG Elecs. Mobilecomm U.S.A., Inc.*, No. 3:11-CV-01576-H-RBB, 2012 WL

12  2861160, at *4 (S.D. Cal. Feb. 13, 2012) ("Because Plaintiff Horvath purchased his G2X phone in

13  California and because his causes of action arise out of this purchase, the place of the wrong is

14  California."); *Zinn v. Ex-Cell-O Corp.*, 148 Cal. App. 2d 56, 80 (1957) (holding that place of the

15  wrong was where the misrepresentations occurred, "[n]o matter where the intention to

16  misrepresent was formed, nor the acts which were misrepresented took place"). Here, the relevant

17  transaction occurred in Pennsylvania.

18         Shuman tries to avoid this result based on the statement in *Mazza* that "California

19  considers the 'place of the wrong' to be the state where the last event necessary to make the actor

20  liable occurred[,]" *see* 666 F.3d at 593, arguing that because the change in SquareTrade's

21  reimbursement policy occurred *after* he purchased SquareTrade's protection plan,  that policy

22  change (which occurred in California) was the "last event" for the purposes of determining which

23  state has the strongest interest in having its law applied.  Such a reading of *Mazza*, however,

24  would fly in the face of its reasoning, which emphasizes the strong interest each state has "in

25  applying its law to transactions within its borders."  *Id.*  at 593.  Regardless of whether

26  SquareTrade made a change in its policies with respect to paying on claims under its service plan,

27  the only transaction alleged here occurred in Pennsylvania, where Shuman alleges he purchased a

28  protection plan based on representations that later turned out to be untrue.

United States District Court
Northern District of California

1    Nor does the *Flat Panel* case cited by Shuman stand for a contrary result.  In that case, the

2    plaintiff, Circuit City, alleged that a supplier of LCD panels ("AUO") was engaging in price-

3    fixing with respect to products it was selling Circuit  City, where Circuit City was taking

4    possession of the panels at regional distribution centers – including in California – and selling

5    them  at their retail stores in California.  2013 WL 6327490, at *1.   AUO argued that Virginia law

6    should apply because Circuit City was based there and, *inter alia*, issued purchase orders from

7    there, but the court disagreed.  *Id.* at *2-6.  First finding that the laws of Virginia and California

8    were materially different with respect to indirect purchaser antitrust actions, *id.*at *3, the court

9    went on to compare the strength of the interest of Virginia and California's interests.  *Id.* at *4.

10   The court's conclusion that California's interest was greater was based, in large part, on

11   California's historical commitment to enforcement of the Cartwright Act, an issue that has little

12   relevance here.  *Id.*  It is significant, however, that in that case the court found that the relevant

13   transaction under the Cartwright Act was the sale of price-fixed goods, which occurred in

14   California.  *Id*. at 3.  In short, nothing in *Flat Panel* undermines the Court's conclusion here that

15   the relevant transaction occurred in Pennsylvania and therefore its interest predominates under

16   *Mazza*.

17           Accordingly, the Court finds that based on the facts alleged in the FAC, and particularly,

18   the fact that Shuman purchased the service contract from which his UCL Claim arises in

19   Pennsylvania, Shuman cannot assert a claim under California's UCL.  Therefore, the Court

20   dismisses Claim Five with prejudice.[3]

21           **C.    The Unjust Enrichment Claim**

22           SquareTrade asks the Court to dismiss Shuman's unjust enrichment claim based on the rule

23   that "[a]n action based on quasi-contract cannot lie where a valid express contract covering the

24   same subject matter exists between the parties." *See Gerlinger v. Amazon.Com, Inc*., 311

25

26   _____

27   [3] The Court notes that at oral argument, Shuman conceded that he could not allege any additional
     geographical facts that might change the Court's choice-of-law analysis on this issue. Therefore,
     the Court declines to grant leave to amend the complaint with respect to the UCL claim on the
     basis that amendment would be futile.  *See Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv.*

28   *Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

11

F.Supp.2d 838, 856 (N.D. Cal. 2004) (citing *Paracor Fin. v. Gen. Elec. Capital Corp*., 96 F.3d

1151, 1167 (9th Cir. 1996) (citing *Wal–Noon Corp. v. Hill*, 45 Cal.App.3d 605, 613(1975)).

"However, 'even though a plaintiff may not ultimately prevail under both unjust enrichment and

breach of contract, it may plead both in the alternative.'" *Weingand v. Harland Fin. Sols., Inc*.,

No. C-11-3109 EMC, 2012 WL 3763640, at *4 (N.D. Cal. Aug. 29, 2012) (citing *Clear Channel

Outdoor, Inc. v. Bently Holdings California LP*, C–11–2573 EMC, 2011 WL 6099394, at *9 (N.D.

Cal. Dec.7, 2011) (citing *Oracle Corp. v. SAP AG*, C 07–1658 PJH, 2008 WL 5234260, at *9

(N.D. Cal. Dec.15, 2008) ("A defendant is not entitled to have a cause of action dismissed for

failure to state a claim simply because it conflicts with another cause of action."); *Wolf v. Wells

Fargo Bank, N.A*., No. C11–1337 WHA, 2011 WL 4831208, at *8 (N.D.Cal.Oct.12, 2011)

("Restitution [under an unjust enrichment theory] may be awarded in lieu of breach of contract

damages when the parties had an express contract, but it was procured by fraud or is

unenforceable or ineffective for some reason.") (additional citations omitted))).  Because there are

disputes about the existence and scope of the express contract upon which Shuman's breach of

contract claim is based, the Court declines to dismiss Shuman's unjust enrichment claim at the

pleading stage of the case.

## IV.    CONCLUSION

For the reasons stated above, the Motion is GRANTED in part and DENIED in part.  The

Court dismisses Claims One, Two, Four and Five with prejudice.

**IT IS SO ORDERED.**

Dated: December 18, 2020

_____

JOSEPH C. SPERO
Chief Magistrate Judge