Eric H. Gibbs (SBN 178658)
David Stein (SBN 257465)
Amanda M. Karl (SBN 301088)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
amk@classlawgroup.com

William H. Anderson *(admitted pro hac vice)*
**HANDLEY FARAH & ANDERSON PLLC**
4730 Table Mesa Drive, Suite G-200
Boulder, CO 80305
Telephone: (303) 800-9109
Facsimile: (866) 912-8897
wanderson@hfajustice.com

Rebecca P. Chang *(admitted pro hac vice)*
**HANDLEY FARAH & ANDERSON PLLC**
81 Prospect Street
Brooklyn, NY 11201
Telephone: (347) 480-1030
Facsimile: (866) 912-8897
rchang@hfajustice.com

*Counsel for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SHUMAN, TOMMY GONZALES and KATHLEEN ABBOTT individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SQUARETRADE, INC.<br><br>Defendant. | Case No.  3:20-cv-02725-JCS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Michael Shuman, Tommy Gonzales and Kathleen Abbott bring this action against Defendant SquareTrade Inc. ("Defendant" or "SquareTrade"), by and through their attorneys, individually and on behalf of all others similarly situated, and allege as follows:

## INTRODUCTION

1.      SquareTrade sells service-contract "protection plans" for consumer goods. These protection plans effectively act as insurance. If a covered item breaks within a specified period, SquareTrade must repair, replace, or reimburse the cost of the covered item.

2.      SquareTrade consistently fails, however, to provide purchasers of the protection plans with a full set of terms and conditions that would apply to the plans. Later, when items are damaged or break and consumers make claims, if SquareTrade cannot (or will not) repair or replace the item, SquareTrade has systemically provided reimbursement in amounts below the product's purchase price (and below the price at which a comparable product could be purchased).

3.      SquareTrade's systemic decision to deny protection plan holders the full benefits owed has been immensely profitable for the company, to the detriment of consumers. In late 2016, SquareTrade was acquired by The Allstate Corporation for $1.4 billion. For the five years leading up to this acquisition, SquareTrade had reported five consistent years of losses. In 2015, SquareTrade reported $26.5 million in losses. By 2018—after the implementation of SquareTrade's new policies denying full purchase price reimbursement—SquareTrade's adjusted net income had turned around to $23 million, reflecting full-year improvement of $49.5 million.

4.      Because of SquareTrade's unlawful conduct, Plaintiff and the other members of the Classes have incurred damages, including in connection with buying the protection plans and then later not receiving reimbursement in the amounts owed. SquareTrade's conduct thus violates consumer protection law and common law duties. Plaintiffs, on behalf of themselves and other proposed Class members, seek remuneration as well as injunctive and declaratory relief.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an

1

aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.

6. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this District. Venue is also proper in this District because Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District, through the distribution, promotion, sale, and marketing of their products in this District.

## INTRADISTRICT ASSIGNMENT

7. Assignment to the Oakland Division or the San Francisco Division would be proper because SquareTrade is headquartered in San Francisco, California, and a substantial part of the events or omissions which give rise to the claims alleged herein occurred there.

## PARTIES

8. Plaintiff Michael Shuman is a resident of Silver Spring, Maryland.

9. Plaintiff Tommy ("Tom") Gonzales is a resident of Bakersfield, California.

10. Plaintiff Kathleen Abbott is a resident of Cicero, New York.

11. SquareTrade's principal place of business is located in San Francisco, California.

## FACTUAL ALLEGATIONS

### SquareTrade's Protection Plans

12. Defendant SquareTrade, Inc., is one the United States' largest providers of service contracts for consumer goods. Defendant claims to have sold some 25 million such contracts, marketed as "Protection Plans."

13. SquareTrade's protection plans cover consumer products ranging from electronics and appliances to office chairs and backpacks. For some flat price at the time of product sale, frequently $9.99 or $19.99, these service contracts entitle purchasers to reimbursement, repair, or replacement if the product is damaged or breaks.

14. SquareTrade protection plans are sold at many large retailers, including Staples, Walmart, Sam's Club, and Costco, in connection with their sale of consumer products. These plans are sold to consumers at the time consumers purchase products.

15. SquareTrade does not provide complete terms and conditions of their coverage when consumers purchase a SquareTrade protection plan. Rather, it conveys generally (including through instructions to the retailers who communicate with consumers) that purchasing a protection plan will entitle a consumer to repair, product replacement, or reimbursement of purchase price.

16. Federal and some states' laws require those who sell service contracts, like the SquareTrade protection plans, to clearly and conspicuously disclose the applicable terms and conditions. This requirement provides several benefits to consumers: it ensures that consumers receive complete information about terms and conditions before buying a protection plan; it ensures that consumers are able to compare coverage; it encourages competition among companies who cover consumer products; and it promotes proper performance by the companies selling service contracts.[1] Without a clear understanding of the applicable terms and conditions, consumers are less able to enforce the contracts when needed or to detect under-performance by the company that sold them the protection plan. At no time in connection with the initial sale of SquareTrade protection plans are purchasers told to visit SquareTrade's website to find applicable terms and conditions, nor do SquareTrade brochures state that any such terms exist (let alone that they can be found on SquareTrade's website).

17. Historically, in the event that a product covered by one of its protection plans failed during the applicable period, SquareTrade either repaired or replaced the product, or provided reimbursement in the amount of the full purchase price. Multiple former SquareTrade specialists, interviewed in connection with the preparation of this complaint, confirmed that protection plan holders historically would receive reimbursement for the full purchase price of a product if repairs or replacements were not provided.

---

[1] Federal Trade Commission, *Businesspersons' Guide to Federal Warranty Law*, https://www.ftc.gov/tips-advice/business-center/guidance/businesspersons-guide-federal-warranty-law (last accessed April 22, 2021).

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:20-cv-02725-JCS

18.     Although not provided to consumers at the point of sale, on its website, SquareTrade posts documents that it identifies as Terms and Conditions applicable to its protection plans. The documents generally have stated that once consumers pay for a protection plan, in the event of a covered product failure, SquareTrade will be obligated to repair, replace, or reimburse the cost of the product. With respect to reimbursements, the documents consistently have defined "coverage amount" as "the purchase price of the Covered Product."[2] The documents thus state that reimbursement will be for the replacement cost of the product, up to the purchase price.

19.     SquareTrade's plan descriptions also repeatedly indicate that protection plans include coverage up to the original purchase price of an item. For example, under the new plan FAQ "How much am I covered?" SquareTrade explicitly notes: "You are covered for up to the amount you paid for your item."[3]

20.     SquareTrade also promulgates brochures and other information to retailers that sell SquareTrade protection plans. Those documents likewise convey that the benefit provided by the plan is full protection—in the form of repair, replacement, or reimbursement of the cost of the product.

**SquareTrade Changes Its Policy and Decreases Reimbursement Payments**

21.     According to numerous former SquareTrade employees, SquareTrade has changed its internal policies so that it no longer reimburses protection plan holders their full purchase price, instead paying them substantially less. As a result, when SquareTrade receives a claim and opts not to repair or replace the covered product, SquareTrade's system generates a reimbursement amount less than what SquareTrade owes and less than what SquareTrade would have paid in the past.

---

[2] *See* SquareTrade "Terms and Conditions." Available at https://www.squaretrade.com/all-plans, Last accessed Nov. 21, 2019. ("Click a retailer below for the Terms & Conditions of SquareTrade Protection Plans sold online and in stores (as of April 10, 2018).")

[3] *See, e.g.*, "I Just Bought a New Plan…" SquareTrade. Last Modified Oct. 9, 2019, available at https://help.squaretrade.com/support/s/article/I-just-bought-a-new-plan-What-do-I-need-to-know-now; "What Does a SquareTrade Plan Cover?" SquareTrade. https://help.squaretrade.com/support/s/article/What-does-a-SquareTrade-plan-cover. ("Coverage lasts for the term of your plan or until the coverage amount of your plan (generally equal to item purchase price) is used up.") (last accessed April 22, 2021).

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:20-cv-02725-JCS

22.     These changes in policies did not coincide with any outward changes in SquareTrade's business practices—there is no disclosure on SquareTrade's website, at the point of sale when protection plans are purchased, or otherwise. Nor did SquareTrade notify current protection plan holders.

23.     According to a former employee, SquareTrade did not make any changes to the purported Terms and Conditions posted on SquareTrade's website to reflect the change in reimbursement policy. In early to mid-2018, a former SquareTrade Claims Specialist asked the Department Director of one of SquareTrade's customer service center why reimbursement procedures changed, but not the purported Terms and Conditions. In reply, the Director noted that changing the Terms and Conditions "required a lot of work by the legal department, and they may be out of date again by the time they were changed."

24.     When questioning why customers were being denied full reimbursement, one former SquareTrade employee was told to just "trust the system." SquareTrade's Learning and Development Team in San Francisco developed and implemented these new policies.

25.     SquareTrade often applies a fixed cap on reimbursement amounts. For example, SquareTrade may impose a $99.99 cap on reimbursement for a particular product, even though no such cap is mentioned in SquareTrade's brochure, on its website, or by purveyors of the protection plans, and even though SquareTrade previously would have reimbursed the full purchase price.

26.     Similarly, beginning around February 2018, SquareTrade changed its system to begin reimbursing an amount that it refers to internally as "current market value." Internally, this change was considered part of new "Asset Manage Rapid" and "Fast Cash" programs, with the latter no longer requiring customers to submit an affidavit of product failure as well as faster mailing of payments. The "Fast Cash" program, specifically, appears to systematically reimburse consumers only approximately 85% of the covered product's purchase price, regardless of the actual value of the product, when it was purchased, or its cost of replacement. But SquareTrade did not inform customers about the change or that they would be receiving less than what they were entitled to in reimbursement. Instead, SquareTrade developed internal algorithms that led to lower payments to consumers.

27.     Multiple former SquareTrade claims specialists described having no understanding of how the "current market value" was determined. One former SquareTrade Claims Specialist independently researched the prices of customers' covered products online, and noted that these did not match the value of the SquareTrade reimbursements to the customers. Another former SquareTrade Claims Specialist echoed that SquareTrade management directed associates to explain to customers that the reimbursement they received was the current value of the product, but understood that "it's really not. It's [SquareTrade] trying not to pay out the full price." If the SquareTrade processing system assigned Asset Manage Rapid to a claim, the reimbursement amount would similarly be switched from the original purchase price to the "current market value" determined by the system.

28.     Additionally, SquareTrade has repeatedly imposed liability ceilings lower than a product's purchase price, which are inconsistent with the plans sold. SquareTrade has claimed that this is what occurred with respect to Plaintiff Shuman's claim. Similarly, consumers have reported that SquareTrade has refused protection plan claims in favor of simply returning the plan purchase price, which constitutes another form of underpayment.

**SquareTrade Customer Complaints About Decreased Reimbursement Payments**

29.     Several former SquareTrade Claims Specialists noted a high volume of complaints from consumers after SquareTrade began systematically paying less than purchase price as reimbursement. One former employee described up to half of his daily customer calls in 2018 as being such complaints.

