ARNOLD & PORTER KAYE SCHOLER LLP
DOUGLAS A. WINTHROP (No. 183532)
douglas.winthrop@arnoldporter.com
GEORGE LANGENDORF (No. 255563)
george.langendorf@arnoldporter.com
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: +1 415.471.3100
Facsimile: +1 415.471.3400

Attorneys for Defendant
SQUARETRADE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SHUMAN, KATHLEEN ABBOTT and TOMMY GONZALES, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SQUARETRADE, INC.,<br><br>Defendant. | Case No.: 3:20-cv-02725-JCS<br><br>**DEFENDANT SQUARETRADE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS OF KATHLEEN ABBOTT PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hon. Joseph C. Spero<br><br>Hearing: August 6, 2021<br>Time: 9:30 a.m.<br>Location: Courtroom F, 15th Floor<br><br>Amended Complaint Filed: April 22, 2021 |

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on August 6, 2021 at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom F on the 15th Floor of the above-referenced Court, located at 450 Golden Gate Ave., San Francisco CA, 94102, defendant SquareTrade, Inc. ("SquareTrade") will, and hereby does, move the Court for an order dismissing the claims of Kathleen Abbott for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the accompanying Request for Judicial Notice and Declaration of Jason Siciliano, and such other or further argument or evidence as may be presented to the Court at or before the hearing.

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................... 1

ISSUES PRESENTED ....................................................................................................................2

FACTS ............................................................................................................................................3

ARGUMENT ..................................................................................................................................4

I.    ABBOTT'S GBL CLAIMS SHOULD BE DISMISSED BECAUSE SHE HAS NOT ALLEGED SUFFICIENT FACTS TO SHOW THAT A REASONABLE CONSUMER WOULD BE DECEIVED. ............................................................................4

II.   THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED FOR INDEFINITENESS AND LACK OF MUTUAL ASSENT TO MATERIAL TERMS. ...............................................................................................................................7

        A.    New York Law Applies to the Breach of Contract Claim. ............................8

        B.    The Breach of Contract Claim Should Be Dismissed Because the Alleged Promise Is Too Indefinite to be Enforceable ................................................8

        C.    The Breach of Contract Claim Should Be Dismissed Because There Was No Meeting of the Minds as to SquareTrade's Coverage Obligations. ......11

III.  THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED BECAUSE ABBOTT HAS NOT ALLEGED FACTS SHOWING WHY RETENTION OF ANY BENEFIT BY SQUARETRADE WOULD BE UNJUST. ..........................................12

CONCLUSION ............................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andre Strishak & Assocs., P.C. v. Hewlett Packard Co*,
   300 A.D.2d 608, 609-10 (N.Y. App. Div. 2002) ............................................................. 4, 5, 6

*Axon v. Florida's Nat. Growers, Inc.*,
   813 F. App'x 701 (2d Cir. 2020) .............................................................................................. 12

*Brumfield v. Trader Joe's Co.*,
   No. 17 CIV. 3239 (LGS), 2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018) ................................ 6

*Candid Prods., Inc. v. Int'l Skating Union*,
   530 F. Supp. 1330 (S.D.N.Y.1982) .................................................................................. 8, 10

*Corsello v. Verizon New York, Inc.*,
   967 N.E.2d 1177 (N.Y. 2012) ................................................................................................ 11

*Cosgrove v. Oregon Chai, Inc.*,
   — F.Supp. 3d —, 2021 WL 706227 (S.D.N.Y. Feb. 21, 2021) .............................................. 4

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ........................................................................................... *passim*

*Fink v. Time Warner Cable*,
   810 F. Supp. 2d 633 (S.D.N.Y. 2011), *modified on reconsideration on other grounds*, 2011 WL 5121068 (S.D.N.Y. Oct. 28, 2011) ............................................................ 9, 10

*Foros Advisors LLC v. Digital Globe, Inc.*,
   333 F. Supp. 3d 354 (S.D.N.Y. 2018) ...................................................................................... 8

*Freedman v. Pearlman*,
   271 A.D.2d 301 (N.Y. App. Div. 2000) ................................................................................... 9

*Full Circle United, LLC v. Skee-Ball, Inc.*,
   No. 11 CV 5476 (LB), 2014 WL 12829195 (E.D.N.Y. May 13, 2014) .................................. 9

*Gomez-Jimenez v. New York L. Sch.*,
   103 A.D.3d 13 (N.Y. App. Div. 2012) ............................................................................ 4, 5, 6

