UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SHUMAN, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>SQUARETRADE INC.,<br><br>        Defendant. | Case No.  20-cv-02725-JCS<br><br>**ORDER GRANTING MOTIONS TO DISMISS, DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 63, 64, 67 |

## I.    INTRODUCTION

This putative class action was initiated by Plaintiff Michael Shuman, who alleges that Defendant SquareTrade, Inc. ("SquareTrade"), which sells service contracts for the protection of consumer goods, consistently fails to provide consumers with the full terms and conditions of the contract at the time of purchase and systematically pays reimbursement in an amount that is less than the purchase price of the covered item when claims are filed.   After the Court granted in part and denied in part SquareTrade's motion to dismiss, dkt. 47, a First Amended Class Action Complaint ("FACC") was filed adding Tommy Gonzales and Kathleen Abbott as plaintiffs. Presently before the Court are motions to dismiss the claims of the two new plaintiffs under Rule 12(b)(6) of the Federal Rules of Civil Procedure (dkt. 63 ("Gonzales Motion"); dkt. 64 ("Abbott Motion")) and a motion for summary judgment on Plaintiff Michael Shuman's remaining claims ("Shuman Motion").  A hearing on the motions was held on October 29, 2021 at 9:30 a.m.  The Court's rulings are set forth below.[1]

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

## II.    BACKGROUND

### A.  Michael Shuman[2]

In the original complaint, Shuman asserted claims under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*., the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, and California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200, *et seq*.).  He also asserted claims for breach of contract and unjust enrichment.  In response to SquareTrade's motion to dismiss, Shuman stipulated to the dismissal of the Magnusson-Moss Warranty Act and Song-Beverly Consumer Warranty Act claims.  *See* dkt. 47 at 1.  The Court granted SquareTrade's motion to dismiss as to the UCL claim, finding that Pennsylvania law rather than California law governed Shuman's claims.  *Id.* at 7-11.  It denied SquareTrade's motion as to the unjust enrichment claim, concluding that while an unjust enrichment claim cannot be established where there is an express contract that covers the same subject matter, Shuman could plead the two theories in the alternative.  *Id.*  at 11-12.

SquareTrade now seeks entry of summary judgment as to Shuman's two remaining claims, for breach of contract and unjust enrichment.  Shuman Motion at 1.   The primary argument SquareTrade advances in its summary judgment motion is that Shuman's claims fail because they are premised on the allegation that SquareTrade promised him that he would receive the purchase price of his bag if he filed a claim under the protection plan and there is no evidence that such a promise was ever made to Shuman, either in writing or orally.  *Id.*  To the contrary, SquareTrade contends, Shuman's deposition testimony confirms that the sales clerk who sold Shuman the protection plan told him the plan covered repair or replacement and that he would be "made whole" if he filed a claim but said nothing about reimbursement. *Id.* at 4-5 (citing Declaration of George Langendorf ("Langendorf Decl."), Ex. A (Shuman depo.) at 125-126, 165-166, 180).  Shuman further testified that he understood that "made whole" meant repair, replacement or reimbursement and that payment of the replacement cost was a way to make him whole.

---

[2] Because the factual allegations upon which Shuman's claims are based were described in the Court's order on the motion to dismiss, dkt. 47, and the allegations in the FACC are largely the same as to Shuman, the Court does not repeat them here.

United States District Court
Northern District of California

Langendorf Decl., Ex. A at 180.

Plaintiffs do not dispute that neither the sales clerk who sold Shuman the SquareTrade protection plan nor the brochure he was given after he purchased the plan expressly promised that he would be paid the full purchase price.  They contend, however, that SquareTrade's argument fails because it mischaracterizes the theory of his breach of contract claim, arguing that "the complaint makes clear that SquareTrade can provide product protection in three forms (repair, replacement, or reimbursement), and that since replacement is one of those options, any reimbursement amount can be equal to either purchase price or replacement price (if the latter is cheaper)."  Opposition at 7.  Plaintiffs assert that "[t]his description of SquareTrade's obligation is stated explicitly in the complaint's breach-of-contract cause of action[,]" which alleges that "SquareTrade offered Plaintiffs and Class members product protection that provided reimbursement of purchase price (*or reimbursement of the cost of replacing the product), repair, or replacement . . . .*" *Id.* (quoting FACC ¶ 92) (emphasis added in Opposition brief).  Plaintiffs further contend SquareTrade's argument that Shuman was not promised he would receive the purchase price has no bearing on his unjust enrichment claim, which does not depend on any contractual obligation on the part of SquareTrade. *Id.*

In its reply brief, SquareTrade argues that Shuman is trying to "pivot" to a new theory to avoid summary judgment, which should not be permitted because it would be unfair and prejudicial to SquareTrade at this stage of the case.  Reply at 2.  Even if the Court were to allow this new theory, SquareTrade contends, it fails because Shuman "has not alleged that his bag was not available to be purchased for the amount he received from SquareTrade." *Id.*  Finally, SquareTrade requests that if the Court allows Shuman to go forward based on his "new theory" it at least hold that there is no disputed issue of material fact that Shuman was not promised his purchase price." *Id.*

### B.   Tommy Gonzales

The FACC makes the following factual allegations as to Plaintiff Tommy Gonzales:

> 51. On August 16, 2020, Plaintiff Tommy Gonzales purchased a belt sander online for $38, and a SquareTrade Protection Plan for the sander for $4.99. Plaintiff Gonzales purchased the belt sander and

United States District Court
Northern District of California

SquareTrade Protection Plan on eBay, from his home in Bakersfield, California.

52. To purchase the SquareTrade Protection Plan for the sander, Plaintiff Gonzales clicked a box on the product webpage for the sander to add a "1-year protection plan from SquareTrade - $4.99" to his purchase. Plaintiff Gonzales then proceeded to the "Buy It Now" page.

53. The webpage depicting Plaintiff Gonzales' shopping cart, before he finalized the transaction, included the belt sander and the Protection Plan, which was named "1-year SquareTrade Warranty (Home Improvement, $30-39.99)." On that webpage, Plaintiff Gonzales clicked on the product link for the SquareTrade Protection Plan. The link took Plaintiff Gonzales to a page describing the Protection Plan, promising his sander would be "covered," subject to "protection from common malfunctions," and that the coverage would include "100% parts and labor" and "no deductibles."

54. Consistent with the content on the eBay website described above, Plaintiff Gonzales reasonably believed that his SquareTrade Protection Plan would cover the full purchase price of the sander if the device malfunctioned within the year and could not be repaired or replaced.

