Eric H. Gibbs (SBN 178658)
David Stein (SBN 257465)
Amanda M. Karl (SBN 301088)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone:  (510) 350-9700
Facsimile:   (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
amk@classlawgroup.com

William H. Anderson (*Pro Hac Vice*)
**HANDLEY FARAH &**
**ANDERSON PLLC**
4730 Table Mesa Drive, Suite G-200
Boulder, CO 80305
Telephone: (303) 800-9109
Facsimile: (866) 912-8897
wanderson@hfajustice.com

Rebecca P. Chang (pro hac vice)
**HANDLEY FARAH &**
**ANDERSON PLLC**
81 Prospect Street
Brooklyn, NY 11201
Telephone: (347) 480-1030
Facsimile: (866) 912-8897
rchang@hfajustice.com

*Counsel for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL SHUMAN, *et al.*,<br><br>                            Plaintiffs,<br><br>          v.<br><br>SQUARETRADE, INC.,<br><br>                            Defendant. | Case No. 3:20-CV-02725-JCS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on May 6, 2022, at 9:30 a.m., or as soon thereafter as this matter may be heard, Plaintiffs will and hereby do respectfully move the Court, in the courtroom of the Honorable Joseph C. Spero, Courtroom F, 15th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, for an order preliminarily approving the proposed class action settlement and approving the manner and form of class notice.

This unopposed motion is based on the notice of motion and motion for preliminary approval, the following memorandum of points and authorities, the attached declarations and exhibits, the arguments of counsel, and any other matters in the record or that properly come before the Court.

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

**HISTORY OF THE LITIGATION** .......................................................................... 1

I.   Factual Background ....................................................................................... 1

II.  Procedural Background .................................................................................. 2

**OVERVIEW OF THE SETTLEMENT** ................................................................... 3

I.   The proposed settlement class ....................................................................... 3

II.  Monetary and injunctive relief for the settlement class ................................ 4

    a.   Relief for the SKU-cap Subclass ............................................................. 5

    b.   Relief for the Fast Cash Subclass ............................................................ 5

III. Scope of class members' release of claims ................................................... 7

IV.  Attorney's fees and costs, and service awards ............................................. 8

**THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT  AND DIRECT NOTICE TO THE SETTLEMENT CLASS** ............................................. 9

I.   The proposed settlement merits approval ................................................... 10

    a.   Plaintiffs and their counsel have adequately represented the class. ........ 10

    b.   The parties negotiated the proposed settlement at arm's length. ............. 11

    c.   The quality of relief to the class weighs in favor of approval. ................ 12

        i.    The settlement provides strong relief for the class. ............................. 12

        ii.   Continued litigation would entail substantial cost, risk, and delay. ....... 13

        iii.  The settlement agreement provides for an effective distribution of proceeds to the class. ......................................................................... 15

        iv.   The terms of the proposed award of attorney's fees, including timing of payment, also support settlement approval. ......................................... 16

        v.    The parties have no other agreements pertaining to the settlement. ....... 17

        vi.   The settlement treats all settlement class members equitably ............... 18

II.  Certification of the proposed settlement classes is appropriate. ................ 19

    a.   The proposed class definition is appropriate given the scope of the litigation. ...... 20

i

b. The settlement class satisfies the requirements of Rule 23(a)................................. 21

   i. The class members are too numerous to be joined in one action......................21

   ii. The action involves common questions of law or fact. .......................................21

   iii. Plaintiffs' claims are typical of the class. ...............................................21

   iv. Plaintiffs and their counsel have, and will continue to, fairly and adequately protect the interests of the class. .................................................22

c. The settlement class meets the requirements of Rule 23(b)(3). .................................. 22

d. The settlement provides the best method of notice practicable. ............................... 24

**THE COURT SHOULD SET A SCHEDULE FOR FINAL APPROVAL** .................................... 24

**CONCLUSION** .................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Achziger v. IDS Prop. Cas. Ins. Co.,*
772 F. App'x 416 (9th Cir. May 9, 2019) ............................................................ 21

*Altamirano v. Shaw Indus., Inc.,*
No. 13-cv-00939, 2015 WL 4512372 (N.D. Cal. July 24, 2015) ....................... 18

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ........................................................................................... 23

*Arroyo v. Int'l Paper Co.,*
No. 17-cv-06211, 2019 WL 1508457 (N.D. Cal. Apr. 4, 2019) ........................ 21

*Bozarth v. Envision Healthcare Corp.,*
No. 17-cv-1935, 2020 WL 11028383 (C.D. Cal. June 30, 2020) ...................... 13

*Briseno v. Henderson,*
998 F.3d 1014 (9th Cir. 2021) ............................................................................ 16

*Cabiness v. Edu. Fin. Sols., LLC,*
No. 16-cv-01109, 2018 WL 3108991 (N.D. Cal. June 25, 2018) ...................... 24

*Campbell v. Facebook, Inc.,*
951 F.3d 1106 (9th Cir. 2020) ............................................................................ 17

*Evon v. Law Offices of Sidney Mickell,*
688 F.3d 1015 (9th Cir. 2012) ............................................................................ 21

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ............................................................................ 23

*Haralson v. U.S. Aviation Servs. Corp.,*
383 F. Supp. 3d 959 (N.D. Cal. 2019) ............................................................... 10

*Hesse v. Sprint Corp.,*
598 F.3d 581 (9th Cir. 2010) ................................................................................ 8

*In re Apple Inc. Device Performance Litig.,*
  No. 5:18-md-02827, 2021 WL 1022867 (N.D. Cal. Mar. 17, 2021) .................................. 7

*In re Bluetooth Headsets Litig.,*
  654 F.3d 935 (9th Cir. 2011) ................................................................................................. 10

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg. Litig.,*
  No. 17-MD-02777-EMC, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019) .......................... 20

*In re Hyundai & Kia Fuel Econ. Litig.,*
  926 F.3d 539 (9th Cir. 2019) ........................................................................................... 19, 23

*In re MagSafe Apple Power Adapter Litig.,*
  No. 5:09-cv-01911, 2015 WL 428105 (N.D. Cal. May 29, 2015) .................................... 25

*In re Online DVD-Rental Antitrust Litig.,*
  779 F.3d 934 (9th Cir. 2015) ................................................................................................. 18

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,*
  No. 3:15-md-02672, 2017 WL 1352859 (N.D. Cal. Apr. 12, 2017) ............................... 17

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod.* Liab. Litig,
  895 F.3d 597 (9th Cir. 2018) ................................................................................................. 10

*Jabbari v. Wells Fargo & Co.,*
  No. 15-cv-02159, 2018 WL 11024841 (N.D. Cal. June 14, 2018) ................................... 16

*Just Film, Inc. v. Buono,*
  847 F.3d 1108 (9th Cir. 2017) ......................................................................................... 21, 22

*Kim v. Tinder, Inc.,*
  No. cv 18-3093, 2019 WL 11717129 (C.D. Cal. Mar. 1, 2019) ...................................... 23

