# EXHIBIT 3

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release, dated March 22, 2022, is made and entered into by and between Plaintiffs Michael Shuman, Kathleen Abbott, and Tommy Gonzales, on behalf of themselves and as Class Representatives of the Settlement Class, on the one hand, and Defendant SquareTrade, Inc., on the other hand, in order to settle and resolve the Action and release and discharge the Released Claims, as set forth below. Capitalized terms that are not otherwise defined in this Class Action Settlement Agreement and Release have the meanings set forth in Section 1 herein.

## RECITALS

WHEREAS, on January 16, 2020, Plaintiff Michael Shuman wrote to Defendant alleging violations of law in connection with Defendant's marketing of its Protection Plans and Defendant's business practices for providing coverage under its Protection Plans; and

WHEREAS, on April 20, 2020, Plaintiff Shuman filed a class action lawsuit against Defendant titled *Shuman v. SquareTrade, Inc.*, No. 3:20-cv-02725-JCS, in the District Court for the Northern District of California, asserting claims under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*., the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. (the "UCL"), and for breach of contract and unjust enrichment, on behalf of a putative nationwide class of all purchasers of SquareTrade Protection Plans in the United States; and

WHEREAS, on April 22, 2021, Plaintiffs filed a First Amended Complaint, adding Plaintiff Kathleen Abbott, who asserted claims for breach of contract, unjust enrichment, and violations of §§ 349 and 350 of New York's General Business Law ("GBL"), and Plaintiff Tommy Gonzales, who asserted claims for breach of contract, unjust enrichment, and violation of the UCL, and restating the claims of Plaintiff Shuman, who asserted claims for unjust enrichment and breach of contract, on behalf of a class of all purchasers of a SquareTrade Protection Plan in the United States who made a claim with SquareTrade and were paid less than product purchase price; and

WHEREAS, on November 3, 2021, the Court issued an Order granting (with leave to amend) SquareTrade's motions to dismiss the claims of Plaintiffs Abbott and Gonzales, and denying SquareTrade's motion for summary judgment of the claims of Plaintiff Shuman; and

WHEREAS, on January 26, 2022, the Parties engaged in a mediation before the Honorable Judge James L. Warren (Ret.) of JAMS and, after approximately fifteen hours of negotiation, reached an agreement-in-principle to resolve the Action on a classwide basis; and

WHEREAS, the Parties have engaged in extensive discovery during the pendency of the case, including electronic and physical document productions, interrogatories, and depositions, and Plaintiffs have also taken discovery from third-party retailers that market SquareTrade Protection Plans; and

WHEREAS, Plaintiffs filed a Second Amended Complaint on March 23, 2022; and

WHEREAS, based upon the rulings in the Action to date, the discovery taken, the Parties' respective evaluations of the facts and applicable law, and the risks, costs and uncertainties of continued litigation, the Parties have agreed to settle the Action pursuant to provisions of this Agreement; and

NOW, THEREFORE, subject to the Court's approval, the Parties hereby agree, in consideration of the promises and covenants contained herein, that the Action shall be resolved, and any Released Claims against any Released Persons and Released Parties shall be settled, compromised, and forever released upon the following terms and conditions:

AGREEMENT

1.     **DEFINITIONS**

The terms in this Agreement and its exhibits shall have the meanings set forth below.

1.1.     "**Action**" means the civil case entitled *Shuman v. SquareTrade, Inc.*, No. 3:20-cv-02725-JCS, pending in U.S. District Court for the Northern District of California.

1.2.     "**Administrative Costs**" means all costs and expenses incurred in administering the Settlement, including, but not limited to the provision of Notice to the Settlement Class in

accordance with the Preliminary Approval Order, creation of the Settlement Website, and administration of the claims process.

1.3. "**Agreement**" means this Class Action Settlement Agreement and Release and its exhibits.

1.4. "**Court**" means the U.S. District Court for the Northern District of California, the Honorable Joseph C. Spero, Chief U.S. Magistrate Judge, presiding.

1.5. "**Claim**" means a claim for payment submitted by a Fast Cash Claimant to the Settlement Administrator as provided for in this Agreement.

1.6. "**Claim Form**" means a claim form, substantially in the form of Exhibit A attached hereto, and any supporting documentation submitted by a Fast Cash Claimant to the Settlement Administrator for purposes of making a Claim under this Agreement.

1.7. "**Claim Deadline**" means the date by which a Settlement Class member must submit a properly completed Claim Form to the Settlement Administrator, which shall be ninety (90) days after the Notice Date, or as otherwise set in the Preliminary Approval Order.

1.8. "**Class Counsel**" means William Anderson and Rebecca Chang of Handley Farah & Anderson PLLC and David Stein and Amanda Karl of Gibbs Law Group LLP.

1.9. "**Class Period**" means the time period between April 20, 2016, through the date of the Preliminary Approval Order.

1.10. "**Class Representative**" means each of the named Plaintiffs in the Action: Michael Shuman, Kathleen Abbott, and Tommy Gonzales.

1.11. "**Defendant**" means SquareTrade, Inc., as well as its past, present, and future owners, officers, directors, shareholders, employees, predecessors, affiliates, associates, parents, subsidiaries, divisions, controlling or principal shareholders, general or limited partners or partnerships, distributors, principals, insurers, administrators, advisors, agents, servants, successors, sureties, trustees, vendors, subcontractors, buyers, independent contractors, attorneys, representatives, heirs, executors, experts, consultants, and all successors or predecessors in interest, assigns, or legal representatives of all of the foregoing persons and entities.

1.12. "**Defendant's Counsel**" means Defendant's attorneys of record in the Action, Douglas A. Winthrop, George Langendorf, and Kaitlin Robinson of Arnold & Porter Kaye Scholer LLP.

1.13. "**Effective Date**" means the first date by which all of the following have occurred: the Court has entered the Final Approval Order and Judgment on the docket in the Action and (a) the time to appeal from such order has expired and no appeal has been timely filed, (b) if such an appeal has been filed, it has finally been resolved and has resulted in an order affirming the Final Approval Order and Judgment, and the time to appeal from such order has expired and no appeal has been timely filed.

1.14. "**Fast Cash**" means the program, first piloted by Defendant in 2016 and formally launched by Defendant on or about May 13, 2018, in which Defendant resolves claims for coverage under Protection Plans by offering customers an immediate payment reflecting Defendant's estimate of the replacement cost of a new product of equal features and functionality as the covered product.

1.15. "**Fast Cash Subclass**" means any person who, during the Class Period, (i) submitted a claim for coverage under a Protection Plan, and (ii) whose claim was resolved via a Fast Cash payment from Defendant.

1.16. "**Fast Cash Claimant**" means a member of the Fast Cash Subclass who submits a Claim to the Settlement Administrator under this Settlement.

1.17. "**Fee and Cost Application**" means the written motion by which the Class Representatives and Class Counsel request that the Court award attorneys' fees, costs, and service awards, pursuant to the terms of this Agreement.

1.18. "**Final Approval Hearing**" means the hearing to be conducted by the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure to determine the fairness, adequacy, and reasonableness of the Settlement.

1.19. "**Final Approval Order**" means the order in which the Court grants final approval of the Settlement as fair, adequate, and reasonable under Rule 23 of the Federal Rules

of Civil Procedure, certifies the Settlement Class, and authorizes the entry of a final judgment and dismissal of the Action with prejudice.

1.20.   "**Judgment**" means the judgment to be entered by the Court pursuant to the Settlement and the Final Approval Order.

1.21.   "**Notice**" shall mean the notice provided to the Settlement Class pursuant to this Agreement and substantially in the form of Exhibits B, C, and D hereto.