30.     Routinely, Claims Specialists noted that customers expected to be reimbursed the full purchase price of the product because both the employees at the retail store where they purchased the SquareTrade plan, and the SquareTrade brochure itself, communicated to the customer that "they were covered for everything."

31.     Even after the internal policy changes, SquareTrade recognized that customers were entitled to the full purchase amount, and at times still paid that amount particularly if a customer lodged multiple complaints. At that point, a supervisor override of the system was required to provide the correct reimbursement amount.

32.     On information and belief, on average, over one thousand complaints are made per day directly to SquareTrade regarding its failure to reimburse the full amount owed under protection plans.

33.     One former SquareTrade Claims Specialist, working in SquareTrade's call center, estimated that on any given day, over half of the customers funneled into "Fast Cash" called to complain about their partial reimbursement. As noted above by several former employees, Claims Specialists were directed to tell complaining customers—falsely—that the reimbursement already made was the available resolution. The vast majority of customers did not seek further escalation in light of these representations. By one former Claims Specialist's estimation, perhaps one customer a day would succeed in fighting for their full entitled reimbursement.

34.     One former SquareTrade Claims Specialist estimated that over half of the customers funneled into "Fast Cash" called back to complain about receiving less than full reimbursement. With 250 Claims Specialists working per day, based on the experience of this Claims Specialist, it is estimated that about 1,250 protection plan holders would have complained, per day, to SquareTrade that they had received only a partial reimbursement.

35.     SquareTrade's failure to reimburse Class members the full purchase price owed has also been described in hundreds of online consumer complaints. Consistent with the descriptions of former SquareTrade employees, SquareTrade frequently responds to public complaints regarding partial reimbursements, while continuing an internal policy of falsely representing to certain protection plan holders that their coverage was limited. Indeed, one former SquareTrade employee noted that SquareTrade maintained full time staff specifically for the purpose of responding to online complaints.

36.     Below are examples of consumer complaints:

| AVgeek<br><br>Original Review: April 24, 2019<br><br>Verified Purchase | I have been using square trade for a number of years for products that typically have failed past warranty but less than 3 or 4 years. I was upset today when Square Trade offered my a "fast cash" offer that was about 15% less than full price. I reviewed my contract and it listed three options |

of which one was to provide a cash settlement or a Gift Card reflecting the replacement cost of a new product of equal features and functionality up to the coverage amount, or; replace your [my] product with a product of the like kind, quality and functionality.

However, this replacement offer made today was for a used or refurbished product. I took exception to this and was told that the fast cash offer was computer generated and could not be overwritten.

I asked for escalation to a supervisor or manager. The agent returned and said that her team decided that as a long term and valued customer I would receive full value, however, the difference between fast cash and full value would be made by check and mailed to me.

Funny that right before calling them I received an email advising me of a class action lawsuit against square trade for customer deception. In the future I will closely review contracts to ensure that they offer full replacement value or I will take my business to Asurion.[4]

---

[4] https://www.amazon.com/gp/customer-reviews/RJKR0BNZTF5JC/ref=cm_cr_arp_d_viewpnt?ie=UTF8&ASIN=B003V5B76C#RJKR0BNZTF5JC

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:20-cv-02725-JCS

| Lesley | The claims process was very easy and the representative |
|---|---|
| Original Review: Jul 30, 2019 | was very nice, but I don't feel like it was fully explained to |
| Verified order | me that I would not be getting the entire amount that I paid |
| | for my television. My television failed after 14 months and |
| | we originally paid $369.99 for it plus another $33.73 for |
| | the warranty. I was told that we would be receiving a gift |
| | card in the amount of $317.00 towards the purchase of |
| | another television and warranty. It says that I can submit |
| | receipts that equal up to the purchase amount on the |
| | website and be reimbursed for the total amount, but I |
| | cannot afford to that. I now have to purchase a television |
| | that is smaller and not comparable to the model I had. I |
| | would purchase the warranty again in the future because |
| | without it, I would have nothing, but I am not super happy. |
| | I also got sent a check instead of a gift card. My experience |
| | was not terrible, but I am not happy about things overall |
| | because the lesser amount was not explained to me during |
| | the phone call properly. I was told I was getting enough to |
| | replace my television and purchase another warranty.[5] |
| **Phillip Tait** | Never again! |
| Original review: Jan 3, 2019 | My latest experience has resulted in my decision never |
| | to use SquareTrade again. I purchased a used |
| | camcorder from a reputable supplier on eBay I didn't |
| | get around to using it until after the eBay protection |
| | had expired, but I didn't worry about it because of the |
| | ST coverage I purchased. The camcorder stopped |

---

[5] https://www.trustpilot.com/review/www.squaretrade.com

9

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:20-cv-02725-JCS

| | working completely after using it for one tape. I submitted a claim to SquareTrade. They initially offered me a refund 15% less than the purchase price of the camcorder. No explanation was given why I could not be reimbursed the full purchase price. I selected the option of having it repaired or replaced. After a week of no further response, I called again, and was told I could either accept the partial refund, or wait even longer for them to come up with a repair or replacement option. I decided to cut my losses and accept the partial refund. In the past, I have added ST coverage to cellphones and tablets I purchased for my department where I work. Never again! [6] |
|---|---|
| **Ken Aste** <br><br> Original review: Jul 30, 2019 <br><br> Verified order | I could not replace the chair with the funds u returned the chair cost me $230.00 WITH TAX AND warranty fee. u offered $169.00 and only paid me $145.00.[7] |
| **Susan of Highlands Ranch, CO** <br><br> Original review: Dec. 6, 2018 | I don't understand why I wasn't refunded the exact amount of the cost of my item. I thought I should have been refunded the total originally paid, so I am very disappointed in this service. Not sure if I will purchase this again.[8] |
| **Shonda of Homestead, FL** <br><br> Original review: Jan. 8, 2019 | This entire ordeal has been extremely frustrating. What should've been a quick claim turned into weeks of |

[6] https://www.trustpilot.com/reviews/5c2ea5f59d37800b040cb9c0
[7] https://ie.trustpilot.com/reviews/5d406465f01869069cc58805
[8] https://www.consumeraffairs.com/electronics/squaretrade.html?page=42

10

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:20-cv-02725-JCS

| | |
|---|---|
| | aggravation and discouragement. For starters, I've been trying to complete this claim for over two months now. I've made multiple calls to SquareTrade attempting to receive a reimbursement for the covered item after making an online claim but I ended up getting the runaround. I was promised a callback twice to include a promise from the supervisor Jermaine and neither time did I get a callback! In the end, a representative offered to reimburse me a PARTIAL credit for the covered item although the original purchase price of the item should've been reimbursed in full. Now I won't even have enough to purchase a replacement! I am LIVID! I will NEVER ever use this company for coverage and I'll definitely, without hesitation, reach out to all major partnering companies to notify them of this horrible experience. [9] |
| **Kajsa of Tabernash, CO**<br>Original review: June 18, 2019 | We bought a new jackhammer and it didn't last even 3 months. We called numerous times and emailed, from April 5, 2019 and it is now June 18, 2019 and they haven't paid us the total amount due. They sent a check and shorted us some of the funds, have given us the runaround and now are saying they reissued a check. This company is a joke and I would highly recommend you not purchase insurance through them. Smoke and mirrors for follow through. Kj **, General Manager of Mountain Storage Management. [10] |

[9] https://www.consumeraffairs.com/electronics/squaretrade.html
[10] https://www.consumeraffairs.com/electronics/squaretrade.html

11

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:20-cv-02725-JCS

| Pam of San Antonio, TX<br><br>Original review: Jan. 29, 2019 | Bought an electronic with the additional warranty. When it quit working I sent in online claim. They decided, without further input other than the receipt, that they would send out a replacement check and told me not to send the item. WELL, they shorted me 14.09. SO I am out the 14.99 I paid on the warranty plus 14.09, so 29.08 total for an item that quit working about 2 months after I bought it! Contacted online chat, got 3 different generic answers. Tried call customer service and end up in an endless loop. The written contract I read through, says the coverage amount is the purchase price of the item. NO other terms about deductions. So they took out money, and can't explain it. Can't get anyone to talk to on the phone. Used to be good company, but I am afraid things have drastically changed now that they were bought out by Allstate. [11] |
|---|---|
| Tiffany of Earlsboro, OK<br><br>Original review: Jan. 31, 2019 | Bought a protection plan for a headset. Try to replace it. Went back and forth between SquareTrade and Walmart neither wanted to replace it. Then SquareTrade decided that they wanted to give me less for the amount of the product then they said that they would replace it with a used item. This product is no more than a month old. The lady on the other phone was rude. Nobody took care of this product. They are thiefs. They take money from people saying that they're going to replace items protect items and they do not do it. This company is a thief. Do not purchase warranties through them. [12] |

[11] https://www.consumeraffairs.com/electronics/squaretrade.html
[12] https://www.consumeraffairs.com/electronics/squaretrade.html

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:20-cv-02725-JCS

| | |
|---|---|
| **Rhea of Upland, CA**<br><br>Original review: Feb. 6, 2019 | They do not provide any customer service, I had to call them 3 months after I filed my claim. NO ONE CALLED OR EMAILED ME. I call and talked to "Samantha" who tells me that my claim was invalid! My warranty purchase isn't the right package for a printer that cost me $484.86. Yet I purchased a Printer Protection 4 yr. $200.00 and above item price. What a lying bunch of thieves this company is. She asked me if I willing to accept only $200 for a $485 printer. I said no! The Warranty states: "If they can't repair your item, we'll reimburse you its replacement cost up to the coverage amount." Then after arguing with Samantha that my warranty is for $200.00 and Above Item price. She said she would have to get approval for my replacement refund, because she called Staples to confirm that the Warranty, I purchased did cover the cost of my $484.86 printer. Then she said she would call me back. I did hear back from her, so I had to call back 2 more times the 2nd time I called asked for her extension number. Which I never did get. But I was referred to a Manager "Jessabelle" who assured me I wasn't being Ignored AND she would be sure to take care of my claim. RIGHT! She said she would call me back the next day. THAT DIDN'T HAPPEN!<br><br>7 days later she finally calls me back and said they would be sending me $200.00. I said NO that not my replacement purchase price. So, she said they never got the printer back, I told her she could have it. "Send me the FREE shipping |

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:20-cv-02725-JCS

| | |
|---|---|
| | label and I will be happy to send it to you." And she said they will be getting me replacement USED/RECONDITIONED PRINTER within 10 days, again Really! Today is Feb 6, 2019. We are now going on 4 months and nothing has been resolved. Nothing they say is true, the brochure makes you think you are getting a great deal for your money. You are throwing your $$$ away on this warranty. Shame on you Allstate for supporting a horrible company. [13] |
| **Thomas of Grants Pass, OR** <br> Original review: April 15, 2019 | I spoke with the agent and was told I would receive a full refund of $99.99 however I received a check for 85.88. Based on my conversation with SquareTrade I went to Staples and the manager sold me a new chair for 99.99. [14] |
| **Jackie of Elkhart, IN** <br> Original review: June 28, 2019 | I'm not a happy camper. I waited for about three weeks to get SquareTrade to honor their warranty. I had a coffee maker and it failed so Amazon sent me a new one. Amazon sent me a new one with no charge on it. Since I had problems with the first one, I bought the SquareTrade warranty for the second one. It started leaking and filing the claim was easy. I paid $39.99 for the coffee pot and I bought the warranty, but all they refunded me was $34. I asked if that was because of depreciation. I've never had SquareTrade do that. They really dropped the ball on that one. They kept saying that I didn't pay anything for the coffee maker and asked what the problem was. They would say that they'd call me back, but nobody ever |