*Goshen v. Mut. Life. Ins. Co. of N.Y.*,
   98 N.Y.2d 314 (2002) .............................................................................................................. 4

*Hudson & Broad, Inc. v. J.C. Penney Corp.*,
   No. 12 Civ. 3239 (KBF), 2013 WL 3203742 (S.D.N.Y. June 18, 2013), *aff'd*, 553 F. App'x 37 (2d Cir. 2014) ................................................................................................. 8, 9

*Johnson v. Nextel Commc'ns, Inc.*,
  660 F.3d 131 (2d Cir. 2011) .......................................................................................................... 8

*Jordan Panel Sys., Corp. v. Turner Constr. Co.*,
  45 A.D.3d 165 (N.Y. App. Div. 2007) ....................................................................................... 11

*Kennedy v. Mondelez Glob. LLC*,
  No. 19-CV-302-ENV-SJB, 2020 WL 4006197 (E.D.N.Y. July 10, 2020) ............................ 11, 12

*McVetty v. TomTom N. Am., Inc.*,
  2021 WL 965239 (S.D.N.Y. Mar. 13, 2021) .............................................................................. 12

*Nedlloyd Lines B.V. v. Superior Court*,
  3 Cal. 4th 459 (1992) .................................................................................................................... 7

*Nuevos Aires Shows LLC v. Buhler*,
  No. 19 Civ. 1822 (NRB), 2020 WL 1903995 (S.D.N.Y. Apr. 17, 2020) ...................................... 9

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank N.A.*,
  647 N.E.2d 741 (N.Y. 1995) ......................................................................................................... 4

*Precision Safety Innovations, Inc. v. Branson Ultrasonic Corp.*,
  No. CV 04-6981 GPS, 2005 WL 5801513 (C.D. Cal. Aug. 4, 2005) ........................................... 7

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004) .......................................................................................................... 8

*Ridenhour v. Bryant*,
  No. 1:19-CV-2587 (ALC), 2020 WL 1503626 (S.D.N.Y. Mar. 29, 2020) ................................... 9

*Stewart v. Riviana Foods Inc.*,
  No. 16-CV-6157 (NSR), 2017 WL 4045952 (S.D.N.Y. Sept. 11, 2017) ...................................... 6

*Universal City Studios, Inc. v. Nintendo Co.*,
  797 F.2d 70 (2d Cir. 1986) .......................................................................................................... 11

*Verzani v. Costco Wholesale Corp.*,
  No. 09 Civ. 2117(CM), 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) ........................................ 5

*Woodhill Elec. v. Jeffrey Beamish, Inc.*,
  73 A.D.3d 1421 (N.Y. App. Div. 2010) ..................................................................................... 10

*Wynn v. Topco Assocs., LLC*,
  19-CV-11104 (RA), 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ..................................... 4, 5, 12

**Statutes**

New York General Business Law §§ 349-50 ............................................................................. *passim*

**Other Authorities**

Restatement (Second) of Contracts
 § 20 ........................................................................................................................................... 11
 § 20(2)(a) .................................................................................................................................. 11
 § 20(2)(b) .................................................................................................................................. 11

Restatement (Second) of Conflict of Laws
 § 188 ........................................................................................................................................... 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION AND SUMMARY OF ARGUMENT

The *entire predicate* for the claims asserted by Plaintiff Kathleen Abbott in the First Amended Complaint ("FAC") is contained in one paragraph:

> As Plaintiff Abbott checked out, the Walmart clerk asked if she wanted to buy a SquareTrade Protection Plan for her purchases. Plaintiff Abbott had seen SquareTrade brochures on the Walmart electronics department counter which promised, on their cover, terms such as "protection" of products. During her checkout, the Walmart clerk also described the SquareTrade Protection Plan as a "warranty" for Plaintiff Abbott's products.

FAC ¶ 64. On that basis alone Abbott alleges she "***reasonably believed*** that her SquareTrade Protection Plan would cover the full purchase price of the [items] if either device malfunctioned within the following two years and could not be repaired or replaced." *Id*. at ¶ 66 (emphasis added). *That's it*. There is no allegation that Abbott was told or informed in writing that she would be paid a specific amount in the event that she filed a covered claim. Her lawsuit is based on the single word "protection" on the cover of a brochure she admits to not reading, and the fact that the Protection Plan was orally described to her as a "warranty"—nothing more.