55. In late November 2020, Plaintiff Gonzales' sander overheated and ceased functioning.

56. At this time, Plaintiff Gonzales visited SquareTrade's website for the first time to try to file a claim online. Plaintiff Gonzales was unable to successfully file a claim online, and called SquareTrade customer service for help. A SquareTrade customer service representative told Plaintiff Gonzales to search his email for information to file his claim. Plaintiff Gonzales did not recall previously receiving any emails regarding his SquareTrade Protection Plan. When he searched his email at the advice of the customer service representative, he still could not find any emails regarding the Protection Plan.

57. Plaintiff Gonzales called SquareTrade's customer service line again, noting he could not find any relevant information regarding his Protection Plan but still wanted to file a claim. At this time, a SquareTrade customer service representative told Plaintiff Gonzales that SquareTrade would process the claim based on the information he had conveyed by phone.

58. Plaintiff Gonzales called SquareTrade customer service a third time approximately one week later, asking for an update regarding his claim status because he had received no further updates. On this call, Plaintiff Gonzales was told that his claim had been processed and approved, but that his resolution would be "pro-rated" to only $32.64 – 85.8% of the product's original purchase price ($38) – to account for depreciation. Plaintiff Gonzales was told this was pursuant to a Fast Cash program. Plaintiff Gonzales responded that he thought the SquareTrade Protection Plan promised "100% protection" of his purchase price. The customer service representative responded to

4

Plaintiff Gonzales that the Protection Plan did not work like that, and that this was the only option available to Plaintiff Gonzales.

59.   At no time was Plaintiff Gonzales offered an opportunity for repair, replacement, or alternative reimbursement options as a resolution to his claim, nor was he informed that should the amount provided be insufficient to secure a replacement that SquareTrade would provide a supplemental payment.

60.   Plaintiff Gonzales was dissatisfied with this resolution and did not believe it was consistent with what he had been promised under the Protection Plan. Plaintiff Gonzales also did not understand or receive an explanation for the amount of the sander's depreciation when his sander had broken only months after purchase. However, given the customer service representative's firm response that this reduced reimbursement was his only option under the Protection Plan, Plaintiff Gonzales felt compelled to accept it.

61.   In mid to late January 2021, Plaintiff Gonzales received a reimbursement check from SquareTrade. The check was dated January 8, 2021, and contained reimbursement for only a portion of the sander's purchase price: $32.64.

62.   Plaintiff Gonzales felt misled and is not currently inclined to purchase additional SquareTrade protection plans, but he continues to purchase consumer products that could be covered by a SquareTrade protection plan, and would purchase additional SquareTrade protection plans in the future in the event that SquareTrade's reimbursement practices were to be reformed to eliminate the unlawful practices discussed in this complaint.

FACC ¶¶ 51-62. Gonzales asserts the following claims in the FACC: 1) breach of contract; 2) violation of California's UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*; and 3) unjust enrichment.

In its motion to dismiss, SquareTrade challenges Gonzales's UCL claim on the grounds that: 1) no reasonable consumer would interpret the terms describing the protection plan Gonzales alleges he saw to require that SquareTrade pay the purchase price of the product in the event of a covered claim; 2) Gonzales has an adequate remedy at law based on his breach of contract claim seeking expectation damages and therefore cannot seek restitution under the UCL; 3)  the "restitution" Gonzales seeks under the UCL is actually expectation damages, which is a legal remedy and therefore unavailable under the UCL; and 4) Gonzales has not alleged facts showing he has standing to seek injunctive relief, which is the only other remedy available under the UCL. *Id.*

SquareTrade contends the breach of contract claim is insufficiently pled because the contract that Gonzales alleges exists is too indefinite to be enforced and he has alleged no facts

showing mutual assent to SquareTrade's alleged coverage obligations.  *Id.* at 3.  Finally, it argues

that Gonzales's unjust enrichment claim should be dismissed "because it is premised entirely on

the same facts that are insufficient to state a UCL claim, and because he has not alleged that

anything unjust has occurred, given that SquareTrade provided coverage for his claim in an

amount that exceeds what he paid for her Protection Plans."  *Id.*  at 3.

### C.    Kathleen Abbott

The FACC makes the following factual allegations as to Plaintiff Kathleen Abbott:

> 63.   On October 20, 2018, Plaintiff Kathleen Abbott purchased a
> Microsoft X-Box game console controller for $49.88, and her first
> Turtle Beach X-Box surround sound gaming headset for $87.00.
> Plaintiff Abbott made both purchases at a Walmart store in Cicero,
> NY.
>
> 64.   As Plaintiff Abbott checked out, the Walmart clerk asked if she
> wanted to buy a SquareTrade Protection Plan for her purchases.
> Plaintiff Abbott had seen SquareTrade brochures on the Walmart
> electronics department counter which promised, on their cover, terms
> such as "protection" of products. During her checkout, the Walmart
> clerk also described the SquareTrade Protection Plan as a "warranty"
> for Plaintiff Abbott's products.
>
> 65.   Plaintiff Abbott agreed and purchased a 2-year protection plan
> for the X-Box controller for the price of $4, and a 2-year protection
> plan for the headset for the price of $8.
>
> 66.   Consistent with the conversation and brochure descriptions
> described above, Plaintiff Abbott reasonably believed that her
> SquareTrade Protection Plan would cover the full purchase price of
> the controller and headset if either device malfunctioned within the
> following two years and could not be repaired or replaced.
>
> 67.   Plaintiff Abbott's first Turtle Beach headset began
> malfunctioning in March 2019. On March 8, 2019, Plaintiff Abbott
> filed a claim for coverage for the product by visiting the Walmart
> website and logging into her Walmart account, clicking the product,
> and clicking a "File a Claim" button next to the product. Plaintiff
> Abbott was then redirected to a login page at SquareTrade's website.
> She then clicked on a button that directed her to "manage" her claim.
> Defendant's website prompted Plaintiff Abbott to describe the
> problem with the product and the approximate start date of the
> problem she experienced. Plaintiff Abbott does not recall seeing any
> other windows, or any options regarding possible claim resolution.
>
> 68.   Plaintiff Abbott's claim was approved the same day, and
> SquareTrade notified her that a check would be sent including her
> reimbursement. Approximately a week later, Plaintiff Abbott
> received a check from SquareTrade for $87, the full purchase price of
> the Turtle Beach headset. This resolution was consistent with Plaintiff

6

Abbott's understanding of what she had been promised under the Protection Plan.