*Kulesa v. PC Cleaner, Inc.,*
  No. 12-cv-0725, 2014 WL 12581770 (C.D. Cal. Aug. 26, 2014) .................................... 12

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ............................................................................................... 13

*Pederson v. Airport Terminal Servs.,*
  No. 15-cv-02400, 2018 WL 2138457 (C.D. Cal. Apr. 5, 2018) ...................................... 12

*Rodriguez v. Hayes,*
  591 F.3d 1105 (9th Cir. 2010) ............................................................................................... 21

iv

*Sali v. Corona Reg'l Med. Ctr.*,
  909 F.3d 996 (9th Cir. 2018) ................................................................................ 22

*Saucillo v. Peck*,
  25 F.4th 1118 (9th Cir. 2022) ......................................................................... 10, 12

*Schuchardt v. L. Off. of Rory W. Clark*,
  314 F.R.D. 673 (N.D. Cal. 2016) .......................................................................... 17

*Stewart v. Applied Materials, Inc.*,
  No. 15-cv-02632, 2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ........................ 16

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ....................................................................... 17

*Vargas v. Ford Motor Co.*,
  No. cv 1208388, 2020 WL 1164066 (C.D. Cal. Mar. 5, 2020) ............................ 17

*Wal-Mart Stores v. Dukes*,
  564 U.S. 338 (2011) .............................................................................................. 21

*Wannemacher v. Carrington Mortg.*,
  No. 12-cv-2016, 2014 WL 12586117 (C.D. Cal. Dec. 22, 2014) ......................... 11

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. *Passim*

**Other Authorities**

Newberg on Class Actions § 13:10 (5th ed.) ........................................................ 10

**INTRODUCTION**

This proposed class action arises from allegations relating to Defendant SquareTrade's sale of protection plans for consumer products. Plaintiffs allege that when SquareTrade customers have submitted claims under the protection plans, SquareTrade has at times reimbursed consumers less than they were owed. SquareTrade denies the bulk of Plaintiffs' allegations.

After about two years of litigation—and after motion practice on issues ranging from arbitration to summary judgment—the parties have negotiated a proposed nationwide class action settlement that is poised to end this litigation on terms that deliver meaningful relief to the class. The settlement imposes business-practice changes on SquareTrade designed to ensure no future consumers are underpaid. And the settlement provides for reimbursements to those class members who were previously underpaid—in amounts that will make them whole.

Plaintiffs and their counsel are pleased to be able to provide this recovery to the class. Now, pursuant to Rule 23(e)(1)(B), they bring this motion as the first step in the process for court-approval of the proposed settlement. As discussed below, the record provides strong grounds for the Court to conclude that it will likely (1) be able to certify a class for settlement purposes and (2) approve the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii). Plaintiffs thus request that the Court grant preliminary approval, direct that notice be disseminated to the proposed class, and set a schedule for final approval.

**HISTORY OF THE LITIGATION**

**I.    Factual Background**

SquareTrade sells protection plans, which are service contracts for consumer products ranging from office chairs to electronics. ECF No. 102 ¶¶ 12-13. Consumers are offered protection plans at retailers like Wal-Mart. *Id*. ¶ 14. If a customer purchases a protection plan, and the covered item breaks during the coverage period, SquareTrade obligates itself to repair the item, replace it, or provide reimbursement. *Id*. ¶ 15.

Plaintiffs allege that in recent years SquareTrade failed to adequately reimburse some protection-plan holders who submitted valid claims. The alleged under-reimbursements take two forms:

First, as SquareTrade acknowledges, in some instances SquareTrade's systems imposed artificial caps on reimbursement amounts, and in some instances led to under-reimbursement of protection-plan holders. For purposes of the settlement, the parties refer to the cap problem as the "SKU-cap error." *See* ECF No. 102. ¶¶ 45-47; ECF No. 50 ¶ 23 ("Defendant admits that in some cases a 'fixed cap'" lower than the purchase price "has been inadvertently applied"). The SKU-cap error impacted approximately 1,700 SquareTrade customers, to the tune of $135,000 in total underpayments. Ex. 4 to Joint Decl. of Pl.'s Counsel ("Ma Decl.") ¶ 4.

Second, Plaintiffs allege that several years ago SquareTrade adopted a program called "Fast Cash," under which SquareTrade changed its reimbursement practices. *See* ECF No. 102 ¶¶ 58-59. The parties agree that SquareTrade had the right to either replace covered products or pay out a reimbursement. ECF No. 50 ¶ 23. The parties disagree, however, about the propriety of the amounts SquareTrade paid as reimbursements. *Id*. Before it implemented Fast Cash, SquareTrade reimbursed the original purchase price of covered products. Under Fast Cash, however, SquareTrade began paying an estimated replacement value of covered products. Plaintiffs allege this estimated replacement value was frequently less than the actual cost of replacing covered products (and less than their original purchase price) and was thus less than SquareTrade owed. *See e.g.,* ECF No. 102 ¶ 2. In total, SquareTrade reimbursed 813,805 consumers under its Fast Cash program during the class period. Ma Decl. ¶ 2.

## II.    Procedural Background

Since this case was filed nearly two years ago, it has been fiercely contested. Against Plaintiff Shuman alone, SquareTrade filed a motion to compel arbitration, ECF No. 17, a motion to dismiss, ECF No. 30, and a motion for summary judgment. ECF No. 67.

Following that initial motion to dismiss, two more Plaintiffs joined the litigation—Abbott from New York and Gonzales from California. *See* ECF No. 60. SquareTrade promptly filed motions to dismiss against each of them, which Plaintiffs opposed, and the Court granted the

motions with leave to amend. ECF No. 84. SquareTrade also foreshadowed that it anticipated filing motions to compel arbitration against Plaintiffs Abbott and Gonzales. Joint Decl. of Pls' Counsel ¶ 11.

In addition to the motion practice undertaken, the parties also engaged in substantial discovery. Plaintiffs propounded discovery requests that resulted in the review of tens of thousands of pages of SquareTrade documents; deposed five SquareTrade employees; and prepared and served over a dozen third-party subpoenas for documents and depositions. Joint Decl. ¶ 9. All three Plaintiffs responded to interrogatories, produced documents, and sat for full-day depositions. *Id.* All the while, Plaintiffs' and SquareTrade's counsel were meeting and conferring about discovery issues, holding video conferences multiple times a month. *Id.* While counsel were able to resolve many issues without the Court's intervention, the parties also briefed a dispute concerning SquareTrade's assertions of privilege. *Id.* ¶ 10.

As Plaintiffs prepared to amend their complaint and to take Rule 30(b)(6) depositions, the parties mediated with the help of retired Judge James L. Warren. Joint Decl. ¶¶ 10, 15. Following a 15-hour mediation, the parties agreed to the material terms of the settlement now before the Court. *Id.* ¶ 15.