1.22.   "**Notice Date**" means the date thirty (30) days after the Court issues the Preliminary Approval Order, or as otherwise set in the Preliminary Approval Order, by which date the Settlement Administrator shall disseminate the Notice to the Settlement Class in accordance with the Notice Plan.

1.23.   "**Notice Plan**" means the method of providing the Settlement Class with notice of the Settlement, as approved in the Preliminary Approval Order.

1.24.   "**Objection Deadline**" means the date by which Settlement Class members may submit a written objection to the Settlement, which shall be seventy-five (75) days after the Notice Date, or as otherwise set in the Preliminary Approval Order.

1.25.   "**Opt-Out Deadline**" means the date by which Settlement Class members may request exclusion from the Settlement, which shall be seventy-five (75) days after the Notice Date, or as otherwise set in the Preliminary Approval Order.

1.26.   "**Opt-Out Request**" means a written request by a Settlement Class member for exclusion from the Settlement Class.

1.27.   "**Parties**" means Plaintiffs Michael Shuman, Kathleen Abbott and Tommy Gonzales, and Defendant SquareTrade, Inc. "Party" refers to each of them individually.

1.28.   "**Plaintiff**" means each of Michael Shuman, Kathleen Abbott, and Tommy Gonzales.

1.29.   "**Preliminary Approval Order**" means the order signed by the Court in which it grants preliminary approval of the Settlement and approves the Notice Plan.

1.30.   "**Proof of Replacement Cost**" means evidence provided by a Fast Cash Claimant in support of a Claim that either (i) indicates that the Fast Cash Claimant purchased a Replacement Product for a specified amount (exclusive of taxes and fees) at or near the time the Fast Cash Claimant filed the claim resulting in the Fast Cash payment, or (ii) reflects the price of a Replacement Product (exclusive of taxes and fees) at or near the time the Fast Cash Claimant filed the claim resulting in the Fast Cash payment.

1.31.   "**Protection Plan**" means a service contract sold by Defendant which protects mobile devices, laptops, tablets, and other products from malfunctions and, in certain cases, accidental damage by providing that, if the product breaks for a covered reason during the term of the Protection Plan, Defendant will either, at Defendant's discretion, repair, replace or make a payment to the customer for the covered product.

1.32.   "**Purchase Price**" means the price that a member of the Settlement Class paid for a product that is the subject of a Claim or a SKU-Cap Payment, at the time the product was originally purchased, exclusive of taxes or fees.

1.33.   "**Released Claims**" means any and all claims, cross-claims, damages, losses, demands, suits, matters, issues, debts, liens, contracts, liabilities, agreements, costs or expenses, asserted rights, or actions, of any kind that Plaintiffs or any member of the Settlement Class has, had, or may have, including any assigned claims, whether in arbitration or administrative or judicial proceedings, whether asserted as an individual claims or on a class basis or on behalf of the general public, whether known or unknown, asserted or unasserted, suspected or unsuspected, latent or patent, that is, has been, could have been, or in the future might be asserted, either in the Action or in any action or proceeding in this Court or in any other court or forum, against any of the Released Parties or Released Persons, arising out of or relating to the facts underlying the Action. For the avoidance of doubt, the Parties intend the scope of the release to be as broad as possible under the Ninth Circuit's "identical factual predicate" standard, as set forth in *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

1.34.   "**Released Parties**" and "**Released Persons**" means Defendant, its owners, parents, subsidiaries, controlled companies, affiliates, each of its and their respective officers, directors, employees, insurers (including their insurers' reinsurers), consultants, advisors, attorneys and agents, founders, co-founders, partners, privies, representatives, and all persons acting by, through, under the direction of, or in concert with them, and each of its and their respective predecessors, successors and assigns.

1.35.   "**Releasing Parties**" means all members of Settlement Class.

1.36.   "**Replacement Product**" means a product of equal features and functionality to a product that was the subject of a claim for coverage under a Protection Plan during the Class Period, at the time the claim for coverage was filed.

1.37.   "**Settlement**" means the terms, conditions, and obligations described in this Agreement.

1.38.   "**Settlement Administrator**" refers to JND Legal Administration.

1.39.   "**Settlement Class**" means all members of the Fast Cash Subclass and the SKU-cap Subclass. Excluded from the Settlement Class are the judge approving the Settlement and his or her immediate family; Defendant; any entities in which Defendant has a controlling interest or which have a controlling interest in Defendant; the officers, directors, employees, affiliates and attorneys of Defendant, and the immediate family members of any such person; and any person who has submitted a timely and valid Opt-Out Request.

1.40.   "**Settlement Website**" means the website created and maintained by the Settlement Administrator pursuant to the Notice Plan.

1.41.   "**SKU-cap Subclass**" means any person who, during the Class Period, (i) submitted a claim for coverage under a Protection Plan, (ii) resolved the claim by receiving a monetary payment from Defendant, and (iii) received less than the amount the person should have received were it not for the SKU-cap Error.

1.42.   "**SKU-cap Error**" means an error in Defendant's system that, in rare instances, resulted in Defendant inadvertently limiting payments to certain customers who submitted

covered claims based upon the upper limit of the SKU for a Protection Plan, instead of paying them based upon the estimated replacement cost (exclusive of taxes and fees) or original Purchase Price of the covered product.

1.43.   "**SKU-cap Payment**" means a payment made by Defendant to a member of the SKU-cap Subclass pursuant to this Agreement, equal to the difference between (i) the payment previously received by the SKU-cap Subclass member that was impacted by the SKU-cap Error, and (ii) the Purchase Price that the SKU-cap Subclass member paid to purchase the product that was the subject of the SKU-cap Subclass member's claim.

1.44.   "**Total Settlement Amount**" means the sum of all Valid Claims and all SKU-cap Payments.

1.45.   "**Valid Claim**" means a Claim submitted by a Fast Cash Subclass member that satisfies all the criteria for submission of a Valid Claim Form and that is approved for payment by the Settlement Administrator.

1.46.   "**Valid Claim Form**" means a Claim Form that is completed, executed, and submitted, along with any other necessary documentation, by a Fast Cash Subclass member to the Settlement Administrator by the Claim Deadline.

2.   **DENIAL OF WRONGDOING AND LIABILITY**

2.1.   Defendant has denied and continues to deny all of the allegations in the Action, and any allegation that any aspect of its business practices or the manner in which it markets or administers its Protection Plans is unfair, deceptive, or misleading or violates any legal requirement, including, but not limited to, the allegations that Defendant engaged in unfair, unlawful, fraudulent, or deceptive trade practices, breached any contract, was unjustly enriched, or violated any other statute, regulation, or common law or industry standard. Defendant is entering into this Agreement solely because it will eliminate the uncertainty, distraction, burden, and expense of further litigation. The provisions of this Agreement and the manner or amount of relief provided to members of the Settlement Class shall not be deemed a presumption, concession, or admission by Defendant of any fault, liability, or wrongdoing as to any facts or

DocuSign Envelope ID: 48EAE5B3-71BC-499B-9AD0-26652CBDB43E

claims that have been, or might have been, or might be alleged or asserted in the Action, or in any other action or proceeding, and shall not be interpreted, construed, deemed, invoked, offered, or received into evidence or otherwise used by any person in any action or proceeding, whether civil, criminal, or administrative, for any purpose other than as provided expressly herein.

2.2.    By entering into this Agreement, Defendant is not consenting to or agreeing to certification of the Settlement Class for any purpose other than to effectuate the Settlement of the Action. The Parties agree that if the Court does not approve this Agreement substantially in the form submitted (or in a modified form mutually acceptable to the Parties), or if this Agreement is terminated or fails to become effective or final in accordance with its terms, the Action shall proceed as if no Party had ever agreed to the Settlement, without prejudice to the right of any Party to take any action or assert any claim or defense in the Action.