[13] https://www.consumeraffairs.com/electronics/squaretrade.html
[14] https://www.consumeraffairs.com/electronics/squaretrade.html

14

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:20-cv-02725-JCS

| | |
|---|---|
| | returned a call. Then they'd ask me to fax them something and say that as soon as I send it in, to call back and ask for so and so and they will get things straightened out. Every time they told me to send them something, I sent it to them. Then, they would say no, they needed something else. It was just on and on. That was when I told them that I wasn't asking for the world. All I wanted them to do was honor their warranty that I paid for. At one point, they offered to send me the $6.37 that I paid for the warranty. It has been three weeks, and it got to be a little bit aggravating. [15] |
| **D. of Winterport, ME**<br>Original review: July 23, 2019 | I purchased a Vizio 55 inch TV in November of 2017 from Sam's Club along with a SquareTrade 2 year warranty. The screen on the TV has malfunctioned, the claims department stated this is common with the TV and they would issue me a refund. They failed to tell me the refund would not be the purchase price which my receipt shows was $428 + tax, instead they sent me a check for $299.99. [16] |
| **Richard Mahue**<br>Original review: May 21, 2019 | squaretrade=thieves<br>They refused to cover an item that no longer work due to its own being faulty for whatever reason it stopped working in less than a year and I have a two year warranty through this garbage Square trade bull crap. After speaking to them they refused to cover the item 100% and only sent a refund for a little over $120. |

---

[15] https://www.consumeraffairs.com/electronics/squaretrade.html
[16] https://www.consumeraffairs.com/electronics/squaretrade.html

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:20-cv-02725-JCS

| | |
|---|---|
| | Including the cost of the extremely crappy Square trade deal I paid $192 for the id they refused to cover an item that no longer worked due to its own being faulty for whatever reason it stopped working in less than a year and I have a two year warranty through this garbage square trade bull crap. After speaking to them they refused to cover the item 100% and only sent a refund for a little over $120. Including the cost of the extremely crappy square trade deal I paid $192 for the item Square trade is a thief in my book [17] |
| **Polly of Oceanside, CA**<br>**Verified Reviewer**<br>Original review: July 2, 2018 | SquareTrade and Staples are NOT truthful re: full refund warranty. My refund was PRORATED by nearly 20% for a 4 month old printer. ST confirmed that pro-rated reimbursement is their policy, even though no reference to said policy exists in the paperwork received. I call FOUL to both SquareTrade and Staples. [18] |

**Plaintiffs' Transactions**

### 1.    Michael Shuman

37.    On July 17, 2017, Plaintiff Shuman purchased a 17" Samsonite rolling luggage bag from a Staples in Philadelphia, Pennsylvania, for $129.99. At the same time, he paid $19.99 for a two-year

---

[17] https://www.trustpilot.com/users/5ce46d22a5274ee12925010d
 https://www.trustpilot.com/users/5ce46d22a5274ee12925010d
[18] https://www.consumeraffairs.com/electronics/squaretrade.html%3Fpage%3D45+&cd=5&hl=en&ct=clnk&gl=us

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:20-cv-02725-JCS

1    SquareTrade protection plan for the bag. Plaintiff's protection plan warranty number was

2    040727193227.

3        38.     At the time of his purchase, Plaintiff Shuman was told by the Staples clerk that for

4    $19.99 he would be entitled to a complete replacement if anything went wrong over the next two years,

5    or alternatively, that the full purchase price of the bag would be paid if Plaintiff received a

6    reimbursement.

7        39.     In addition to a paper receipt, Plaintiff Shuman received a short brochure (depicted

8    below) after buying the protection plan. He did not receive any terms and conditions that may have

9    applied to his purchase plan either at the point of sale or afterward, beyond the language in the

10   brochure. As the brochure reflects, consumers like Plaintiff Shuman who bought a protection plan were



FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:20-cv-02725-JCS

told doing so would "protect" the item purchased.

40.     The brochure contains no other information about the amount to be reimbursed in the event of a subsequent claim and does not state that the reimbursement amount would be less than the price paid for the product—instead touting the lack of any deductibles or hidden fees.

41.     In early February 2019, within the applicable service contract period, the handle of the Samsonite luggage broke. Plaintiff visited the SquareTrade website to look into submitting a claim, and SquareTrade sent Plaintiff an email on February 21, 2019 (attached as **Exhibit 1**). The email confirmed Plaintiff Shuman's coverage term ran from July 18, 2017 through July 18, 2019. The coverage type was listed as "accidental damage from handling." In the same email, SquareTrade included language entitled "PROTECTION PLAN TERMS & CONDITIONS," under which was written "Congratulations on purchasing this Protection Plan." Although Plaintiff had bought the protection plan well over a year earlier, SquareTrade had never previously sent him any terms or conditions that ostensibly applied to the plan he purchased. The email lists the "Coverage Amount" as "up to the maximum coverage price of this Protection Plan, or the purchase price of your item, whichever is lower." Later in the same email, "Coverage Amount" is defined as "The purchase price of the Covered Product." Later still, the email states that SquareTrade will either repair or replace the product or reimburse "the replacement cost of a new product of equal features and functionality up to the Coverage Amount."

42.     On February 23, 2019, Plaintiff Shuman filed a claim under his SquareTrade protection plan. SquareTrade confirmed receipt by email on the same day, and assigned the claim #034486911130.

43.     Because Plaintiff's bag broke well within the two-year coverage period, and the accidental damage sustained ("broken straps & handles") was among the types of coverage explicitly covered by the Plan, Plaintiff Shuman was entitled to receive either a repair, replacement, or reimbursement of the purchase price of the bag ($129.99).

44.     On February 25, 2019, SquareTrade emailed Plaintiff and said that SquareTrade had reviewed the claim and "determined that the best solution is to reimburse you directly for the replacement of your item since it's not feasible to send your item in for repair." Plaintiff was directed to

electronically sign an affidavit that the information he had shared on the bag's condition and damage were true to the best of his knowledge. Plaintiff Shuman completed and submitted the Affidavit, and SquareTrade confirmed receipt by email on February 25, 2019. Nothing in this Affidavit indicated that Plaintiff's reimbursement would be less than his purchase price.

45.     That same day, SquareTrade notified Plaintiff by email that it had approved his claim. SquareTrade noted, however, that they "could not find an exact replacement or model[19] that was comparable to your current item." SquareTrade promised, consistent with Plaintiff's original understanding of his Purchase Plan, that "[t]herefore, we'll be sending you a check for the purchase cost of the item instead…" On February 26, 2019, Plaintiff Shuman received notice that his payment was processed.

46.     On or about March 1, 2019, however, when Plaintiff received his SquareTrade protection plan payment, it was not for the purchase cost of the item as promised. Instead, it was just 76% of the cost—$99.99, instead of $129.99.

47.     In subsequent calls with at least three different SquareTrade Claims Specialists, Plaintiff objected to this reimbursement, noting it was $30 short of his full purchase price. Plaintiff was told repeatedly that his protection plan only covered $99.99.

48.     On March 3, 2019, Plaintiff returned to a Staples store in Bethesda, Maryland, and purchased an identical 17" Samsonite roller bag himself, at the same price as he had originally purchased it in 2017 ($129.99). Plaintiff was again offered a SquareTrade protection plan for the bag at $19.99. At this time, Plaintiff asked whether, if the bag broke, he would receive reimbursement of the purchase price or some lesser amount. Plaintiff was assured he would be entitled to receive full reimbursement of the purchase price, and he purchased a second SquareTrade protection plan for this new bag.

49.     Immediately following his purchase, Plaintiff Shuman wrote the SquareTrade Appeals Division regarding his denied claim. In a letter, Plaintiff Shuman described his purchase, the original representations about the protection plan's coverage, SquareTrade's initial representation that no

---

[19] As noted in paragraph 48, *infra*, this assertion was false.

replacement was available, and SquareTrade's insistence his plan only covered $99.99, rather than the full purchase price. Plaintiff Shuman requested in this letter that SquareTrade reimburse him for the additional $30 covered under his original protection plan. Plaintiff Shuman also noted that absent resolution, he intended to take legal action.

50.     Plaintiff Shuman's March 2019 letter was ignored for nearly a year. In February 2020—weeks after his demand letter was received by SquareTrade and he was represented by counsel—Plaintiff was improperly contacted by Squaretrade. Nevertheless, Plaintiff has never received full reimbursement for his bag's purchase price under the protection plan.

### 2.     Tommy Gonzales

51.      On August 16, 2020, Plaintiff Tommy Gonzales purchased a belt sander online for $38, and a SquareTrade Protection Plan for the sander for $4.99. Plaintiff Gonzales purchased the belt sander and SquareTrade Protection Plan on eBay, from his home in Bakersfield, California.

52.     To purchase the SquareTrade Protection Plan for the sander, Plaintiff Gonzales clicked a box on the product webpage for the sander to add a "1-year protection plan from SquareTrade - $4.99" to his purchase. Plaintiff Gonzales then proceeded to the "Buy It Now" page.

53.     The webpage depicting Plaintiff Gonzales' shopping cart, before he finalized the transaction, included the belt sander and the Protection Plan, which was named "1-year SquareTrade Warranty (Home Improvement, $30-39.99)." On that webpage, Plaintiff Gonzales clicked on the product link for the SquareTrade Protection Plan. The link took Plaintiff Gonzales to a page describing the Protection Plan, promising his sander would be "covered," subject to "protection from common malfunctions," and that the coverage would include "100% parts and labor" and "no deductibles."

54.     Consistent with the content on the eBay website described above, Plaintiff Gonzales reasonably believed that his SquareTrade Protection Plan would cover the full purchase price of the sander if the device malfunctioned within the year and could not be repaired or replaced.

55.     In late November 2020, Plaintiff Gonzales' sander overheated and ceased functioning.

56.     At this time, Plaintiff Gonzales visited SquareTrade's website for the first time to try to file a claim online. Plaintiff Gonzales was unable to successfully file a claim online, and called

SquareTrade customer service for help. A SquareTrade customer service representative told Plaintiff Gonzales to search his email for information to file his claim. Plaintiff Gonzales did not recall previously receiving any emails regarding his SquareTrade Protection Plan. When he searched his email at the advice of the customer service representative, he still could not find any emails regarding the Protection Plan.

57.     Plaintiff Gonzales called SquareTrade's customer service line again, noting he could not find any relevant information regarding his Protection Plan but still wanted to file a claim. At this time, a SquareTrade customer service representative told Plaintiff Gonzales that SquareTrade would process the claim based on the information he had conveyed by phone.