That is not the stuff of a consumer protection violation. Where is the misrepresentation? It cannot be the word "protection." It cannot be the full brochure, because Abbott admits that she did not review it, and if she had, she would have seen that it contained a full set of terms and conditions governing her plan, negating her claim. *See* Request for Judicial Notice ("RJN") Exs. A, B, C; Declaration of Jason Siciliano ("Siciliano Decl.") ¶ 3, Exs. A, B, C. And it surely cannot be the oral description of her Protection Plan as a "warranty," because the term "warranty" does not imply a specific payment obligation, and if anything, it connotes the *existence* of terms and conditions, not the absence of them. These are not factual allegations that show that a reasonable consumer in Plaintiff's position would be deceived. Abbott's claim for violation of the New York General Business Law ("GBL") should be dismissed.

The breach of contract claim fails for the same reasons. What contractual terms can the Court possibly enforce? Another consumer could equally allege another interpretation of a generic

term such as "protection" on the cover of an unread brochure, and the verbal statement "warranty," and request that the Court enforce a different supposed contract. Abbott is not asking the Court to enforce the terms that the parties agreed to, but to *supply* the terms that she wishes that they had agreed to. That fails to state a claim for breach of contract.

Abbott's unjust enrichment claim is the most tenuous of all. She alleges that she paid SquareTrade a total of **$27** for Protection Plans, and that SquareTrade paid her **$268.12** for the claims that she filed under those Plans, and she does not allege that she was required to return any of the supposedly broken items. FAC ¶¶ 65, 68, 69, 74, 76, 79. SquareTrade has not been enriched by these transactions so there is no call for the Court to exercise its equitable powers to restore Abbott's property to her, especially where there has been no conduct alleged that could be considered unjust or that would deceive a reasonable consumer in the first place.

Again, Abbott does not allege, as Plaintiff Shuman does, that the counter clerk at the Walmart where she bought her Protection Plans promised her that she would receive a payment equal to her purchase price if she filed a covered claim. She also does not allege, as Plaintiff Shuman does, that she reviewed a brochure containing terms that she believed made up the entirety of the Protection Plan. She simply alleges she bought "protection" and that what she received when she filed a claim was different from what she subjectively expected. That allegation fails to state a claim, and SquareTrade requests that her claims be dismissed.

## ISSUES PRESENTED

1. Whether Plaintiff Abbott's claims under Sections 349 and 350 of the New York GBL should be dismissed because the mere presence of the word "protection" on a brochure, in combination with an oral description of a Protection Plan as a "warranty," would not mislead a reasonable consumer regarding SquareTrade's coverage obligations under the Protection Plan.

2. Whether the contract that Plaintiff Abbott alleges exists—an implied contract premised on her seeing the word "protection" and hearing the word "warranty"—is too indefinite to be enforced, and whether she has alleged facts showing mutual assent to SquareTrade's coverage obligations under that contract.

3.     Whether Plaintiff Abbott's unjust enrichment claim should be dismissed along with the New York GBL claims because it is premised on identical facts, and because she has not alleged that anything unjust has occurred, given that SquareTrade provided coverage for each of her claims.

**FACTS**

Abbott alleges that she purchased four SquareTrade Protection Plans from a Walmart in New York between October 20, 2018 and January 5, 2020. FAC ¶¶ 63, 64, 69, 76.[1] She alleges that during each of these transactions she saw SquareTrade brochures regarding the Protection Plans in the store. *Id*. The brochures at Walmart contain complete copies of the written terms and conditions that govern SquareTrade Protection Plans. RJN, Exs. A, B, C; Siciliano Decl. ¶ 3, Exs. A, B, C. The brochures also direct consumers to multiple websites where the terms and conditions are easily accessible. RJN, Exs. D, E, F; Siciliano Decl. ¶¶ 4-5, Exs. D, E, F. However, Abbott alleges that she only saw the statement "protection" on the cover of the brochures, and that she did not actually pick up or review a brochure itself. *Id*. ¶¶ 64, 69, 76. She also alleges that, each time she purchased a Protection Plan, the Walmart counter clerk described the Plan as a "warranty." FAC ¶¶ 64, 69, 76.

Abbott alleges that these statements led her to "reasonably believe[] that her SquareTrade Protection Plan would cover the full purchase price of the [products] if either device malfunctioned within the following two years and could not be repaired or replaced." *Id*. ¶¶ 66, 76. She alleges that, when her devices broke and she submitted claims, she received "less than what she was owed, only a portion of the purchase price for the covered items." *Id*. ¶¶ 74, 79. Abbott further alleges that she "realized that SquareTrade's practice was to provide only partial reimbursement despite representing full protection when offering Protection Plans." *Id*. ¶ 79.