69.  On March 10, 2019, Plaintiff Abbott purchased a second Turtle Beach headset from Walmart to replace the previously broken headset for $87. Plaintiff Abbott was again offered a SquareTrade Protection Plan by the Walmart clerk at checkout, who again described the plan as a "warranty." Plaintiff Abbott also saw similar SquareTrade brochures describing the plan as offering "protection" for products. Plaintiff Abbott bought a two-year SquareTrade Protection Plan for $8.

70.  Plaintiff Abbott's XBox controller and second Turtle Beach headset began malfunctioning on or around April 4, 2020, and within a few days, both broke.

71.  On April 28, 2020, Plaintiff Abbott submitted claims for coverage for both the controller and second Turtle Beach headset under the SquareTrade Protection Plans. Plaintiff Abbott again filed her claim by visiting the Walmart website and logging into her Walmart account. In her Walmart account, a dropdown window under a "Services" tab listed her active SquareTrade Protection Plans. In this window on the Walmart website, Plaintiff Abbott was able to click a button titled "File a Claim" next to the broken products with affiliated SquareTrade Protection Plans—the controller and second Turtle Beach headset. After confirming her plan was purchased after August 1, 2018, Plaintiff Abbott was then directly taken to a login page at SquareTrade.

72.  Plaintiff Abbott logged into the SquareTrade website from this window. She then clicked on a button that directed her to "manage" her claim. Defendant's website prompted Plaintiff Abbott to describe the problem with the product and the approximate start date of the problem she experienced. Plaintiff Abbott does not recall seeing any other windows, or any options regarding possible claim resolution.

73.  Plaintiff Abbott received an email that her claims were approved for Fast Cash that same day, and shortly thereafter, she received an email confirmation that she would get an e-gift card to Walmart as her reimbursement under the Protection Plan.

74.  Upon receiving them, however, Plaintiff Abbott saw that the e-gift card reimbursements provided by SquareTrade were less than what she was owed, only a portion of the purchase price for the covered items. Plaintiff Abbott received a gift card of only $74.72 for the gaming headset (or 85.8% of the purchase price, $87.00), and a gift card of only $42.84 for the controller (or 85.8% of the purchase price, $49.88).

75.  Plaintiff Abbott was surprised and displeased at this lower reimbursement, which was not consistent with what she understood had been promised under the Protection Plan.

76. On January 5, 2020, Plaintiff Abbott purchased a different, lower-priced gaming headset made by Logitech for $74 at the Walmart store in Cicero, New York. At check-out, she purchased a two-year

1

2

3

SquareTrade Protection Plan for the price of $7. As with prior purchases, the Walmart clerk described the plan as a "warranty," and the front of SquareTrade's brochures described the plan as "protection" for products. Plaintiff Abbott believed these representations still suggested she should receive either full purchase price reimbursement, replacement or repair under the Protection Plan.

4

77.   On March 7, 2021, the Logitech gaming headset broke.

5

6

7

8

78.   On March 10, 2021, Plaintiff Abbott filed a claim under her Protection Plan with SquareTrade, in the same manner described above: she first logged into her Walmart account, which redirected her to a SquareTrade login to "manage" her claim. After inputting the date and nature of the malfunction—but receiving no other options for repair, replacement, or other resolution—Plaintiff Abbott received notice her claim was approved the same day.

9

10

11

12

79.   Plaintiff Abbott received an e-gift card from SquareTrade as her reimbursement under the Protection Plan. Plaintiff Abbott was again disappointed to see the reimbursement was only for $63.56, or only 85.8% of the original purchase price of the headset ($74). Plaintiff Abbott at this point realized that SquareTrade's practice was to provide only partial reimbursement despite representing full protection when offering Protection Plans.

13

14

15

16

17

80.   As a result of her discovery that SquareTrade underpays claims, Plaintiff Abbott has reduced her rate of purchasing of SquareTrade protection plans. She currently owns two products covered by SquareTrade protection plans, however, and would thus benefit from an injunction prohibiting SquareTrade from persisting with the unlawful practices described in this complaint. In addition, Plaintiff Abbott would purchase additional SquareTrade protection plans in the future in the event that SquareTrade's reimbursement practices were to be reformed to eliminate its unlawful practices.

18

FACC ¶¶ 63-80.  In the FACC, Abbott asserts the following claims:  1) breach of contract; 2)

19

violation of N.Y. Gen. Bus. Law §§ 349, 350 ("GBL claims"); and 3) unjust enrichment.

20

SquareTrade argues that all of Abbott's claims should be dismissed because they are

21

insufficiently alleged.  Abbott Motion at 2-3.  First, it contends the GBL claims fail because a

22

reasonable consumer would not conclude based on seeing the word "protection" on the cover of a

23

brochure (without reading the brochure) and hearing a clerk describe the protection plan as a

24

"warranty" that the protection plan entitled a claimant to the full purchase price of the covered

25

product.  *Id*. at 1 (citing FACC ¶ 64).   Moreover, SquareTrade contends, the terms and conditions

26

that were inside the brochure – of which SquareTrade requests the Court take judicial notice –

27

negate Abbott's claim.  *Id.*   Similarly, SquareTrade asserts, the words "protection" and

28

"warranty" are too indefinite to give rise to an enforceable contract and therefore that claim fails

8

1  as well. *Id.* at 2.  SquareTrade argues further that the unjust enrichment claim fails to state a

2  claim because Abbott alleges no enrichment on the part of SquareTrade (which allegedly paid out

3  $268.12 under a policy that cost Abbott $27) and no unjust conduct. *Id.* at 2-3.

4  **III.     THE MOTIONS TO DISMISS**

5      **A.  Legal Standards under Rule 12(b)(6)**

6      A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure

7  for failure to state a claim on which relief can be granted.  "The purpose of a motion to dismiss

8  under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp.*

9  *Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage

10  is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which

11  sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing

12  that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

13      In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and

14  takes "all allegations of material fact as true and construe[s] them in the light most favorable to the

15  non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

16  Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that

17  would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

18  1990).  A complaint must "contain either direct or inferential allegations respecting all the material

19  elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v.*

20  *Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101,

21  1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

22  of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

23  (quoting *Twombly*, 550 U.S. at 555).  "[C]ourts 'are not bound to accept as true a legal conclusion

24  couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S.

25  265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

26  'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)

27  (alteration in original).  Rather, the claim must be "'plausible on its face,'" meaning that the

28  plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable

United States District Court
Northern District of California

9

1    inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S.

2    at 570).