The parties have since negotiated and prepared a formal settlement agreement, developed a notice and distribution plan, and prepared and finalized drafts of the settlement agreement's exhibits. Joint Decl. ¶ 16. The parties retained the services of an experienced settlement administrator, JND Legal Administration, after soliciting competing bids from five potential administrators. *Id.* ¶ 20. The parties have begun working with JND to coordinate the commencement of class notice.

**OVERVIEW OF THE SETTLEMENT**

**I.      The proposed settlement class**

The parties' settlement contemplates the certification of a class, for settlement purposes only, defined as follows:

3

> Settlement Class: All members of the Fast Cash Subclass and the SKU-cap Subclass. (Excluded from the Settlement Class are the judge approving the Settlement and his or her immediate family; Defendant; any entities in which Defendant has a controlling interest or which have a controlling interest in Defendant; the officers, directors, employees, affiliates and attorneys of Defendant, and the immediate family members of any such person; and any person who has submitted a timely and valid Opt-Out Request.)
>
> The SKU-cap Subclass: Any person who, during the Class Period, (i) submitted a claim for coverage under a Protection Plan, (ii) resolved the claim by receiving a monetary payment from Defendant, and (iii) received less than the amount the person should have received were it not for the SKU-cap Error.
>
> The Fast Cash Subclass: Any person who, during the Class Period, (i) submitted a claim for coverage under a Protection Plan, and (ii) whose claim was resolved via a Fast Cash payment from Defendant.

Ex. 3 to Joint Decl., Settlement Agreement ("SA") ¶¶ 1.15, 1.41.

## II.     Monetary and injunctive relief for the settlement class

Although Plaintiffs allege that both the SKU-cap and Fast Cash issues led to underpayments to class members, the two issues differ. Perhaps most notably, while SquareTrade disputes that the Fast Cash Subclass was underpaid, SquareTrade acknowledges that an error led to underpayments to the SKU-cap Subclass. ECF No. 50 ¶ 23. This difference impacts available injunctive and remunerative remedies.

With respect to potential injunctions, the two issues had different causes and thus warrant different solutions. The SKU-cap issue, on the one hand, resulted from a system error—SquareTrade had inadvertently paid affected customers less than the company believed them to be owed. ECF No. 50 ¶ 23 ("Defendant admits that in some cases a 'fixed cap'" lower than the purchase price "has been inadvertently applied"). For Fast Cash, on the other hand, SquareTrade consciously determined the amounts to be paid and tailored what it told customers about the program. *See* ECF No. 102 ¶ 26.

With respect to remuneration, the SKU-cap error led to a readily calculable damages amount. *See* Ex. 5 to Joint Decl. ("Gallagher Decl.") ¶ 3. SquareTrade had intended to reimburse SKU-cap Subclass members an amount based on their original purchase price, but inadvertently paid them less. ECF No. 50 ¶ 23. For the Fast Cash Subclass, on the other hand, SquareTrade paid an estimated replacement value. So, the dispute as to Fast Cash requires calculating the difference between (i) that estimated replacement value, and (ii) the actual replacement cost of any given item—to the extent it was higher than what SquareTrade had paid.

The parties took these differences into account when negotiating the settlement, which is why they propose two Subclasses, one for the SKU-cap issue and one for Fast Cash. This allows for the tailored remunerative and injunctive relief to each Subclass discussed below. *See generally*, SA ¶ 3.

### a. Relief for the SKU-cap Subclass

For the SKU-cap Subclass, the parties negotiated the following relief:

<u>Automatic payments</u>: Because the precise amount owed to these Subclass members is already known, the settlement provides that all members of the SKU-cap Subclass will automatically receive the difference between (i) the payout they originally received from SquareTrade, and (ii) their product's original purchase price. SA ¶ 3.5 They need not submit any claim form or otherwise take steps to be paid. *Id.*

<u>Injunctive Relief</u>: SquareTrade has undertaken a thorough review of its systems to ensure it can take the steps necessary to eliminate the SKU-cap error going forward. Ma Decl. ¶ 4. Under the terms of the settlement, SquareTrade must implement that solution within 120 days of the settlement's effective date, and then must provide confirmation of the steps taken to Plaintiffs' counsel. SA ¶ 3.3. The details of the technical solution implicate proprietary aspects of SquareTrade's business, which the parties are prepared to further detail in camera upon request.

### b. Relief for the Fast Cash Subclass

For the Fast Cash Subclass, the parties negotiated the following relief:

NOTICE OF MOT. AND MOT. FOR PRELIMINARY APPROVAL
CASE NO. 3:20-CV-02725-JCS

Full compensation: Fast Cash Subclass members will be entitled to receive the difference between (i) the payment they received from SquareTrade (SquareTrade's approximation of covered products' replacement cost), and (ii) the actual replacement cost of the covered product at the time the claim was made—up to the product's original purchase price. *See* SA ¶ 3.4. SquareTrade will pay this dollar amount, in full, to all class members who submit valid claims. *See id.* To the extent some class members were compensated under the Fast Cash program for multiple products during the class period, they can recover in connection with each product. *Id.*

Fast Cash Subclass members, unlike SKU-cap Subclass members, must submit claims because SquareTrade does not possess data that shows the actual replacement cost for every covered product at every point in time a protection-plan claim was submitted. Thus, the Fast Cash Subclass members are in the unique position to verify (a) whether a particular Fast Cash payment sufficed to cover replacement of the covered product, and (b) if not, what the actual contemporaneous replacement cost was. Joint Decl. ¶ 22.

Streamlined claims process: The parties took steps to devise a streamlined claims process. Joint Decl. ¶ 22. Subclass members will be emailed a link to an electronic claim form. SA ¶ 4.4. When they click open the claim form, they will see automatically populated information, reminding them what product(s) they purchased, the products' original purchase price, and what SquareTrade had paid them under the Fast Cash program. *See* Ex. 3-A to Joint Decl. ("Claim Form"). At that point, the Subclass member need only take two steps to be paid: (1) type in the actual replacement cost, and (2) type their name attesting that the provided information is true to the best of their recollection and click "Submit." *Id.*, SA ¶ 3.4.2.

Supplemental documentation will be required only if the delta between the two amounts would be at least $35 for a given Fast Cash payment. SA ¶ 3.4.3; *see also* Order on Prelim. Approval at 2; *Kumar v. Salov N. Am. Corp.*, No. 4:14-cv-02411 (N.D. Cal. July 7, 2017)

(requiring proof of purchase in order to obtain a payment of more than $5.00 per household).[1] Subclass members who cannot provide documentation will still be eligible for a settlement payment; that payment will simply be capped at $35. SA ¶ 3.4.3.