3.    **SETTLEMENT CONSIDERATION**

3.1.    <u>Injunctive Relief   Fast Cash Subclass:</u> Currently, customers who participate in Defendant's Fast Cash program are not automatically informed in advance that, if the cost of a replacement item of equal features and functionality exceeds the amount that they receive from Defendant, they can submit documentation of replacement cost and Defendant will reimburse them the difference. Within one hundred and twenty (120) days of the Effective Date, Defendant will modify its claims process to include a disclosure, prior to acceptance of the Fast Cash offer, that if the cost of a Replacement Product exceeds the amount that they are offered by Defendant, they can submit documentation of replacement cost and Defendant will reimburse them the difference up to the original Purchase Price.

3.2.    The Parties acknowledge that Defendant competes in a rapidly changing marketplace and requires the flexibility to change its product offerings as needed. Nothing in this Agreement shall require Defendant to continue the Fast Cash program or prevent Defendant from modifying the Fast Cash program as it sees fit, so long as such modifications are consistent with the injunctive relief contained herein.

3.3.    <u>Injunctive Relief — SKU-cap Subclass:</u> Defendant is in the process of conducting a thorough review of its systems to confirm and eliminate the cause of the SKU-cap error, including by determining why the problem occurred in each and every instance in which it occurred. Within one hundred and twenty (120) days of the Effective Date, Defendant will have completed that review and will implement measures, disclosed to Class Counsel pursuant to appropriate confidentiality protections, designed to eliminate the SKU-cap Error.

3.4.    <u>Monetary Relief — Fast Cash Subclass:</u> Fast Cash Subclass members will be entitled to submit a Claim for payment, for each Protection Plan they purchased under which they received a Fast Cash payment, the amount of the difference between the reimbursement amount they received from Defendant to resolve a claim under Fast Cash, and the price of a Replacement Product at the time the claim was made, capped at the original Purchase Price of the product, and subject to the following rules, which will apply to each claim:

3.4.1.    If the Fast Cash Subclass member submits a Claim and provides Proof of Replacement Cost, Defendant will pay the difference between the amount of money the Fast Cash Subclass member received from Defendant and either (i) the price reflected on the Proof of Replacement Cost, or (ii) the original Purchase Price of the product, whichever is lower.

3.4.2.    If the Fast Cash Subclass member submits a Claim and does not provide Proof of Replacement Cost, and the difference between the amount of money the Fast Cash Subclass member received from Defendant and the claimed price of a Replacement Product ("amount claimed") is less than $35.00, Defendant will pay either (i) the amount claimed, or (ii) the difference between the amount of money the Fast Cash Subclass member received from Defendant and the original Purchase Price of the product, whichever is lower.

3.4.3.    If the Fast Cash Subclass member submits a Claim and does not provide Proof of Replacement Cost, and the difference between the amount of money the Fast Cash Subclass member received from Defendant and claimed price of a Replacement Product is $35.00 or greater (exclusive of taxes and fees), Defendant will pay either (i) $35.00, or (ii) the difference

DocuSign Envelope ID: 48EAE5B3-71BC-499B-9AD0-26652CBDB43E

between the amount of money the Fast Cash Subclass member received from Defendant and the original Purchase Price of the product, whichever is lower.

3.4.4.   Should the Settlement Administrator determine that a Claimant's Proof of Replacement Cost is insufficient to merit an award greater than $35.00, the Settlement Administrator shall issue the Claimant a deficiency notice and permit thirty (30) days for the Claimant to provide sufficient proof. The Parties shall approve of the language in the deficiency notice.

3.5.   <u>Monetary Relief   SKU-cap Subclass</u>: Each SKU-cap Subclass member will receive a SKU-cap Payment in the form of a check, digital payment card, or some other cash-equivalent form of payment for each instance in which (i) the SKU-cap Subclass member received a payment for a covered claim under a Protection Plan, and (ii) the payment was impacted by the SKU-cap Error. Payments to SKU-cap Subclass members will be made automatically, without any prerequisite action by the SKU-cap Subclass member, including submission of a Claim Form or other documentation.

3.6.   <u>Anti-Fraud Measures</u>: Defendant and the Settlement Administrator will employ reasonable methods to prevent the payment of fraudulent Claims and to pay only Valid Claims. This may include requesting additional information from Claimants (beyond the online claim form), if necessary to reasonably rule out the possibility of a fraudulent claim. The Settlement Administrator, in consultation with Defendant, shall have the discretion to deny Claims that are determined or reasonably suspected to be fraudulent or otherwise illegitimate. The Parties will cooperate with respect to the fraud detection process, and the Settlement Administrator shall share the basis for any and all denials and provide reasonable access to the underlying claims records, including the reason why the claim was considered potentially fraudulent, to Class Counsel and Defendant's Counsel. The Parties agree to work in good faith to resolve any disputes concerning such denied claims, but the Parties retain the right to present any concerns regarding the fraud detection process to the Court.

3.7.     Timing of Payments: Defendant shall pay the Settlement Administrator the Total

Settlement Amount within thirty (30) days after the Effective Date. The Settlement

Administrator shall distribute payments of the Valid Claims and the SKU-cap Payments within

sixty (60) days after the Effective Date. Defendant shall pay Class Counsel the amount of the Fee

and Cost Application that is approved by the Court within thirty (30) days after the Effective

Date. Class Counsel and the Class Representatives shall not seek or accept an amount exceeding

one million dollars ($1,000,000.00) for Class Counsel fees and costs, and fifteen thousand

dollars ($15,000.00) for all service awards to Class Representatives, and Defendant has agreed

not to contest payment of attorney's fees, cost reimbursements, and service payments up to those

amounts.

**4.     ADMINISTRATION AND NOTICE**

4.1.     Settlement Administrator: In addition to the duties set forth elsewhere in this

Agreement, the Settlement Administrator is authorized to undertake all tasks and duties that are

reasonably necessary to carry out the Claims administration provisions of this Agreement,

including implementing the Notice Plan, processing the Claim Forms, distributing payments for

Valid Claims and the SKU-cap Payments, communicating with Settlement Class members

regarding the Settlement or the Claims process, and issuing tax forms such as IRS 1099 forms to

Class Counsel and Plaintiffs reflecting the payments made by Defendant to Class Counsel and to

Class Representatives.

4.2.     Notice and Notice Plan: The Notice shall conform to the requirements of the

Federal Rules of Civil Procedure and the U.S. District Court for the Northern District of

California and shall be substantially in the form of Exhibits B, C, and D subject to Court

approval.

4.3.     Using the information in its computer database, Defendant shall provide to the

Settlement Administrator a list of email addresses of Settlement Class members, which the

Settlement Administrator shall use to disseminate the Notice to the Settlement Class according to

the Notice Plan within thirty (30) days after entry of the Preliminary Approval Order. The Notice

Plan will provide for Notice to be sent to all Settlement Class members using the email addresses in Defendant's business records. If there are any Settlement Class members for whom Defendant does not have a functioning email address, Defendant will mail a postcard Notice to the most current mailing address Defendant has on file for that Settlement Class member. To the extent any such postcards are returned as undeliverable, the Settlement Administrator shall use reasonable efforts to obtain an updated mailing address for the corresponding Settlement Class members. An exemplar of the postcard Notice is attached hereto as Exhibits B and C. While Defendant has made a good faith inquiry and has concluded that it maintains contact information for the vast majority of Settlement Class members, the Parties recognize that Defendant's computer database may not have a current or accurate email address for every Settlement Class member and agree that Defendant shall be under no obligation to independently attempt to update or correct its database.