58.     Plaintiff Gonzales called SquareTrade customer service a third time approximately one week later, asking for an update regarding his claim status because he had received no further updates. On this call, Plaintiff Gonzales was told that his claim had been processed and approved, but that his resolution would be "pro-rated" to only $32.64 – 85.8% of the product's original purchase price ($38) – to account for depreciation. Plaintiff Gonzales was told this was pursuant to a Fast Cash program. Plaintiff Gonzales responded that he thought the SquareTrade Protection Plan promised "100% protection" of his purchase price. The customer service representative responded to Plaintiff Gonzales that the Protection Plan did not work like that, and that this was the only option available to Plaintiff Gonzales.

59.     At no time was Plaintiff Gonzales offered an opportunity for repair, replacement, or alternative reimbursement options as a resolution to his claim, nor was he informed that should the amount provided be insufficient to secure a replacement that SquareTrade would provide a supplemental payment.

60.     Plaintiff Gonzales was dissatisfied with this resolution and did not believe it was consistent with what he had been promised under the Protection Plan. Plaintiff Gonzales also did not understand or receive an explanation for the amount of the sander's depreciation when his sander had broken only months after purchase. However, given the customer service representative's firm response

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:20-cv-02725-JCS

that this reduced reimbursement was his only option under the Protection Plan, Plaintiff Gonzales felt compelled to accept it.

61.     In mid to late January 2021, Plaintiff Gonzales received a reimbursement check from SquareTrade. The check was dated January 8, 2021, and contained reimbursement for only a portion of the sander's purchase price: $32.64.

62.     Plaintiff Gonzales felt misled and is not currently inclined to purchase additional SquareTrade protection plans, but he continues to purchase consumer products that could be covered by a SquareTrade protection plan, and would purchase additional SquareTrade protection plans in the future in the event that SquareTrade's reimbursement practices were to be reformed to eliminate the unlawful practices discussed in this complaint.

### 3.     Kathleen Abbott

63.     On October 20, 2018, Plaintiff Kathleen Abbott purchased a Microsoft X-Box game console controller for $49.88, and her first Turtle Beach X-Box surround sound gaming headset for $87.00. Plaintiff Abbott made both purchases at a Walmart store in Cicero, NY.

64.     As Plaintiff Abbott checked out, the Walmart clerk asked if she wanted to buy a SquareTrade Protection Plan for her purchases. Plaintiff Abbott had seen SquareTrade brochures on the Walmart electronics department counter which promised, on their cover, terms such as "protection" of products. During her checkout, the Walmart clerk also described the SquareTrade Protection Plan as a "warranty" for Plaintiff Abbott's products.

65.     Plaintiff Abbott agreed and purchased a 2-year protection plan for the X-Box controller for the price of $4, and a 2-year protection plan for the headset for the price of $8.

66.     Consistent with the conversation and brochure descriptions described above, Plaintiff Abbott reasonably believed that her SquareTrade Protection Plan would cover the full purchase price of the controller and headset if either device malfunctioned within the following two years and could not be repaired or replaced.

67.     Plaintiff Abbott's first Turtle Beach headset began malfunctioning in March 2019. On March 8, 2019, Plaintiff Abbott filed a claim for coverage for the product by visiting the Walmart

website and logging into her Walmart account, clicking the product, and clicking a "File a Claim" button next to the product. Plaintiff Abbott was then redirected to a login page at SquareTrade's website. She then clicked on a button that directed her to "manage" her claim. Defendant's website prompted Plaintiff Abbott to describe the problem with the product and the approximate start date of the problem she experienced. Plaintiff Abbott does not recall seeing any other windows, or any options regarding possible claim resolution.

68.     Plaintiff Abbott's claim was approved the same day, and SquareTrade notified her that a check would be sent including her reimbursement. Approximately a week later, Plaintiff Abbott received a check from SquareTrade for $87, the full purchase price of the Turtle Beach headset. This resolution was consistent with Plaintiff Abbott's understanding of what she had been promised under the Protection Plan.

69.     On March 10, 2019, Plaintiff Abbott purchased a second Turtle Beach headset from Walmart to replace the previously broken headset for $87. Plaintiff Abbott was again offered a SquareTrade Protection Plan by the Walmart clerk at checkout, who again described the plan as a "warranty." Plaintiff Abbott also saw similar SquareTrade brochures describing the plan as offering "protection" for products. Plaintiff Abbott bought a two-year SquareTrade Protection Plan for $8.

70.     Plaintiff Abbott's XBox controller and second Turtle Beach headset began malfunctioning on or around April 4, 2020, and within a few days, both broke.

71.     On April 28, 2020, Plaintiff Abbott submitted claims for coverage for both the controller and second Turtle Beach headset under the SquareTrade Protection Plans. Plaintiff Abbott again filed her claim by visiting the Walmart website and logging into her Walmart account. In her Walmart account, a dropdown window under a "Services" tab listed her active SquareTrade Protection Plans. In this window on the Walmart website, Plaintiff Abbott was able to click a button titled "File a Claim" next to the broken products with affiliated SquareTrade Protection Plans—the controller and second Turtle Beach headset. After confirming her plan was purchased after August 1, 2018, Plaintiff Abbott was then directly taken to a login page at SquareTrade.

72.     Plaintiff Abbott logged into the SquareTrade website from this window. She then clicked on a button that directed her to "manage" her claim. Defendant's website prompted Plaintiff Abbott to describe the problem with the product and the approximate start date of the problem she experienced. Plaintiff Abbott does not recall seeing any other windows, or any options regarding possible claim resolution.

73.     Plaintiff Abbott received an email that her claims were approved for Fast Cash that same day, and shortly thereafter, she received an email confirmation that she would get an e-gift card to Walmart as her reimbursement under the Protection Plan.

74.     Upon receiving them, however, Plaintiff Abbott saw that the e-gift card reimbursements provided by SquareTrade were less than what she was owed, only a portion of the purchase price for the covered items. Plaintiff Abbott received a gift card of only $74.72 for the gaming headset (or 85.8% of the purchase price, $87.00), and a gift card of only $42.84 for the controller (or 85.8% of the purchase price, $49.88).

75.     Plaintiff Abbott was surprised and displeased at this lower reimbursement, which was not consistent with what she understood had been promised under the Protection Plan.

76.     On January 5, 2020, Plaintiff Abbott purchased a different, lower-priced gaming headset made by Logitech for $74 at the Walmart store in Cicero, New York. At check-out, she purchased a two-year SquareTrade Protection Plan for the price of $7. As with prior purchases, the Walmart clerk described the plan as a "warranty," and the front of SquareTrade's brochures described the plan as "protection" for products. Plaintiff Abbott believed these representations still suggested she should receive either full purchase price reimbursement, replacement or repair under the Protection Plan.

77.     On March 7, 2021, the Logitech gaming headset broke.

78.     On March 10, 2021, Plaintiff Abbott filed a claim under her Protection Plan with SquareTrade, in the same manner described above: she first logged into her Walmart account, which redirected her to a SquareTrade login to "manage" her claim. After inputting the date and nature of the malfunction—but receiving no other options for repair, replacement, or other resolution—Plaintiff Abbott received notice her claim was approved the same day.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:20-cv-02725-JCS

79.     Plaintiff Abbott received an e-gift card from SquareTrade as her reimbursement under the Protection Plan. Plaintiff Abbott was again disappointed to see the reimbursement was only for $63.56, or only 85.8% of the original purchase price of the headset ($74). Plaintiff Abbott at this point realized that SquareTrade's practice was to provide only partial reimbursement despite representing full protection when offering Protection Plans.

80.     As a result of her discovery that SquareTrade underpays claims, Plaintiff Abbott has reduced her rate of purchasing of SquareTrade protection plans. She currently owns two products covered by SquareTrade protection plans, however, and would thus benefit from an injunction prohibiting SquareTrade from persisting with the unlawful practices described in this complaint. In addition, Plaintiff Abbott would purchase additional SquareTrade protection plans in the future in the event that SquareTrade's reimbursement practices were to be reformed to eliminate its unlawful practices.

## CLASS ACTION ALLEGATIONS

81.     Plaintiffs bring this action pursuant to the provisions of Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and the following proposed classes:

Contract Class

All purchasers of a SquareTrade protection plan in the United States who made a claim with SquareTrade and were paid less than product purchase price.

California Class

All individuals who purchased a SquareTrade protection plan in California.

New York Class

All individuals who purchased a SquareTrade protection plan in New York.

Pennsylvania Class

All individuals who purchased a SquareTrade protection plan in Pennsylvania.

82.     Excluded from the Classes are SquareTrade, its employees, co-conspirators, officers, directors, legal representatives, heirs, successors, wholly- or partly-owned, and its subsidiaries and

affiliates; proposed Class counsel and their employees; the judicial officers and associated court staff assigned to this case and their immediate family members; all persons who make a timely election to be excluded from the Classes; governmental entities; and the judge to whom this case is assigned and his/her immediate family.

83.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

84.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

85.     <u>Numerosity</u>. Federal Rule of Civil Procedure 23(a)(1): The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Millions of SquareTrade protection plans have been sold in the United States. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

86.     <u>Commonality and Predominance</u>. Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a.    Whether SquareTrade markets its protection plans in a manner that conveys that SquareTrade will reimburse covered products' full purchase price (or their cost of replacement, if determined to be lower) upon receipt of a valid protection plan claim to the extent SquareTrade opts not to repair or replace the item;

    b.    Whether SquareTrade is contractually obligated to reimburse full purchase price (or cost of replacement) upon receipt of a valid protection plan claim to the extent SquareTrade opts not to repair or replace the item;

    c.    Whether SquareTrade has adopted a practice of reimbursing less than covered products' full purchase price upon receipt of a valid protection claim;

    d.    Whether the manner in which SquareTrade markets its protection plans is misleading, deceptive, or otherwise unlawful or unfair;

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:20-cv-02725-JCS

e.  Whether SquareTrade has engaged in unlawful, unfair, and deceptive business practices;

f.  Whether SquareTrade has breached contractual obligations owed to Plaintiffs and Class members;

g.  Whether SquareTrade has been unjustly enriched;

h.  Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

i.  Whether Plaintiffs and the other Class members are entitled to declaratory relief, including, but not limited to, a declaration of their rights under their SquareTrade protection plans.

87.  _Typicality._ Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the claims of the proposed Classes. Plaintiffs and the members of the proposed Classes all purchased a SquareTrade protection plan, giving rise to substantially the same legal rights and claims.

88.  _Adequacy._ Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

89.  _Declaratory and Injunctive Relief._ Federal Rule of Civil Procedure 23(b)(2): SquareTrade has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief with respect to the Classes as a whole.

90.  _Superiority._ Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against SquareTrade, so it would be impracticable for the members of the Classes to individually seek redress for SquareTrade's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory

judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
## BREACH OF CONTRACT
**(Plaintiffs Shuman, Gonzales, and Abbott on behalf of the proposed Contract Class)**

91.     Plaintiffs Shuman, Gonzales, and Abbott incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

92.     SquareTrade, on the one hand, and Plaintiffs and Class members, on the other, formed contracts (irrespective of whether the formation, contracts, and/or terms are deemed express and/or implied), through which SquareTrade offered Plaintiffs and Class members product protection that provided reimbursement of purchase price (or reimbursement of the cost of replacing the product), repair, or replacement, if the protected product were damaged during the applicable period, and Plaintiffs and Class members accepted SquareTrade's offer. SquareTrade conveyed its offer impliedly and/or expressly, including through its brochures, instructions to retailers (who then communicated to consumers), and its course of conduct, including its historical practice of, and online statements about, replacing, repairing, or providing full reimbursement of purchase price (or cost of replacement) upon receiving valid claims.