Abbott does not allege that she read or reviewed the brochures, despite seeing them each time she purchased a plan. *Id*. ¶¶ 64, 69, 76. She does not allege that she asked any Walmart employee, or anyone, any questions about Protection Plans. She does not allege that she looked

---

[1] Based on prior briefing in this case, SquareTrade assumes the Court's familiarity with the background of SquareTrade's Protection Plans, and does not reiterate that information here.

online, either at Walmart.com or SquareTrade.com, to determine whether her Protection Plans were governed by written terms and conditions.

## ARGUMENT

**I.    ABBOTT'S GBL CLAIMS SHOULD BE DISMISSED BECAUSE SHE HAS NOT ALLEGED SUFFICIENT FACTS TO SHOW THAT A REASONABLE CONSUMER WOULD BE DECEIVED.**

Abbott brings claims under Sections 349 and 350 of the New York GBL. FAC ¶¶ 106-131. "Section 349 prohibits '[d]eceptive acts or practices in the conduct of any business, trade or commerce' whereas [Section] 350 prohibits '[f]alse advertising in the conduct of any business, trade or commerce.'" *Wynn v. Topco Assocs., LLC*, 19-CV-11104 (RA), 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (quoting GBL §§ 349-50). "The standard for recovery under . . . [Section] 350, while specific to false advertising, is otherwise identical to [Section] 349," and so courts merge the analysis of the two claims. *Cosgrove v. Oregon Chai, Inc.*, — F.Supp. 3d —, 2021 WL 706227, at *6 (S.D.N.Y. Feb. 21, 2021) (quoting *Goshen v. Mut. Life. Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002)).

To state a cause of action under Sections 349 and 350, the plaintiff must allege that the defendant is engaging in consumer-oriented conduct that is "deceptive or misleading in a material way" and that the plaintiff has been injured by it. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995). Whether conduct is "deceptive or misleading in a material way" depends on the likelihood that it will "mislead a reasonable consumer acting reasonably under the circumstances." *Id.* at 744; *see also Gomez-Jimenez v. New York L. Sch.*, 103 A.D.3d 13, 16, (N.Y. App. Div. 2012). The *Oswego* court explicitly adopted this "objective definition" in order to forestall a "tidal wave of litigation against businesses that was not intended by the Legislature" and noted that the question "may be determined as a matter of law or fact (as individual cases require). . . ." 647 N.E.2d at 745. Indeed, it is "well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

A party does not violate GBL §§ 349 or 350 by "simply publishing truthful information and allowing consumers to make their own assumptions about the nature of the information." *Gomez-Jimenez*, 103 A.D.3d at 17. For example, in *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, Hewlett Packard sold printers in boxes stating that ink cartridges were included, but the boxes did not state the amount of ink or size of the cartridges. 300 A.D.2d 608, 609-10 (N.Y. App. Div. 2002). Plaintiff brought suit under Sections 349 and 350 of the GBL on the basis that the ink cartridges included were economy size cartridges, which contained less ink than plaintiff expected. *Id*. The court dismissed the claim. *Id*. Reasoning that Hewlett Packard had neither provided "any description with respect to the amount of ink contained in the cartridge" nor included "any specific language regarding the size or description of the cartridges on the boxes or in the advertisements," the court held, as a matter of law, Hewlett Packard "did not engage in a deceptive act by representing that the cartridges were included with the purchase of each printer without disclosing that they were economy-size cartridges" and therefore "the complaint failed to allege an act or practice that was misleading in a material respect." *Id*.

Similarly, in *Gomez-Jimenez*, the plaintiffs were recent law school graduates who alleged that, in publishing the postgraduate employment and salary information, the school had concealed or failed to disclose that the employment data included temporary and part-time positions. 103 A.D.3d at 14-15. The court found that the disclosures were "less than candid and incomplete," but dismissed the GBL Section 349 claim because the defendant had "made no express representations as to whether the work was full-time or part-time" and so the disclosures were "not materially deceptive or misleading." *Id*. at 17.