3    **B.    Gonzales Motion**

4    **1.   The Breach of Contract Claim**

5    SquareTrade challenges Gonzales's breach of contract claim on the basis that the contract

6    alleged in the FACC is too indefinite for the Court to determine what the parties agreed to,

7    rendering it unenforceable.   Further, SquareTrade contends, to the extent Gonzales relied on the

8    handful of contract terms alleged in the FACC to conclude that the protection plan he purchased

9    from SquareTrade would entitle him to the full purchase price of the covered product, that

10   understanding was based on his own subjective belief that is not binding on SquareTrade.

11   Because the allegations in the FACC setting forth the terms of the alleged contract between

12   Gonzales and SquareTrade provide only isolated words plucked from the description of the

13   protection plan that Gonzales allegedly read before purchasing the plan, the Court concludes that

14   as alleged, the contract is indefinite and therefore unenforceable.

15   "Under California law, a contract will be enforced if it is sufficiently definite (and this is a

16   question of law) for the court to ascertain the parties' obligations and to determine whether those

17   obligations have been performed or breached." *Ersa Grae Corp. v. Fluor Corp*., 1 Cal. App. 4th

18   613, 623 (1991) (citing *Boyd v. Bevilacqua*, 247 Cal. App.2d 272, 287 (1966); *Hennefer v.*

19   *Butcher*, 182 Cal.App.3d 492, 500-501 (1986);  *Robinson & Wilson, Inc. v. Stone*, 35 Cal.App.3d

20   396, 407 (1973)). "Stated otherwise, the contract will be enforced if it is possible to reach a fair

21   and just result even if, in the process, the court is required to fill in some gaps." *Id.* (citing *Okun v.*

22   *Morton*, 203 Cal.App.3d 805, 817 (1988));  *see also Ladas v. California State Auto. Assn*., 19 Cal.

23   App. 4th 761, 768 (1993) (holding that employer's promise to "pay plaintiffs at the same level as

24   other similarly situated insurance sales representatives so that plaintiffs can maintain a

25   compensation parity in keeping with industry standards" was unenforceable because it "provide[d]

26   no rational method for determining breach or computing damages.").

27   Plaintiffs allege that when Gonzales purchased a sander on eBay he clicked a box  next to

28   the words "1-year protection plan from SquareTrade -- $4.99[,]" and that before finalizing the

United States District Court
Northern District of California

purchase he "clicked on the product link for the SquareTrade Protection Plan[,]" which took him to "a page describing the Protection Plan, promising his sander would be 'covered,' subject to 'protection from common malfunctions,' and that the coverage would include '100% parts and labor' and 'no deductibles.' " FACC ¶¶ 52- 53.  Based on these scant allegations, Plaintiffs allege that Gonzales "reasonably believed that his SquareTrade Protection Plan would cover the full purchase price of the sander if the device malfunctioned within the year and could not be repaired or replaced."  FACC ¶ 54.  In the breach of contract claim itself, the theory of the claim is slightly broader, alleging that "SquareTrade, on the one hand, and Plaintiffs . . . formed contracts . . . through which SquareTrade offered Plaintiffs and Class members product protection that provided reimbursement of purchase price (*or reimbursement of the cost of replacing the product*)."  FACC ¶ 92 (emphasis added).  Both theories fail, however, because the FACC contains no specific allegations reflecting an agreement about the scope of "coverage" or "protection" under the contract allegedly formed between Gonzales and SquareTrade with respect to what (if any) payment would be provided if a covered product could not be repaired or replaced. Because the allegations relating to the contract between Gonzales and SquareTrade do not provide a basis for the Court to determine whether a breach has occurred or to provide a rational basis for computing damages, the claim fails on the basis of indefiniteness.[3]  Plaintiffs will be given leave to amend to allege more specific facts about the contract alleged to exist between Gonzales and SquareTrade and how the alleged contract was breached.

### 2.  The UCL Claim

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. and Prof. Code § 17200.  Gonzales asserts his UCL claim under the "unfair" and the "fraudulent" prongs of the UCL.  *See* FACC ¶¶ 102-103.  SquareTrade contends Gonzales's claim

---

[3] Because the Court finds that the contract, as alleged, is indefinite as to the scope of coverage that would be provided to Gonzales, it does not reach SquareTrade's argument that there was not mutual assent to Gonzales "subjective" and "undisclosed" understanding of SquareTrade's coverage obligations.  *See* Gonzales Motion at 14.  That argument is based on the rule that "[o]rdinarily, absent fraud or mistake of fact, the outward manifestations or expression of consent . . . is controlling, i.e., mutual assent is gathered from the reasonable meaning of words and the acts of the parties, not from their unexpressed intentions or understanding."  *Merced Cty. Sheriff's Employee's Assn. v. Cty. of Merced*, 188 Cal. App. 3d 662, 672 (1987).

United States District Court
Northern District of California

1   under the UCL fails because:  1) a reasonable consumer would not have been deceived by the

2   promises Gonzales alleges were made to him; 2) Gonzales has not alleged that he does not have an

3   adequate remedy at law as to his claim for restitution and in any event, the "restitution" he seeks

4   is, in fact, an impermissible claim for damages; and 3) he has not alleged facts showing he has

5   standing to seek injunctive relief.

6          The Court rejects SquareTrade's argument that Gonzales has not alleged facts showing he

7   has standing to seek injunctive relief under the UCL.  Gonzales alleges SquareTrade offers

8   protection plans that cover many different products.  FACC ¶¶ 12-13.  He further alleges that he

9   "felt misled and is not currently inclined to purchase additional SquareTrade protection plans, but

10  he continues to purchase consumer products that could be covered by a SquareTrade protection

11  plan, and would purchase additional SquareTrade protection plans in the future in the event that

12  SquareTrade's reimbursement practices were to be reformed to eliminate the unlawful practices

13  discussed in this complaint." FACC ¶ 62.  These allegations are very similar to allegations that the

14  Ninth Circuit found were sufficient to establish standing to seek injunctive relief under the UCL in

15  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018).  *See also Elgindy v. AGA*

16  *Serv. Co.*, No. 20-CV-06304-JST, 2021 WL 1176535, at *6 (N.D. Cal. Mar. 29, 2021) (holding

17  that standing to seek injunctive relief under the UCL was sufficiently alleged where plaintiff

18  alleged that he "[would] purchase event tickets and airfare in the future and [would] be presented

19  with the option to insure those purchases through Defendants" and that he "desire[d] to insure his

20  event ticket purchases but, absent the injunctive relief sought, [would] not be able to determine

21  whether he [would] be charged a hidden fee or an unlawful mandatory agent's fee in addition to

22  the insurance premium."); *Tucker v. Post Consumer Brands, LLC*, No. 19-cv-03993-YGR, 2020

23  WL 1929368, at *6 (N.D. Cal. Apr. 21, 2020) ("Here, plaintiff has sufficiently alleged that he was

24  deceived by the front of the Honey Bunches of Oats packaging and that he may purchase the

25  cereal again in the future if the label is accurate. Absent injunctive relief, plaintiff would not know

26  whether honey is in fact a significant sweetener in defendant's product based on the front of the

27  cereal box. Nor is the onus on plaintiff to consult the ingredient list to try to discern this fact.");

28  *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 528 (N.D. Cal. 2018) (allegations that

United States District Court
Northern District of California

1   the plaintiffs would patronize Chipotle in the future if it had a non-GMO/GMO-free menu

2   sufficient to show standing to seek injunctive relief). Therefore, the Court concludes Gonzales has

3   adequately alleged standing to seek injunctive relief on his UCL claim.