Injunctive Relief: The parties' negotiated injunctive relief is tied to the nature of their dispute: SquareTrade, for its part, contends that Fast Cash represents a reasonable process to quickly pay protection-plan holders based on an approximation of what they are owed. Plaintiffs contend, however, that the Fast Cash amounts are often too low—and that customers are not told they can opt out of Fast Cash. *See* ECF No. 102 ¶¶ 26-35. To resolve these concerns, the settlement imposes injunctive relief that will require SquareTrade to make a disclosure to all potential Fast Cash recipients. SA ¶ 3.1. Since the Fast Cash amount is an approximation of the replacement cost of their covered product, the disclosure will tell them they can be paid more if they provide documentation showing the actual replacement cost is higher. *Id.*

### III.    Scope of class members' release of claims

In exchange for the benefits provided under the settlement, Plaintiffs and settlement class members will release certain claims against SquareTrade. SA ¶ 5.1. The released claims are:

---

[1] The Procedural Guidance for Class Action Settlements ask for information about other recent settlements involving claim forms to help estimate the percentage of class members expected to submit a claim. *See* N.D. Cal., *Proc. Guidance for Class Action Sett.* § *1(g)*. Based on counsel's research, the following cases appear comparable since they are recent consumer-protection class actions that featured per-class-member recoveries mostly under $50. *See Kumar v. Salov N. Am. Corp,* No. 4:14-cv-02411, ECF No. 173 (final approval order finding that claims were made by approximately 1% of class members, with an average recovery of $9.85); *Broomfield v. Craft Brew Alliance,* No. 5-17-cv-01027, at 11 (N.D. Cal., Feb. 11, 2020) (final approval order in class settlement with a claims rate of approximately 2%, where the average recovery was $3.88); *In re Apple Inc. Device Performance Litig.,* No. 5:18-MD-02827, 2021 WL 1022867, at *13 (N.D. Cal. Mar. 17, 2021) (final approval order in class settlement with reported claims rate of 2.6% and per-class-member recoveries of $25 per claim and less). Here, Plaintiffs' counsel are hopeful that, given the effort put into crafting a streamlined claims process, the claims percentage will be on par with, if not higher than, than those comparators. One factor that makes projections difficult here, however, is that while the total number of Fast Cash Subclass members is known, the parties do not know precisely how many of them in fact received a payment from SquareTrade less than the actual replacement cost of their covered product.

7

1

2    . . . any and all claims, cross-claims, damages, losses, demands, suits, matters, issues,

3    debts, liens, contracts, liabilities, agreements, costs or expenses, asserted rights, or actions,

4    of any kind that Plaintiffs or any member of the Settlement Class has, had, or may have,

5    including any assigned claims, whether in arbitration or administrative or judicial

6    proceedings, whether asserted as an individual claims or on a class basis or on behalf of

7    the general public, whether known or unknown, asserted or unasserted, suspected or

8    unsuspected, latent or patent, that is, has been, could have been, or in the future might

9    be asserted, either in the Action or in any action or proceeding in this Court or in any

10    other court or forum, against any of the Released Parties or Released Persons, arising out

11    of or relating to the facts underlying the Action. For the avoidance of doubt, the Parties

12    intend the scope of the release to be as broad as possible under the Ninth Circuit's

13    "identical factual predicate" standard, as set forth in *Hesse v. Sprint Corp.*, 598 F.3d 581,

14    590 (9th Cir. 2010).

15  *Id.* ¶ 1.33.

16    The Northern District's guidelines ask whether the claims to be released differ from the

17  claims in the operative complaint. *See* N.D. Cal., *Proc. Guidance for Class Action Sett.* § 1(c).

18  Here, the parties do not seek to release any claims other than those that were (or could have

19  been) pled based on the facts alleged by Plaintiffs during the litigation. *See Hesse* at 590.

20  **IV.    Attorney's fees and costs, and service awards**

21    Plaintiffs' counsel have yet to be compensated for litigating this case on behalf of the

22  Settlement Class. Plaintiffs' counsel will file a motion at final approval requesting that the

23  Court approve an award of $1,000,000 for attorney's fees and costs to be paid by SquareTrade.

24  SA ¶ 8.1; Joint Decl. ¶ 23. Because payments to the Settlement Class are uncapped, this fees

25  and costs award will not reduce payments to class members. *Id.* In the course of negotiating

26  attorney's fees—after the parties had already negotiated the relief for the Settlement Class—

27  the parties agreed that Plaintiffs would not seek a higher award. *Id.* ¶ 15.

28

Plaintiffs will provide additional detail, consistent with Rule 23(h), when they file their formal fee motion. In that motion, Plaintiffs' counsel will more thoroughly describe their efforts during the litigation, their litigation costs, and authority for the reasonableness of the requested payment. Per the Northern District's guidelines, Plaintiffs provide the following lodestar information now: Plaintiffs' counsel have devoted 3,248.6 hours to this case; they have not been compensated for any of that time or effort to date; and their lodestar using their typical hourly billing rates totals $1,798,863.90. Joint Decl. ¶ 24. They have also incurred $58,020.53 in costs. *Id.* ¶ 25. The lodestar Plaintiffs have accrued to date already far exceeds the negotiated fee award Plaintiffs' counsel will ask this Court to approve. *Id.*

Plaintiffs also intend to ask the Court to award the three class representatives service awards of $5,000 each for the time and effort they spent advancing claims for the class. SA ¶ 8.2. These payments will not reduce the relief to class members either. Joint Decl. ¶ 23.

## THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AND DIRECT NOTICE TO THE SETTLEMENT CLASS

District courts assess proposed class action settlements in two phases, commonly referred to as "preliminary approval" and "final approval." At preliminary approval, courts "direct notice [of the proposed settlement] in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

Below, Plaintiffs detail why this motion should be granted and notice sent to the class. In short, the settlement is poised to both provide full relief to class members and implement changes in SquareTrade's business practices moving forward, making the settlement fair, reasonable, and adequate, and thus worthy of the Court's approval. And certification of the classes for settlement purposes is appropriate under both Rule 23(a) and Rule 23(b)(3).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      The proposed settlement merits approval.

"The decision to give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." Fed. R. Civ. P. 23(e)(1), 2018 Advisory Committee's Notes.

A careful review at this stage of the proceedings is important, as the next step will be the costly and time-consuming process of disseminating class notice. *See* Newberg on Class Actions § 13:10 (5th ed.). Courts must scrutinize the negotiated settlement "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019). Where, like here, the settlement was negotiated before certification of a litigation class, the district court should "employ[] extra caution and more rigorous scrutiny" than it would otherwise, by "undertak[ing] an additional search for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Saucillo v. Peck*, 25 F.4th 1118, 1130 (9th Cir. 2022) (citation omitted); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig*, 895 F.3d 597, 610-11 (9th Cir. 2018) (quoting *In re Bluetooth Headsets Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011)).

Rule 23(e)(2) provides a checklist of factors to consider when assessing whether a proposed settlement is fair, reasonable, and adequate. Below, Plaintiffs analyze each factor in turn, bearing in mind the Ninth Circuit's admonition that the key "underlying question remains this: Is the settlement fair?" *In re Volkswagen*, 895 F.3d at 611. Here, the settlement is fair, and the Rule 23(e)(2) factors weigh in favor of approving it.