4.4.    The email or postcard Notice provided to the Fast Cash Subclass members will summarize the Settlement and contain a link or personalized access code for accessing a personalized Claim Form. An exemplar of a personalized Claim Form is attached hereto as Exhibit A. The email or postcard Notice provided to members of the SKU-cap Subclass will summarize the Settlement and inform recipients that they will be receiving a SKU-cap Payment, and request that they provide a new mailing address via the Settlement Website if their address has changed.

4.5.    <u>CAFA Notice to the Appropriate Federal and State Officials</u>: Within 10 days of the filing of the Motion for Preliminary Approval, Defendant shall provide notice to the appropriate Federal and State officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715 and any other applicable law.

4.6.    <u>Administrative Costs</u>: Defendant shall pay the Administrative Costs associated with this Agreement.

4.7.    <u>Settlement Website</u>: The Settlement Administrator will create and maintain a Settlement Website, to be activated within thirty (30) days of the entry of the Preliminary

Approval Order by the Court, but in any event no later than the Notice Date. The Settlement Administrator's responsibilities will also include securing an appropriate URL. The Settlement Website will post the Settlement documents and case-related documents such as the Agreement, the Notice, the Fee and Cost Application, and the Preliminary Approval Order. In addition, the Settlement Website will include procedural information regarding the status of the Settlement approval process, such as the date and location of the Final Approval Hearing. The Settlement Website will also include a form where Settlement Class members may update their mailing addresses with the Settlement Administrator directly, subject to the Settlement Administrator's reasonable identity verification processes. The Notice will include a link to a customized claim form for each Fast Cash Subclass member, and a unique code that a Fast Cash Subclass member can use to file a claim via the Settlement Website. The Settlement Administrator will terminate (permanently remove from the Internet) the Settlement Website one hundred and twenty (120) days after either (i) the Effective Date or (ii) the date on which the Agreement is terminated or not approved by the Court, whichever is later. Costs related to the Settlement Website shall be paid by Defendant as part of the Administration Costs.

4.8.     <u>Taxes</u>: Settlement Class members, Plaintiffs, and Class Counsel shall be solely responsible for paying any federal, state, and local taxes due on payments made to them pursuant to the Settlement.

4.9.     <u>Reporting</u>: At least three (3) calendar days prior to the Final Approval reply filing (which in turn is anticipated to be fourteen (14) days before the Final Approval Hearing), the Settlement Administrator shall prepare a list of the persons who have submitted valid Opt-Out Requests by the Opt-Out Deadline, and Class Counsel shall proceed to file that list with the Court.

5.     **RELEASES**

5.1.     For good and sufficient consideration, the receipt of which is hereby acknowledged, upon the Effective Date, Plaintiffs, and each member of the Settlement Class, and each of their successors, assigns, heirs, and personal representatives, shall be deemed to have, and by operation of

the Order and Final Judgment shall have, fully, finally, and forever released, relinquished, and

discharged all Released Claims against the Released Parties and Released Persons. The Released

Claims shall be construed as broadly as possible to effect complete finality over this Action and the

facts alleged therein.

5.2.    Plaintiffs and Class Counsel understand that the facts upon which this Agreement is

executed may hereafter be other than or different from the facts now believed by Plaintiffs and Class

Counsel to be true and hereby agree that this Agreement shall remain effective notwithstanding any

such difference in facts.

5.3.    Plaintiffs, on behalf of themselves and as Class Representatives, and Class

Counsel understand that Section 1542 of the California Civil Code provides:

> (General Release; Claims Extinguished) A General Release does not extend to
> claims that the Creditor or Releasing Party does not know or suspect to exist in
> his or her favor at the time of executing the release and that, if known by him or
> her, would have materially affected his or her settlement with the Debtor or
> Released Party.

**Plaintiffs, on behalf of themselves and as Class Representatives, hereby expressly waive
Section 1542 of the California Civil Code and any similar law, statute, provision or policy.**

5.4.    To the extent permitted by law, this Agreement may be pleaded as a full and

complete defense to and may be used as the basis for an injunction against, any action, suit, or

other proceeding that asserts, on behalf of any Plaintiff or any member of the Settlement Class,

any Released Claims against any Released Person or Released Party, or that may be instituted,

prosecuted, or attempted in breach of or contrary to this Agreement.

6.    **CLASS CERTIFICATION**

6.1.    The Parties agree that, for settlement purposes only and subject to Court approval,

the Action shall be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil

Procedure, with Plaintiffs serving as Class Representatives and Class Counsel serving as counsel

for the Settlement Class.

6.2.    In the event the Agreement is terminated or for any reason the Settlement is not

effectuated, the Action shall proceed from the position that it was in before the Agreement was

entered into, as though the Agreement had not been entered into. In that event, the existence and/or terms of this Agreement shall have no effect on the arguments available to the Parties against or in favor of class certification or with respect to the merits of the claims and defenses asserted in the Action.

7.    **SETTLEMENT APPROVAL PROCESS**

7.1.    Promptly after execution of this Agreement, Plaintiffs will submit to the Court the Agreement, the Notice, and other Settlement documents and will move the Court to grant preliminary approval of the Settlement, enter the Preliminary Approval Order, and schedule the Final Approval Hearing and the hearing on the Fee and Cost Application.

7.2.    Objecting to the Settlement: Settlement Class members shall have the right to object to the Settlement if they believe there is any reason why the Court should not grant final approval of the Settlement.

7.2.1.   Any objection to the Settlement must be in writing and must be sent to the Court no later than the Objection Deadline. Settlement Class members may object themselves or through an attorney. If a Settlement Class member objects through an attorney or hires an attorney to represent him or her at the Final Approval Hearing, the Settlement Class member will be responsible for hiring and paying that attorney.

7.2.2.   Any objection to the Settlement must clearly identify the case name (*Shuman v. SquareTrade, Inc.*) and number, and must contain at least the following information: (i) the objector's name, address, and telephone number, (ii) the name, address, and telephone number of the objector's attorney, if applicable, (iii) the factual and legal grounds for the objection, including adequate evidence (documents or attestations) to establish that the objector is a member of the Settlement Class, and (iv) the case name, case number, and court for any prior class action lawsuit in which the objector or the objector's attorney (if applicable) has objected to a proposed class action settlement within the past five years.

7.2.3.   If a Settlement Class member wishes to appear at the Final Approval Hearing in support of a timely filed objection, the Settlement Class member must so state in their objection

submitted no later than the Objection Deadline, and provide the name, address, telephone number, and email address of the attorney, if any, who will appear. If the objecting Settlement Class member wishes to present witnesses or evidence at the Final Approval Hearing, such witnesses must be identified in the objection, and true and correct copies of such evidence must be appended to, or filed and served with, the objection. Failure to identify witnesses or provide copies of supporting evidence in this manner waives the right to introduce such testimony or evidence at the Final Approval Hearing. Plaintiffs or Defendant or both may take discovery regarding any objection, subject to Court approval.

7.2.4.   A Settlement Class member who submits an objection remains a member of the Settlement Class and is bound by the Settlement if it is approved. A Settlement Class member who files a timely Opt-Out Request is excluded from the Settlement Class and cannot also submit an objection. If a Settlement Class member files an objection and subsequently submits an Opt-Out Request, the objection is void and shall be disregarded.

7.2.5.   Plaintiffs and Defendant shall have the right, but not the obligation, to respond to any objection no later than fourteen (14) days prior to the Final Approval Hearing.