93.     SquareTrade, Plaintiffs, and Class members were all capable of contracting.

94.     Plaintiffs and Class members upheld their obligations under the contract, in that they paid one-time flat fees to purchase SquareTrade protection plans. They also followed SquareTrade's claims processes for reimbursement under those plans.

95.     In breach of its contractual obligations, SquareTrade did not fully reimburse Plaintiffs and Class members as promised under the contract, nor did SquareTrade repair or replace the covered products.

96.     Because SquareTrade only partially reimbursed Plaintiffs and Class members after contracting for purchase price reimbursement, Plaintiffs and Class members were harmed.

97.     SquareTrade's breaches of contract as to Plaintiffs and Class members was a substantial factor in causing their harm.

98.     Plaintiffs and Class members are entitled to damages in an amount to be proven at trial.

**COUNT II**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW,**
**Cal. Bus. & Profs. Code § 17200, *et seq.***
**(Plaintiff Gonzales on behalf of the proposed California Class)**

99.     Plaintiff Gonzales incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

100.     SquareTrade has violated and continues to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits unlawful, unfair, and fraudulent business acts and practices.

101.     SquareTrade's acts and practices, as alleged in this complaint, constitute unfair and fraudulent business acts and practices, in violation of the Unfair Competition Law. In particular, SquareTrade adopted a practice through which it systematically underpays reimbursement amounts owed to those who purchased SquareTrade protection plans.

102.     SquareTrade's conduct constitutes unfair business practices for at least the following reasons:

    A.  The gravity of harm to Plaintiff and Class members from SquareTrade's acts and practices far outweighs any legitimate utility of that conduct;

    B.  SquareTrade's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and Class members; and

    C.  SquareTrade's conduct undermines or violates the stated policies underlying the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and the Song-Berly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*, which seek to protect consumers against deceptive, unfair, and sharp business practices, including in connection with the sale of service contracts in the marketplace.

103.    SquareTrade's conduct also constitutes fraudulent business practices in that SquareTrade markets its protection plans deceptively in a manner that conveys that SquareTrade will reimburse the full purchase price (or cost of replacement) upon receipt of a valid protection plan claim to the extent SquareTrade opts not to repair or replace the item, while at the same time SquareTrade secretly adopted a policy of systematically underpaying reimbursements amounts owed contrary to its assurances.

104.    As a direct and proximate result of SquareTrade's business practices, Plaintiff and Class members suffered injury in fact and lost money or property, because they bought SquareTrade protection plans they would not otherwise have purchased and because SquareTrade reimbursed them less than the amounts owed to them under those protection plans.

105.    Plaintiff and Class members are entitled to restitution and equitable relief, including an order directing SquareTrade to provide full reimbursement of the purchase price (or cost of replacement) in those instances where SquareTrade does not repair or replace the covered item. Plaintiff, for purposes of this claim, alleges in the alternative that Plaintiff lacks an adequate remedy at law.

## COUNT III
### VIOLATION OF NEW YORK GENERAL BUSINESS LAW
### N.Y. Gen. Bus. Law § 349
### (Plaintiff Abbott on behalf of the proposed New York Class)

106.    Plaintiff Abbott incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

107.    N.Y. Gen. Bus. Law § 349(a) prohibits deceptive acts or practices in the conduct of any business, trade, or commence or in the furnishing of any service in the state of New York.

108.    Plaintiff and Class members are persons under N.Y. Gen. Bus. Law § 349(h).

109.    SquareTrade, as one of the largest providers of service contracts or "protection plans" for consumer goods, conducted business, trade or commerce, or furnished services in New York.

110.    In the conduct of its business, trade, and commerce, and in furnishing services in New York, SquareTrade's actions were directed at consumers and consumer-oriented.

111.    In the conduct of its business, trade, and commerce, and in furnishing services in New York, SquareTrade engaged in deceptive and unfair trade acts or practices, in violation of N.Y. Gen. Bus. Law §349(a), including but not limited to the following: SquareTrade markets its protection plans in a manner that conveys that SquareTrade will reimburse the full purchase price (or cost of replacement) upon receipt of a valid protection plan claim to the extent SquareTrade opts not to repair or replace the item, while at the same time SquareTrade secretly adopted a policy of systematically underpaying reimbursements amounts owed contrary to its assurances.

112.    SquareTrade engaged in these deceptive and unfair acts and practices to the detriment of Plaintiff and Class members, and in willful disregard of their rights.

113.    By engaging in such acts and practices SquareTrade knowingly and willfully violated N.Y. Gen. Bus. Law §349.

114.    SquareTrade knowingly and willfully violated the law, including N.Y. Gen. Bus. Law §349.

115.    The amount to be reimbursed under SquareTrade's protection plans, and any reduction of that amount, is material to Plaintiff and Class members.

116.    SquareTrade's deceptive acts and practices regarding the terms and conditions of its protection plans were objectively unreasonable and likely to mislead reasonable consumers acting reasonably under the circumstances.

117.    SquareTrade's deceptive and unfair acts and practices present a continuing risk to Plaintiff and Class members as well as to the general public. SquareTrade's deceptive and unfair acts and practices alleged herein affect the public interest and consumers at large.

118.    Plaintiff and Class members have been injured by reason of SquareTrade's deceptive acts and unfair practices and suffered damage or loss in connection with purchasing protection plans they would not otherwise have purchased because SquareTrade reimbursed them less than the amounts owed to them under the protection plans.

119.     Plaintiff and Class members seek relief under N.Y. Gen. Bus. Law §349(h) including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and attorney's fees and costs. Plaintiff lacks an adequate remedy at law for the risk of future harm.

**COUNT IV**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW**
**N.Y. Gen. Bus. Law § 350**
**(Plaintiff Abbott on behalf of the proposed New York Class)**

120.     Plaintiff Abbott incorporates by reference each preceding and succeeding paragraph as though set forth at length herein.

121.     N.Y. Gen. Bus. Law § 350 prohibits false and deceptive advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in the state of New York.

122.     N.Y. Gen. Bus. Law § 350-a defines false advertising as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

123.     Plaintiff and Class members are persons under N.Y. Gen. Bus. Law § 350(e)(3).

124.     SquareTrade caused to be made or disseminated in New York, through advertising, marketing, and other publications, statements about its protection plans that were false and misleading, and that were known by SquareTrade, or that through the exercise of reasonable care should have been known, to be false and misleading to Plaintiff and Class members.

125.     SquareTrade made material misrepresentations or omissions concerning the terms and conditions of its protection plans. For example, SquareTrade represented that consumers would be entitled to receive reimbursement in the amount of the purchase price of the covered product when SquareTrade operates under policies that systematically underpay reimbursement amounts owed under its protection plans.

126.     The amount to be reimbursed under SquareTrade's protection plans, and any reduction of that amount, is material to Plaintiff and Class members.

127.     SquareTrade knowingly and intentionally mispresented material facts regarding its protection plans and its adoption of policies to systematically underpay reimbursement amounts with the intent to mislead Plaintiff and Class members.

128.     SquareTrade's false and deceptive advertising regarding its protection plans was objectively unreasonable and likely to mislead reasonable consumers acting reasonably under the circumstances.

129.     SquareTrade's false and deceptive advertising presents a continuing risk to Plaintiff and Class members. SquareTrade's false and deceptive advertising affects the public interest and consumers at large.

130.     Plaintiff and Class members have been injured by reason of SquareTrade's false and misleading advertising and suffered damage or loss because they purchased protection plans they would not otherwise have purchased and because SquareTrade reimbursed them less than the amounts owed to them under the protection plans.

131.     Plaintiff and Class members seek relief under N.Y. Gen. Bus. Law § 350(e)(3) including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs. Plaintiff lacks an adequate remedy at law for the risk of future harm.

**COUNT V**
**UNJUST ENRICHMENT**
**(KNOWN IN CALIFORNIA AS A QUASI-CONTRACTUAL CLAIM FOR RESTITUTION)**
**(Plaintiff Shuman on behalf of the proposed Pennsylvania Class, Plaintiff Gonzales on behalf of the proposed California Class, and Plaintiff Abbott on behalf of the proposed New York Class)**

132.     Plaintiffs Shuman, Gonzales, and Abbott incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein. This count is pled in the alternative to the contract-based claims.

133.     Plaintiffs and Class members conferred a benefit upon SquareTrade by purchasing protection plans. Although the protection plans are sold by third-party retailers, SquareTrade profits from the sale of each such plan. Plaintiffs and members of the Classes are entitled to payment by SquareTrade of full reimbursement of the purchase price (or replacement cost) of the goods covered by SquareTrade protection plans, in those instances where SquareTrade does not repair or replace the covered item, yet SquareTrade paid Plaintiffs and other Class members less than the amount owed, retaining the excess funds for itself, keeping the excess funds as an unfair benefit for itself.

134.    SquareTrade had knowledge that these benefits were conferred upon it.

135.    SquareTrade, having received these benefits, is required to provide remuneration under the circumstances. It is unjust for SquareTrade to retain such monies obtained by the illegal conduct described above. Such money or property belongs in good conscience to Plaintiffs and Class members and can be traced to funds or property in SquareTrade's possession. Plaintiffs' and Class members' detriment and SquareTrade's enrichment are related to and flow from the conduct challenged in this Complaint.

136.    Plaintiffs and Class members are entitled to remuneration, as it would be inequitable and unjust for SquareTrade to retain such benefits, and other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Classes, respectfully request that the Court enter judgment against SquareTrade and in favor of Plaintiffs and the Classes, and award the following relief:

A.      Certification of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiffs' counsel as counsel for the Classes;

B.      An order awarding declaratory relief and temporarily and permanently enjoining SquareTrade from continuing the unlawful and unfair business practices alleged in this Complaint;

C.      An order awarding damages, civil penalties, and/or restitution to Plaintiffs and the Classes;

D.      An order requiring SquareTrade to pay both pre- and post-judgment interest on any amounts awarded;

E.      An award of costs, expenses, and attorneys' fees as permitted by law; and

F.      Such other or further relief as the Court may deem appropriate, just, and equitable.

1

## DEMAND FOR JURY TRIAL

2

Plaintiffs hereby demand a jury trial for all claims so triable.