A plaintiff also cannot state a valid claim under Section 349 or 350 by interpreting defendant's statements unreasonably. *See, e.g.*, *Wynn*, 2021 WL 168541, at *3 ("Plaintiffs have failed to plausibly allege that a reasonable customer would in fact conclude that the word 'vanilla' on a product's front label implies that the product's flavoring was derived exclusively from natural vanilla extract…") (emphasis omitted); *Verzani v. Costco Wholesale Corp.*, No. 09 Civ. 2117(CM), 2010 WL 3911499, at *2 (S.D.N.Y. Sept. 28, 2010) ("A reasonable consumer would not believe

5

that the net weight disclosed on the label for [a] Shrimp Tray refer[red] to only the shrimp…. In fact, the product's name alone, 'Shrimp Tray with Cocktail Sauce,' suggests that a consumer (at a minimum) is purchasing shrimp and cocktail sauce.").

In this case, Abbott allegedly formed a detailed subjective expectation regarding the coverage provided under SquareTrade Protection Plans based on nothing more than (1) the word "protection" on the cover of a brochure that she did not pick up, open, or otherwise review, and (2) the Walmart clerk referring to the Protection Plans as a "warranty." FAC ¶ 64. On the basis of these two words, and *nothing else*, she alleges that she "reasonably believed" that the Protection Plan would "cover the full purchase price of the controller and headset if either device malfunctioned within the following two years and could not be repaired or replaced." *Id*. ¶ 66.

That is not objectively reasonable. What "warranty" has only the terms and conditions that the consumer hopes that it has? Could a consumer call a travel agency to buy a plane ticket and, when asked if she would like to purchase "travel insurance," simply say "yes" and then later assert that she reasonably believed she could cancel the trip at any time, for any reason, and receive a payment equal to the amount she paid for the ticket, based on her understanding of the word "insurance"? Of course not. Nor is there any allegation that SquareTrade has done anything other than publish truthful information. *Gomez-Jimenez*, 103 A.D.3d at 17; *Andre Strishak,* 300 A.D.2d at 609-10.

Courts apply two key principles in considering false advertising cases brought under Sections 349 and 350 of the GBL: (1) that the "primary evidence" in a false advertising case is the advertising itself, and (2) that "context is crucial." *Fink*, 714 F.3d at 742; *Stewart v. Riviana Foods Inc.*, No. 16-CV-6157 (NSR), 2017 WL 4045952, at *9 (S.D.N.Y. Sept. 11, 2017) (same); *Brumfield v. Trader Joe's Co.*, No. 17 CIV. 3239 (LGS), 2018 WL 4168956, at *2 (S.D.N.Y. Aug. 30, 2018) (same). In this case, both principles weigh in favor of dismissal because Abbott admits to seeing the "advertisement itself"—the brochure—but disclaims reading it and does not attach it to the FAC. Accordingly, she has failed to provide the "primary evidence" that would support her false advertising claim. And, the single word that she alleges is a misrepresentation about the payment

terms of the Protection Plan—"protection"—appears on the cover of a brochure that contains the full terms and conditions inside it, and makes reference to multiple websites where the terms and conditions are readily available. RJN, Ex. A-F; Siciliano Decl. ¶¶ 3-5, Exs. A-F. Thus, when the alleged misstatement (the word "protection") is considered in context (the brochure containing the terms and conditions), its meaning is clear and it cannot form the basis for Abbott's claim. *See infra*, at II.C (terms and conditions call for SquareTrade to provide *replacement cost* of a new product of equal features and functionality, up to the Coverage Amount). Plaintiff's only other allegation is that "during her checkout, the Walmart clerk also described the SquareTrade Protection Plan as a 'warranty' for [her] products." FAC ¶ 64. But the term "warranty" connotes the *existence* of written terms—no companies offer oral warranties, and all warranties have limitations and exclusions regarding what is covered and the extent of coverage.

There are any number of ways by which a company can provide "protection," and the First Amended Complaint shows that SquareTrade did provide coverage for each one of Abbott's claims. *Id*. ¶¶ 68, 73-74, 78-79. Like the plaintiff in *Andre Strishak* who received an ink cartridge that was different from the one he expected, Abbott's allegation is merely that the "protection" and "warranty" she purchased from SquareTrade was different from her specific, subjective expectation (which no one promised her, and which she never conveyed to SquareTrade). This fails to state a claim for violation of GBL §§ 349 or 350, and SquareTrade requests that the claims be dismissed.

## II. THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED FOR INDEFINITENESS AND LACK OF MUTUAL ASSENT TO MATERIAL TERMS.