4        Nonetheless, the Court concludes that Gonzales's UCL claim is insufficiently alleged

5   because he has not alleged a violation under either the "unfair" or the "fraudulent" prongs of the

6   UCL or that he does not have an adequate remedy at law.  Plaintiffs reject SquareTrade's

7   argument based on the "reasonable person" standard on the basis that that standard only applies to

8   UCL claims asserted under the "fraudulent" prong whereas Gonzales also asserts his UCL claim

9   under the "unfair" prong, which does not require a showing of deceptive conduct. Plaintiffs further

10  assert that Gonzales has adequately alleged a violation of the UCL under the "fraudulent" prong

11  because he has alleged sufficient facts to show that a reasonable consumer *would* have been

12  deceived by SquareTrade's promise of "protection" to consumers.  The Court finds both

13  arguments unpersuasive.

14       "California appellate courts disagree on how to define an 'unfair' act or practice in the

15  context of a UCL consumer action."  *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1204 (9th Cir.

16  2010). The Ninth Circuit has not resolved the question, waiting for the California Supreme Court

17  to do so.  *See In re Google Assistant Priv. Litig*., No. 19-CV-04286-BLF, 2021 WL 2711747, at

18  *20 (N.D. Cal. July 1, 2021).  It has, however, approved the use of two tests in consumer actions.

19  *In re Apple Inc. Device Performance Litig*., 347 F. Supp. 3d 434, 463–64 (N.D. Cal. 2018), on

20  reconsideration in part, 386 F. Supp. 3d 1155 (N.D. Cal. 2019) (citing *Lozano v. AT & T Wireless*

21  *Servs., Inc*., 504 F.3d 718, 736 (9th Cir. 2007)).  "First, the 'tethering test' requires 'that the public

22  policy which is a predicate to a consumer unfair competition action under the "unfair" prong of the

23  UCL must be tethered to specific constitutional, statutory, or regulatory provisions.' "  *Id*. (quoting

24  *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256 (2010) (quoting *Bardin v.*

25  *DaimlerChrysler Corp*., 136 Cal. App. 4th 1255, 1260 (2006)). "Second, the 'balancing test' asks

26  whether the alleged business practice 'is immoral, unethical, oppressive, unscrupulous or

27  substantially injurious to consumers and requires the court to weigh the utility of the defendant's

28  conduct against the gravity of the harm to the alleged victim.' "  *Id*. (quoting *Drum v. San*

United States District Court
Northern District of California

13

*Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256 (2010) (quoting *Bardin v. Daimler Chrysler Corp.*, 136 Cal. App. 4th 1255, 1260 (2006)). "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact" and therefore usually cannot be decided at the pleading stage of a case.   *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007).

Plaintiffs contend Gonzales has satisfied both tests for unfair conduct under the UCL for the purposes of a motion to dismiss.  Under the balancing test, Plaintiffs contend the harm arising from SquareTrade's conduct is the systematic underpayment of customer claims by 14.2%. Opposition at 13. In particular, Plaintiffs point to their allegations in the FACC that in 2018, SquareTrade implemented its new "Fast Cash" program under which it began systematically reimbursing consumers only approximately 85% of the covered product's purchase price, "regardless of the actual value of the product, when it was purchased, or its cost of replacement." *Id.*  (citing FACC p¶ 3, 21-28).  On the other side of the equation, there is "no apparent utility" to offset this harm, Plaintiffs contend.  *Id.*  Under the tethering test, Plaintiffs contend "SquareTrade's secret policy of underpaying its customers violates the principles undergirding both the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.* ¶ 102.C."  *Id.*  at 14 (citing *Cummins, Inc. v. Super. Ct.*, 36 Cal. 4th 478, 484 (2005) (Song-Beverly was enacted "to address the difficulties faced by consumers in enforcing express warranties."); Cal. Civ. Code § 1794(a) (protecting holders of both express warranties and service contracts); Cal. Civ. Code § 1770(a)(5), (9), (14) (making unlawful a representation that goods or services have benefits, or involve rights or remedies, that a seller is unwilling or unable to satisfy).

The problem with Plaintiffs' arguments as to both tests is that they are premised on the assumption that Gonzales was entitled to receive the purchase price of the covered item when he filed a claim, but Plaintiffs have not alleged any facts showing that this was ever promised to him or that he was entitled to recover the full purchase price on any other ground.  Without any such allegations, the "harm" Plaintiffs cite (underpayment of claims by 14.2%) is not a cognizable harm; nor do any of the consumer protection laws Plaintiffs cite embody a policy that a product

14

protection policy *must* cover the full purchase price of a product. *See Bardin,* 136 Cal. App. 4th at 1270-1271 (holding that plaintiffs did not state a UCL claim under the "unfair" prong based on allegation that car manufacturer used tubular steel for exhaust manifolds rather than using steel, as was the industry standard, in order to "make more money" because "use of less expensive and less durable materials in the manufacture of [the defendant's] vehicles to make more money" did not violate public policy and the complaint "did not allege [the defendant] made any representations regarding the composition of the exhaust manifolds."). Therefore, the Court concludes Gonzales has not alleged a violation of the UCL under the unfair prong.

Similarly, the Court concludes that the allegations are insufficient to state a claim under the fraudulent prong of the UCL. Plaintiffs do not dispute that the "reasonable consumer" standard applies to UCL claims asserted on the basis of fraudulent conduct. Under that standard, to establish fraudulent conduct under the UCL a plaintiff must show that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled[ ]" by the defendants' statements or conduct. *Lavie v. Procter & Gamble Co*., 105 Cal. App. 4th 496, 508 (2003). As discussed above, however, Gonzales's allegations as to what was promised to him with respect to replacement cost are so minimal that they do not give rise to a plausible inference that a reasonable consumer would have been misled. Therefore, the UCL claim fails under the fraudulent prong as well.