### a.    Plaintiffs and their counsel have adequately represented the class.

The first factor to consider under Rule 23(e)(2)(A) is the adequacy of representation by the class representatives and attorneys. This includes "the nature and amount of discovery" undertaken in the litigation. Fed. R. Civ. P. 23(e)(2)(A), Advisory Committee's Notes.

NOTICE OF MOT. AND MOT. FOR PRELIMINARY APPROVAL
CASE NO. 3:20-CV-02725-JCS

Here, the named Plaintiffs diligently represented the class. They actively participated in the litigation and discovery, including by responding to discovery requests, producing documents, and sitting for full-day depositions. Joint Decl. ¶ 9. They have remained in regular contact with Plaintiffs' counsel and acted with the interests of the class in mind. *Id.*

Plaintiffs' counsel have also adequately represented the class. They vigorously prosecuted this case, briefing five dispositive motions, engaging in protracted discovery, conducting five depositions, and reviewing and analyzing tens of thousands of pages of documents. *Id.* They also served over a dozen third-party subpoenas, and were poised to depose corporate representatives of SquareTrade and third parties when the settlement was reached. *Id.*

Finally, Plaintiffs' counsel have successfully litigated many prior class actions involving consumer protection and contract claims, successfully resolving many of those in this District, and have brought that experience and knowledge to bear on behalf of the class. Joint Decl. ¶ 2.

### b.  The parties negotiated the proposed settlement at arm's length.

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) and (B) Advisory Committee's Note (2009).

There are multiple indicia here of the arm's-length nature of the negotiations. First, the parties did not begin negotiations until after the case had been pending for over a year and a half. Joint Decl. ¶ 15. By the time they reached agreement, the parties had engaged in significant motion practice and conducted extensive discovery. Joint Decl. ¶¶ 9, 10. *Wannemacher v. Carrington Mortg.*, No. 12-cv-2016, 2014 WL 12586117, at *8 (C.D. Cal. Dec. 22, 2014) (finding no signs of collusion where "significant . . . discovery [was] conducted," and where, before "exploring settlement, the parties litigated the case for a year"). In other words, when the parties entered settlement discussions, they well understood the strengths and weaknesses of their respective positions.

Second, the parties resolved the litigation with the assistance of Judge James L. Warren (Ret.). Joint Decl. ¶ 15. "[T]he involvement of a neutral . . . in [the parties'] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Rule 23(e)(2)(B) Advisory Committee's Note; *accord Pederson v. Airport Terminal Servs.*, No. 15-cv-02400, 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018) (oversight "of an experienced mediator" reflected non-collusive negotiations).

Third, and finally, several potential warning signs for collusion are absent here: members of the settlement classes will receive all they could be entitled to at this stage of the litigation; the requested attorney's fees are significantly lower than the lodestar generated; and no unclaimed funds will revert to SquareTrade. Joint Decl. ¶¶ 17-18; *see generally* SA; *see, e.g., Kulesa v. PC Cleaner, Inc.*, No. 12-cv-0725, 2014 WL 12551770, at *8 (C.D. Cal. Aug. 26, 2014) (finding no collusion since class members received substantial monetary relief; "class counsel have not received 'red-carpet treatment on fees'"; and settlement negotiations were overseen by a mediator).

In sum, the Court can be confident of the arm's-length nature of the process.

### c. The quality of relief to the class weighs in favor of approval.

The third factor to be considered is whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee's Notes.

### i. The settlement provides strong relief for the class.

Plaintiffs believe the monetary and injunctive relief delivered here is strong and weighs in favor of settlement approval, even in the face of "more rigorous scrutiny" applied before a class is certified. *Saucillo*, 25 F.4th at 1131.

With respect to monetary relief, the SKU-cap Subclass will automatically receive the full difference between their payment from SquareTrade and their product's purchase price. SA ¶ 3.5. Meanwhile, the Fast Cash Subclass is eligible to receive the full difference between their payment from SquareTrade and the actual replacement cost of their covered products, up to original purchase price. *Id*. ¶ 3.4. Class members will thus be entitled to complete monetary relief without having to incur additional uncertainty or delay. *See, e.g.*, *Bozarth v. Envision Healthcare Corp.*, No. 17-cv-1935, 2020 WL 11028383, at *6 (C.D. Cal. June 30, 2020) (class settlement where class members could receive "potentially 100%" after filing a valid claim was "more than adequate").

The injunctive relief provides additional value. The systems error that led to SKU-cap underpayments is being eliminated, which will spare future consumers from being underpaid. And Fast Cash is being reformed: without losing the characteristics that make it "fast"—a desirable point for many consumers—it will now alert protection-plan holders that the Fast Cash amount is an offer subject to upward adjustment. That way, they can check for themselves to see if the payment amount will suffice to cover the cost of a replacement and, if not, they can point SquareTrade to the true replacement cost, and receive full reimbursement. This will benefit thousands of consumers in the years to come.

This negotiated relief readily satisfies the Rule 23 standard of fair, reasonable, and adequate. This settlement will return significant monetary and injunctive relief to the class, in a heavily contested case with substantial risk. Under these circumstances, Plaintiffs and their counsel wholeheartedly endorse the negotiated resolution of this action. Joint Decl. ¶ 19.

### ii.   Continued litigation would entail substantial cost, risk, and delay.

Almost all class actions involve high levels of cost, risk, and lengthy duration, which supports the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). Here, had the parties not settled, the litigation would have been risky, protracted, and costly.

Many hurdles lied ahead for a successful prosecution. The parties would likely have briefed motions to compel arbitration and further motions to dismiss for both Plaintiffs Abbott and Gonzales, followed by class certification, a likely Rule 23(f) appeal after the Court's certification ruling, summary judgment, motions in limine, a possible decertification motion, and then trial. Joint Decl. ¶ 11. Each stage would have added risk and necessarily imposed delay before relief could be provided to the class. *Id.* at ¶ 14. Further, the parties were continuing to negotiate the scope of not-yet-produced discovery, and additional depositions would have been forthcoming (30(b)(6) depositions, third-party depositions, and additional SquareTrade employee depositions). *Id.* at ¶ 10.

More immediately, Plaintiffs would have had to plead and prove their case within the bounds of the Court's prior orders, since the Court dismissed Plaintiff Abbott's and Plaintiff Gonzales' claims for breach of contract, ECF No. 84 ¶¶ 10-11, 17-18, their California and New York consumer protection claims, *id.* at 13-14, 19-20, and their unjust enrichment claims. *Id.* at 17, 20-21.

After doing so, Plaintiffs planned to present what they believe to be a compelling narrative of wrongdoing. They believe they could demonstrate that Fast Cash was unfair and contrary to SquareTrade's contractual promises. Joint Decl. ¶ 12. But Plaintiffs' counsel recognize, based on their experience in similar class actions and based on the record, that the case faced real challenges—including with further motions to dismiss, the possibility of compelled arbitration, and at class certification, where the case could either fail or be whittled down. *Id.* at ¶ 13-4. Plaintiffs believe they had reasonably strong prospects of overcoming SquareTrade's arguments and defenses, but there can be little doubt that those defenses presented the possibility that the class would recover nothing. *Id.* at ¶ 18.