7.3.   Opting Out of the Settlement: Any Settlement Class member who does not wish to participate in the Settlement must make an Opt-Out Request in writing to the Settlement Administrator by the Opt-Out Deadline, requesting to be excluded from the Settlement. In order to be valid, an Opt-Out Request must be sent by U.S. mail to the Settlement Administrator at the address set forth in the Notice and must be postmarked no later than the Opt-Out Deadline. The Opt-Out Request must be signed by the Settlement Class member. So-called "mass" or "class" opt-outs are not permitted. A member of the Settlement Class who submits a valid Opt-Out Request shall thereafter be excluded from the Settlement Class and shall not be a party to this Action for any purpose, shall receive no benefits under the Agreement, and shall not be permitted to file an objection to the Settlement.

7.4.      Settlement Class members who do not submit Opt-Out Requests by the Opt-Out

Deadline will be bound by this Agreement and the Final Approval Order, and any other orders

and judgments in the Action.

7.5.      Defendant, in its sole discretion, has the right to terminate the Settlement if more

than 5% of the members of the Settlement Class submit Opt-Out Requests. If Defendant elects to

terminate the Settlement under this provision, it must notify Class Counsel and the Court by no

later than seven (7) business days after the Opt-Out Deadline. If Defendant has not notified Class

Counsel and the Court of such termination by that date, the right to terminate lapses. If

Defendant exercises its right to terminate under this provision, the Settlement is terminated and

dissolved, and the Parties shall be restored to their respective positions prior to entering into the

Settlement.

7.6.      <u>Final Approval</u>: No later than forty (40) days after the Notice Date, or by such

date as the Court may set in the Preliminary Approval Order, Class Counsel shall file a Motion

for Final Approval of the Settlement. The Motion and/or reply in support shall include a report

from the Settlement Administrator regarding the number and dollar value of Claims submitted,

the final value of the SKU-Cap Payments, and the number and identity of persons who opted out

of the Settlement prior to the Opt-Out Deadline. The Settlement Administrator will provide the

parties with a supplemental report regarding the final claim figures promptly after the Claim

Deadline.

**8.      ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS**

8.1.      <u>Attorneys' Fees and Costs</u>: No later than forty (40) days after the Notice Date, or

by such date as the Court may set in the Preliminary Approval Order, Class Counsel shall file a

Fee and Cost Application seeking an award of attorneys' fees and costs in the amount of one

million dollars ($1,000,000.00). Defendant agrees to pay this amount, subject to Court approval.

If the Fee and Cost Application is approved, Defendant shall pay the amount approved by the

Court up to a maximum of one million dollars ($1,000,000.00) within thirty (30) days of the Effective Date.

8.2.     Service Awards: Class Counsel shall apply to the Court for service awards of $5,000 for each of the Plaintiffs for their service as Plaintiffs and Class Representatives. Defendant shall pay the amount approved by the Court, up to a maximum of $5,000 per Plaintiff, within thirty (30) days of the Effective Date.

## 9.     CONDITIONS FOR EFFECTIVE DATE; EFFECT OF TERMINATION

9.1.     If this Settlement is not approved by the Court or the Settlement is terminated or fails to become effective in accordance with the terms of this Agreement, the Parties will be restored to their respective positions in the Action as of the date the Motion for Preliminary Approval is filed. In such event, the terms and provisions of this Agreement and any other contractual obligations or duties regarding the Settlement will have no further force and effect and shall not be used in this Action or in any other proceeding for any purpose, and any judgment or order entered by the Court pursuant to this Agreement will be treated as vacated, and the Parties will promptly meet and confer regarding a proposed case management schedule.

## 10.     MISCELLANEOUS PROVISIONS

10.1.    All agreements made and orders entered during the course of the Action relating to the confidentiality of information, including the Protective Order that governs this Action, remain valid and enforceable and will survive this Agreement. The Parties agree that no confidential information exchanged among the Parties or produced by any Party may be disclosed by any Party to any third party, except according to the terms of a confidentiality agreement or the Protective Order governing the Action.

10.2.    This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

10.3.    Non-Disparagement: The Parties and their respective counsel agree not to make any statements relating to this Action or to this Agreement, written or verbal, or cause or encourage others to make any statements, written or verbal, that defame, disparage or in any way

criticize the personal or business reputation, practices, or conduct of Class Counsel, the Class Representatives, Defendant, Defendant's Counsel or the Released Parties. The Parties acknowledge and agree that this prohibition extends to statements, written or verbal, made to anyone, including but not limited to, the news media, investors, potential investors, any board of directors or advisory board of directors, industry analysts, competitors, strategic partners, vendors, and employees (past, present, and future). The Parties and their respective counsel further agree not to make any press release or other public announcement regarding this Agreement without the other Party's express prior written consent, except as required under applicable law or by any governmental agency, in which case the Party required to make the public disclosure shall use commercially reasonable efforts to obtain the approval of the other Party as to the form, nature, and extent of the public announcement prior to issuing the press release or making the public announcement. Nothing in this paragraph shall constrain Class Counsel's ability to communicate with Settlement Class members who contact Class Counsel about the Action or the Agreement.

10.4.    This Agreement constitutes the entire agreement among the Parties regarding the Settlement, and supersedes any other representations, warranties, or inducements that may have been made by, to, or between any Party or Parties concerning the Settlement.

10.5.    Except as otherwise provided herein, the Parties will bear their own costs.

10.6.    Each person or entity executing this Agreement on behalf of any Party or Settlement Class member hereby warrants that they have the authority to do so.

10.7.    This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. Signatures provided by portable document format (PDF) or other electronic means shall have the same force and effect as original signatures.

10.8.    A waiver by any Party of a breach of this Agreement by any other Party shall not be deemed a waiver of any other breach of this Agreement.

10.9.    Except as provided herein, the Court will retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement, and the Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

10.10.  None of the Parties or their respective counsel will be deemed the drafter of this Agreement for purposes of construing the Agreement.

10.11.  This Agreement will be governed by the laws of the State of California, without regard to California choice of law principles.

10.12.  The time periods and/or dates described in this Agreement are subject to change by the Court or by the written agreement of Class Counsel and Defendant's Counsel, without notice to members of the Settlement Class.

10.13.  If the date for performance of any act required or contemplated by this Agreement falls on a Saturday, Sunday, or Court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the Saturday, Sunday, or Court holiday, absent a contrary requirement imposed by a Local Rule or Federal Rule of Civil Procedure in the instance of court-filing deadlines.

10.14.  The Parties represent, covenant, and warrant that they have not directly or indirectly assigned or transferred to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged by this Agreement.

10.15.  The Parties agree that should any provision of this Agreement, or any portion of any provision, be held by any court of competent jurisdiction to be illegal, invalid or unenforceable, the remainder of the provision and the remainder of the Agreement shall remain binding and in effect, unless this would result in a substantial failure of consideration.

Dated: March 22, 2022

Michael Shuman

Dated: March 22 2022

_Kathleen Abbott_

_____

Kathleen Abbott

Dated: March 22 2022

_____

Tommy Gonzales

Dated: March _, 2022

_____

William H. Anderson *(admitted pro hac vice)*
**HANDLEY FARAH & ANDERSON PLLC**
4730 Table Mesa Drive, Suite G-200
Boulder, CO 80305
Telephone: (303) 800-9109

Rebecca P. Chang *(admitted pro hac vice)*
**HANDLEY FARAH & ANDERSON PLLC**
33 Irving Street
New York, NY 10003
Telephone: (347) 480-1030

Eric H. Gibbs (SBN 178658)
David Stein (SBN 257465)
Amanda M. Karl (SBN 301088)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700

*Counsel for Plaintiffs and the Settlement Class*

Dated: March _, 2022

_____

Douglas A. Winthrop
George Langendorf
Kaitlin Robinson
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100

*Counsel for Defendant SquareTrade, Inc.*

Dated: March __, 2022

_____

Kathleen Abbott

Dated: March 22, 2022

_____

Tommy Gonzales

Dated: March 22, 2022

_____

William H. Anderson *(admitted pro hac vice)*
**HANDLEY FARAH & ANDERSON PLLC**
4730 Table Mesa Drive, Suite G-200
Boulder, CO 80305
Telephone: (303) 800-9109

Rebecca P. Chang *(admitted pro hac vice)*
**HANDLEY FARAH & ANDERSON PLLC**
33 Irving Street
New York, NY 10003
Telephone: (347) 480-1030

Eric H. Gibbs (SBN 178658)
David Stein (SBN 257465)
Amanda M. Karl (SBN 301088)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700

*Counsel for Plaintiffs and the Settlement Class*

Dated: March 2, 2022

_____

Douglas A. Winthrop
George Langendorf
Kaitlin Robinson
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100

*Counsel for Defendant SquareTrade, Inc.*

Dated: March 22 2022

DocuSigned by:

*karl Wiley*

62C1359BBD044E1...