3

4

Dated: April 22, 2021                                    */s/Amanda M. Karl*

5

Eric H. Gibbs (SBN 178658)
David Stein (SBN 257465)

6

**GIBBS LAW GROUP LLP**

7

505 14th Street, Suite 1110
Oakland, California 94612

8

Telephone: (510) 350-9700
Facsimile: (510) 350-9701

9

ehg@classlawgroup.com
ds@classlawgroup.com

10

amk@classlawgroup.com

11

12

William H. Anderson *(admitted pro hac vice)*

13

**HANDLEY FARAH & ANDERSON PLLC**
4730 Table Mesa Drive, Suite G-200

14

Boulder, CO 80305
Telephone: (303) 800-9109

15

Facsimile: (844) 300-1952
wanderson@hfajustice.com

16

17

Rebecca P. Chang *(admitted pro hac vice)*

18

**HANDLEY FARAH & ANDERSON PLLC**
81 Prospect Street

19

Brooklyn, NY 11201
Telephone: (347) 480-1030

20

Facsimile: (844) 300-1952
rchang@hfajustice.com

21

22

*Counsel for Plaintiffs and the Proposed Classes*

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:20-cv-02725-JCS

# EXHIBIT 1

| | |
|---|---|
| **From:** | SquareTrade Protection Plans <purchaseconfirmation@squaretrade.com> |
| **Sent:** | Thursday, February 21, 2019 6:07 PM |
| **To:** | shuman@igc.org |
| **Subject:** | Thank You for Your SquareTrade Protection Plan Purchase |

Don't miss out on important emails. Add purchaseconfirmation@squaretrade.com to your address book.



Need help?

## Dear Michael,

Thank you for purchasing your new **Backpack** protection plan. You're all set! If you'd like to manage your SquareTrade account online, just click the link below.

**Log In**

## Your Protection Plan

| | | | |
|---|---|---|---|
| Plan Number: | **040727193227** | Coverage Term: | **2 Years** |
| Coverage Amount: | **Up to the maximum coverage price of this Protection Plan, or the purchase price of your item, whichever is lower** | Coverage Starts*: | **07/18/2017** |
| Protection Plan Price: | **$19.99** | Coverage Ends: | **07/18/2019** |
| Coverage Type: | **Accidental Damage from Handling (ADH)** | Waiting Period: | **1 Day** |
| Covered Product: | **Backpack** | Quantity: | **1** |
| Deductible: | **None** | | |

*During manufacturer warranty period, mechanical and electrical failures are covered by manufacturer rather than SquareTrade.

# PROTECTION PLAN
# TERMS & CONDITIONS

Congratulations on purchasing this Protection Plan. Please read these Terms and Conditions carefully so that You fully understand Your coverage under this Protection Plan.

Please also review the Order Summary or purchase receipt provided to You at the time You purchased this Protection Plan. The Order Summary defines the Covered Product, Coverage Amount and the Coverage Term of this Protection Plan.

1. **DEFINITIONS:**

   **"We", "Us" and "Our"** shall mean the obligor of this Protection Plan, CE Care Plan Corp except as follows: In **California, "We", "Us" and "Our"** shall mean SquareTrade, Inc.; in **Arizona, Oklahoma, and Wyoming, "We", "Us" and "Our"** shall mean Complete Product Care Corp. The aforementioned are located at 360 3rd Street, Suite 600, San Francisco, CA 94107. In **Florida, "We", "Us" and "Our"** shall mean First Colonial Insurance Company, 1776 American Heritage Life Drive, Jacksonville, FL 32224. You may reach Us at 1-877-927-7268. In **Washington,"We", "Us" and "Our"** shall mean Starr Technical Risks Agency, Inc., 399 Park Avenue, 8th Floor, New York, NY 10022. You may reach Us at 1-877-927-7268.

   **Administrator** shall mean SquareTrade, Inc. located at 360 3rd Street, Suite 600, San Francisco, CA 94107 with a telephone number: 1-877-927-7268.

   **"You", "Your"** shall mean the individual or entity who purchased this Protection Plan or the individual or entity to whom this Protection Plan was properly transferred in accordance with these Terms and Conditions.

   **The following terms are used in the Order Summary**

   Protection Plan Price: The price You paid for this Protection Plan.

   Coverage Start Date: This is the date when coverage starts under this Protection Plan.

   Waiting Period: This is the amount of time, varying from zero (0) to thirty (30) days, between the Protection Plan purchase date and the Coverage Start Date, during which if any issues occur, they are considered pre-existing conditions and render the item ineligible for coverage under this Protection Plan. A Waiting Period applies to Protection Plans purchased for refurbished items and Protection Plans purchased subsequent to the purchase of Your Covered Product. Any applicable Waiting Period does not affect Your coverage under any manufacturer's warranty. If during the Waiting Period a pre-existing condition renders the item ineligible for coverage We will cancel Your Protection Plan and provide You with a full refund of the Protection Plan Price.

   Coverage Term *or* Term: This is the years of coverage, varying from one (1) to five (5) year(s), You receive under this Protection Plan, starting on the Coverage Start Date which begins after any Waiting Period. The Protection Plan is inclusive of any US manufacturer's warranty that may exist during the Coverage Term. It does not replace the manufacturer's warranty, but provides certain additional benefits during the term of the manufacturer's warranty. The Term of this Protection Plan is extended for the duration of any time that the item is being repaired under this Protection Plan.

   Covered Product *or* Product: The product or type of product covered by this Protection Plan.

   Coverage Amount: The purchase price of the Covered Product.

   Coverage Type: This defines the level of coverage You purchased, such as whether Your Protection Plan includes Optional Coverage, such as Accidental Damage from Handling (ADH) coverage.

Deductible: The applicable deductible, if any, for claims.

2. **COVERAGES AND TERMS:** This Protection Plan will cover a mechanical or electrical failure of the Covered Product(s) in subsections A, B, C and D below during normal usage for the Term of this Protection Plan. This Protection Plan is inclusive of any manufacturer's warranty that may exist during the Coverage Term. It does not replace the manufacturer's warranty, but provides certain additional benefits during the term of the manufacturer's warranty. Replacement parts will be new, rebuilt or non-original manufacturer's parts that perform to the factory specifications of the product at Our sole option.

This Protection Plan does not cover repair or replacement of Your Product for any of the causes or provide coverage for any losses set forth below in Section 9, **"WHAT IS NOT COVERED."** Specific details about Your coverage under this Protection Plan are provided in the Order Summary. For online assistance and hardware troubleshooting tips, visit www.squaretrade.com and select the Support option.

A. **CELL PHONES AND TABLETS:**
1. This Protection Plan provides coverage for parts and labor costs to repair or replace Your Product where the problem is the result of a failure caused by:
   a. Normal wear and tear;
   b. Accidental damage from handling (ADH), such asdamage from drops, spills and liquid damage associated with the handling and use of Your Product, if the coverage has been offered and purchased at the time of sale with your Protection Plan;
   c. One (1) battery repair or replacement, when the original rechargeable battery is defective as determined by Us and at Our sole discretion. We may require You to return your original defective battery to Us to receive a replacement battery;
   d. Damaged or defective buttons or connectivity ports located on Your Product;
   e. For defective pixels We will match the manufacturer's warranty for the Term of Your Protection Plan. In the absence of a manufacturer's dead pixel policy, We will cover a failure of three (3) or more defective pixels within a one square inch area of the display;
   f. Dust, internal overheating, internal humidity/condensation;
   g. Defects in materials or workmanship;
   h. Operational failure resulting from a power surge while properly connected to a surge protector. You may be asked to provide Your surge protector for examination.

B. **JEWELRY AND WATCH PLANS:**
1. JEWELRY: This Protection Plan provides coverage for parts and labor costs to repair the Jewelry where the problem is a result of a failure caused by defects in workmanship and/or materials, including those resulting from normal wear and tear such as: cracks, chips, scratches, dents, kinks, breaks, and thinning.  You will be reimbursed for SquareTrade-authorized repairs to, or replacement of the Jewelry, at Our discretion, when required due to a problem which is not covered under any other warranty, service plan or insurance.
2. WATCHES: This Protection Plan provides coverage for parts and labor costs to repair the Watch where the problem is the result of a failure caused by defects in workmanship and/or materials, including those resulting from normal wear and tear such as: watch band, case, clasp, crown, cracked crystal, inner movement and stem. For watch band failure, We may elect to replace either segments of the band, the complete band, or the watch, at Our discretion. You will be reimbursed for Square Trade-authorized repairs to or replacement of the Watch, at Our discretion, when required due to a problem which is not covered under any other warranty, service plan or insurance.

C. **FURNITURE:**
1. This Protection Plan covers only products used primarily for personal, family or household purposes or in a small office or home office setting.
2. UPHOLSTERED WOOD AND METAL FURNITURE: This Protection Plan provides coverage for damage due to seam separation; broken hardware and pulls; seam separation of joints and welds; cracks; peeling of veneers; broken hinges, casters, slides, drawer pull/guides or swivels; damaged mechanical elements; scratches; chips; gouges; cracking, warping or

3

peeling of finish due to normal use. The Protection Plan also covers breakage, chips and scratches to glass on tables, desks, wall units and cabinets, and breakage, chipping and/or loss of silvering to mirrors due to normal use or accidental damage.

3.  FABRIC AND LEATHER COVERAGE: This Protection Plan provides coverage for damage due to separation or peeling of topcoat finish.

D.  **ALL OTHER PRODUCTS:**

1.  This Protection Plan provides coverage for parts and labor costs to repair or replace Your Product where the problem is the result of a failure caused by:

    a.  Normal wear and tear;
    b.  Accidental damage from handling (ADH), such as damage from drops, spills and liquid damage associated with the handling and use of Your Product, if the coverage has been offered and purchased at the time of sale with your Protection Plan;
    c.  One (1) battery repair or replacement, when the original rechargeable battery is defective as determined by Us and at Our sole discretion, if the coverage has been offered and purchased at the time of sale with your Protection Plan;
    d.  One (1) bulb replacement, replacement of a faulty bulb during the first three (3) years of the Term, if the coverage has been offered and purchased at the time of sale with your Protection Plan;
    e.  For defective pixels We will match the manufacturer's warranty for the Term of Your Protection Plan. In the absence of a manufacturer's dead pixel policy, We will cover:

        a.  Six (6) or more defective pixels for displays up to 17";
        b.  Eight (8) or more defective pixels for displays greater than 17".
    f.  Dust, internal overheating, internal humidity/condensation;
    g.  Defects in materials or workmanship;
    h.  Operational failure resulting from a power surge while properly connected to a surge protector. You may be asked to provide Your surge protector for examination.

3.  **OPTIONAL COVERAGES:**

    A.  **ACCIDENTAL DAMAGE FROM HANDLING (ADH):**

        If You were offered and elected to include accidental damage from handling (ADH) as an integral part of Your coverage, it augments Your Protection Plan by providing additional protection for damage from drops, spills and liquid damage associated with the handling and use of Your Product.

        ADH does not provide protection against theft, loss, reckless, or abusive conduct associated with handling and use of the product, cosmetic damage and/or other damage that does not affect unit functionality, or damage caused during shipment between You and Our service providers.

    B.  **BULB COVERAGE:**

        If You were offered and elected to include Bulb Coverage on Your rear-projection or DLP Television, Your Protection Plan shall also include up to one (1) replacement of a faulty bulb during the first three (3) years of the Coverage Term. You will be responsible for installing the replacement bulb, which We will provide to You in most occurrences. If, at Our discretion, We do not provide You with a replacement bulb, We will reimburse You for the cost of the bulb. Bulb Coverage will terminate either at the end of three (3) years or when You have received a replacement bulb or reimbursement for the cost of a replacement bulb from Us, whichever occurs first. You may be required to return the defective bulb to Us.