There is no question that SquareTrade and Abbott agreed to enter into a contract. Both parties *performed* under what they believed to be the contract. However, to state a claim for breach of contract, Abbott must allege facts that plausibly show that SquareTrade breached the contract *she* alleges was formed between the parties—an implied contract comprised solely of the single word "protection" on a brochure she did not review, and the oral statement "warranty"—obligating SquareTrade to pay her amounts equal to the purchase price of covered items. She fails to do so, because the contractual term she asserts SquareTrade breached is too indefinite to be enforceable

against SquareTrade, and because the Complaint makes clear that the parties assented to different terms.

### A. New York Law Applies to the Breach of Contract Claim.

In a contract action, California courts follow the Restatement (Second), Conflicts of Laws and apply the law of the state having the most significant relationship to the transaction and the parties. *See Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464 (1992); *Precision Safety Innovations, Inc. v. Branson Ultrasonic Corp.*, No. CV 04-6981 GPS, 2005 WL 5801513, at *4 (C.D. Cal. Aug. 4, 2005). The state with the most significant relationship to the transaction is determined by looking to (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. *See* Restatement (Second) of Conflict of Laws § 188 (Am. Law Inst. 1977). In this case, factors (a) through (d) point to New York, and factor (e) is neutral, and so New York contract law governs Abbott's breach of contract claims.

To state a claim for breach of contract under New York law, a plaintiff must allege facts that plausibly show (1) the formation of a contract, (2) plaintiff's performance, (3) defendant's failure to perform, and (4) damages resulting thereby. *Johnson v. Nextel Commc'ns, Inc.,* 660 F.3d 131, 142 (2d Cir. 2011). The existence of the agreement depends upon allegations demonstrating, *inter alia*, the parties' mutual assent to the terms. *Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 427-28 (2d Cir. 2004) (citations omitted).

### B. The Breach of Contract Claim Should Be Dismissed Because the Alleged Promise Is Too Indefinite to be Enforceable.

It is well settled that "for a contract to be valid, the agreement between the parties must be definite and explicit so their intention may be ascertained to a reasonable degree of certainty." *Foros Advisors LLC v. Digital Globe, Inc.*, 333 F. Supp. 3d 354, 360 (S.D.N.Y. 2018). "Even if the parties believe that they are bound, if the terms of the agreement are so vague and indefinite that there is no basis or standard for deciding whether the agreement had been kept or broken, or to

fashion a remedy, and no means by which such terms may be made certain, then there is no enforceable contract." *Id*. (citing *Candid Prods., Inc. v. Int'l Skating Union*, 530 F. Supp. 1330, 1333 (S.D.N.Y.1982)). "[W]hen a plaintiff cannot point to 'sufficient specific, concrete, factual representations such that they could be interpreted to supply the terms of an implied contract,' it has failed to state a cause of action." *Hudson & Broad, Inc. v. J.C. Penney Corp.*, No. 12 Civ. 3239 (KBF), 2013 WL 3203742, at *3 (S.D.N.Y. June 18, 2013), *aff'd*, 553 F. App'x 37 (2d Cir. 2014) (citation omitted)).

In *Fink v. Time Warner Cable*, the plaintiffs alleged that they were induced to subscribe to Time Warner's "Road Runner High Speed Online internet service," by advertisements describing the service as having "blazing speed" and being "up to 3 times the speed of most standard DSL packages." 810 F. Supp. 2d 633, 637 (S.D.N.Y. 2011), *modified on reconsideration on other grounds*, 2011 WL 5121068 (S.D.N.Y. Oct. 28, 2011). The plaintiffs asserted breach of contract claims on the theory that they "entered into a contract with Defendant to pay monthly fees in exchange for its high-speed internet service, that they performed their obligations under the contract by paying their monthly fees, and that Defendant breached the contract [by throttling the speed of the internet service]." *Id*. at 644. The *Fink* court reasoned that the plaintiffs had not alleged "the essential terms of the contract that they allege Defendant has breached with requisite specificity" and dismissed the claim. *Id* at 645. In response to the argument that the promise was for "high speed" internet, the court reasoned that "[t]his simple characterization of the nature of the promise, and the equally simplistic allegations that Defendant failed to perform, are insufficient to make the requisite plausible factual demonstration of the basis of Plaintiffs' claim." *Id*.