SquareTrade's second challenge to Gonzales's UCL claim is that to the extent it seeks the equitable remedy of restitution that claim fails because Gonzales has not alleged that he has no adequate remedy at law. The Court agrees. In *Sonner v. Premier Nutrition Corp*., the Ninth Circuit held that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL . . . ." 971 F.3d 834, 844 (9th Cir. 2020). The court pointed out that the plaintiff in that case sought "the same sum in equitable restitution as 'a full refund of the purchase price' . . . as she requested in damages to compensate her for the same past harm" and "fail[ed] to explain how the same amount of money for the exact same harm is inadequate or incomplete." *Id.* Here, as in *Sonner*, the restitution Gonzales seeks is the same as the damages he seeks on his breach of contract claim, namely, reimbursement for the

15

1    difference between the purchase price and the amount that was actually paid on the claim.  *See*

2    FACC ¶ 96 (alleging contractual breach caused harm because Plaintiffs received "only partial[]

3    reimburse[ment]"), FACC ¶ 105 (seeking equitable relief in the form of "full reimbursement

4    of the purchase price.").

5         Plaintiffs attempt to plead the lack of an adequate remedy at law in the alternative, *see*

6    FACC ¶ 105 ("Plaintiff, for purposes of this claim, alleges in the alternative that Plaintiff lacks an

7    adequate remedy at law") but this allegation does not suffice.  "This is not an election of remedies

8    issue.  The question is not whether or when Plaintiffs are required to choose between two available

9    inconsistent remedies, it is whether equitable remedies are available to Plaintiffs at all."  *In re*

10   *MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2020 WL 6047253, at *2 (N.D. Cal. Oct. 13,

11   2020).  Because a plaintiff seeking restitution on a UCL claim must plausibly allege that legal

12   remedies are insufficient, the UCL claim as currently pled in the FACC fails to state a claim with

13   respect to Gonzales's claim for restitution.

14        The Court also is not persuaded by Gonzales's argument that his claim for restitution under

15   the UCL is adequately pled in this respect because it is "more certain, prompt, or efficient" than

16   the legal remedy he seeks on his breach of contract claim. *See* Opposition at 18-19 (citing *Am. Life*

17   *Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937)). In *Stewart*, the Supreme Court held that "[a]

18   remedy at law does not exclude one in equity unless it is equally prompt and certain and in other

19   ways efficient."  *Id.*  Courts in this district have found that the rule articulated in *Stewart* applies

20   when an equitable claim for restitution relies on a different theory than a claim at law that seeks

21   money damages.  *See Elgindy v. AGA Serv. Co.*, No. 20-CV-06304-JST, 2021 WL 1176535, at

22   *15 (N.D. Cal. Mar. 29, 2021) (holding that because the claim for restitution under the UCL was

23   based on a different theory than the plaintiff's legal claims seeking damages, the claim was not

24   barred);  *In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 19-MD-02913-

25   WHO, 2020 WL 6271173, at *55 (N.D. Cal. Oct. 23, 2020) (suggesting that a UCL claim can

26   survive an "adequate remedy at law challenge" where "the allegations regarding unfair conduct

27   are not otherwise coextensive with plaintiffs' legal claims").

28        Here, Gonzales contends his claim for equitable relief under the UCL is based on a

United States District Court
Northern District of California

16

different theory than the breach of contract claim to the extent that he relies on "unfair" conduct rather than failure to abide by the terms of the protection plans. Yet the factual predicate and the theory underlying his claim of unfair conduct appear to be essentially the same as his breach of contract claim. Therefore, the Court rejects Plaintiffs' argument that Gonzales's claim for restitution under the UCL is "more certain, prompt, or efficient" than the legal remedy he seeks on his breach of contract claim.

### 3.  Unjust Enrichment Claim

" 'The doctrine [of unjust enrichment] applies where plaintiffs, while having no enforceable contract, nonetheless have conferred a benefit on defendant which defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value.' " *Ivie v. Kraft Foods Glob., Inc*., No. C-12-02554-RMW, 2013 WL 685372, at *13 (N.D. Cal. Feb. 25, 2013) (quoting *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (2009)). Here, Gonzales's claim for unjust enrichment is based on the same allegations and theory as his UCL claim, namely, that he was entitled to the full purchase price of covered items under SquareTrade's protection plans but was paid less than that amount. *See* FACC ¶¶ 133-135. Therefore, Gonzales's unjust enrichment claim fails to state a claim for the same reasons his breach of contract and UCL claims fail.

### 4.  Conclusion

For the reasons stated above, the Court finds that all of Gonzales's claims fail to state a claim under Rule 12(b)(6). The Court therefore GRANTS SquareTrade's Motion to Dismiss [dkt. 63] and dismisses all of Gonzales's claims with leave to amend.

## C.    Abbott Motion

### 1.  The Breach of Contract Claim

SquareTrade contends Abbott's breach of contract claim, like the one asserted by Gonzeles, fails on the basis that the contract alleged in the FACC is too indefinite for the Court to determine what the parties agreed to, rendering it unenforceable. Further, SquareTrade contends, to the extent Abbott relies on a reference to "protection of products" on the cover of a brochure and the sales clerks reference to a "warranty," *see* FACC ¶ 64, to establish a contractual obligation

17

on SquareTrade's part to reimburse her for the full purchase price of covered products, that understanding was based on her own subjective belief that is not binding on SquareTrade. Moreover, according to SquareTrade, the Terms and Conditions contained inside the brochure show that Abbott was not entitled to the purchase price of covered items but instead, was only entitled to the replacement cost.

The parties agree that New York law applies to Abbott's claims. New York law, like California law, requires that " 'for a contract to be valid, the agreement between the parties must be definite and explicit so their intention may be ascertained to a reasonable degree of certainty.' " *Foros Advisors LLC v. Digital Globe, Inc.*, 333 F. Supp. 3d 354, 360 (S.D.N.Y. 2018) (quoting *Candid Prods., Inc. v. Int'l Skating Union*, 530 F. Supp. 1330, 1333 (S.D.N.Y. 1982)). " 'Even if the parties believe that they are bound, if the terms of the agreement are so vague and indefinite that there is no basis or standard for deciding whether the agreement had been kept or broken, or to fashion a remedy, and no means by which such terms may be made certain, then there is no enforceable contract.' " *Id.* (quoting *Candid Prods., Inc. v. Int'l Skating Union*, 530 F. Supp. at 1333).