Of course, even if Plaintiffs prevailed on each of these issues through class certification and trial, an appeal would likely follow, taking another two years or more to resolve. At best, class recovery would come by perhaps 2024, all with slim prospects for any greater recovery than what is embodied in the proposed settlement.

All of these considerations favor settlement. The class will receive meaningful relief now—not similar relief (or none at all) years down the road.

### iii. The settlement agreement provides for an effective distribution of proceeds to the class.

The settlement contemplates an efficient and effective distribution process. Should the Court grant this motion, class members will receive notice of this settlement 30 days after an order is issued and will have 90 days to submit any necessary claim. SA ¶¶ 1.7, 1.22. Should the Court grant final approval to this settlement, class members will receive payments within 60 days from the Effective Date. *Id.* at ¶3.7

As mentioned above, SKU-cap Subclass members will receive their settlement payments automatically. There is no claims process and no need to gather information or documents. Based on SquareTrade's research and investigation, shared with Plaintiffs' counsel, there are a total of 1,700 SKU-cap Subclass members. Ma Decl. ¶ 4. The payments to the SKU-cap Subclass will total approximately $135,000. *Id.*

For the Fast Cash Subclass, claims are necessary because SquareTrade does not maintain data on historic product replacement costs. The parties, however, have taken substantial steps to minimize claims burdens here. Claim forms can be submitted electronically, will auto-populate information about class members' transactions, and permit class members to attest to the replacement cost of their covered product. *See* Order on Prelim. Approval at 4, *Broomfield v. Craft Brew Alliance*, No. 5:17-cv-01027 (N.D. Cal. Feb. 11, 2020) (approving a claim form that required attestation of age at the time of purchase and proof of purchase); *see also* Order on Prelim. Approval at 2, *Kumar,* No. 4:14-cv-02411 (approving a claim form process that was "simple and not burdensome," requiring submission of basic contact information, a few key facts about the products at issue, and an attestation).

For 95% of the class, nothing else is needed. Ma Decl. ¶ 3. In about 5% of cases, where claims would otherwise entail $35 or more in payment, claimants will be asked to submit documentation confirming their stated replacement cost (for example, a receipt or a link to an online retailer page). *Id.* With that proof, their recovery will be uncapped (up to their item's

NOTICE OF MOT. AND MOT. FOR PRELIMINARY APPROVAL
CASE NO. 3:20-CV-02725-JCS

purchase price). *Id.* But even those class members who lack documentation will receive payment—it will simply be capped at $35 per Fast Cash claim. SA ¶ 3.4.3.

The claims process thus poses no artificial hurdles and should encourage class member participation in the settlement.

### iv. The terms of the proposed award of attorney's fees, including timing of payment, also support settlement approval.

At this stage, courts "must balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class.'" *Briseno v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii)). This inquiry is particularly salient when class cases settle before a court has certified a class due to the risk that "collu[sive] plaintiffs' counsel may "strike a quick settlement without devoting substantial resources to the case." *Id.* Three signs of such collusion, the "so-called *Bluetooth* factors," are (i) fees as a disproportionate distribution of the settlement, (ii) a kicker, where unawarded fees revert to the defendant, and (iii) a clear-sailing agreement, where a defendant agrees not to challenge a fee request. *Id.* By contrast, when plaintiffs' counsel have "devot[ed] substantial time and resources to the case," they have "skin in the game, guaranteeing his or her interest in maximizing" class members' settlement recovery. *Id.* at 1025.

Here, as will be fully detailed at the final approval and fee motion stage of the proceedings, the requested attorney's fees are reasonable. The requested fees should not be viewed as inappropriately large, given that over 800,000 class members are eligible to receive full relief under the settlement. *Id.* at 1024. SA ¶¶ 3.4-3.5; *see, e.g.*, *Stewart v. Applied Materials, Inc.*, No. 15-cv-02632, 2017 WL 3670711, at *5–6 (N.D. Cal. Aug. 25, 2017) (approving fees where settlement "provide[d] for all the benefits the class members were denied"). Further, the parties negotiated injunctive relief to ensure fuller transparency and easier dialogue regarding both mistaken caps and replacement value payouts under Fast Cash. *See Jabbari v. Wells Fargo & Co.*, No. 15-cv-02159, 2018 WL 11024841, at *6 (N.D. Cal. June 14, 2018) (approving fees where counsel obtained substantial injunctive relief in addition to an uncapped fund). Finally, the parties negotiated relief for the class before they negotiated fees. Joint Decl. ¶15; *see, e.g.*,

16

*Vargas v. Ford Motor Co.*, No. cv 1208388, 2020 WL 1164066, at *12 (C.D. Cal. Mar. 5, 2020) (clear-sailing provision was "not problematic" when, among other things, fees were negotiated separately from class relief).

Also of note, the fee and cost reimbursements, if approved, will compensate counsel at a significantly lower rate than their usual billing rates given the amount of time they have devoted to this litigation. Joint Decl. ¶ 23. Had the fee amount been litigated rather than negotiated, a multiplier could have been awarded for substantially higher fees. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 3:15-md-02672, 2017 WL 1352859, at *3 (N.D. Cal. Apr. 12, 2017) (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995)) ("Multipliers in the 3-4 range are common in lodestar awards[.]"). In contrast, under the settlement, Plaintiffs' counsel are poised to receive a fractional multiplier of 0.56%, rather than a positive multiplier. Joint Decl. ¶ 24.

Neither of the other two *Bluetooth* factors insinuate collusion. Concerns regarding an unawarded fee set-aside reverting to defendant are inapplicable where, as here, there is no common fund. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1125, 1127 (9th Cir. 2020). And although SquareTrade has agreed not to dispute Plaintiffs' counsel's fee request, that concern carries little weight where, as here, Plaintiffs' counsel have invested significant time into litigating the case, they've obtained excellent results for the class, and their fee cap is significantly lower than they'd earn using a traditional lodestar calculation. *See e.g.*, *Schuchardt v. L. Off. of Rory W. Clark,* 314 F.R.D. 673, 687 (N.D. Cal. 2016) (approving fees despite a "clear sailing" provision because class relief was "more than [class members] could have received had they continued to litigate").

The proposed fee award is thus appropriate, which Plaintiffs will detail further when they file their motion for attorney's fees, costs, and service payments.

**v. The parties have no other agreements pertaining to the settlement.**

Court also must evaluate any agreement made in connection with the proposed settlement. See Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Here, the settlement agreement before the Court is the only extant agreement. Joint Decl. ¶ 16.

17

vi.   **The settlement treats all settlement class members equitably.**

The final Rule 23(e)(2) factor is whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee's Notes.

Here, the settlement generally treats all members of each of the two Subclasses the same. All SKU-cap Subclass members will automatically receive the difference between what SquareTrade originally paid them and their product's purchase price, without reduction, and all Fast Cash Subclass members will be eligible to receive the difference between what SquareTrade originally paid them and their product's attested-to replacement value. To the extent class members receive different compensation under the settlement, it will be proportionate to their actual harm. *See, e.g.*, *Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment because the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct").