Karl Wiley
President & CEO
SquareTrade, Inc.

# EXHIBIT A

[CLAIM FORM]

You may be eligible for cash reimbursement relating to claim(s) you made under the SquareTrade Protection Plan(s) listed below.

According to SquareTrade's records, you accepted the below payment(s) under SquareTrade's "Fast Cash" program. If you believe the amount(s) you received was less than the cost of a comparable replacement item, at the time you filed your claim, you may submit a claim for additional reimbursement by:

(1) In BOX B in the right-side column below, entering your estimate of the replacement cost of the item at the time you filed your claim, and

(2) Typing your name and clicking "Submit"*

| Your Protection Plan | Approx. date of purchase of your plan | Product category of covered item | Location of purchase of your plan | Date you filed your claim | Amount you originally paid for the covered item | Your Fast Cash payment | Your estimated cost to replace your item at the time you filed your claim |
|---|---|---|---|---|---|---|---|
| Plan # 1234567 | [month, year] | [Category] | [Retailer] | [month, year] | [$ amount] | **BOX A** [$ amount] | **BOX B** [$ amount] |

_John Doe_    **SUBMIT**

*By typing your name and clicking "Submit," you attest that the dollar amount you filled in in Box B was—to the best of your knowledge—the cost of replacing your item when you submitted your claim.

<u>Required Documentation</u>

For each Plan listed above, if the difference between Box A (Fast Cash payment you received) and Box B (cost to replace your item) is $35 or less, *you do not need to submit supporting documentation*. If the difference between Box A and Box B is more than $35, you must provide a receipt or other supporting documentation, or your claim will be limited to $35.

Reimbursement payments under SquareTrade Protection Plans are capped at the original amount that you paid for your item. If the amount that you enter into Box B exceeds what you originally paid for your item, your reimbursement will be the difference between Box A (Fast Cash payment you received) and the amount that you originally paid for your item.

# EXHIBIT B

## <u>NOTICE OF PROPOSED CLASS ACTION SETTLEMENT</u>

**SquareTrade's records show you received a payment under a SquareTrade Protection Plan.**

**You are eligible for a supplementary cash payment.**

A proposed class action settlement may affect your rights. (A federal court authorized and ordered this notice.)

**What is the case about?** Plaintiffs allege that SquareTrade under-reimbursed some customers who received payments under SquareTrade Protection Plans.

SquareTrade's records indicate that SquareTrade inadvertently applied a cap ("SKU Cap") on a payment made to you under a Protection Plan, limiting the reimbursement that you received. The proposed class action settlement, if approved, will feature an automatic payment to you to reimburse you the difference between the amount you received and the price you paid for your covered product.

Under the Settlement, SquareTrade is undertaking a thorough review of its systems to eliminate this error going forward.

**Check your address**: You should double-check your address below and update your address if needed to ensure any settlement payment is sent to the right place.

---

Jane Doe
123 Elm Street
Seattle, WA 98112

---

**<u>To Opt-Out</u>:** If you wish to forego these benefits and not participate in the settlement, you may exclude yourself. Please visit [Settlement Website/opt-out] for more information.

**<u>To Object</u>:** If you wish to object to the proposed settlement, you may do so. Please visit [Settlement Website/object] for more information.

**FOR COMPLETE INFORMATION ABOUT THE SETTLEMENT, PLEASE VISIT [Settlement Website]**

If you do not have internet access, request a paper copy of the long-form notice by calling 800-xxx-xxxx.

# EXHIBIT C

## <u>NOTICE OF PROPOSED CLASS ACTION SETTLEMENT</u>

**SquareTrade's records show you received a payment under SquareTrade's Fast Cash program.**

**You may be eligible to submit a claim for a supplementary cash payment.**

A proposed class action settlement may affect your rights. (A federal court authorized and ordered this notice.)

More information, including how to make your claim, follows:

**What is the case about?** Plaintiffs allege that SquareTrade under-reimbursed some customers who received replacement cost payments under SquareTrade's Fast Cash program. SquareTrade denies this.

Under the proposed class action settlement, if you believe the Fast Cash payment amount you received was less than the cost of replacing your product, you can submit a claim for additional reimbursement.

As part of the settlement, SquareTrade has also agreed to modify its Fast Cash claims process to include a disclosure, at the time the customers are presented with the amount of the Fast Cash payment, that if a replacement item costs more than the Fast Cash payment, the customer can submit documentation of this and receive additional reimbursement, up to the amount they originally paid for their item.

**Submit a claim for payment**: View your personalized claim form to submit your claim. Payments will be made on valid claims if the court approves this settlement.

**Check your address**: You should double-check your address below and update your address if needed to ensure any settlement payment is sent to the right place.

|  |
|---|
| Jane Doe |
| 123 Elm Street |
| Seattle, WA 98112 |

**<u>To Opt-Out</u>:**  If you wish to forego these benefits and not participate in the settlement, you may exclude yourself. Please visit [Settlement Website/opt-out] for more information.

**<u>To Object</u>**: If you wish to object to the proposed settlement, you may do so. Please visit [Settlement Website/object] for more information.

**FOR COMPLETE INFORMATION ABOUT THE SETTLEMENT, PLEASE VISIT [Settlement Website]**

If you do not have internet access, request a paper copy of the long-form notice by calling 800-xxx-xxxx.

# EXHIBIT D

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

# If you were paid a reimbursement under a SquareTrade Protection Plan, you could get a payment from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- The settlement will provide the potential for cash payments to two classes of consumers who were previously reimbursed under a SquareTrade Protection Plan.

- Some class members (the "Fast Cash Subclass"), who received reimbursement under SquareTrade's Fast Cash program, may be entitled to a supplementary payment. Other class members (the "SKU-cap Subclass") will automatically receive a payment to compensate them for a cap on reimbursement that was inadvertently imposed by SquareTrade.

- Class members will receive individualized notice by email or mail notifying them which Class(es) they belong to.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | This is the <u>only</u> way to get a payment as part of the Fast Cash Subclass. (There's no need to submit a Claim Form for payment within the SKU-cap Subclass.) |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against SquareTrade, Inc. about the legal claims and facts underlying this case. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **ATTEND THE APPROVAL HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment as part of the Fast Cash Subclass, if applicable. Get payment as part of the SKU-cap Subclass, if applicable. Give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved. Please be patient.

- 

| WHAT THIS NOTICE CONTAINS |
|---|

BASIC INFORMATION ......................................................................PAGE 4
    1.  Why did I get this notice package?
    2.  What is this lawsuit about?
    3.  Why is this a class action?
    4.  Why is there a settlement?

WHO IS IN THE SETTLEMENT..............................................................PAGE 5
    5.  How do I know if I am part of the settlement?
    6.  Are there exceptions to being included?
    7.  I'm still not sure if I am included.

THE SETTLEMENT BENEFITS—WHAT YOU GET..............................PAGE 5
    8.  What does the settlement provide?
    9.  How much will my payment be?