    C.  **BATTERY COVERAGE:**

        If You were offered and elected to include Battery Coverage on Your Product, Your Protection Plan shall also include up to one (1) battery repair or replacement during the first two (2) years of the Coverage Term, when the original rechargeable battery is defective as determined by Us and at Our sole discretion. We may require You to return Your original defective battery to Us to receive a replacement battery. Battery

Coverage is only available for Covered Products that are new or newly manufacturer refurbished.

4.   **WHAT TO DO IF A COVERED PRODUCT REQUIRES SERVICE:**

File a claim online at www.squaretrade.com/claim or call Us toll-free at 1-877-927-7268 and explain the problem. We will attempt to troubleshoot the problem You are experiencing. If We cannot resolve the problem, You will be directed to an authorized service center.

5.   **HOW WE WILL SERVICE YOUR PRODUCT:**

Depending on the Product and failure circumstances, at Our discretion, We will either:

    A.   Repair Your Product, or;
    B.   Provide a cash settlement or a Gift Card reflecting the replacement cost of a new product of equal features and functionality up to the Coverage Amount, or;
    C.   Replace Your Product with a product of like kind, quality and functionality.

6.   **PLACE OF SERVICE:**

At Our discretion, large items will receive on-site service. Within five (5) business days of determining Your Product requires on-site service, We will assign You an authorized service center technician and arrange to repair or replace the Product at Your location during normal business hours. If We fail to have an authorized service center technician assigned within five (5) business days, We will continue to service Your Product and the cost of Your Protection Plan will be refunded to You at Your request. On-site service may occasionally necessitate the authorized service center technician to bring the Product back to their shop to complete repairs.

For shippable items, We will provide a free prepaid shipping label to Our authorized service center for repair, replacement or settlement. You will be responsible for safe packaging and shipment of Your Product. If, upon inspection, Your Product is determined to have experienced a failure which is covered by Your Protection Plan, We will service Your Product, in accordance with Section 5, **"HOW WE WILL SERVICE YOUR PRODUCT",** within five (5) days of our authorized service center's receipt of Your Product. If We fail to repair, payout or replace the Product within five (5) business days of receiving it, We will continue to service Your Product and the cost of Your Protection Plan will be refunded to You at Your request. If the authorized service center determines Your Product is in working condition or is not covered by Your Protection Plan, We will return Your Product to You or dispose of it at Your request.

7.   **LIMIT OF LIABILITY:**

The total amount that We will pay for repairs or replacement made in connection with all claims that You make pursuant to this Protection Plan shall not exceed the Coverage Amount. In the event that We make payments for repairs or replacements, which in the aggregate, are equal to the Coverage Amount, or if We provide a cash settlement reflecting the replacement cost of a new item of equal features and functionality, then We will have no further obligations under this Protection Plan.

WE SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO, PROPERTY DAMAGE, LOST TIME, OR LOST DATA RESULTING FROM THE FAILURE OF ANY PRODUCT OR EQUIPMENT OR FROM DELAYS IN SERVICE OR THE INABILITY TO RENDER SERVICE.

8.   **YOUR RESPONSIBILITIES:**
    A.   Provide Us with a complete copy of proof of purchase. You can send Us a digital copy through www.squaretrade.com and We can store it for You, or You can provide such proof of purchase at the time You make a claim.
    B.   Purchase the correct SquareTrade Protection Plan for Your Product based on condition, price or purchase location.
    C.   Properly maintain, store and use Your Product according to the manufacturer instructions.

9.   **WHAT IS NOT COVERED:**

A.  Any and all pre-existing conditions that occur prior to the Coverage Start Date of this Protection Plan;

B.  Intentional damage;

C.  Lost, stolen, or irretrievable items;

D.  Any product that is fraudulently described or materially misrepresented;

E.  Maintenance, repair, or replacement necessitated by loss or damage resulting from any cause other than normal use and operation of the product in accordance with the manufacturer's specifications and owner's manual, including, but not limited to, exposure to weather conditions, failure to properly clean, maintain or lubricate, operator negligence, misuse, abuse, improper electrical/power supply, improper equipment modifications, attachments or installation or assembly, vandalism, animal or insect infestation, battery leakage, act of nature (any accident caused or produced by any physical cause which cannot be foreseen or prevented, such as storms, perils of the sea, tornadoes, hurricanes, floods and earthquakes), or any other peril originating from outside the product;

F.  Defects due to the initial installation, assembly or hookup of Your Product;

G.  Cases wherein the manufacturer acknowledges the existence of a valid manufacturer's warranty and denies a claim against the manufacturer's warranty;

H.  Claims made under any improperly or incorrectly purchased Protection Plan;

I.  Cosmetic damage to case or cabinetry or other non-operating parts or components which does not affect the functionality of the covered product;

J.  Television or personal computer monitor screen imperfections, including "burn-in" or burned CRT phosphor;

K.  Accidental damage, cracked or damaged monitor, laptop or display screens, liquid damage, lost buttons or knobs etc., unless optional accidental damage from handling (ADH) coverage was offered and purchased at the time of sale with Your Protection Plan;

L.  Projector or rear projection TV bulbs unless Bulb Coverage has been offered and purchased at the time of sale with Your Protection Plan;

M.  Consumer replaceable or consumable batteries unless Battery Coverage has been offered and purchased at the time of sale with Your Protection Plan;

N.  Consumer replaceable or consumable items such as but not limited to toner, ribbons, ink cartridges, drums, belts, printer heads, belts, blades, strings, trim etc.;

O.  All equipment intended for heavy commercial or industrial use such as industrial printers or IT equipment; riding mowers or backhoe type products;

P.  Product(s) with removed or altered serial numbers;

Q.  Manufacturer defects or equipment failure which is covered by manufacturer's warranty, manufacturer's recall, or factory bulletins (regardless of whether or not the manufacturer is doing business as an ongoing enterprise);

R.  Damage to computer hardware, software and data caused by, including, but not limited to, viruses, application programs, network drivers, source code, object code or proprietary data, or any support, configuration, installation or reinstallation of any software or data;

S.  Failures related to shipping damage, cleaning, preventive maintenance, "No Problem Found" diagnosis, intermittent and non-intermittent issues that are not product failures (such as poor cell phone reception);

T.  Jewelry or watches that are used or refurbished at the time of purchase;

U.  Rattan, wicker, plastic, or non-colorfast fabric furniture; or inherent furniture design defects including, but not limited to, natural inconsistencies in wood grains, fabrics, coloring or leathers; fading due to sunlight; or dust corrosion;

V.  Stains, water marks or rings on furniture caused by consumable beverages, smoke or other materials deemed by Us to be caustic;

W.  Items sold in a private sale (e.g. flea market, yard sale, estate sale, craigslist).

10.  **NO LEMON POLICY:**

If Your Covered Product has two (2) service repairs completed for the same problem and a third (3rd) repair is needed for the same problem, within any twelve (12) month period, the Covered Product will be replaced with a comparable product or a cash settlement will be provided. The cost of the replacement will not exceed Your Product's original purchase price.

11.  **FREE SHIPPING:**

This Protection Plan covers all shipping charges to authorized service centers during the Coverage Term, including shipping to the manufacturer if the manufacturer does not cover shipping charges to their facilities.

12. **Worldwide Service:**

The coverage provided in this Protection Plan also applies when You travel outside of the United States. If Your Product needs repair while traveling abroad, You may file a claim online at www.squaretrade.com to obtain a claim authorization number. At this time You will be instructed on how to proceed to obtain service and You will also receive a fax number and an email address for You to submit Your service repair invoice to Us after the repair is completed. Once You have obtained Your claim authorization number, You will need to carry Your Product into a service center and then submit to Us a copy of the detailed service repair invoice that identifies Your Product, the claim authorization number, and includes a thorough description of the repair made. This documentation should be faxed or emailed to Us and We will reimburse You within five (5) business days of receipt of all necessary paperwork, provided a covered repair was performed.

13. **TRANSFER OF PROTECTION PLAN:**

This Protection Plan may be transferred at no charge. To transfer this Plan log in to www.squaretrade.com, or contact Us toll-free at 1-877-927-7268 24 hours a day, 7 days a week.

14. **CANCELLATION:**

You may cancel this Protection Plan for any reason at any time. To cancel it, log in to www.squaretrade.com or contact Us toll-free at 1-877-927-7268 24 hours a day, 7 days a week. If You cancel this Protection Plan within the first thirty (30) days after purchase of this Protection Plan You will receive a 100% refund of the Protection Plan Price. If You cancel after the first thirty (30) days from purchase of this Protection Plan, You will receive a pro rata refund based on the time remaining on Your Protection Plan. No fees or past claims shall be deducted from the refund and the refund will be sent to You within ten (10) business days from the cancellation request or else a ten percent (10%) penalty per month shall be applied to the refund.

**We may cancel this Protection Plan at Our option on the basis of nonpayment, fraud, or material misrepresentation by You.** If We cancel Your Protection Plan, You will receive a pro rata refund. If this Protection Plan was inadvertently sold to You on a product which was not intended to be covered by this Protection Plan, We will cancel this Protection Plan and return the full purchase price of the Protection Plan to You. Written notice which includes the effective date of cancellation and reason for cancellation, will be mailed to You at least thirty (30) days prior to termination. If We cancel this Protection Plan for nonpayment then We will provide notice at time of cancellation.

15. **ARBITRATION:**

Any controversy or claim arising out of or relating to this Protection Plan, or breach thereof, will be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Under this Arbitration provision, We both give up the right to resolve any controversy or claim arising out of or relating to this Protection Plan by a judge and/or a jury. Prior to filing any arbitration, We jointly agree to seek to resolve any dispute between us by mediation conducted by the AAA, with all mediator fees and expenses paid by Us. If You are successful in obtaining an arbitration award against us greater than $500, We agree to pay all arbitrator fees and expenses.

We also both agree not to participate as a class representative or class member in any class action litigation, any class arbitration or any consolidation of individual arbitrations against each other. The laws of the state of California (without giving effect to its conflict of laws principles) govern all matters arising out of or relating to this Protection Plan and all transactions contemplated by this Protection Plan, including, without limitation, the validity, interpretation, construction, performance and enforcement of this Protection Plan. A judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The parties specifically agree to the binding nature of the arbitration.

16. **GUARANTEE:**

This is not an insurance policy. Our obligations under this Protection Plan are guaranteed under a reimbursement insurance policy issued by Allstate Insurance Company, 2775 Sanders Rd, Northbrook, Illinois 60062 and You may contact them toll free at 1-800-669-9313. If We fail to pay or provide service on a claim within sixty (60) days after proof of loss has been filed, You are entitled to make a claim directly against Allstate Insurance Company.

17. **ENTIRE CONTRACT:**

Unless amended by the State Specific Provisions or revised by Us with at least thirty (30) days advance written notice to You, this Protection Plan sets forth the entire contract between the parties and no representation, promise or condition not contained herein shall modify these terms.

**State Variations:**

The following state variations shall apply if inconsistent with any other terms and conditions.

**Alabama:** If You are a resident of Alabama, the following shall replace Section 15 "Arbitration" of these Terms and Conditions: The laws of the state of Alabama (without giving effect to its conflict of laws principles) govern all matters arising out of or relating to this Protection Plan and all transactions contemplated by this Protection Plan, including, without limitation, the validity, interpretation, construction, performance and enforcement of this Protection Plan. A judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The parties specifically agree to the binding nature of the arbitration.