Many other courts have dismissed claims for breach of contract on similar grounds. *See, e.g.*, *Nuevos Aires Shows LLC v. Buhler*, No. 19 Civ. 1822 (NRB), 2020 WL 1903995, at *4 (S.D.N.Y. Apr. 17, 2020) (dismissing breach of contract claim based on defendant's alleged promise that plaintiff would "serve as the exclusive and direct agent for [performance artist]" because the alleged terms "fail to assert plaintiff's specific obligations . . . such that the Court could determine whether plaintiff has performed" and "fail to assert what compensation or fees the . . .

defendants would owe plaintiff for its performance, such that the Court could remediate a breach."); *Full Circle United, LLC v. Skee-Ball, Inc.*, No. 11 CV 5476 (LB), 2014 WL 12829195, at *6 (E.D.N.Y. May 13, 2014) (dismissing breach of contract claim brought by skee-ball league operator against competing league because alleged promise of "noninterference" with the plaintiff's "pursuing" its business did not constitute reasonably certain material terms of a contract).[2]

Abbott alleges a contract comprised of the word "protection" printed on the cover of a brochure (that she did not review) and the verbal description of the plan as a "warranty." That's it. As in *Fink* and the other cases described above, this is merely a "simple characterization of the nature of the promise," and there are no specific terms of the agreement for the Court to enforce. 810 F. Supp. 2d at 645. What terms of this promise can SquareTrade be said to have breached? What should the Court look to to enforce the parties' respective obligations against one another?

Abbott is not asking the Court to enforce a mutual agreement between the parties. She is asking the Court to impose her subjective and unreasonable interpretation of the single term "protection" on the cover of brochure that she did not read, and the verbal statement "warranty." That does not state a claim for breach of contract, and SquareTrade requests that the claim be dismissed.

---

[2] *See also, e.g.*, *Freedman v. Pearlman*, 271 A.D.2d 301, 303 (N.Y. App. Div. 2000) (dismissing claim based on statements that financial advisor had been promised "fair compensation" and that proceeds from transactions would be "equitably" divided); *Ridenhour v. Bryant*, No. 1:19-CV-2587 (ALC), 2020 WL 1503626, at *5 (S.D.N.Y. Mar. 29, 2020) (granting motion to dismiss because "value added" and "portion" are the types of vague terms that New York courts have routinely determined to be too indefinite); *Woodhill Elec. v. Jeffrey Beamish, Inc.*, 73 A.D.3d 1421, 1422 (N.Y. App. Div. 2010) (dismissing claim for breach of contract brought by subcontractor against general contractor because the alleged contract did not "describe what was required of defendant other than to pay for the work" and thus did not "set forth the particular terms of the contract upon which plaintiff's claim is based."); *Candid Prods., Inc.*, 530 F. Supp. at 1336 (dismissing breach of contract claim based on obligation to negotiate in good faith when "the vague and uncertain nature of the obligation to negotiate" did not provide the court with any "standards by which to judge the parties' performance").

**C.     The Breach of Contract Claim Should Be Dismissed Because There Was No Meeting of the Minds as to SquareTrade's Coverage Obligations.**

The Complaint makes clear that the parties had different understandings regarding the scope of SquareTrade's coverage obligations. Plaintiff alleges that she "reasonably believed" that SquareTrade would repair, or replace, or "cover the full purchase price" of her covered devices. FAC ¶ 64. SquareTrade, on the other hand, believed that its obligation was to pay *replacement cost* of a new product of equal features and functionality, up to the Coverage Amount (defined as "the purchase price of the Product(s), exclusive of taxes and fees"), as set forth in the written terms and conditions contained in the brochures that were available in the store. RJN, Exs. A, B, C; Siciliano Decl. ¶ 3 Exs. A, B, C.

The question, then, is: what is the result under New York contract law when the Parties have reached an agreement but have different understandings as to the terms? The answer is supplied by Section 20 of the Restatement (Second) of Contracts, which New York courts have applied to this scenario. *See Jordan Panel Sys., Corp. v. Turner Constr. Co.*, 45 A.D.3d 165, 172-73 (N.Y. App. Div. 2007) (adopting and applying § 20 of the Restatement). The Restatement in turn explains that where the parties misunderstand their respective obligations, the contract may only be enforced according to the view of one party if the other party knew or had reason to know of the first party's understanding. Restatement (Second) of Contracts § 20(2)(a), (b).