Here, the only terms Abbott alleges are that she saw references to "protection" on the cover of a brochure and that a sales clerk referred to a "warranty." These allegations provide no basis for the Court to determine the intention of the parties as to the scope of the coverage that would be provided or whether the alleged contract required SquareTrade to pay the full purchase price, the replacement cost or some other amount under the protection plan. Therefore, the Court concludes that Abbott fails to state a claim for breach of contract.[4] The Court will permit Plaintiffs to amend as to Abbott's breach of contract claim.

### 2. The GBL Claims

Abbot asserts claims under New York General Business Law ("GBL") Sections 349 and 350. "Section 349 prohibits '[d]eceptive acts or practices in the conduct of any business, trade or

---

[4] Because the Court finds that Abbott's breach of contract claim is insufficiently pled based solely on the allegations in the FACC, it need not reach SquareTrade's request for judicial notice or its further arguments that the brochure Abbott allegedly saw contradicts her allegation that there was an implied contract requiring SquareTrade to pay the full purchase price.

commerce,' whereas Section 350 prohibits '[f]alse advertising in the conduct of any business, trade or commerce.' " *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (quoting GBL §§ 349–50). The standard for recovery under GBL Section 350, " 'while specific to false advertising, is otherwise identical to section 349,' " and therefore, these claims can be analyzed together. *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1, (2002)).

To establish a violation of GBL Sections 349 and 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452, 452 (2012)). The allegedly deceptive act or practice "must be misleading to a 'reasonable consumer.' " *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d at 324 (citing *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)). "Although the question of whether a business practice or advertisement is misleading to the reasonable consumer is generally a question of fact, *see Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015), it is 'well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.' " *Wynn v. Topco Assocs., LLC*, 2021 WL 168541, at *2 (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).

Abbott's allegations in support of her GBL claims are scant. She alleges she was misled because she saw references to "protection" on a brochure that she didn't read and a sales clerk used the word "warranty" in describing the plan. FACC ¶ 64. She was then "surprised and displeased" when SquareTrade paid only 85.8% of the purchase price of her covered products when she filed claims for coverage. FACC ¶ 74. But "a party does not violate General Business Law § 349 by simply publishing truthful information and allowing consumers to make their own assumptions about the nature of the information." *Gomez-Jimenez v. New York L. Sch.*, 103 A.D.3d 13, 17 (N.Y. App. Div. 2012) (citing *Andre Strishak & Assoc. v Hewlett Packard Co.*, 300

1   AD2d 608, 609-610 (2d Dept 2002); *St. Patrick's Home for Aged & Infirm v Laticrete Intl.,* 264

2   AD2d 652, 655-656 (1st Dept 1999); *Corcino v Filstein*, 32 AD3d 201, 202 (1st Dept 2006)).

3          For example, the court in *Gomez-Jimenez* found that statements by New York University

4   Law School about the employment obtained by its graduates did not give rise to a cognizable

5   claim under GBL Section 349, even though they "likely left some consumers with an incomplete,

6   if not false, impression of the school's job placement success[,]" because the defendant made no

7   express representations about whether the jobs were full-time or part-time (many were actually

8   part-time) and disclosed that the numbers were based on "small samples of self-reporting

9   graduates." *Id.*;   *see also Andre Strishak & Assocs., P.C. v. Hewlett Packard Co*., 300 A.D.2d

10  608, 609 (N.Y. App. Div. 2002) (holding that manufacturer's representation that ink cartridge was

11  included with printer did not provide basis for cognizable claim even though statements on

12  packaging did not make clear that the included cartridge was an economy size cartridge with less

13  ink than the standard cartridges sold by the manufacturer).

14          Here, the allegations are insufficient, as a matter of law, to establish that a reasonable

15  consumer would have been deceived by the references to "protection" and "warranty" into

16  thinking SquareTrade's protection plan covered the full purchase price of covered products.

17                        **3.   Unjust Enrichment Claim**

18          Under New York law, an unjust enrichment claim is available "only in unusual situations

19  when, though the defendant has not breached a contract nor committed a recognized tort,

20  circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello*

21  *v. Verizon New York, Inc*., 967 N.E.2d 1177, 1185 (N.Y. 2012).  "Typical cases are those in which

22  the defendant, though guilty of no wrongdoing, has received money to which he or she is not

23  entitled." *Id.* (citing *Markwica v. Davis*, 64 N.Y.2d 38, 484 N.Y.S.2d 522, 473 N.E.2d 750

24  (1984); *Kirby McInerney & Squire, LLP v. Hall Charne Burce & Olson, S.C*., 15 A.D.3d 233, 790

25  N.Y.S.2d 84 (2005)).  For the same reasons the Court finds Gonzales has failed to state a claim for

26  unjust enrichment, the Court finds that Abbott's claim fails as well.  *See Kennedy v. Mondelez*

27  *Glob. LLC*, No. 19-CV-302-ENV-SJB, 2020 WL 4006197, at *15 (E.D.N.Y. July 10,

28  2020) ("Where a deceptive trade practices claim fails for failure to allege deception, an unjust

United States District Court
Northern District of California

1    enrichment claim fails, too.").

2              **4.  Conclusion**

3         For the reasons stated above, the Court finds that all of Abbott's claims fail to state a claim

4    under Rule 12(b)(6).  The Court therefore GRANTS SquareTrade's Motion to Dismiss [dkt. 64]

5    and dismisses all of Abbott's claims with leave to amend.

6    **IV.     THE SUMMARY JUDGMENT MOTION**

7         **A.     Legal Standards under Rule 56**

8         Summary judgment on a claim or defense is appropriate "if the movant shows that there is

9    no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

10   law."  Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show

11   the absence of a genuine issue of material fact with respect to an essential element of the non-

12   moving party's claim, or to a defense on which the non-moving party will bear the burden of

13   persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

14        Once the movant has made this showing, the burden then shifts to the party opposing

15   summary judgment to designate "'specific facts showing there is a genuine issue for trial.'"  *Id.*

16   (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely

17   disputed must support the assertion by . . . citing to particular parts of materials in the record

18   . . . .").  "[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the

19   substantive evidentiary standard of proof that would apply at the trial on the merits."  *Anderson v.*

20   *Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986).  The non-moving party has the burden of

21   identifying, with reasonable particularity, the evidence that precludes summary judgment.  *Keenan*

22   *v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Thus, it is not the task of the court to scour the

23   record in search of a genuine issue of triable fact.  *Id.*; *see Carmen v. S.F. Unified Sch. Dist.*, 237

24   F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3).

25        A party need not present evidence to support or oppose a motion for summary judgment in

26   a *form* that would be admissible at trial, but the *contents* of the parties' evidence must be amenable

27   to presentation in an admissible form.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036−37 (9th Cir.