The same is true for the release, which is identical for all class members. *See* SA ¶ 5. As a result, the settlement treats all class members equitably, further supporting approval of the settlement.

Finally, though the class representatives will receive additional money in the form of service awards, the extra payments recognize the service they performed on behalf of the class. Service awards for this work are "fairly typical" in class action cases. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Here, each Plaintiff reviewed pleadings and other filings, responded to discovery, searched for and produced responsive documents, kept apprised of the litigation, and prepared for and sat for a full-day deposition. Joint Decl. ¶ 9; *see also* SA ¶ 8.2 (preserving the Court's supervisory authority to determine the appropriateness of any service awards).

1    For all these reasons, the proposed settlement merits approval.

2    **II.    Certification of the proposed settlement classes is appropriate.**

3    The second prerequisite for directing notice of the settlement to the class is a

4    determination that the class is likely to meet the requirements for certification for settlement

5    purposes. Fed. R. Civ. P. 23(e)(1)(B)(ii). Certification requires that all four elements of Rule

6    23(a) and at least one prong under Rule 23(b) be satisfied. In addition, the Court must assure

7    itself that the proposed forms of notice to the class are the "best notice that is practicable

8    under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

9    The criteria for class certification are applied differently in litigation classes and settlement

10   classes. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (*en banc*). For

11   example, when deciding to certify a settlement class, "manageability is not a concern" since

12   the settlement will eliminate the need for a trial. *Id.* at 557. On the other hand, other aspects of

13   certification require "heightened attention by the district court." *Id.* at 558 (quotation omitted).

14   "[T]he aspects of Rule 23(a) and (b) that are important to certifying a settlement class are

15   those designed to protect absent [class members] by blocking unwarranted or overbroad class

16   definitions." *Id.* (quotation omitted). The focus is "on whether a proposed class has sufficient

17   unity so that absent members can fairly be bound by decisions of class

18   representatives." *Id.* (same).

19   Here, the settlement classes are composed of only (a) protection plan purchasers to whom

20   mistaken caps were applied; and (b) protection plan purchasers who were paid under the Fast

21   Cash program. These settlement classes are narrower than those that were originally

22   proposed in Plaintiffs' complaint—they encompass only those protection plan purchasers

23   who were paid out in the ways the settlement targets. *See* ECF. No. 60 ¶ 81. There is thus no

24   risk that this settlement expands the scope of the class in an unwarranted, overbroad fashion.

25   *See Hyundai & Kia*, 926 F.3d at 558. And for the reasons that follow, the proposed settlement

26   class satisfies the requirements of Rule 23(a) and (b)(3).

27

28

a.  **The proposed class definition is appropriate given the scope of the litigation.**

The Northern District's preliminary approval guidelines inquire as to whether the proposed settlement class differs from the class proposed in the operative complaint. *See* N.D. Cal., *Proc. Guidance for Class Action Sett.* § 1(c). Here, Plaintiffs filed an amended complaint in anticipation of the settlement on March 23, 2022, and the proposed class in that complaint is identical to the proposed settlement class (and proposed Subclasses) listed supra. *See* ECF No. 102.

Prior to that amendment, Plaintiffs' complaint had proposed multiple classes, with the broadest (nationwide) class proposing to encompass "[a]ll purchasers of a SquareTrade protection plan in the United States who made a claim with SquareTrade and were paid less than product purchase price." ECF No. 60 ¶ 81.[2] In the most recent complaint, Plaintiffs refined the class definition to make explicit that it was defined to encompass the Fast Cash and SKU-cap issues that have been at issue in this litigation. *See* ECF No. 102 ¶ 81.

In that sense, the proposed class definition is a bit narrower than the prior definitions—it restricts class membership to Fast Cash and SKU-cap SquareTrade customers only. With the settlement class defined even more narrowly than the proposed litigation class, nothing about the class definition here should raise concern. Instead, courts typically scrutinize *expanded* class definitions at the settlement stages, since expanded settlement classes sometimes signify an attempt to achieve a broader release than would have been achieved through litigation. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg. Litig.*, 2019 WL 536661, at *4 (N.D. Cal. Feb. 11, 2019) (preliminarily approving a narrower class definition and recognizing that "[t]hose excluded from the class do not, of course, release any claims"). Here, no such concern is present; the proposed class definition should be deemed a satisfactory delineation of the contours of the settlement class.

---

[2] Three statewide proposed classes were defined to include "All individuals who purchased a SquareTrade protection plan in California [or New York or Pennsylvania]." ECF No. 60 ¶ 81.

### b.  The settlement class satisfies the requirements of Rule 23(a).

#### i.  The class members are too numerous to be joined in one action.

The first Rule 23(a) requirement is that the proposed class be so numerous that joinder of all members is impracticable. See Fed. R. Civ. P. 23(a)(1). Classes of more than 40 members are presumed to meet this requirement. *Arroyo v. Int'l Paper Co.*, No. 17-cv-06211, 2019 WL 1508457, at *2 (N.D. Cal. Apr. 4, 2019). Here, the SKU-cap Subclass consists of 1,700 members and the Fast Cash Subclass consists of 813, 805 members. Ma Decl. ¶ 2. The numerosity requirement is therefore satisfied.

#### ii.  The action involves common questions of law or fact.

Under Rule 23(a)(2), there must be "questions of law or fact common to the class," meaning the class's claims "must depend upon a common contention" such that "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011). This case poses several overarching questions common to members of both classes, including the nature of SquareTrade's obligations to protection-plan purchasers under its contract and under common law principles and consumer protection statutes. *See, e.g., Just Film, Inc. v. Buono*, 847 F.3d 1108, 1122-23 (9th Cir. 2017); *Achziger v. IDS Prop. Cas. Ins. Co.*, 772 F. App'x 416, 418-19 (9th Cir. May 9, 2019). For settlement purposes, the commonality requirement is thus satisfied; the "circumstances of each particular class member ... retain a common core of factual or legal issues with the rest of the class." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012).

#### iii.  Plaintiffs' claims are typical of the class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "[T]he typicality requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). Plaintiffs have alleged the same claims that would be pursued by anyone else who was paid under the SKU-cap error (like Plaintiff Shuman) and the Fast Cash program (like

21

Plaintiffs Abbott and Gonzales). This common course of conduct gives rise to the same reasonably co-extensive claims for all class members for purposes of settlement. *See Just Film*, 847 F.3d at 1117.

### iv.   Plaintiffs and their counsel have, and will continue to, fairly and adequately protect the interests of the class.

The final Rule 23(a) requirement demands that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This adequacy requirement involves two questions: (i) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (ii) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018). Here, neither Plaintiffs nor their counsel have any conflicts of interest with absent class members. To the contrary, their interests are aligned. Plaintiffs bought SquareTrade protection plans and were paid under either the SKU-cap error or the Fast Cash program, just like every other class member, and share those class members' interest in recouping at least some of the payout remainder allegedly owed. *See* Joint Decl. ¶¶ 4, 8.