HOW YOU GET A PAYMENT ...............................................................PAGE 7
    10. How can I get a payment?
    11. When would I get my payment?
    12. What am I giving up to get a payment or stay in the Class?

EXCLUDING YOURSELF FROM THE SETTLEMENT............................PAGE 7
    13. How do I get out of the settlement?
    14. If I don't exclude myself, can I sue SquareTrade for the same thing later?
    15. If I exclude myself, can I get money from this settlement?

THE LAWYERS REPRESENTING YOU.....................................…...PAGE 8
    16. Do I have a lawyer in the case?
    17. How will the lawyers be paid?

OBJECTING TO THE SETTLEMENT.....................…..................…...PAGE 9
    18. How do I tell the Court that I don't like the settlement?
    19. What's the difference between objecting and excluding?

THE COURT'S FAIRNESS HEARING.....................................…..PAGE 10
    20. When and where will the Court decide whether to approve the settlement?
    21. Do I have to come to the hearing?
    22. May I speak at the hearing?

IF YOU DO NOTHING.....................................................….....PAGE 11
    23. What happens if I do nothing at all?

GETTING MORE INFORMATION.............................................…PAGE 11
    24. Are there more details about the settlement?
    25. How do I get more information?

3

# BASIC INFORMATION

## 1. Why did I get this notice package?

According to SquareTrade's records, you previously received a reimbursement from SquareTrade in connection with at least one SquareTrade Protection Plan that you purchased.

The Court directed that this notice be made available because you have a right to know about a proposed settlement of a class action lawsuit, and about all of your options, before the Court decides whether to approve the settlement. If the Court approves it and after any objections and/or appeals are resolved, an administrator appointed by the Court will make the payments that the settlement allows. You can find updates about the progress of the settlement at www._____.com.

This package explains the lawsuit, the proposed settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Northern District of California, and the case is known as *Shuman v. SquareTrade, Inc.,* Case No. 3:20-cv-02725-JCS (N.D. Cal.). The people who sued are called Plaintiffs, and the company they sued, SquareTrade, Inc., is called the Defendant.

## 2. What is this lawsuit about?

The lawsuit alleges that SquareTrade underpaid two groups of consumers who purchased SquareTrade Protection Plans, made claims under those Plans, and received a reimbursement from SquareTrade under those Plans.

For the first group, known as the <u>Fast Cash Subclass</u>, the lawsuit alleges that after some customers submitted claims under their Protection Plans, SquareTrade sent them a Fast Cash payment equal to its estimate of the replacement cost of the covered item and that this payment was less than it should have been. SquareTrade denies this.

For the second group, known as the <u>SKU-cap Subclass</u>, the lawsuit alleges that SquareTrade inadvertently applied a "cap" to the reimbursement amount it paid to a small number of customers. The Plaintiffs and Defendant agree that this cap should not have been applied.

## 3. Why is this a class action?

In a class action, one or more people called Class Representatives (in this case Michael Shuman, Tommy Gonzales, and Kathleen Abbott) sue on behalf of people who have similar claims. All these people are Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. Chief Magistrate Judge

4

Joseph C. Spero is in charge of this class action.

**4. Why is there a settlement?**

The Court did not decide in favor of Plaintiffs or Defendant. Instead, both sides agreed to a settlement. That way, they avoid the cost of further litigation and a trial, and the people affected will get compensation. The Class Representatives and their attorneys think the settlement is best for all Class Members.

## WHO IS IN THE SETTLEMENT

**5. How do I know if I am part of the settlement?**

Everyone who fits either or both of the following descriptions is a member of the Settlement Class. The Settlement Class is comprised of two sub-classes:

<u>Fast Cash Subclass</u>: Any person who, during the Class Period, (i) submitted a claim for coverage under a Protection Plan, and (ii) whose claim was resolved via a Fast Cash Payment from Defendant.

<u>SKU-Cap Subclass</u>: Any person who, during the Class Period, (i) submitted a claim for coverage under a Protection Plan, (ii) resolved the claim by receiving a monetary payment from Defendant, and (iii) received less than the amount the person should have received were it not for the SKU-Cap Error.

However, even if you fall within the above descriptions, you are not a Class Member if you are one of SquareTrade's officers, directors, legal representatives, successors, subsidiaries, or assigns, or you are a judge to whom this case is assigned, the judge's spouse, or have a third degree of relationship to the judge or his spouse, or are the spouse of someone with a third degree of relationship.

**7. I'm still not sure if I am included.**

If you are still not sure whether you are included, you can ask for free help. You can call 1-8xx-xxx- xxx or visit www._____.com for more information.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

**8. What does the settlement provide?**

SquareTrade has agreed to make payments to qualified Class Members to supplement the amount(s) they previously received as reimbursement after making a claim under a SquareTrade Protection Plan.

SquareTrade has also agreed to make two changes. First, SquareTrade will modify its Fast Cash claims process to include a disclosure, at the time the customers are presented with the amount of the Fast Cash payment, that if a replacement item costs more than the Fast Cash payment, the customer can submit documentation of this and receive additional reimbursement, up to the amount they originally paid for their item. Second, SquareTrade will implement measures to eliminate the SKU-Cap Error, which had resulted in the inadvertent capping of payments issued by SquareTrade for a small number of claims.

Attorneys' fees and cost reimbursements, service awards for the Class Representatives, and settlement administration expenses will also be paid by SquareTrade in addition to the above benefits, and will not impact how much money you may receive from the settlement.

## 9. How much will my payment be?

Your payment amount depends on which Class you are in, and also how many previous Protection Plan reimbursements you received from SquareTrade and in what amounts.

Fast Cash Subclass: Fast Cash Subclass members are eligible to receive the difference, for each applicable claim, between (1) the amount that SquareTrade reimbursed them as estimated replacement cost, and (2) the cost of replacing the protected item at the time the claim was submitted (up to the original purchase price). The chart below provides an example:

| Your Protection Plan | Approx. date of purchase of your plan | Product category of covered item | Location of purchase of your plan | Date you filed your claim | Amount you originally paid for the covered item | Your Fast Cash payment | Your estimated cost to replace your item at the time you filed your claim |
|---|---|---|---|---|---|---|---|
| Plan # 1234567 | [month, year] | [Category] | [Retailer] | [month, year] | [$ amount] | **BOX A** [$ amount] | **BOX B** [$ amount] |

Fast Cash Subclass: Fast Cash Subclass members may claim the difference between Box A (Fast Cash payment you received) and Box B (Cost to replace your item). If the difference is $35 or less, you do not need to submit supporting documentation. If the difference is more than $35, a receipt or other supporting documentation must be provided, or the claim will be limited to $35. Your claim cannot exceed the difference between what you received under Fast Cash and the original amount that you paid for the covered item.

SKU-cap Subclass: SKU-Cap Subclass Members will be paid the difference between the amount(s) SquareTrade already reimbursed them and the original purchase price of their protected item(s).

6

# HOW YOU GET A PAYMENT

**10. How can I get a payment?**

Fast Cash Subclass: To qualify for payment, you must submit a Claim Form. Read the instructions carefully, fill out the form, include any documents the form asks for, type your name to sign it, and click submit no later than **Month 00, 0000**. If the Court approves the settlement, SquareTrade will send eligible Fast Cash Subclass members with valid claims a payment in the form of a check, digital payment card, or some other cash equivalent, unless they exclude themselves from the settlement.

SKU-cap Subclass: You do not need to do anything to receive a payment. If the Court approves the settlement, SquareTrade will automatically send you a payment in the form of a check, digital payment card, or some other cash equivalent, unless you exclude yourself from the settlement.