**Arizona:** Section 9 (A) "What is Not Covered" of these Terms and Conditions is deleted in its entirety.

**California:** If You decide to cancel Your Protection Plan for a product other than a home appliance or electronics item within sixty (60) days after the receipt of the Protection Plan You will be refunded the full price paid for the Protection Plan. If You decide to cancel your Protection Plan for this type of item after sixty (60) days after the receipt of the Protection Plan You will receive a pro-rated refund based on the time remaining on Your Protection Plan. All Protection Plans for home appliance or home electronics are covered by the "Cancellation" section of the Protection Plan. **Arbitration:** For California residents the Arbitration provision is amended to state the following: (1) Pursuant to California Civil Code sections 51.7 (Ralph Civil Rights Act) and 52.1 (Bane Civil Rights Act), the option to enter into Arbitration is solely at the discretion of the contract holder; (2) if Arbitration is elected, this does not waive the right of California consumers to file and pursue civil action or complaint; (3) if any statement found within this contract contradicts this section, this section shall take precedence. To learn more about this process, You may contact BEAR at 1-800-952-5210, or You may write to Department of Consumer Affairs, 4244 S. Market Court, Suite D, Sacramento, California, 95834, or You may visit their website at www.bearhfti.ca.gov.

**Connecticut: Resolution of Disputes**: If You purchased this Protection Plan in Connecticut and a dispute arises between You and the provider of this Protection Plan. You may mail Your complaint to: State of Connecticut, Insurance Department, P.O. Box 816, Hartford, CT 06142-0816, Attn: Consumer Affairs. The written complaint must describe the dispute, identify the price of the product and cost of repair, and include a copy of this Protection Plan. You must first attempt to mediate any dispute. In the event that mediation is unsuccessful You may pursue arbitration to settle disputes between You and the provider of this Protection Plan. You have the right to cancel this Protection Plan if You return the product or if the product is sold, lost, stolen, or destroyed. If We cancel this Protection Plan, written notice including effective date and reason for cancellation will be mailed to You electronically or by U.S. Mail at least 30 days prior to termination.

**Florida:** The rates charged to You for this Protection Plan are not subject to regulation by the Florida Office of Insurance Regulation. The Guarantee, in Section 16, does not apply to Protection Plans sold in Florida as this Protection Plan is directly issued by the insurer, First Colonial Insurance Company, 1776 American Heritage Life Drive, Jacksonville, FL 32224, 1-800-621-4871.

**Georgia:** Cancellation will comply with Section 33-24-44 of the Georgia Code. Failure to refund in accordance with the aforementioned Section will make Us liable for penalty equal to 25% of refund and interest of 18% per annum until refund is paid, not to exceed 50% of refund. The waiting period will not exceed 30 days. Arbitration is non-binding. Section 9 (A) "What is Not Covered" of these Terms and

Conditions is deleted in its entirety and replaced with the following: Any and all pre-existing conditions known to You that occur prior to the Coverage Start Date of this Protection Plan.

**Maine:** With respect to Maine contract holders, the Obligor under this Protection Plan is the Dealer.

**Nevada:** This Protection Plan is not renewable. If We cancel this Protection Plan for nonpayment by You, then We will provide notice at least 15 days prior to the effective date of cancellation. We may cancel this Protection Plan at Our option on the basis of nonpayment, fraud, or material misrepresentation by You. If We cancel this Protection Plan for any of these reasons, then written notice including the effective date and reason for cancellation will be mailed to You at least 30 days prior to termination. Prior approval of service should be obtained as outlined in "WHAT TO DO IF A COVERED PRODUCT REQUIRES SERVICE" or "WORLDWIDE SERVICE" in the Protection Plan. Section 15 "Arbitration" of these Terms and Conditions is deleted in its entirety. **WAITING PERIOD: THIS IS THE AMOUNT OF TIME, VARYING FROM ZERO (0) TO THIRTY (30) DAYS, BETWEEN THE PROTECTION PLAN PURCHASE DATE AND THE COVERAGE START DATE.**

**New Jersey**: If you are a resident of New Jersey, the following shall replace Section 16 "Guarantee" of these Terms and Conditions: This is not an insurance policy. Our obligations under this Protection Plan are guaranteed under a reimbursement insurance policy issued by First Colonial Insurance Company. 1776 American Heritage Life Drive, Jacksonville, FL 32224, 1-800-621-4871. If We fail to pay or provide service on a claim within sixty (60) days after proof of loss has been filed, You are entitled to make a claim directly against First Colonial Insurance Company.

**New Mexico:** This service contract is insured by Allstate Insurance Company. If the service contract provider fails to pay you or otherwise provide you with the covered service within 60 days of your submission of a valid claim, you may submit your claim to Allstate Insurance Company at 2775 Sanders Rd, Northbrook, Illinois 60062, 1-800-669-9313. If you have any concerns regarding the handling of your claim, you may contact the Office of Superintendent of Insurance at 855-427-5674.

**Oklahoma:** This Protection Plan is not issued by the manufacturer or wholesale company marketing the product. This Protection Plan will not be honored by such manufacturer or wholesale company. The Oklahoma Service Agreement statutes do not apply to commercial use references in Protection Plan contracts. Coverage afforded under this Protection Plan is not guaranteed by the Oklahoma Insurance Guaranty Association. If You cancel after the first thirty (30) days from purchase of this Protection Plan, You will receive a one hundred percent (100%) unearned pro rata refund based on the time remaining of Your Protection Plan. The Service Warranty Provider for this Protection Plan is Complete Product Care Corp, 360 3rd Street, Suite 600, San Francisco, CA 94107, License Number 864208.

**Oregon**: **Arbitration:** If You are a resident of Oregon, the following shall replace Section 15 "Arbitration" of these Terms and Conditions: Any arbitration occurring under this Protection Plan shall occur in an agreed upon location by both parties and be administered in accordance with the Arbitration Rules unless any procedural requirement of the Arbitration Rules is inconsistent with the Oregon Uniform Arbitration Act in which case the Oregon Uniform Arbitration Act shall control as to such procedural requirement. Any award rendered shall be a nonbinding award against You.

**South Carolina:** In the event of a dispute with the provider of this Protection Plan, You may contact the South Carolina Department of Insurance, Capitol Center, 1201 Main Street, Ste. 1000, Columbia, South Carolina 29201 or 1-800-768-3467. This Protection Plan is not an insurance contract.

**Texas:** The administrator for this Protection Plan is SquareTrade, Inc. registration number 155.

**Utah:** Replacement parts will be new, rebuilt or non-original manufacturer's parts that perform to the factory specifications of the Covered Product at Our sole option. Coverage afforded under this Protection Plan is not guaranteed by the Property and Casualty Guaranty Association. This Protection Plan is subject to limited regulation by the Utah Insurance Department. Notice of cancellation for nonpayment of the purchase price of this Protection Plan will be in writing given at least ten (10) days prior to cancellation. **Arbitration:** If You are a resident of Utah, the following shall replace Section 15 "Arbitration" of these Terms and Conditions: ANY MATTER IN DISPUTE BETWEEN YOU AND THE COMPANY MAY BE SUBJECT TO ARBITRATION AS AN ALTERNATIVE TO COURT ACTION PURSUANT TO THE RULES OF (THE AMERICAN ARBITRATION ASSOCIATION OR OTHER RECOGNIZED ARBITRATOR), A COPY OF WHICH IS AVAILABLE ON REQUEST FROM THE COMPANY. ANY DECISION REACHED BY ARBITRATION SHALL BE BINDING UPON BOTH YOU AND THE COMPANY. THE

ARBITRATION AWARD MAY INCLUDE ATTORNEY'S FEES IF ALLOWED BY STATE LAW AND MAY BE ENTERED AS A JUDGEMENT IN ANY COURT OF PROPER JURISDICTION.

<u>Washington:</u> Section 16 of these Terms and Conditions is deleted in its entirety and replaced with the following: This is not an insurance policy. Obligations of the service contract provider under this contract are back by the full faith and credit of the service contract provider, Starr Technical Risks Agency, Inc. Starr Technical Risk Agency, Inc. is located at 399 Park Avenue, 8th Floor, New York, NY 10022 and You may contact them toll-free at 1-855-438-2390.

<u>Wisconsin:</u> The term "Protection Plan" in these terms and conditions shall be understood to mean "Service Contract". **This Contract is subject to limited regulation by the Office of the Commissioner of Insurance.** No claim will be denied solely because You failed to obtain preauthorization. This Service Contract, including optional ADH coverage, does not provide coverage for intentional damage and/or pre-existing conditions that occur prior to the Coverage Start Date. Our obligations under this Protection Plan are guaranteed under a reimbursement insurance policy issued by Allstate Insurance Company. Allstate Insurance Company is located at 2775 Sanders Rd, Northbrook, Illinois 60062 and You may contact them toll free at 1-800-669-9313. If We fail to pay or provide service on a claim within sixty (60) days after proof of loss has been filed, or if We become insolvent or financially impaired, You are entitled to make a claim directly against Allstate Insurance Company. **Arbitration:** The laws of the state of Wisconsin shall govern all matters arising out of or relating to this Service Contract. Arbitration is non-binding. Under no circumstances shall a legal proceeding be filed in a federal, state or local court until such time as both You and We first address our disagreement in an arbitration proceeding and obtain an arbitration award pursuant to this arbitration provision. **Cancellation:** We shall mail a written notice to You at the last-known address contained in our records at least five (5) days prior to cancellation by Us. This notice will include the effective date of and reason for the cancellation. In the event of a total loss of property covered by a Service Contract that is not covered by a replacement of the property pursuant to the terms of the Service Contract, You shall be entitled to cancel the Service Contract and receive a pro rata refund on any unearned provider fee, less any claims paid. If a claim has been made under this Service Contract, You may cancel the Service Contract and We shall refund to You one hundred percent (100%) of the unearned pro rata provider fee, less any claims paid. We may charge a reasonable administrative fee for the cancellation, which may not exceed ten percent (10%) of the provider fee.

<u>Wyoming</u>: The provider of the service contract shall mail a written notice to the service contract holder at the last known address of the service contract holder contained in the records of the provider at least ten (10) days prior to cancellation by the provider. Prior notice is not required if the reason for cancellation is nonpayment of the provider fee, a material misrepresentation by the service contract holder to the provider or a substantial breach of duties by the service contract holder relating to the covered product or its use. A ten percent (10%) penalty per month shall be added to a refund that is not paid or credited within forty-five (45) days after return of the service contract to the provider. **Arbitration:** If You are a resident of Wyoming, the following shall replace Section 15 "Arbitration" of these Terms and Conditions: At the time of any disagreement, the parties may mutually agree to submit any matters of difference to arbitration by executing a separate written agreement. Any arbitration shall be conducted within the state of Wyoming.

© 2015 SquareTrade. All Rights Reserved
How to Contact Us
Please, please don't reply to this email. We're unable to respond to messages sent to this address, and we absolutely, positively want to respond if you've got questions. Instead, <u>email us by clicking here</u>. Thanks!