Here, the FAC does not allege that SquareTrade knew of Abbott's subjective interpretation, nor does it allege facts that, if proven, would plausibly show that SquareTrade had "reason to know" of her subjective belief. If anything, the FAC reflects that Abbott had reason to know of SquareTrade's belief that the contract was governed by written terms and conditions—she concedes that she repeatedly saw (but declined to pick up, review or read) the brochure that contained terms and conditions—meaning that the written terms are operative. Either way, Abbott has not plausibly alleged that there was a meeting of the minds regarding the contract that she asserts is the basis for her breach of contract claim, and the claim must therefore be dismissed.

1
2
### III. THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED BECAUSE ABBOTT HAS NOT ALLEGED FACTS SHOWING WHY RETENTION OF ANY BENEFIT BY SQUARETRADE WOULD BE UNJUST.

3 Under New York law, an unjust enrichment claim is available "only in unusual situations
4 when, though the defendant has not breached a contract nor committed a recognized tort,
5 circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello*
6 *v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). "Where a deceptive trade practices
7 claim fails for failure to allege deception, an unjust enrichment claim fails, too." *Kennedy v.*
8 *Mondelez Glob. LLC*, No. 19-CV-302-ENV-SJB, 2020 WL 4006197, at *15 (E.D.N.Y. July 10,
9 2020) (citation omitted). The elements of unjust enrichment are that (1) the defendant was enriched;
10 (2) the enrichment was at the plaintiff's expense; and (3) the circumstances are such that in equity
11 and good conscience the defendant should return the money or property to the plaintiff. *Universal*
12 *City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 79 (2d Cir. 1986) (applying New York law).

13 In *McVetty v. TomTom N. Am., Inc.*, the plaintiff asserted claims for unjust enrichment,
14 breach of warranty and violation of the New York GBL, on the basis the Global Positioning System
15 product was marked as coming with "Lifetime Maps and/or Traffic Updates" but subsequently
16 stopping being updated. No. 19 CV 4908 (NSR), 2021 WL 965239, at *1-2 (S.D.N.Y. Mar. 13,
17 2021). The Court dismissed the GBL claims on the basis that the term "lifetime" standing alone was
18 not deceptive as a matter of law. *Id*. at *4. Turning to the unjust enrichment claims, the Court
19 dismissed them because Plaintiff "failed to allege that any gains would be unjust" given that a
20 reasonable consumer would not be misled or deceived by the term "lifetime." *Id.* at *8; *See also,*
21 *e.g., Wynn,* 2021 WL 168541, at *7 ("Plaintiffs' unjust enrichment claim also fails because, as
22 discussed above, Plaintiffs have not plausibly alleged any misleading or incorrect statements by the
23 Defendants"); *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 706 (2d Cir. 2020)
24 (summary order) ("[T]he unjust enrichment claim here fails for the same reasons that [plaintiff's]
25 other claims do – namely, that she has not alleged a fraud that would render Florida's Natural's
26 enrichment 'unjust.'"); *Fink,* 810 F. Supp. 2d at 646 (dismissing unjust enrichment allegations

27
28

because "the general advertising claims and amorphous, unmeasurable promises on which they are based, are not sufficient to state a claim for unjust enrichment.").

In this case, as discussed *supra*, the mere fact that an unread brochure bore the word "protection" and a sales clerk used the term "warranty" would not mislead a reasonable consumer, particularly where the actual brochure, if read, makes the terms of the Protection Plan clear. *See supra*, Part I. Abbott's claim for unjust enrichment should therefore be dismissed for the same reasons as those dismissed in *McVetty*, *Wynn*, *Axon* and *Fink*. Furthermore, even accepting the alleged facts at true, they do not warrant equitable relief. Abbott alleges that she paid SquareTrade a total of **$27** for four Protection Plans. FAC ¶¶ 65, 69, 74, 76. She alleges that SquareTrade paid her **$268.12** for the four claims that she filed under those Plans, and she does not allege that she was required to return any of the allegedly broken items. *Id*. ¶¶ 68, 74, 79. Abbott has thus failed to allege that SquareTrade retained any gains from its transactions with her, and certainly has not alleged that any were retained at her expense. SquareTrade requests that Abbott's claims for unjust enrichment be dismissed.

## CONCLUSION

For the foregoing reasons, SquareTrade requests that Plaintiff Abbott's claims for violation of GBL Sections 349 and 350, breach of contract, and unjust enrichment be dismissed.

Dated: May 21, 2021                             ARNOLD & PORTER KAYE SCHOLER LLP

                                                By:  */s/ Douglas A. Winthrop*
                                                      DOUGLAS A. WINTHROP

                                                Attorneys for Defendant
                                                SQUARETRADE, INC.