28   2003).  Neither conclusory, speculative testimony in affidavits nor arguments in moving papers

*United States District Court*
*Northern District of California*

1    are sufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill Publ'g Co.,*

2    *Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).  On summary judgment, the court draws all

3    reasonable factual inferences in favor of the non-movant, *Scott v. Harris*, 550 U.S. 372, 378

4    (2007), but where a rational trier of fact could not find for the non-moving party based on the

5    record as a whole, there is no "genuine issue for trial" and summary judgment is appropriate.

6    *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

7        **B.    Discussion**

8        Plaintiffs do not dispute, as a factual matter, that when Shuman purchased his SquareTrade

9    protection plan he was not explicitly promised that he would be reimbursed the purchase price of

10   his bag if he filed a claim under the plan.  Indeed, Plaintiffs stipulated at the hearing that there is no

11   evidence that SquareTrade was obligated to pay them the full purchase price of the items covered

12   under SquareTrade's protection plans *regardless* of the cost to replace the items at the time

13   Plaintiffs submitted their claims.  Thus, the question the Court must decide is if this undisputed

14   fact defeats Shuman's claims on summary judgment, as SquareTrade contends.  The Court

15   concludes that it does not.

16       First, the Court is not persuaded that the theory Plaintiffs set forth in their Opposition brief

17   is new.  SquareTrade focuses heavily on the allegations in the FACC that refer to SquareTrade's

18   obligation to reimburse the full purchase price of covered items, of which there are many.  *See*

19   FACC ¶ 38 ("At the time of his purchase, Plaintiff Shuman was told by the Staples clerk that for

20   $19.99 he would be entitled to a complete replacement if anything went wrong over the next two

21   years, or alternatively, that the full purchase price of the bag would be paid if Plaintiff received a

22   reimbursement "); ¶ 40 ("The brochure contains no other information about the amount to be

23   reimbursed in the event of a subsequent claim and does not state that the reimbursement amount

24   would be less than the price paid for the product—instead touting the lack of any deductibles or

25   hidden fees"); ¶ 43 ("Plaintiff Shuman was entitled to receive either a repair, replacement, or

26   reimbursement of the purchase price of the bag ($129.99)");  ¶ 44 ("[n]othing in [the affidavit he

27   signed when he submitted his claim] indicated that Plaintiff's reimbursement would be less than

28   his purchase price");  ¶ 45 ("SquareTrade notified Plaintiff by email that it had approved his claim.

22

SquareTrade noted, however, that they 'could not find an exact replacement or model that was comparable to your current item.' SquareTrade promised, consistent with Plaintiff's original understanding of his Purchase Plan, that '[t]herefore, we'll be sending you a check for the purchase cost of the item instead…' "); ¶ 46 ("On or about March 1, 2019, however, when Plaintiff received his SquareTrade protection plan payment, it was not for the purchase cost of the item as promised. Instead, it was just 76% of the cost—$99.99, instead of $129.99"); ¶ 47 ("In subsequent calls with at least three different SquareTrade Claims Specialists, Plaintiff objected to this reimbursement, noting it was $30 short of his full purchase price. Plaintiff was told repeatedly that his protection plan only covered $99.99 of the item as promised").

What is striking about Shuman's allegations, however, is that it appears to have been SquareTrade that equated the replacement cost of Shuman's bag with the purchase price in its correspondence with Shuman regarding his claim. *See* FACC ¶ 45 (alleging that SquareTrade informed him it could not find an exact replacement and therefore would be sending Shuman a check for the "purchase cost" of his bag). Indeed, Shuman alleges that it was SquareTrade's long-standing practice to treat the original purchase price of covered items as the "replacement cost" of the items. *See* FACC ¶ 17 ("Historically, in the event that a product covered by one of its protection plans failed during the applicable period, SquareTrade either repaired or replaced the product, or provided reimbursement in the amount of the full purchase price"); ¶¶ 21-23 (alleging that in 2018 SquareTrade began paying "substantially less" than the purchase price but that "SquareTrade did not make any changes to the purported Terms and Conditions posted on SquareTrade's website to reflect the change in reimbursement policy.").

In any event, the allegations as to Shuman raise a plausible inference that failure to pay the original purchase price of his bag amounted to a failure to pay the replacement cost because the cost of the bag had not dropped in the intervening period. In particular, Shuman alleges that two days after he received his payment on the SquareTrade claim for the original bag he returned to a different Staples Store and bought an "identical" bag "at the same price as he had originally purchased it in 2017 ($129.99)." FACC ¶ 48. Likewise, Shuman testified at his deposition that he bought a replacement bag for the same price he had paid for the bag originally. Anderson Decl.,

United States District Court
Northern District of California

1  Ex. D (Shuman Depo.) at 183.  SquareTrade fails to address Shuman's allegation that he paid the

2  same amount for his replacement bag as for his original bag.

3          Given that Plaintiffs allege in the breach of contract claim that SquareTrade "offered

4  Plaintiffs and Class members product protection that provided reimbursement of purchase price

5  (*or reimbursement of the cost of replacing the product*)," FACC ¶ 92 (emphasis added), the Court

6  concludes that the theory upon which Plaintiffs base Shuman's breach of contract claim is not

7  new.  Moreover, there is a genuine dispute of material fact as to whether SquareTrade breached its

8  contractual obligation to Shuman by paying less than the full purchase price of his bag.  For the

9  same reasons, the Court rejects SquareTrade's argument that it is entitled to summary judgment on

10  Shuman's unjust enrichment claim because "nothing unjust has occurred."  Reply at 8.

11          Finally, because the FACC makes clear that Shuman's allegation that he was owed the

12  original purchase price on his claim are based, in part, on the fact that the replacement cost was the

13  same as the original purchase price, the Court rejects SquareTrade's argument that it would be

14  unfair to allow Shuman to proceed on that theory.

15  **V.      CONCLUSION**

16          For the reasons set forth above, the Shuman Motion is DENIED. The Gonzales and Abbott

17  Motions are GRANTED and the claims asserted by Gonzales and Abbott are dismissed with leave

18  to amend.   Plaintiffs' amended complaint shall be filed by **December 3, 2021**.

19          **IT IS SO ORDERED.**

20

21  Dated:  November 3, 2021

22  _____

23  JOSEPH C. SPERO
    Chief Magistrate Judge

24

25

26

27

28