Plaintiffs and their counsel have also demonstrated their commitment to the class over the last two years. Since filing suit, counsel have spent 3,248.6 hours prosecuting the case and have incurred approximately $58,020.53 in litigation expenses. Joint Decl. ¶¶ 24-5. The case has been hard fought, with several dispositive motions, and significant discovery work required from Plaintiffs. Joint Decl. ¶ 9. Plaintiffs' counsel also spent significant time negotiating discovery with both SquareTrade and various third parties, culminating in the production and review of tens of thousands of pages of documents in all, and several amendments to SquareTrade's interrogatory responses. *Id.* Plaintiffs' counsel are well-versed in complex class litigation and devoted substantial time and expertise for the benefit of the class. *Id.* ¶ 3. There is no reason to doubt the adequacy of this representation.

### c.   The settlement class meets the requirements of Rule 23(b)(3).

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2)

1  or (3)." *Hanlon v. Chrysler Corp.*, 150 F.3d at 1022. Here, the settlement class is maintainable

2  under Rule 23(b)(3), as common questions predominate over any questions affecting only

3  individual members and class resolution is superior to other available methods of

4  adjudication. *Id.*

5      Whether "a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by

6  whether certification is for litigation or settlement." *In re Hyundai & Kia*, 926 F.3d at 558.

7  Specifically, in assessing a settlement class's predominance, "a district court need not inquire

8  whether the case, if tried, would present intractable management problems." *Amchem Prods.,*

9  *Inc. v. Windsor*, 521 U.S. 591, 620 (1997). For example, courts certify settlement classes even

10  where arbitration clauses may have posed a hurdle to certification in ordinary litigation. *See,*

11  *e.g., Kim v. Tinder, Inc.*, No. cv 18-3093, 2019 WL 11717129, at *4-6, 8 (C.D. Cal. Mar. 1, 2019)

12  (granting preliminary settlement approval and certifying settlement class where many class

13  members entered into arbitration agreements, which the court acknowledged can bar class

14  certification "under the right circumstances").

15      As alleged, the merits of class members' claims would depend on issues regarding

16  SquareTrade's payment-issuance systems and policies. For the SKU-cap Subclass, claims

17  would turn on whether caps lower than a consumer's product purchase price were

18  appropriately applied. And for the Fast Cash Subclass, claims would turn on whether (a)

19  SquareTrade's calculation of the Fast Cash percentage fairly estimated products' replacement

20  values, and (b) whether the Fast Cash program itself was sufficiently disclosed to protection

21  plan purchasers.

22      For similar reasons, it is superior to resolve all settlement class members' claims through a

23  single class action as opposed to a series of individual lawsuits. "From either a judicial or

24  litigant viewpoint, there is no advantage in individual members controlling the prosecution of

25  separate actions. There would be less litigation or settlement leverage, significantly reduced

26  resources, and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1203. The class action's

27  superiority is even more pronounced here because the "class consists of thousands of members

28  who would be unlikely to bring individual claims for the relatively small amounts of money

23

they each are due." *Cabiness v. Edu. Fin. Sols., LLC*, No. 16-cv-01109, 2018 WL 3108991, at *3 (N.D. Cal. June 25, 2018) (granting preliminary approval).

         **d.  The settlement provides the best method of notice practicable.**

      Before approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified under Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

      Rule 23 was recently amended "to recognize contemporary methods of giving notice to class members," doing away with the interpretation that the Rule required notice "by first class mail." Fed. R. Civ. P. 23(c)(2), 2018 Advisory Committee's Notes. The rule recognizes that "electronic methods of notice, for example email, [will sometimes be] the most promising" method for delivery of notice—depending on the makeup of the class and whether class members are likely to have email access. *Id.*

      Here, the parties have agreed to email notice for every class member for whom SquareTrade has an email address, and postcard notice for the others. SA ¶ 4. Postcard notice will also be mailed where an email address is no longer accepting emails. *Id.* JND will also disseminate at least one email reminder during the claims period to Fast Cash Subclass members who have not yet submitted claims, and perhaps more depending on JND's assessment of the efficacy of the claims process. Joint Decl. ¶ 22. There will also be a settlement website containing the notice, relevant court filings, important dates, and answers to frequently asked questions. SA ¶ 4.7. The email notice and the reminders will have embedded individualized links for class member claim forms; the postcard notice will have instructions on how to file a claim, as well. *See* Exs. D, E, and F to Joint Decl.

                    **THE COURT SHOULD SET A SCHEDULE FOR FINAL APPROVAL**

      Once the Court directs notice of the settlement to the class, the next steps in the settlement approval process are to schedule a final approval hearing, allow time for notice to be sent to

NOTICE OF MOT. AND MOT. FOR PRELIMINARY APPROVAL
CASE NO. 3:20-CV-02725-JCS

the class and an opportunity for class members to submit objections and opt-out requests, and
allow the parties to conduct appropriate objector discovery if needed."[3]

Plaintiffs propose the following schedule:

| Deadline for disseminating class notice | 30 days after entry of order |
|---|---|
| Plaintiffs to file a motion for final approval, attorneys' costs and fees, and service awards | 70 days after entry of order |
| Deadline for class members to opt out of or object to the settlement | 105 days after entry of order[4] |
| Replies in support of final approval and fee application | 115 days after entry of order |
| Final approval hearing | 129 days after entry of order |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the
accompanying proposed order directing notice of the proposed settlement to the class,
appointing Class Counsel, and setting a hearing for the purpose of deciding whether to grant
final approval of the settlement.

Dated: March 23, 2021                    /s/ David Stein

Eric H. Gibbs (SBN 178658)
David Stein (SBN 257465)
Amanda Karl (SBN 301088)

---

[3] *See, e.g., In re MagSafe Apple Power Adapter Litig.*, No. 5:09-cv-01911, 2015 WL 428105, at *2
(N.D. Cal. May 29, 2015) (authorizing objector depositions).

[4] *See* N.D. Cal., *Proc. Guidance for Class Action Sett.* § 9.

**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
amk@classlawgroup.com

William H. Anderson *(admitted pro hac vice)*
**HANDLEY FARAH & ANDERSON PLLC**
4730 Table Mesa Drive, Suite G-200
Boulder, CO 80305
Telephone: (303) 800-9109
Facsimile: (844) 300-1952
wanderson@hfajustice.com

Rebecca P. Chang *(admitted pro hac vice)*
**HANDLEY FARAH & ANDERSON PLLC**
81 Prospect Street
Brooklyn, NY 11201
Telephone: (347) 480-1030
Facsimile: (844) 300-1952
rchang@hfajustice.com

*Counsel for Plaintiffs and the Proposed Class*

NOTICE OF MOT. AND MOT. FOR PRELIMINARY APPROVAL
CASE NO. 3:20-CV-02725-JCS