Update your mailing address if it has changed since SquareTrade last mailed you a payment.

**11. When would I get my payment?**

The Court will hold a hearing on [date], to decide whether to approve the settlement. If Judge Spero approves the settlement after that hearing, there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Class Members will be informed of the progress of the settlement at www._____.com. Please be patient.

**12. What am I giving up to get a payment or stay in the Class?**

Unless you exclude yourself, you are staying in a Class, and that means that if the settlement is approved by the Court, you can't sue, continue to sue, or be part of any other lawsuit against SquareTrade about the legal claims and facts underlying *this* case. It also means that all of the Court's orders will apply to you and legally bind you. If you do not exclude yourself, you will agree to the Release in Section 5 of the Settlement Agreement, available at www._____.com], which describes exactly the legal claims that you give up if you remain in the Class.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want to participate in this settlement, and you want to retain the option to sue or continue to sue SquareTrade, Inc., on your own, about the legal issues and facts underlying this case, then you must take steps to get out of the settlement. This is called excluding

yourself—or is sometimes referred to as opting out of the settlement.

### 13. How do I get out of the settlement?

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *Shuman v. SquareTrade, Inc.* Be sure to include your name, mailing address, telephone number, email address, and your signature. You must mail your exclusion request postmarked no later than [**the date specified in the Court's preliminary approval order- 75 days after notice date**] to:

JND Legal Administration
1100 Second Ave., Suite 300, Seattle WA 98101

You can't exclude yourself on the phone or by e-mail. If you exclude yourself, you will not receive any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) SquareTrade in the future about the legal issues and facts underlying this case.

### 14. If I don't exclude myself, can I sue SquareTrade for the same thing later?

No. Unless you exclude yourself, you give up any right to sue SquareTrade for the legal issues and facts underlying the claims that this settlement resolves. If you have a pending lawsuit, speak to your lawyer in that case immediately. You must exclude yourself from *this* Class to continue your own lawsuit. Remember, the exclusion deadline is [**date**].

### 15. If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, do not send in a claim form; you will not receive money from this settlement. But you may sue, continue to sue, or be part of a different lawsuit against SquareTrade.

# THE LAWYERS REPRESENTING YOU

### 16. Do I have a lawyer in this case?

The law firms appointed by the Court to represent you and other Class members are Gibbs Law Group LLP (www.classlawgroup.com), and Handley Farah & Anderson PLLC (www.hfajustice.com). Together, the lawyers are called Class Counsel. You will not be charged for or by these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 17. How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees and expenses up to $1,000,000, and a service award of $5,000 to each of the Class Representatives, Michael Shuman, Tommy Gonzales, and Kathleen Abbott. The Court may award less than these amounts. These amounts are paid separately and will not impact the payments made to Class Members. SquareTrade has agreed not to oppose these fees and expenses and service awards. SquareTrade will also separately pay the costs to administer the settlement.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

> **18. How do I tell the Court that I don't like the settlement?**

You can ask the Court to deny approval of the settlement by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

Any objection to the proposed settlement must be in writing. If you submit a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number (*Shuman v. SquareTrade, Inc.*, Case No. 3:20-cv-02725-JCS), (b) be submitted to the Court by mailing or delivering them to the Class Action Clerk, United States District Court for the Northern District of California, San Francisco Division, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Ave, San Francisco, CA 94102, and (c) be postmarked on or before [date].

Be sure to include your name, mailing address, telephone number, email address, your signature, the factual and legal reasons you object to the settlement, documents or attestations establishing that you are a class member, whether you are objecting on behalf of only yourself, the settlement Class, or a subset of the settlement Class, a disclosure of the case name, case number, and court for any prior class action settlements you have objected to in the last 5 years (and if you have an attorney, the same disclosure for your attorney), whether you (or your attorney) intend to appear at the final approval hearing, and the name and contact information of any and all attorneys representing, advising, or assisting you, including all individuals who may be entitled to compensation for any reason related to the objection or comment. If you want to present evidence or witnesses at the final approval hearing, your objection must also include copies of such evidence, and identify any witnesses you plan to engage at the hearing.

Submitting an objection allows Class Counsel or counsel for SquareTrade to notice your deposition and to seek any documentary evidence or other tangible things that are relevant to your objection. Failure to make yourself available for such a deposition or comply with expedited discovery requests may result in the Court striking your objection or denying you

the opportunity to be heard. The Court may require you or your counsel to pay the costs of any such discovery should the Court determine the objection is frivolous or made for an improper purpose.

### 19. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you don't want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

### 20. When and where will the Court decide whether to approve the settlement?

The Court will hold a Final Approval Hearing at [time] on [day of the week, date], at the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Ave, San Francisco, CA 94102, in Courtroom F on the 15th Floor. The hearing may be conducted remotely in which case instructions for how to participate by Zoom webinar will be available at https://www.cand.uscourts.gov/judges/spero-joseph-c-jcs/. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Spero will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay to Class Counsel and the Class Representatives. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

The Court may reschedule the Final Approval Hearing or change any of the deadlines described in this notice. The date of the Final Approval Hearing may change without further notice to Class Members. Be sure to check the settlement website, www._____.com, for news of any such changes. You can also check whether the hearing date or any deadlines have changed by accessing the case docket via the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov.

### 21. Do I have to come to the hearing?

No. Class Counsel will answer questions Judge Spero may have. But, you are welcome to attend at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

### 22. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must indicate your desire to speak at the hearing in your objection letter (see section 18 above). You cannot speak at the hearing if you excluded yourself.

# IF YOU DO NOTHING

| 23. What happens if I do nothing at all? |
| --- |

SKU-cap Subclass members who do nothing will automatically receive a settlement payment, as described above, as long as the Court approves the settlement.

Fast Cash Subclass members who do nothing will receive no settlement payment. They must submit a claim to receive a payment.

Also, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against SquareTrade about the legal issues and the facts underlying the legal issues in this case, ever again.

# GETTING MORE INFORMATION

| 24. Are there more details about the settlement? |
| --- |

This notice summarizes the proposed settlement. For key documents from the litigation and more details about the Settlement Agreement, please visit www._____.com or contact the settlement administrator at email@email.com or by calling 8xx-xxx-xxxx.

| 25. How do I get more information? |
| --- |

You can email the settlement administrator at email@email.com or call 1-8xx-xxx-xxxx toll free; or view the website at www._____.com for additional information.

All the case documents that have been filed publicly in this case are also available online through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov. This case is called *Shuman v. SquareTrade, Inc.,* Case No. 3:20-cv-02725-JCS (N.D. Cal.). You may also obtain case documents by visiting the office of the Clerk of Court for the United States District Court for the Northern District of California, located at the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Ave, San Francisco, CA 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, except court-observed holidays. More information about the clerk's office hours and other locations can be found at https://www.cand.uscourts.gov/locations.

You can also contact Class Counsel for them to answer questions.

| CLASS COUNSEL |
|:---:|

| | |
|:---:|:---:|
| William H. Anderson | Amanda M. Karl |
| **HANDLEY FARAH & ANDERSON PLLC** | **GIBBS LAW GROUP LLP** |
| 4730 Table Mesa Drive, Suite G-200 | 505 14th Street, Suite 1110 |
| Boulder, Colorado 80305 | Oakland, CA 94612 |
| Telephone: (303) 800-9109 | Telephone: (510) 350-9700 |
| Facsimile: (866) 912-8897 | Facsimile: (510) 350-9701 |
| wanderson@hfajustice.com | amk@classlawgroup.com |

This notice only summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the Settlement Agreement, by contacting Class Counsel using the contact information above, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Ave, San Francisco, CA 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays. You may also review key documents from the case, including the Settlement Agreement, on the settlement website at www._____.com

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT.**