Eric H. Gibbs (SBN 178658)
David Stein (SBN 257465)
Amanda M. Karl (SBN 301088)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone:   (510) 350-9700
Facsimile:   (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
amk@classlawgroup.com

William H. Anderson (*Pro Hac Vice*)
**HANDLEY FARAH &
ANDERSON PLLC**
5353 Manhattan Circle, Suite 204
Boulder, CO 80303
Telephone: (303) 800-9109
Facsimile: (866) 912-8897
wanderson@hfajustice.com

*Class Counsel*

Rebecca P. Chang (pro hac vice)
**HANDLEY FARAH &
ANDERSON PLLC**
33 Irving Place
New York, NY 10003
Telephone: (347) 480-1030
Facsimile: (866) 912-8897
rchang@hfajustice.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SHUMAN, *et al.*,<br><br><br>Plaintiffs,<br><br>v.<br><br><br>SQUARETRADE, INC.,<br><br><br>Defendant. | Case No. 3:20-CV-02725-JCS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR ATTORNEY'S FEES, LITIGATION COSTS, AND SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: February 24, 2023<br>Time: 9:30 a.m.<br>Judge: Hon. Joseph C. Spero<br>Courtroom: F, 15th Floor |

1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on February 24, 2023, at 9:30 a.m., or as soon thereafter as this matter may be heard, Plaintiffs will and hereby do respectfully move the Court, in the courtroom of the Honorable Joseph C. Spero, Courtroom F, 15th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, to be held by Zoom, for an order:

(a) Granting final approval of the parties' proposed class action settlement as fair, reasonable, and adequate under Rule 23(e)(2) of the Federal Rules of Civil Procedure;

(b) Certifying the proposed settlement class under Rules 23(a) and 23(b)(3);

(c) Awarding the requested attorneys' fees, litigation-cost reimbursements, and class representative service awards; and

(d) Entering judgment consistent with the parties' settlement agreement.

This motion is based on the notice of motion and motion, the following memorandum of points and authorities,[1] the attached declarations and exhibits, the arguments of counsel, and any other matters in the record or that properly come before the Court.

Dated: December 22, 2022

/s/ Amanda M. Karl
Eric H. Gibbs (SBN 178658)
David Stein (SBN 257465)
Amanda M. Karl (SBN 301088)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
amk@classlawgroup.com

---

[1] In its order granting preliminary settlement approval, the Court allowed Plaintiffs 50 pages for the memorandum of law that follows. ECF No. 124 ¶ 18.

# TABLE OF CONTENTS

Introduction ......................................................................................................... 1

History of the Litigation ........................................................................................ 2

   I.   Factual Background ....................................................................................... 2

   II.   Procedural Background ................................................................................. 4

   III.   Overview of the Settlement ......................................................................... 5

         A.   The proposed settlement class. ........................................................... 5

         B.   Monetary relief for the Fast Cash Subclass. ...................................... 6

         C.   Monetary relief for the SKU-cap Subclass. ....................................... 8

         D.   The settlement's injunctive relief will prevent others from being underpaid. ........... 8

         E.   Scope of class members' release of claims. ........................................ 9

The Court Should Grant Final Approval of the Settlement ................................... 10

   I.   The proposed settlement merits approval. ................................................... 10

         A.   Plaintiffs and their counsel have adequately represented the class. ........... 11

         B.   The parties negotiated the proposed settlement at arm's length. .............. 11

         C.   The quality of relief to the class weighs in favor of approval. ................. 13

              i.   The settlement provides strong relief for the class. .............................. 13

              ii.   Continued litigation would entail substantial cost, risk, and delay. ......... 15

              iii.   The settlement agreement provides for an effective distribution of proceeds to the class. ...................................................... 16

              iv.   The terms of the proposed award of attorneys' fees, including timing of payment, also support settlement approval. ....................... 18

              v.   The parties have no other agreements pertaining to the settlement. ......... 18

              vi.   The settlement treats all settlement class members equitably ............... 18

   II.   Certification of the proposed settlement class is appropriate. ...................... 20

i

A.  The proposed class definition is appropriate given the scope of the litigation. .......20

B.  The settlement class satisfies the requirements of Rule 23(a)...................................21

    i.  The class members are too numerous to be joined in one action.......................21

    ii.  The action involves common questions of law or fact. ......................................21

    iii.  Plaintiffs' claims are typical of the class. ..........................................................21

    iv.  Plaintiffs and their counsel have, and will continue to, fairly and adequately protect the interests of the class.....................................................22

C.  The settlement class meets the requirements of Rule 23(b)(3). .................................23

D.  The Court-approved notice program satisfies due process and adequately provided notice to class members. ......................................................................24

E.  The Court approved notice program. ........................................................................24

F.  The notice program satisfies due process. .................................................................25

The Court Should Grant the Requested Attorneys' Fees, Litigation-Cost Reimbursements, and Class-Representative Service Awards ................................................................................. 26

I.  The Court's role in evaluating the requested fee. ..................................................26

II.  California law governs Plaintiffs' request for attorneys' fees and provides for reasonable fees to be shifted to the prevailing party. ..........................................27

III.  The lodestar method applies here and demonstrates that the fee request is reasonable...........................................................................................................29

A.  Class Counsel reasonably devoted over 2,700 hours prosecuting this litigation over the past three years. ......................................................................29

B.  Class Counsel's rates fall within the range prevailing in the community and have been approved by many courts. .....................................................................31

C.  Class Counsel's effective multiplier is well below that typically awarded in contingent litigation...............................................................................................33

D.  A percentage-of-the-fund cross-check is not applicable here.....................................34

IV.  Class Counsel's costs are compensable. ...............................................................35

ii

1

V.    Class representative service awards are appropriate. ...........................................37

Conclusion ...................................................................................................... 38

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOT. FOR FINAL SETTLEMENT APPROVAL & ATTY FEES, COSTS, & SERVICE AWARDS
CASE NO. 3:20-CV-02725-JCS

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>                                                                                                                                                      Page(s)

3

4

*Achziger v. IDS Prop. Cas. Ins. Co.*,
   772 F. App'x 416 (9th Cir. May 9, 2019) ........................................................... 21

5

6

*Altamirano v. Shaw Indus., Inc.*,
   2015 WL 4512372 (N.D. Cal. July 24, 2015) .................................................... 19

7

8

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................ 23

9

10

*Anti Police-Terror Project v. City of Oakland*,
   2022 U.S. Dist. LEXIS 227954 (N.D. Cal. Dec. 19, 2022) ............................... 32

11

12

*Applications Int'l Corp. v. Superior Court*,
   39 Cal. App. 4th 1095 (1995) ....................................................................... 36, 37

13

*Arroyo v. Int'l Paper Co.*,
   2019 WL 1508457 (N.D. Cal. Apr. 4, 2019) ..................................................... 21

14

15

*Blum v. Stenson*,
   465 U.S. 886 (1984) ............................................................................................ 31

16

17

*Bozarth v. Envision Healthcare Corp.*,
   2020 WL 11028383 (C.D. Cal. June 30, 2020) ................................................. 14

18

19

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ...................................................................... 25, 26

20

21

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) ........................................................................... 18

22

23

*Cabiness v. Educ. Fin. Sols., LLC*,
   2018 WL 3108991 (N.D. Cal. June 25, 2018) ................................................... 24

24

*Camacho v. Bridgeport Fin., Inc.*,
   523 F.3d 973 (9th Cir. 2008) ............................................................................. 31

25

26

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) ........................................................................... 12

27

28

*Castellon v. Penn-Ridge Transp., Inc.*,
   2020 WL 7786659 (C.D. Cal. Nov. 3, 2020) .................................................... 35

*Clausen v. M/V NEW CARISSA*,
   339 F.3d 1049 (9th Cir. 2003) ................................................................. 35

*Colgan v. Leatherman Tool Grp., Inc.*,
   135 Cal. App. 4th 663 (2006) ................................................................. 28

*Collado v. Toyota Motor Sales, U.S.A., Inc.*,
   550 F. App'x 368 (9th Cir. Dec. 16, 2013) ............................................ 29

*Congdon v. Uber Techs., Inc.*,
   2019 WL 2327922 (N.D. Cal. May 31, 2019) ........................................ 35

*Consumer Privacy Cases*,
   175 Cal. App. 4th 545 (2009) ................................................................. 34

*Cottle v. Plaid Inc.*,
   2022 WL 2829882 (N.D. Cal. July 20, 2022) ......................................... 32

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*,
   2021 WL 4895084 (N.D. Cal. Oct. 20, 2021) ........................................ 33

*Dixon v. Cushman & Wakefield W., Inc.*,
   2022 WL 1189883 (N.D. Cal. Apr. 21, 2022) ........................................ 12

*Evon v. Law Offs. of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) ............................................................... 21

*Ferland v. Conrad Credit Corp.*,
   244 F.3d 1145 (9th Cir. 2001) ............................................................... 29

*Ferrington v. McAfee, Inc.*,
   2013 WL 12308314 (N.D. Cal. July 22, 2013) ....................................... 28

*Fox v. Vice*,
   563 U.S. 826 (2011) ................................................................................ 29

*Gibson v. Bobroff*,
   49 Cal. App. 4th 1202 (1996) ................................................................. 36

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................... 23, 24

*Haralson v. U.S. Aviation Servs. Corp.*,
   383 F. Supp. 3d 959 (N.D. Cal. 2019) ................................................... 10

ii

*Hawthorne v. Umpqua Bank*,
   2015 WL 1927342 (N.D. Cal. Apr. 28, 2015) ............................................................ 37

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............................................................ 33

*Hendricks v. StarKist Co.*,
   2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ............................................................ 14

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) ............................................................ 9, 10

*In re Anthem, Inc. Data Breach Litig.*,
   2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ............................................................ 31

*In re Apple Device Performance Litig.*,
   2021 WL 1022867 (N.D. Cal. Mar. 17, 2021) ............................................................ 17

*In re Apple Inc. Device Performance Litig.*,
   50 F.4th 769 (9th Cir. 2022) ............................................................ 16

*In re Bluetooth Headsets Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................ 10, 26

*In re Google Plus Profile Litig.*,
   2021 WL 242887 (N.D. Cal. Jan. 25, 2021) ............................................................ 12

*In re Hyundai & Kia Fuel Economy Litigation*,
   926 F.3d 539 (9th Cir. 2019) ............................................................ 17, 20, 23, 34

*In re Magsafe Apple Power Adapter Litig.*,
   2015 WL 428105 (N.D. Cal. Jan. 30, 2015) ............................................................ 26

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ............................................................ 19, 26

*In re Sony PS3 "Other OS" Litig.*,
   2017 WL 5598726 (N.D. Cal. Nov. 21, 2017) ............................................................ 17

*In re Toys R Us FACTA Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014) ............................................................ 37

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   895 F.3d 597 (9th Cir. 2018) ............................................................ 10

MOT. FOR FINAL SETTLEMENT APPROVAL & ATTY FEES, COSTS, & SERVICE AWARDS
CASE NO. 3:20-CV-02725-JCS

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) ............................................................................ 21, 22

*Kacsuta v. Lenovo (U.S.) Inc.*,
   2014 WL 12585787 (C.D. Cal. Dec. 16, 2014) .................................................... 17

*Kim v. Tinder, Inc.*,
   2019 WL 11717129 (C.D. Cal. Mar. 1, 2019) ...................................................... 23

*Lafitte v. Robert Half Int'l. Inc.*,
   1 Cal.5th 480 (2016) ......................................................................................... 29, 35

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ................................................................................ 24

*Lee v. Ocwen Loan Servicing, LLC*,
   2015 WL 5449813 (S.D. Fla. Sept. 14, 2015) ...................................................... 14

*Lembeck v. Arvest Cent. Mortg. Co.*,
   2021 WL 5494940 (N.D. Cal. Aug. 26, 2021) ...................................................... 13

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) .............................................................................. 15

*Low v. Trump Univ., LLC*,
   246 F. Supp. 3d 1295 (S.D. Cal. 2017) ................................................................ 14

*Lyons v. Chinese Hosp. Ass'n*,
   136 Cal. App. 4th 1331 (2006) ............................................................................. 27

*Mangold v. Cal. Pub. Utils. Comm'n*,
   67 F.3d 1470 (9th Cir. 1995) ................................................................................ 27

*McCrary v. Elations Co.*,
   2016 WL 769703 (C.D. Cal. Feb. 25, 2016) ........................................................ 26

*McKinney-Drobnis v. Oreshack*,
   16 F.4th 594 (9th Cir. 2021) ................................................................................. 12

*Montera v. Premier Nutrition Corp.*,
   2022 WL 10719057 (N.D. Cal. Oct. 18, 2022) .................................................... 29

*Moore v. Verizon Commc'ns Inc.*,
   2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) ...................................................... 17

iv

*Moreno v. Capital Bldg. Maint. & Cleaning Servs.,*
  2021 WL 4133860 (N.D. Cal. Sept. 10, 2021) ............................................................... 33

*Mullins v. Direct Digital, LLC,*
  795 F.3d 654 (7th Cir. 2015) ......................................................................................... 25

*Officers for Justice v. Civil Serv. Com'n of City and Cnty. of San Francisco,*
  688 F.2d 615 (9th Cir. 1982) ......................................................................................... 24

*Parkinson v. Hyundai Motor Am.,*
  796 F. Supp. 2d 1160 (C.D. Cal. 2010) .................................................................. 27, 34

*Parsons v. Ryan,*
  949 F.3d 443 (9th Cir. 2020) ......................................................................................... 29

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985) ................................................................................................ 24, 25

*Press v. Lucky Stores, Inc.,*
  34 Cal.3d 311 (1983) ..................................................................................................... 29

*Ridgeway v. Wal-Mart Stores Inc.,*
  269 F. Supp. 3d 975 (N.D. Cal. 2017) ........................................................................... 29

*Rodriguez v. Hayes,*
  591 F.3d 1105 (9th Cir. 2010) ....................................................................................... 21

*Rodriguez v. W. Publ'g Corp.,*
  563 F.3d 948 (9th Cir. 2009) ................................................................................... 24, 37

*Ryan v. Cal. Interscholastic Fed.,*
  94 Cal. App. 4th 1033 (2001) ........................................................................................ 28

*Sali v. Corona Reg'l Med. Ctr.,*
  909 F.3d 996 (9th Cir. 2018) ......................................................................................... 22

*Saucillo v. Peck,*
  25 F.4th 1118 (9th Cir. 2022) .................................................................................. 10, 13

*Schneider v. Chipotle Mexican Grill, Inc.,*
  336 F.R.D. 588 (N.D. Cal. 2020) ................................................................................... 27

*Schuchardt v. Law Off. of Rory W. Clark,*
  314 F.R.D. 673 (N.D. Cal. 2016) ................................................................................... 33

v

*Shames v. Hertz Corp.,*
  2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ........................................................... 14

*Skaff v. Meridien N. Am. Beverly Hills, LLC,*
  506 F.3d 832 (9th Cir. 2007).................................................................................... 27

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003).................................................................................... 29

*Superior Consulting Servs., Inc. v. Steeves-Kiss,*
  2018 WL 2183295 (N.D. Cal. May 11, 2018) ................................................... 32, 33

*Tait v. BSH Home Appliances Corp.,*
  2015 WL 4537463 (C.D. Cal. July 27, 2015) .......................................................... 27

*The Sierra Club v. U.S. Env't Prot. Agency,*
  75 F. Supp. 3d 1125 (N.D. Cal. 2014) ............................................................... 29, 30

*Touhey v. United States,*
  2011 WL 3179036 (C.D. Cal. July 25, 2011) .......................................................... 14

*Valdez v. FCA US LLC,*
  2020 WL 5088093 (C.D. Cal. July 21, 2020) .......................................................... 34

*Wahl v. Yahoo! Inc.,*
  2018 WL 6002323 (N.D. Cal. Nov. 15, 2018) ................................................... 28, 35

*Wal-Mart Stores v. Dukes,*
  564 U.S. 338 (2011) ............................................................................................ 21, 23

*Wannemacher v. Carrington Mortg. Servs., LLC,*
  2014 WL 12586117 (C.D. Cal. Dec. 22, 2014) ....................................................... 12

*Wershba v. Apple Computer, Inc.,*
  91 Cal. App. 4th 224 (2001) ............................................................................... 33, 34

*Winterrowd v. Am. Gen. Annuity Ins. Co.,*
  2004 WL 7333894 (C.D. Cal. Oct. 20, 2004) .......................................................... 34

*Zhao v. Tsai,*
  2018 WL 983673 (N.D. Cal. Feb. 20, 2018) ........................................................... 31

*Zoom Elec., Inc. v. Int'l Bhd. of Elec. Workers, Loc.,*
  2013 WL 2297037 (N.D. Cal. May 24, 2013)........................................................... 28

MOT. FOR FINAL SETTLEMENT APPROVAL & ATTY FEES, COSTS, & SERVICE AWARDS
CASE NO. 3:20-CV-02725-JCS

Statutes

Cal. Civ. Code § 1780(e) ............................................................................................. 35

Cal. Civ. Proc. Code § 1021.5 ..................................................................................... 27

Cal. Civ. Proc. Code § 1033.5 ................................................................................. 36, 37

Rules

Fed. R. Civ. P. 23..............................................................................................passim

Other Authorities

*Cost & Fee Allocation in Civil Procedure*,
    58 Am. J. Comp. L. 195 (2010) ............................................................................ 34

MOT. FOR FINAL SETTLEMENT APPROVAL & ATTY FEES, COSTS, & SERVICE AWARDS
CASE NO. 3:20-CV-02725-JCS

**Introduction**

The parties presented this proposed settlement to the Court earlier this year for preliminary approval. At that time, pursuant to Rule 23(e)(1), they asked the Court to find that it would likely (i) approve the settlement, and (ii) certify a settlement class. The Court agreed, made those findings, and directed the dissemination of notice to the proposed nationwide settlement class. With that notice having been delivered, Plaintiffs now formally request that the Court grant final settlement approval.

The settlement resolves claims that Defendant SquareTrade sold protection plans to cover various consumer products, but when plan holders later filed claims for coverage, SquareTrade underpaid many of those claims. The parties' settlement is well-tailored to resolve these claims by making full monetary relief available for harmed class members. Class members for whom the amount of their underpayment is known will receive payment that fully reimburses them. For the rest of the class (for whom the precise amount of underpayment is not known to the parties), each class member may claim the full amount they were underpaid, via a streamlined electronic claims process. In addition to providing all class members with the opportunity to recover 100% of their damages, the settlement provides injunctive relief in the form of required business-practice changes designed to ensure no future protection-plan holders will be underpaid. These settlement benefits are designed to suit the needs of the class and provide strong value given the strength of Plaintiffs' claims, supporting final approval of the settlement.

In addition to seeking final approval, Class Counsel also now formally request to be compensated for their effort in litigating and ultimately resolving this case on favorable terms for the class. Since July 2019, Class Counsel has devoted about 2,700 hours to the case, having briefed three motions to dismiss, a motion to compel arbitration, and a motion for summary judgment, while also taking and defending eight depositions and reviewing tens of thousands of pages of discovery documents from SquareTrade and multiple third parties. Class Counsel undertook these efforts on a purely contingent basis; they have yet to be compensated for their work, and also advanced over $41,318.39 in compensable litigation costs on behalf of the class.

1

Taking into account the number of hours devoted to this case, and counsel's typical billing rates—and after a voluntary reduction of over 10% of their time—Class Counsel's lodestar is $1,851,892. Consistent with the notice sent to the class, however, Class Counsel are not requesting compensation at or exceeding their lodestar, even though California law favors the use of multipliers to compensate lawyers for contingency risk and delivering strong results. Instead, Class Counsel have capped their combined request for reimbursement of attorneys' fees and costs to $1 million. Given the $41,318.39 in unreimbursed costs expended by counsel to date, the resulting $958,681.61 fee will entail an effective multiplier of just 0.52 on attorneys' fees. Since Class Counsel cutoff their fee submission at preliminary approval, this request includes no compensation for time spent briefing the motion for final approval or answering class member inquiries as the result of the notice and claim process, which serves to reduce the multiplier below 0.50. Given the successful outcome of this suit, in the face of substantial challenges and a zealous defense, Class Counsel respectfully ask that the Court grant their request for fees and costs. They also ask that the Court award $5,000 each to the class representatives as service awards for their contribution to the outcome.

## History of the Litigation

### I.    Factual Background

This case relates to how Defendant SquareTrade administers the protection plans that it sells to insure consumer products. ECF No. 102, Second Amended Complaint, ¶¶ 12-14. The protection plans cover products ranging from office chairs to electronics. *Id.* If a product breaks during its coverage period, SquareTrade repairs or replaces the product, or else reimburses the protection-plan holder. *Id.* at ¶¶ 17-18.

So, once a covered product breaks, the plan holder submits a claim to SquareTrade. *See id.* at ¶¶ 67-71. Upon receiving that claim, SquareTrade presents one of these options—repair, replacement, or reimbursement—as its recommended resolution of the customer's claim. This lawsuit takes issue only with the reimbursement option. *Id.* at ¶ 4.

The "Fast Cash" Program

In 2018, after an earlier pilot phase, SquareTrade broadly introduced its "Fast Cash"

program. *Id.* at ¶ 26. Under Fast Cash, SquareTrade offered plan holders a uniform payout equal to a fixed percentage of the covered product's original purchase price. *Id.* For example, if someone bought a widget for $100, and at the time they made their claim the Fast Cash percentage was 85%, SquareTrade paid the plan holder $85. *See id.* SquareTrade has periodically changed the set percentage it applies to Fast Cash claims. *Id.* at ¶¶ 27-28.

In their complaint, Plaintiffs noted that before instituting Fast Cash, SquareTrade historically reimbursed plan holders their original purchase price—not some lower percentage. *See id.* at ¶¶ 58-59. The Court has since held, however, that SquareTrade was under no contractual obligation to reimburse the original purchase price. ECF. No. 84 at 14-15. Rather, SquareTrade's contractual obligation is to pay enough to cover the replacement cost of the product (up to the original purchase price). *Id.*

The evidentiary challenge facing the class was that SquareTrade does not maintain comprehensive data sufficient to identify the replacement costs for all protected products on each day a consumer files a claim. *See* ECF No. 121, Declaration of Douglas Winthrop ("Winthrop Decl.") Ex. A (Deposition of co-founder and former CEO of SquareTrade, Ahmed Khaishgi) at 88:24-92:19, 95:10-98:4, 98:16-103:19. So, while Plaintiffs allege that the Fast Cash amount was often too low, for any given Fast Cash reimbursement, SquareTrade doesn't know if the Fast Cash amount was below, above, or exactly equal to the replacement cost for a particular protected product on a particular day.

The SKU-cap Error.

There is one additional, considerably smaller, part of this case that is separate from the Fast Cash program—the SKU-cap issue. In certain circumstances, SquareTrade advises its customers that (notwithstanding the lack of a contractual obligation to do so) it is going to reimburse them what they originally paid for their covered product. SquareTrade generally provides this full reimbursement where it has attempted to repair or replace the covered product and failed. *See* Winthrop Decl. ¶ 2, Ex. A at 131:12-132:13. (Khaishgi deposition testimony re: cash payouts after unsuccessful repair or replacement).

In some instances, however, a system error inside SquareTrade led to lower payments than

were intended. ECF No. 103-6, Declaration of Michael Gallagher, ¶ 3. In these instances, protection plans were improperly coded with a cap on the company's reimbursement obligation that was below the purchase price of the covered products. As a result of this "SKU-cap," SquareTrade paid 1202 customers approximately less than it had committed to paying them. ECF No. 128-7, Declaration of Jennifer Keough ("FA Keough Decl."), ¶ 4.

## II.    Procedural Background

Since this case was filed nearly three years ago, it has been fiercely contested. Against Plaintiff Shuman alone, SquareTrade filed a motion to compel arbitration, ECF No. 17, a motion to dismiss, ECF No. 30, and a motion for summary judgment, ECF No. 67.

Following that initial motion to dismiss, two more Plaintiffs joined the litigation: Abbott from New York and Gonzales from California. *See* ECF No. 60. SquareTrade promptly filed motions to dismiss against each of them, which Plaintiffs opposed, and the Court granted the motions with leave to amend. ECF No. 84. SquareTrade also foreshadowed that it anticipated filing motions to compel arbitration against Plaintiffs Abbott and Gonzales.

In addition to the motion practice undertaken, the parties also engaged in substantial discovery. Plaintiffs propounded discovery requests that resulted in the review of tens of thousands of pages of SquareTrade documents; deposed five SquareTrade employees; and prepared and served over a dozen third-party subpoenas for documents and depositions. *See* ECF No. 128-1, Declaration of Class Counsel ("Class Counsel Decl.") ¶¶ 10-12. All three Plaintiffs responded to interrogatories and requests for production, produced documents, and sat for full-day depositions. *Id.* All the while, Plaintiffs' and SquareTrade's counsel were meeting and conferring about discovery issues, holding video conferences multiple times a month. *Id.* While counsel were ultimately able to resolve many contested issues without the Court's intervention, the parties also briefed a dispute concerning SquareTrade's assertions of privilege. *Id.* at ¶ 12.

As Plaintiffs prepared to amend their complaint and to take Rule 30(b)(6) depositions, the parties mediated with the help of retired Judge James L. Warren. *See id.* at ¶¶ 11, 13. Following

1    the submission of mediation briefing and a 15-hour mediation, the parties agreed to the

2    material terms of the settlement now before the Court. *Id.* ¶ 13.

3        The parties subsequently negotiated and prepared a formal settlement agreement,

4    developed a notice and distribution plan, and prepared and finalized drafts of the settlement

5    agreement's exhibits. *See id.* The parties also retained the services of an experienced Settlement

6    Administrator, JND Legal Administration, after soliciting competing bids from five potential

7    administrators. *See id.* at ¶ 13.

8        On March 23, 2022, Plaintiffs filed their motion for preliminary approval of the Settlement.

9    ECF No. 103. Following the preliminary approval hearing on June 3, 2022, the parties

10   implemented some modifications to the settlement before filing supplemental briefing on the

11   updated settlement proposal. ECF No. 120. The Court proceeded to grant preliminary

12   approval on October 17, 2022, directing notice to the class. ECF No. 124. Upon issuance of the

13   preliminary approval order, the parties worked with the Settlement Administrator, JND Legal

14   Administration, to coordinate and effectuate class notice. FA Keough Declaration ¶ 2. JND has

15   disseminated notice to the class consistent with the requirements of the preliminary approval

16   order and the proposed settlement. *Id.* at ¶¶ 5-10.

17   **III.    Overview of the Settlement**

18       **A.    The proposed settlement class**.

19   The parties' settlement contemplates the certification of a class, for settlement purposes

20   only, defined as follows:

21       <u>Settlement Class</u>: All members of the Fast Cash Subclass and the SKU-cap Subclass.[2]

22       <u>The Fast Cash Subclass</u>: Any person who, during the Class Period, (i) submitted a claim

23       for coverage under a Protection Plan, and (ii) whose claim was resolved via a Fast Cash

24   _____

25   [2] Excluded from the Settlement Class are the judge approving the Settlement and his or her

26   immediate family; Defendant; any entities in which Defendant has a controlling interest or

     which have a controlling interest in Defendant; the officers, directors, employees, affiliates and

27   attorneys of Defendant, and the immediate family members of any such person; and any

28   person who has submitted a timely and valid Opt-Out Request. Amended SA ¶ 1.41.

payment from Defendant.

<u>The SKU-cap Subclass</u>: Any person who, during the Class Period, (i) submitted a claim for coverage under a Protection Plan, (ii) resolved the claim by receiving a monetary payment from Defendant, and (iii) received less than the amount the person should have received were it not for the SKU-cap Error.

ECF No. 120-2, Amended Settlement Agreement ("Amended SA") ¶¶ 1.15, 1.41, 1.43.

### B.    Monetary relief for the Fast Cash Subclass.

The proposed Fast Cash Subclass consists of those who bought a SquareTrade protection plan, later made a claim under that plan, and who then received payment from SquareTrade under the Fast Cash program. For any given Subclass member, there are three possibilities when comparing the payment they already received under Fast Cash with their product's actual cost of replacement at the time the claim was made:

- Some received less under Fast Cash than the cost of replacement;
- Some received more under Fast Cash than the cost of replacement; and
- Some received precisely the amount under Fast Cash that corresponded to the cost of replacement.

At this point in time, neither Plaintiffs nor SquareTrade possess information that would enable them to identify which Fast Cash Subclass members fall within which of those three possibilities. Given the timeframe at issue and the broad range of products at issue, it is likely that no single entity possesses that information. But the SquareTrade customer who purchased the product, made a claim to SquareTrade upon a covered event (such as the product breaking), and received a payment from SquareTrade to cover replacement of the product is uniquely situated and in the best position to say what the replacement cost of their product was at the time they received their Fast Cash payment from SquareTrade.

The settlement necessarily takes this reality into account. Every single member of the Fast Cash Subclass will be eligible to claim the difference between (i) the Fast Cash amount they were already reimbursed, and (ii) the actual replacement cost of their product at the time of that reimbursement. In other words, right now every person in the class is eligible to recover

6

100% of what they might stand to recover if Plaintiffs were to eventually overcome every procedural and legal obstacle they face and win at trial.

And the claim process here is remarkably streamlined:

- There is no proof requirement to get paid. Every class member can submit a claim, whether or not they can locate a receipt or other document showing what the cost of replacement was at the time.[3]

- Class members can make their claims electronically. Nothing needs to be printed out, signed, and mailed. It's as simple as clicking on a link in an email notice, filling out minimal details on the claim form, and then clicking "submit." Even for those who receive notice by postcard, a personalized QR code will allow them to scan and go immediately to the pre-populated electronic claim form.

- The claim form requires next-to-no new information from the class member. The claim form requires literally just one single piece of information from the class member: the cost of replacing their product at the time they made their claim for Fast Cash reimbursement. That's it—there's no need to type in their address, phone number, or SquareTrade protection plan number.

- The claim form will come auto-populated with information specific to each class member to help them remember relevant details: (a) the date when the class member bought their protection plan, (b) the type of product that the plan covered, (c) which retailer sold them their plan, (d) how much they paid for the product, and (e) how much they were reimbursed under Fast Cash already.

In sum, the goal is for class members to be able to click open the claim form, quickly see what product is at issue, fill out a single dollar amount, and submit the form—all within just a

---

[3] The only caveat is that for the 5% or so of the class that may be eligible to receive over $35 for their claim, the class member must submit documentation to support that their product's replacement value was over $35 more than the Fast Cash payment they received. But even if they lack documentation, they will be paid under the settlement—their payment will simply be capped at $35. *See* Amended SA ¶¶ 3.4-3.4.4.

1    minute or two.

2        **C.    Monetary relief for the SKU-cap Subclass.**

3        For the smaller SKU-cap Subclass, unlike for the Fast Cash Subclass, the precise amount

4    owed to the class members is already known. SquareTrade records show the difference

5    between the amount that SquareTrade had intended to pay and what it actually paid.

6        Under the settlement, members of the SKU-cap Subclass will receive the full difference

7    between what they were paid and what SquareTrade had intended to pay them. In other

8    words, the difference between the payout they received from SquareTrade, and their product's

9    original purchase price. Amended SA ¶ 3.5 Because this data is already available, these class

10   members will not need to submit any claim form or otherwise take steps to be paid.[4] *Id.*

11       **D.    The settlement's injunctive relief will prevent others from being underpaid.**

12       In addition to monetary relief just discussed, the parties negotiated business practice

13   changes to help ensure future protection-plan holders are not similarly underpaid. Because the

14   SKU-cap and Fast Cash underpayments result from different causes, the business practice

15   changes are different for the two forms of underpayment.

16       When it comes to Fast Cash, SquareTrade has long contended that that the Fast Cash

17   program provides certain benefits—including fast payouts to plan holders—that customers do

18   not want to see eliminated. Plaintiffs have contended, however, that the Fast Cash amounts are

19   often too low—and that customers are not told they can opt out of Fast Cash. *See* ECF No. 102

20   ¶¶ 26-35. To resolve these concerns, the settlement imposes injunctive relief that will require

21   SquareTrade to make disclosures to all potential Fast Cash recipients. Amended SA ¶ 3.1. The

22   _____

23   [4] For all uncashed checks, the Settlement Administration will send check-deposit reminder

24   emails one month, six months, and eleven months after issuance. Amended SA ¶ 3.7. Any
     checks issued to class members that have not been cashed within one year will be cancelled,

25   and the settlement proposes the total be sent to Berkeley Law's Center for Consumer Law &
     Economic Justice as a *cy pres* recipient. *Id.*; ECF No. 128-6, Declaration of Seth E. Mermin. A *cy*

26   *pres* award to the Center for Consumer Law & Economic Justice will benefit consumers

27   nationwide and will promote the law consistent with the objectives and purposes of the

28   underlying causes of action in this case. ECF No. 128-6, Mermin Decl. ¶ 10.

disclosure, which SquareTrade has already implemented, explains that the Fast Cash amount represents an approximation of the replacement cost of their covered product, and informs them that they can be paid more than the Fast Cash amount if they provide documentation showing that the cost of replacing the product in question exceeds the Fast Cash amount.

In other words, future plan holders who are happy with the speed and payment amount under Fast Cash can take advantage of the program without restriction. And those plan holders will be forewarned that the Fast Cash amount is an approximation so that if they are inclined to ascertain the actual replacement cost, they can do that and receive additional payment if the Fast Cash amount is less than replacement cost.

When it comes to the SKU-cap error, SquareTrade has undertaken a thorough review of its systems to ensure it can take the steps necessary to eliminate the SKU-cap error going forward. ECF No. 103-5, Declaration of Sirena Ma ("Ma Decl."), ¶ 4. Under the terms of the settlement, SquareTrade must implement that solution within 120 days of the settlement's effective date, and then must provide confirmation of the steps taken to Class Counsel. Amended SA ¶ 3.3. The details of the technical solution implicate proprietary aspects of SquareTrade's business, which the parties are prepared to further detail in camera upon request.

### E.    Scope of class members' release of claims.

In exchange for the benefits provided under the settlement, Plaintiffs and settlement class members will release certain claims against SquareTrade. *Id.* at ¶ 5.1. The released claims are:

> . . . any and all claims, cross-claims, damages, losses, demands, suits, matters, issues, debts, liens, contracts, liabilities, agreements, costs or expenses, asserted rights, or actions, of any kind that Plaintiffs or any member of the Settlement Class has, had, or may have, including any assigned claims, whether in arbitration or administrative or judicial proceedings, whether asserted as an individual claims or on a class basis or on behalf of the general public, whether known or unknown, asserted or unasserted, suspected or unsuspected, latent or patent, that is, has been, could have been, or in the future might be asserted, either in the Action or in any action or proceeding in this Court or in any other court or forum, against any of the Released Parties or Released Persons, arising out of or relating to the facts underlying the Action. For the avoidance of doubt, the Parties intend the scope of the release to be as broad as possible under the Ninth Circuit's "identical    factual    predicate"    standard,    as    set    forth    in *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

1  *Id.* at ¶ 1.33.

2    The Northern District's guidelines ask whether the claims to be released differ from the

3  claims in the operative complaint. *See* N.D. Cal., *Proc. Guidance for Class Action Sett.* § 1(c).

4  Here, the parties do not seek to release any claims other than those that were (or could have

5  been) pled based on the facts alleged by Plaintiffs during the litigation. *See Hesse*, 598 F.3d at

6  590.

7  **The Court Should Grant Final Approval of the Settlement**

8    Under Rule 23(e)(2), where a settlement "proposal would bind class members, the court

9  may approve it only after a hearing and only on finding that it is fair, reasonable, and

10  adequate after considering whether" the settlement satisfies the elements within Rule 23(e)(2).

11    Here, in the course of preliminarily approving the settlement and ordering notice be sent

12  to the class, the Court found that the settlement satisfies each of the requirements of Rule

13  23(e)(2). ECF No. 124. There is no reason to depart from the Court's preliminary conclusion

14  that the proposed settlement is fair, adequate, and reasonable.

15  **I.    The proposed settlement merits approval.**

16    Rule 23(e)(2) provides a checklist of factors to consider when assessing whether a proposed

17  settlement is fair, reasonable, and adequate. Below, Plaintiffs analyze each factor in turn,

18  bearing in mind the Ninth Circuit's admonition that the key "underlying question remains

19  this: Is the settlement fair?" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab.*

20  *Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).

21    Courts must also scrutinize negotiated settlements "not only for explicit collusion, but also

22  for more subtle signs that class counsel have allowed pursuit of their own self-interests and

23  that of certain class members to infect the negotiations." *Haralson v. U.S. Aviation Servs. Corp.*,

24  383 F. Supp. 3d 959, 966 (N.D. Cal. 2019). Where, like here, the settlement was negotiated

25  before certification of a litigation class, the district court should "employ[] extra caution and

26  more rigorous scrutiny." *Saucillo v. Peck*, 25 F.4th 1118, 1130 (9th Cir. 2022) (citation omitted);

27  *In re Volkswagen*, 895 F.3d at 610-11 (quoting *In re Bluetooth Headsets Litig.*, 654 F.3d 935, 946-47

28  (9th Cir. 2011)).

10

1
2

Here, that rigorous scrutiny reveals a settlement that is fair, reasonable, and adequate, with each of the Rule 23(e)(2) elements supporting settlement approval.

3

**A.      Plaintiffs and their counsel have adequately represented the class.**

4
5
6
7

The first element to consider under Rule 23(e)(2)(A) is the adequacy of representation by the class representatives and attorneys. This includes "the nature and amount of discovery" undertaken in the litigation. Fed. R. Civ. P. 23(e)(2)(A) and (B), 2018 Advisory Committee's Notes.

8
9
10
11
12

Here, the named Plaintiffs diligently represented the class. They actively participated in the litigation and discovery, including by responding to discovery requests, producing documents, and sitting for full-day depositions. Class Counsel Decl. ¶¶ 32-34. They have remained in regular contact with Class Counsel and acted with the interests of the class in mind. *Id.*

13
14
15
16
17
18

Class Counsel have also adequately represented the class. They vigorously prosecuted this case, briefed five dispositive motions, engaged in protracted discovery, conducted five depositions, defended three depositions, and reviewed and analyzed tens of thousands of pages of documents. *Id.* at ¶¶ 10-12. They also served over a dozen third-party subpoenas and were poised to depose corporate representatives of SquareTrade and third parties when the settlement was reached. *See id.*

19
20
21
22

Finally, Class Counsel have successfully litigated many prior class actions involving consumer protection and contract claims, successfully resolving many of those in this District, and have brought that experience and knowledge to bear on behalf of the class. *See id.*, Ex. A (Gibbs Law Group LLP Resume), Ex. B (Handley Farah & Anderson PLLC Resume).

23

**B.      The parties negotiated the proposed settlement at arm's length.**

24
25
26
27
28

The second Rule 23(e)(2) element asks the Court to confirm that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding element, this can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) and (B), 2018 Advisory Committee's Note.

11

1    There are multiple indicia here of the arm's-length nature of the negotiations. First, the
2    parties did not begin negotiations until after the case had been pending for over a year and a
3    half. Class Counsel Decl. ¶ 13. By the time they reached agreement, the parties had engaged in
4    significant motion practice and conducted extensive discovery. *Id.* at ¶¶ 10-12; *see also*
5    *Wannemacher v. Carrington Mortg. Servs., LLC*, 2014 WL 12586117, at *8 (C.D. Cal. Dec. 22, 2014)
6    (finding no signs of collusion where "significant . . . discovery [was] conducted," and where,
7    before "exploring settlement, the parties litigated the case for a year"). In other words, when
8    the parties entered settlement discussions, they well understood the strengths and weaknesses
9    of their respective positions.

10    Nevertheless, Ninth Circuit jurisprudence counsels taking note of certain potential warning
11    signs for collusion. Here, one such sign is absent: the settlement does not contain a "clear
12    sailing arrangement" where the defendant agrees not to challenge attorneys' fees. *See Campbell*
13    *v. Facebook, Inc.*,951 F.3d 1106, 1125-27 (9th Cir. 2020); *McKinney-Drobnis v. Oreshack*, 16 F.4th
14    594, 608 (9th Cir. 2021). Other warning signs may be present, however, as it is possible that any
15    separately awarded attorneys' fees may ultimately prove disproportionate to the class
16    payments—possible here given the relatively small amount in controversy in this case. But
17    even if that type of warning sign is present, the key components of the settlement outweigh
18    any such concern. These include the class's opportunity to receive full recovery of their
19    damages, while Class Counsel are being paid less than even half the lodestar required to
20    generate that recovery. *See, e.g., Dixon v. Cushman & Wakefield W., Inc.*, 2022 WL 1189883, at *8–
21    9 (N.D. Cal. Apr. 21, 2022) (approving settlement despite presence of red flags in light of the
22    "significant" recovery for the class and the fact that the "amount of fees sought is less than
23    counsels' lodestar").

24    The Court can take further comfort here given the oversight of an experienced mediator,
25    Judge James L. Warren (Ret.). Class Counsel Decl. ¶ 13. "[T]he involvement of a neutral . . . in
26    [the parties'] negotiations may bear on whether they were conducted in a manner that would
27    protect and further the class interests." Rule 23(e)(2)(B), 2018 Advisory Committee's Note;
28    *accord In re Google Plus Profile Litig.*, 2021 WL 242887, at *6 (N.D. Cal. Jan. 25, 2021) (oversight of

12

"an experienced mediator" reflected non-collusive negotiations); *Lembeck v. Arvest Cent. Mortg. Co.*, 2021 WL 5494940, at *4 (N.D. Cal. Aug. 26, 2021) (a negotiation at "arm's length before an experienced mediator and between experienced and sophisticated counsel" evidenced a "lack of collusion.").

In sum, the Court can be confident of the hard-fought and arm's-length nature of the process.

### C.    The quality of relief to the class weighs in favor of approval.

The third factor to be considered is whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2)(C)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), 2018 Advisory Committee's Notes.

### i.    The settlement provides strong relief for the class.

The monetary and injunctive relief delivered by the proposed settlement is strong, approximating what might have been delivered after a win at trial. It thus weighs in favor of settlement approval, even in the face of "rigorous scrutiny." *See generally Saucillo*, 25 F.4th at 1131.

With respect to monetary relief, all class members are entitled to receive the maximum amount of damages that they may have recovered at trial. First, the class members impacted by the SKU-cap error will receive the full difference between their payment from SquareTrade and their product's purchase price. Amended SA ¶ 3.5. Meanwhile, the class members who received Fast Cash payments are eligible to receive the full difference between what SquareTrade initially paid them and the maximum amount to which they may have been legally entitled at the time (which is to say, the actual replacement cost of their covered products, up to the products' original purchase price). *Id.* ¶ 3.4.

1
2
3
4
5
6
7
8
9
10
11
12
13
14

This level of monetary relief weighs in favor of settlement approval. *See, e.g., Bozarth v. Envision Healthcare Corp.*, 2020 WL 11028383, at *6 (C.D. Cal. June 30, 2020) (class settlement where class members could receive "potentially 100%" after filing a valid claim was "more than adequate"). As one court articulated, providing "near-complete relief to class members on a claims-made basis" is an "extraordinary" result. *Lee v. Ocwen Loan Servicing, LLC*, 2015 WL 5449813, at *2 (S.D. Fla. Sept. 14, 2015); *see also Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1302 (S.D. Cal. 2017) (providing class members who submit claim forms "an estimated 80%, and potentially higher" of what they were seeking is an "extraordinary amount of recovery"), *aff'd* 881 F.3d 1111 (9th Cir. 2018). These full awards "provide strong support for approval of the settlement" because class members cannot "secure a greater recovery . . . by litigation than they will recoup by the settlement." *Shames v. Hertz Corp.*, 2012 WL 5392159, at *6 (S.D. Cal. Nov. 5, 2012); *Touhey v. United States*, 2011 WL 3179036, at *7 (C.D. Cal. July 25, 2011); *Hendricks v. StarKist Co.*, 2016 WL 5462423, at *5 (N.D. Cal. Sept. 29, 2016) (providing "full recovery" for class members who make claims "weighs in favor of settlement . . . .").

15
16
17
18
19
20
21
22
23
24

The injunctive relief required by the settlement provide additional value. The systems error that led to SKU-cap errors has been eliminated, which will spare future consumers from underpayment. And Fast Cash has been reformed: without losing the characteristics that make it "fast"—a desirable point for many consumers—it now alerts protection-plan holders when they accept Fast Cash that they may be entitled to more money if documentation supports a higher payout. This way, they can check for themselves whether the payment amount will suffice to cover the cost of a replacement and, if not, they can point SquareTrade to the true replacement cost, and receive full reimbursement. Given the over 880,000 claims subject to Fast Cash since the program's inception, this improvement is poised to benefit hundreds of thousands of consumers in the years to come.

25
26
27

This negotiated relief satisfies the Rule 23 standard of fair, reasonable, and adequate. Plaintiffs and their counsel wholeheartedly endorse the negotiated resolution of this action. Class Counsel Decl. ¶ 2.

28

14

### ii.    Continued litigation would entail substantial cost, risk, and delay.

Almost all class actions involve high levels of cost, risk, and lengthy duration, which supports the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). Here, had the parties not settled, the litigation would have been risky, protracted, and costly.

Many hurdles remained ahead for a successful prosecution. The parties would likely have briefed motions to compel arbitration and further motions to dismiss for both Plaintiffs Abbott and Gonzales, followed by class certification, a likely Rule 23(f) appeal after the Court's certification ruling, summary judgment, motions in limine, a possible decertification motion, and then trial. Each stage would have added risk and necessarily imposed delay before relief could be provided to the class. Further, the parties were continuing to negotiate the scope of not-yet-produced discovery, and additional depositions would have been forthcoming (30(b)(6) depositions, third-party depositions, and additional SquareTrade employee depositions). *See* Class Counsel Decl. ¶ 12.

More immediately, Plaintiffs would have had to plead and prove their case within the bounds of the Court's prior orders, since the Court dismissed Plaintiff Abbott's and Plaintiff Gonzales' claims for breach of contract, ECF No. 84 ¶¶ 10-11, 17-18, their California and New York consumer protection claims, *id.* at ¶¶ 13-14, 19-20, and their unjust enrichment claims, *id.* at ¶¶ 17, 20-21. Should Plaintiffs have failed to do so, the remaining Class would be limited to the Pennsylvania class.

After doing so, Plaintiffs planned to present what they believe to be a compelling narrative of wrongdoing. They believe they could demonstrate that Fast Cash was unfair and contrary to SquareTrade's contractual promises. But Class Counsel recognize, based on their experience in similar class actions and based on the record in this action, that the case faced real challenges—including with further motions to dismiss, the possibility of compelled arbitration, and at class certification, where the case could either fail or be whittled down. Plaintiffs believe they had reasonably strong prospects of overcoming SquareTrade's

arguments and defenses, but there can be little doubt that those defenses presented the possibility that the class would recover nothing.

Of course, even if Plaintiffs prevailed on each of these issues through class certification and trial, an appeal would likely follow, taking another two years or more to resolve. At best, class recovery would come by perhaps 2024, all with slim prospects for any greater recovery than what is embodied in the proposed settlement poised to provide relief to consumers within mere weeks.

All of these considerations favor settlement. The class will receive meaningful relief now—not similar relief (or none at all) years down the road.

### iii.    The settlement agreement provides for an effective distribution of proceeds to the class.

The settlement contemplates an efficient and effective distribution process. Here, notice was disseminated on November 14, 2022, and class members have 90 days to submit any necessary claim (February 14, 2023). Amended SA ¶¶ 1.7, 1.22. Should the Court grant final approval to this settlement, class members will receive payments within 60 days from the settlement's effective date. *Id.* at ¶ 3.7

As mentioned above, SKU-cap Subclass members will receive their settlement payments automatically—since the full amount of their damages is known without the class member providing information. Based on the December 21, 2022, Declaration of Jennifer Keough Regarding Notice Administration, there are a total of 1,202 SKU-cap Subclass members representing 1,231 claims. FA Keough Decl. ¶ 4.

For the Fast Cash Subclass, claims are necessary because SquareTrade does not maintain complete and comprehensive data on historic product replacement costs. *See In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 781 (9th Cir. 2022) (overruling objection to claim form with attestation requirement because remaining claims were not automatically or necessarily compensable for each settlement class member). The parties, however, have taken substantial steps to minimize the claims burden here. Claim forms can be submitted electronically, will auto-populate pertinent information about class members' transactions, and permit class

MOT. FOR FINAL SETTLEMENT APPROVAL & ATTY FEES, COSTS, & SERVICE AWARDS
CASE NO. 3:20-CV-02725-JCS

members to attest simply to the replacement cost of their covered product. *See* Amended SA, Ex. A; *see also id.* at ¶ 4.3. For 95% of the class, nothing else is needed. Ma Decl. ¶ 3. In about 5% of cases, where claims would otherwise entail $35 or more in payment, claimants will be asked to submit documentation confirming their stated replacement cost (for example, a receipt or a link to an online retailer page). *Id.* With that proof, their recovery will be uncapped (up to their item's purchase price). *Id.* But even those Class members who lack documentation will receive payment—it will simply be capped at $35 per Fast Cash claim. Amended SA ¶ 3.4.3.

The Ninth Circuit's *en banc* decision the *In re Hyundai & Kia Fuel Economy Litigation*, 926 F.3d 539, 568 (9th Cir. 2019), supports use of the claim form here. There, objectors had opposed the settlement's claim form requirement, arguing that "the claim forms required too much documentation," and likely would lead to "low claim participation rates." *Id.* The Ninth Circuit disagreed, emphasizing that "class members could easily avoid most documentation requirements by submitting an online claim form, which pre-populated information after class members entered their vehicle identification number and the unique class member identification number provided by their notices." *Id.* Here, like there, the claim form will be pre-populated with key information and will require most class members to provide just one piece of information (and no documentation) to be paid. Amended SA ¶¶ 3.4.-3.5, 4.3; *see also In re Apple Device Performance Litig.*, 2021 WL 1022867, at *15 (N.D. Cal. Mar. 17, 2021) ("[a]n attestation is a reasonable means to ensure payments are made to only claimants who were harmed") (citing *Hyundai & Kia*, 926 F.3d at 568) (and also citing: *Kacsuta v. Lenovo (U.S.) Inc.*, 2014 WL 12585787, at *4 (C.D. Cal. Dec. 16, 2014) (holding that requiring a declaration is "widely accepted procedure of claims-based class action settlements")); *In re Sony PS3 "Other OS" Litig.*, 2017 WL 5598726, at *28 (N.D. Cal. Nov. 21, 2017) (approving settlement requiring attestation of injury); *Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *12-13 (N.D. Cal. Aug. 28, 2013) (overruling objection to requirement to "aver under penalty of perjury" that class members were harmed).

The claims process thus poses no artificial hurdles and should encourage class member participation in the settlement.

iv.    **The terms of the proposed award of attorneys' fees, including timing of payment, also support settlement approval.**

At this stage, courts "must balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class.'" *Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii)). This inquiry is particularly salient when class cases settle before a court has certified a class due to the risk that "[collusive] plaintiffs' counsel may . . . strike a quick settlement without devoting substantial resources to the case." *Id.* Three signs of such collusion, the "so-called *Bluetooth* factors," are (i) fees as a disproportionate distribution of the settlement, (ii) a kicker, where unawarded fees revert to the defendant, and (iii) a clear-sailing agreement, where a defendant agrees not to challenge a fee request. *Id.* By contrast, when plaintiffs' counsel have "devot[ed] substantial time and resources to the case," they have "skin in the game, guaranteeing his or her interest in maximizing" class members' settlement recovery. *Id.* at 1025.

As described both above and in detail in the fee section below, there are no indicia that Class Counsel colluded with SquareTrade to earn more in fees in exchange for less relief for the class. After having vigorously litigated this case for two years, the parties achieved a settlement in which each class member is entitled to the full amount they could have earned at trial. Class Counsel's fees and costs are capped at significantly less than their resources spent to achieve this result and, with no clear sailing agreement, both the Court and opposing counsel are free to scrutinize their fees. There is, therefore, no reason to deny final approval on this ground.

v.    **The parties have no other agreements pertaining to the settlement.**

The Court also must evaluate any agreement made in connection with the proposed settlement. See Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Here, the settlement agreement before the Court is the only extant agreement. *See* Amended SA.

vi.    **The settlement treats all settlement class members equitably.**

The final Rule 23(e)(2) factor is whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include

18

1
2
3
4

whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee's Notes.

5
6
7
8
9
10
11
12
13
14
15

Here, the settlement generally treats all members of the class the same. All class members are entitled to recover the difference between (i) what SquareTrade initially paid them, and (ii) the amount they were entitled to at the time. For the SKU-cap Subclass, this means the difference between what they were paid and their original purchase price. And for the Fast Cash Subclass, it means the difference between what they were paid and the actual replacement cost of their covered products (up to original purchase price). So, to the extent class members receive different compensation, it will be based on the amounts they were previously paid or based on the purchase price or replacement cost of their particular product. *See, e.g.*, *Altamirano v. Shaw Indus., Inc.*, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment because the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct").

16
17
18

The same is true for the release, which is identical for all class members. *See* Amended SA ¶ 5. As a result, the settlement treats all class members equitably, further supporting approval of the settlement.

19
20
21
22
23
24
25
26

Finally, though the class representatives will receive additional money in the form of service awards, the extra payments recognize the service they performed on behalf of the class. Service awards for this work are "fairly typical" in class action cases. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Here, each Plaintiff reviewed pleadings and other filings, responded to discovery, searched for and produced responsive documents, kept apprised of the litigation, and prepared for and sat for a full-day deposition. Class Counsel Decl. ¶¶ 32-34; *see also* Amended SA ¶ 8.2 (preserving the Court's supervisory authority to determine the appropriateness of any service awards).

27

For all these reasons, the proposed settlement merits approval.

28

1

## II.   Certification of the proposed settlement class is appropriate.

2      Certification of the proposed settlement class requires that all four elements of Rule 23(a)

3  and at least one prong under Rule 23(b) be satisfied. The criteria for class certification are

4  applied differently in litigation classes and settlement classes. *Hyundai & Kia*, 926 F.3d at 556.

5  For example, when deciding to certify a settlement class, "manageability is not a concern"

6  since the settlement will eliminate the need for a trial. *Id.* at 557. On the other hand, other

7  aspects of certification require "heightened attention by the district court." *Id.* at 558

8  (quotation omitted). "[T]he aspects of Rule 23(a) and (b) that are important to certifying a

9  settlement class are those designed to protect absent [class members] by blocking

10 unwarranted or overbroad class definitions." *Id.* (quotation omitted). The focus is "on

11 whether a proposed class has sufficient unity so that absent members can fairly be bound by

12 decisions of class representatives." *Id.* (same).

13     Here, the settlement classes are composed of only (a) protection plan purchasers to whom

14 mistaken caps were applied; and (b) protection plan purchasers who were paid under the Fast

15 Cash program. These settlement classes are narrower than those that were originally

16 proposed in Plaintiffs' complaint—they encompass only those protection plan purchasers

17 who were paid out in the ways the settlement targets. *See* ECF. No. 60 ¶ 81. There is thus no

18 risk that this settlement expands the scope of the class in an unwarranted, overbroad fashion.

19 *See Hyundai & Kia*, 926 F.3d at 558. And for the reasons that follow, the proposed settlement

20 class satisfies the requirements of Rule 23(a) and (b)(3).

21         **A.   The proposed class definition is appropriate given the scope of the litigation.**

22     The Northern District's guidelines inquire whether the proposed settlement class differs

23 from the class proposed in the operative complaint. *See* N.D. Cal., *Proc. Guidance for Class*

24 *Action Sett.* § 1(c). Here, the two are identical. *Compare* ECF No. 102 ¶ 81 *with* Amended SA

25 ¶¶ 1.16, 1.41, 1.43. What's more, the operative definition is narrower than the previously pled

26 class definitions, which did not restrict underpayment to SKU-cap and Fast Cash issues. *See*

27 ECF No. 60 ¶ 81.

28

---

**B.    The settlement class satisfies the requirements of Rule 23(a).**

      **i.    The class members are too numerous to be joined in one action.**

The first Rule 23(a) requirement is that the proposed class be so numerous that joinder of all members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). Classes of more than 40 members are presumed to meet this requirement. *Arroyo v. Int'l Paper Co.*, 2019 WL 1508457, at *2 (N.D. Cal. Apr. 4, 2019). Here, the SKU-cap Subclass consists of 1,202 members and the Fast Cash Subclass consists of 704,373 members. FA Keough Decl. ¶ 4. The numerosity requirement is therefore satisfied.

      **ii.    The action involves common questions of law or fact.**

Under Rule 23(a)(2), there must be "questions of law or fact common to the class," meaning the class's claims "must depend upon a common contention" such that "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011). This case poses several overarching questions common to members of both classes, including the nature of SquareTrade's obligations to protection-plan purchasers under its contract and under common law principles and consumer protection statutes. *See, e.g.*, *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1122-23 (9th Cir. 2017); *Achziger v. IDS Prop. Cas. Ins. Co.*, 772 F. App'x 416, 418-19 (9th Cir. May 9, 2019). For settlement purposes, the commonality requirement is thus satisfied; the "circumstances of each particular class member . . . retain a common core of factual or legal issues with the rest of the class." *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012).

      **iii.    Plaintiffs' claims are typical of the class.**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "[T]he typicality requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). Plaintiffs have alleged the same claims that would be pursued by anyone else who was paid under the SKU-cap error (like Plaintiff Shuman) and the Fast Cash program (like

Plaintiffs Abbott and Gonzales). This common course of conduct gives rise to the same reasonably co-extensive claims for all class members for purposes of settlement. *See Just Film*, 847 F.3d at 1117.

> iv.    **Plaintiffs and their counsel have, and will continue to, fairly and adequately protect the interests of the class.**

The final Rule 23(a) requirement demands that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This adequacy requirement involves two questions: (i) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (ii) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018). Here, neither Plaintiffs nor their counsel have any conflicts of interest with absent class members. To the contrary, their interests are aligned. Plaintiffs bought SquareTrade protection plans and were paid under either the SKU-cap error or the Fast Cash program, just like every other class member, and share those class members' interest in recouping at least some of the payout remainder allegedly owed. *See* Class Counsel Decl. ¶¶ 8, 11.

Plaintiffs and Class Counsel have also demonstrated their commitment to the class over the last three years. Since filing suit, counsel have spent over 2,700 hours prosecuting the case and have incurred over $41,000 in compensable litigation expenses. *Id.* at ¶¶ 16, 24, 31. The case has been hard fought, with several dispositive motions, and significant discovery work required from Plaintiffs. *Id.* at ¶ 10-12. Class Counsel also spent significant time negotiating discovery with both SquareTrade and various third parties, culminating in the production and review of tens of thousands of pages of documents in all, and several amendments to SquareTrade's interrogatory responses. *Id.* Class Counsel are well-versed in complex class litigation and devoted substantial time and expertise for the benefit of the class. *See id.*, Ex. A (Gibbs Law Group LLP Resume), Ex. B (Handley Farah & Anderson PLLC Resume). There is no reason to doubt the adequacy of this representation.

1

### C.     The settlement class meets the requirements of Rule 23(b)(3).

2      "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class

3  certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2)

4  or (3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998), *overruled on other grounds*

5  *by Dukes*, 564 U.S. at 338. Here, the settlement class is maintainable under Rule 23(b)(3), as

6  common questions predominate over any questions affecting only individual members and

7  class resolution is superior to other available methods of adjudication. *Id.*

8      Whether "a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by

9  whether certification is for litigation or settlement." *Hyundai & Kia*, 926 F.3d at 558.

10  Specifically, in assessing a settlement class's predominance, "a district court need not inquire

11  whether the case, if tried, would present intractable management problems." *Amchem Prods.*,

12  *Inc. v. Windsor*, 521 U.S. 591, 620 (1997). For example, courts certify settlement classes even

13  where arbitration clauses may have posed a hurdle to certification in ordinary litigation. *See,*

14  *e.g.*, *Kim v. Tinder, Inc.*, 2019 WL 11717129, at *4-6, *8 (C.D. Cal. Mar. 1, 2019) (granting

15  preliminary settlement approval and certifying settlement class where many class members

16  entered into arbitration agreements, which the court acknowledged can bar class certification

17  "under the right circumstances").

18      As alleged, the merits of class members' claims would depend on issues regarding

19  SquareTrade's payment-issuance systems and policies. For the SKU-cap Subclass, claims

20  would turn on whether caps lower than a consumer's product purchase price were

21  appropriately applied. And for the Fast Cash Subclass, claims would turn on whether

22  (a) SquareTrade's calculation of the Fast Cash percentage fairly estimated products'

23  replacement values, and (b) whether the Fast Cash program itself was sufficiently disclosed to

24  protection plan purchasers.

25      For similar reasons, it is superior to resolve all settlement class members' claims through a

26  single class action as opposed to a series of individual lawsuits. "From either a judicial or

27  litigant viewpoint, there is no advantage in individual members controlling the prosecution of

28  separate actions. There would be less litigation or settlement leverage, significantly reduced

resources, and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1203. The class action's superiority is even more pronounced here because the "class consists of thousands of members who would be unlikely to bring individual claims for the relatively small amounts of money they each are due." *Cabiness v. Educ. Fin. Sols., LLC*, 2018 WL 3108991, at *3 (N.D. Cal. June 25, 2018).

### D.    The Court-approved notice program satisfies due process and adequately provided notice to class members.

Before final approval of a class action settlement, the Court must find that class members were notified in a reasonable manner. Fed. R. Civ. P. 23(e)(1). When a settlement class is certified under Rule 23(b)(3), class members must receive "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(b)(3); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The notice program cannot "systematically leave any group without notice." *Officers for Justice v. Civil Serv. Com'n of City and Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). Settlement notice must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012). The notice plan must ultimately comport with due process requirements. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009)

Here, the court-approved notice plan implemented by Plaintiffs comports with due process and was the best practicable under the circumstances. ECF No. 121, Declaration of Jennifer Keough in Support of Preliminary Approval, ¶ 3; ECF No. 124 at 4-5.

### E.    The Court approved notice program.

The notice program proposed by Plaintiffs in their motion for preliminary approval of the Settlement, ECF No. 120, and approved by the Court in the preliminary approval order, ECF No. 124, has been implemented by JND Legal Administration LLC, the claims administrator. As set forth in the accompanying Declaration, since the entry of the preliminary approval order, JND Legal Administration LLC has (i) emailed 683,535 Fast Cash Email Notices and 1,202 SKU-cap Email Notices to potential class members, (ii) mailed 20,838 Fast Cash Postcard

Notices and 24 SKU-cap Subclass Postcard Notices to potential class members, (iii) created and managed the settlement website, www.stsettlement.com. *See* FA Keough Decl. ¶¶ 11, 14.

The settlement website provides information to potential class members about the litigation and the settlement, contains links to important settlement documents, and allows class members to file a claim electronically. As of December 16, 2022, there have been 157,296 page views of the settlement website. *See id.* at ¶ 19.

### F. The notice program satisfies due process.

Due process requires the best notice that is practicable under the circumstances. *See Shutts*, 472 U.S. at 812. It does not require actual notice to each and every class member. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) ("neither Rule 23 nor the Due Process Clause requires actual notice to each individual class member"). Courts recognize that "it might be impossible to identify some class members for purposes of actual notice." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015).

Here, the notices include all the information required under Rule 23(c)(2)(B): The nature of the action, the class definition, a summary of the class claims, that a class member may enter an appearance through an attorney, that the Court will grant timely exclusion requests, the time and manner for requesting exclusion, and the binding effect of final approval. *See generally* Amended SA. The notice further conveys all information necessary for class members to make informed decisions relating to the Settlement, and all information called for under the Northern District guidelines. *Id*. As the Court found, Plaintiffs' notice plan was the best practicable notice. ECF No. 124.

The Settlement Administrator, JND Legal Administration, has successfully reached 703,928 Class Members (*e.g.*, individuals mailed or emailed at least one Notice which was not returned as undeliverable), representing over 99.76% of the total Class Member population. *See* FA Keough Decl. ¶ 16. Specifically, the Settlement Administrator sent 683,535 Fast Cash Email Notices and 1,202 SKU-cap Email Notices. *Id*. at ¶ 11. Of these, 11,848 Fast Cash Email Notices and 24 SKU-cap Email Notices were returned as undeliverable: JND promptly mailed Postcard Notices to these Class Members. *Id*. at ¶ 13. JND has mailed 20,838 Fast Cash subclass postcard

notices and 24 SKU-cap subclass postcard notices to Class Members who could not be reached by email. *Id*. at ¶ 14. Of these, 819 Fast Cash Postcard Notices and no SKU-cap Postcard Notices have been returned as undeliverable. The Settlement Administrator will continue to track undeliverable Postcard Notices and remail to an updated mailing address or email address if found. *Id*. at ¶ 15.

The procedures implemented above satisfy due process. *See, e.g.*, *Online DVD-Rental Antitrust Litig.*, 779 F.3d at 941, 946 (notice was first emailed to 35 million class members and then sent via U.S. mail to over 9 million class members whose email addresses generated bounce-back messages); *McCrary v. Elations Co.*, 2016 WL 769703, at *7 (C.D. Cal. Feb. 25, 2016) (notice was sent via U.S. mail and email); *In re Magsafe Apple Power Adapter Litig.*, 2015 WL 428105, at *10 (N.D. Cal. Jan. 30, 2015) (emails, the primary notice vehicle, were sent to 5,523,878 class members). Additionally, the publication element of the notice program, via the settlement website, was tailored to maximize reach to this Class. *See also Briseno*, 844 F.3d at 1129 ("[N]otice by publication . . . on a website . . . is sufficient to satisfy due process.").

### The Court Should Grant the Requested Attorneys' Fees, Litigation-Cost Reimbursements, and Class-Representative Service Awards

The Court should grant as reasonable Class Counsel's request for attorneys' fees and litigation-cost reimbursements.

### I.    The Court's role in evaluating the requested fee.

In conjunction with a class action settlement, class counsel may apply to the Court for an award of "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the [fee] award, like the settlement itself, is reasonable . . . ." *Bluetooth*, 654 F.3d at 941. Courts consider reasonableness within the context of whether a relevant statute shifts attorneys' fees to the prevailing party. *Id*.

1

2

## II.     California law governs Plaintiffs' request for attorneys' fees and provides for reasonable fees to be shifted to the prevailing party.

State law applies in diversity cases like this one to determine "not only the right to fees, but also the method of calculating the fees." *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). Where, like here, there is no fee agreement between the parties, California federal courts sitting in diversity jurisdiction apply California law. *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1169 (C.D. Cal. 2010). California law applies even where the underlying claims stem from multiple states. *See Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 592-93, 600 (N.D. Cal. 2020) (applying California law to analysis of attorneys' fees where statewide classes were certified in three states, including California and New York); *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, at *9 (C.D. Cal. July 27, 2015) (applying California law to analysis of attorneys' fees where statewide classes were certified in four states, including California and New York).

California Code of Civil Procedure § 1021.5 provides for the payment of attorneys' fees to prevailing parties who vindicate an important right on behalf of a class of persons. Under § 1021.5, "relief obtained through a settlement" that achieved the litigation objectives qualifies the plaintiff as the prevailing party. *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 844 (9th Cir. 2007) (quoting *Lyons v. Chinese Hosp. Ass'n*, 136 Cal. App. 4th 1331, 1345 (2006)). For fees to be awarded, prevailing parties must also meet three statutory requirements: (a) a "significant benefit," conferred on "a large class of persons," (b) the "necessity and financial burden of private enforcement . . . to make the award appropriate," and (c) fees "not paid out of the recovery, if any." Ca. Civ. Proc. Code § 1021.5.

Here, Plaintiffs' settlement confers significant benefit to a large class. Plaintiffs alleged that SquareTrade underpaid many protection plan holders who had made valid claims for coverage. Through this settlement, those plan holders—representing over 884,000 Fast Cash claims—can receive the full difference between what they were originally paid by SquareTrade and the maximum amount they may have been entitled to at the time. *See* Amended SA ¶ 3.4; FA Keough Decl. ¶ 4. The settlement also requires SquareTrade to change its practices going

27

forward. With its Fast Cash program, the company will now conspicuously tell plan holders they are receiving payments equal to an estimated replacement value and that if their actual replacement cost is higher, they have the right to additional compensation up to the original purchase price. SquareTrade has also fixed its SKU-cap error, and reimbursing in full the thousands of plan holders who were already impacted. *See, e.g., Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 703 (2006) (private class action enforcement of California consumer protection laws constitute "an important right affecting the public interest" benefitting "a large number of people"); *Wahl v. Yahoo! Inc.*, 2018 WL 6002323, at *5-6 (N.D. Cal. Nov. 15, 2018) ("no difficulty" awarding fees under § 1021.5 in class settlement with small dollar amounts paid upon filing a claim form).

The final two statutory prerequisites—financial burden of the litigation and fees separate from the recovery—are also met. An award of fees is appropriate "where the burden of pursuing the litigation is out of proportion to the plaintiff's individual stake in the matter." *Zoom Elec., Inc. v. Int'l Bhd. of Elec. Workers, Loc. 585*, 2013 WL 2297037, at *3 (N.D. Cal. May 24, 2013) (quoting *Ryan v. Cal. Interscholastic Fed.*, 94 Cal. App. 4th 1033, 1044 (2001)). Here, Plaintiffs sought the difference between what SquareTrade paid them and what they were allegedly entitled to under their protection plans—under $35 for the vast majority of class members—which is insufficient incentive to litigate this case for nearly three years. *See Wahl*, 2018 WL 6002323, at *1, *6 (class counsel met statutory prerequisites under § 1021.5 in part because the "cost of litigation was significantly higher than Plaintiff's potential individual recovery"). And private litigation was necessary because "no government agency brought action against" SquareTrade. *Id.* at *6. Finally, any fee awarded here will be paid separately from, and will not diminish, the recovery to class members—the full amount allegedly withheld from them. *Ferrington v. McAfee, Inc.*, 2013 WL 12308314, at *3 (N.D. Cal. July 22, 2013); Amended SA ¶ 8.2

Thus, because all the prerequisites are met, Plaintiffs are entitled to a reasonable fee under § 1021.5.

### III.    The lodestar method applies here and demonstrates that the fee request is reasonable.

"Under a fee-shifting statute" like § 1021.5, "the court 'must calculate awards for attorneys' fees using the "lodestar" method.'" *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001); *see also Montera v. Premier Nutrition Corp.*, 2022 WL 10719057, at *4 (N.D. Cal. Oct. 18, 2022) (same); *Collado v. Toyota Motor Sales, U.S.A., Inc.*, 550 F. App'x 368, 370 (9th Cir. Dec. 16, 2013) ("Fee awards granted pursuant to § 1021.5 must be calculated using a lodestar analysis." (citing *Press v. Lucky Stores, Inc.*, 34 Cal.3d 311, 321-22 (1983))).

To calculate a fee award under the lodestar method, courts multiply the number of hours reasonably expended by counsel by a reasonable hourly rate. *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 984 (N.D. Cal. 2017). They may then apply a positive or negative multiplier reflecting various aspects of the litigation itself, including compensating counsel for prosecuting the case on a contingent basis. *Lafitte v. Robert Half Int'l. Inc.*, 1 Cal.5th 480, 489 (2016).

Thus, under the lodestar method, the Court should assess three components in turn to assure Class Counsel's requested fee is reasonable: (i) the time counsel billed to the case, to confirm that it was reasonably spent; (ii) the hourly rates used for each attorney or staff member on the case, to confirm whether they are in line with the prevailing hourly rates in the community; and (iii) the resulting multiplier.

### A.    Class Counsel reasonably devoted over 2,700 hours prosecuting this litigation over the past three years.

In assessing reasonableness of submitted time for fees, courts are "to do rough justice," not "achieve auditing perfection." *Parsons v. Ryan*, 949 F.3d 443, 462 (9th Cir. 2020) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). To help with the Court's review, Class Counsel prepared a summary of the work they performed throughout the litigation and have also attached their contemporaneous billing records. *See* Class Counsel Declaration ¶¶ 5-15, Exs. C, D. Before making this application, Class Counsel exercised their billing judgment by reviewing their

billing records and voluntarily deducting 678.3 hours billed to this case. *Id.* at ¶¶ 17, 25; *see, e.g., The Sierra Club v. U.S. Env't Prot. Agency*, 75 F. Supp. 3d 1125, 1151 (N.D. Cal. 2014) (deducting hours from fee submission demonstrated "good billing judgment").

As Class Counsel's declaration details, Class Counsel's time in this case has included:

- Drafting and sending a pre-suit demand and engaging in related discussions with SquareTrade;

- Significant pre-filing investigation, including multiple former employee interviews, factual and legal research, followed by preparation of a detailed initial complaint;

- Briefing on three motions to dismiss, a motion to compel arbitration, and a motion for summary judgment;

- Preparing written discovery requests, including multiple sets of document requests, interrogatories, requests for admission, over a dozen third-party subpoenas, and a Rule 30(b)(6) deposition notice, all supported by extensive meet and confer calls to avoid seeking Court intervention;

- Responding to SquareTrade's discovery requests, including over a dozen Requests for Production and multiple interrogatories for each class representative, producing documents, and preparing all three class representatives for their full-day depositions;

- Conducting five offensive depositions;

- Reviewing tens of thousands of pages of discovery documents;

- Preparing and presenting a discovery dispute to the Court regarding documents withheld as privileged;

- Preparing and submitting mediation briefing and related materials;

- Participating in 15-hour formal mediation before retired Judge James L. Warren;

- Preparing settlement agreement, with exhibits, including long-form and short-form class notices and a claim-form;

- Briefing and arguing a preliminary settlement approval motion, including supplemental briefing; and

1

2

- Communications, throughout the pendency of the case, with over 400 absent class members regarding the litigation.

3

4

5

6

Class Counsel Declaration ¶¶ 9-13. Class Counsel's time spent performing this work through October 17, 2022, amounted to 2,786.6 hours—1,418.5 from Gibbs Law Group and 1,368.1 from Handley Farah & Anderson. *Id.* at ¶¶ 17, 24. And it was leanly staffed with one primary associate and one primary partner from each of the two firms. *Id.* at ¶¶ 18, 26.

7

8

> **B.    Class Counsel's rates fall within the range prevailing in the community and have been approved by many courts.**

9

10

11

12

In assessing the reasonableness of attorneys' hourly rates, the Court should consider whether the rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Here, counsel have billed at their customary hourly rates, which have been evaluated by courts throughout California and across the country and consistently approved as reasonable. *See In re Lenovo Adware Litig.*, No. 15-md-02624, ECF No. 258 (N.D. Cal. Apr. 24, 2019); *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018); *In re Hyundai Sonata Engine Litig.*, Case No. 15-cv-01685, ECF No. 85 (N.D. Cal. Jan. 23, 2017); *LLE One, LLC v. Facebook, Inc.*, No. 4:16-cv-06232, ECF No. 211 (N.D. Cal. June 26, 2020); *Joh v. Am. Income Life Ins. Co.*, No. 18-cv-06364, ECF No. 80 (N.D. Cal. Jan. 7, 2021); *Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc.*, No. 1:19-cv-01031 (E.D. Va. Nov. 18, 2022), ECF No. 257 (awarding attorneys' fees); Decl. of Lester R. Hooker, Mot. Attorneys' Fees at 10, *id.* (E.D. Va. Oct. 14, 2022), ECF No. 252-6 (hourly rates of $545 and 465 for investigators); *Rudi v. Wexner*, No. 2:20-cv-03068 (S.D. Ohio May 16, 2022), ECF No. 46 (awarding attorneys' fees); Decl. of Julie Goldsmith Reiser, Mot. Attorneys' Fees at 3, 6, *id.* (S.D. Ohio Dec. 14, 2021), ECF No. 26-5 (hourly rate of $520 for investigator); *He v. Uniti Grp. Inc.*, No. 4:19-cv-00756 (E.D. Ark. Nov. 7, 2022), ECF No. 143 (awarding attorneys' fees); Decl. of Christine M. Fox, Mot. Attorneys' Fees at 10, *id.*, (E.D. Ark. Sept. 30, 2022), ECF No. 135-8 (hourly rates of $575 and $450 for investigators); *Zhao v. Tsai*,

31

No. 17-cv-07378-JCS, 2018 WL 983673, at *1 (N.D. Cal. Feb. 20, 2018) (Spero, C. Mag. J.) (approving rates "in line with the prevailing rates in the San Francisco Bay area legal community and the rates reflected on the *Laffey* Matrix, adjusted for the higher hourly wage for attorneys in this community as compared to the rates in the District of Columbia"); *see also Anti Police-Terror Project v. City of Oakland*, No. 20-cv-03866-JCS, 2022 U.S. Dist. LEXIS 227954, at *9 (N.D. Cal. Dec. 19, 2022) (Spero, C. Mag. J.) (approvingly noting the *Laffey* matrix as having been used "in a number of cases across the country"). The rates are set based on counsel's experience and on periodic reviews of the rates charged by other attorneys involved in similar complex litigation. Class Counsel Decl. ¶¶ 21-22, 29.

The hourly rates billed by Class Counsel range from $670 to $829 for partners, $365 to $508 for associates, $220 for paralegals, and $475 for a licensed in-house professional investigator. *Id.* at ¶¶ 20, 28. For ease, the attorneys' rates from Gibbs Law Group LLP ("GLG" below) and Handley Farah & Anderson PLLC ("HFA") are summarized in the chart below. (Detailed information about the attorneys' background and experience can be found in the firm resumes attached to Class Counsel's declaration. *Id.*, Exs. A-B)

| Attorney | Firm | Position | Graduation year | Hourly rate |
|---|---|---|---|---|
| William Anderson | HFA | Partner | 2004 | $829 |
| David Stein | GLG | Partner | 2007 | $815 |
| Amanda M. Karl | GLG | Associate/Partner[5] | 2014 | $670 |
| Rebecca Chang | HFA | Associate | 2016 | $508 |
| Dasha Sominski | GLG | Associate | 2021 | $365 |

Consistent with courts' approval of Class Counsel's billing rates in the past, attorneys performing comparable work have had rates within this range approved by courts within this District. *See Cottle v. Plaid Inc.*, 2022 WL 2829882, at *11 (N.D. Cal. July 20, 2022) (approving of rates ranging from $325-$425 for paralegals, $465-$600 for associates, and $610 to $1,050 for

---

[5] Ms. Karl became a partner as of January 1, 2022.

partners); *Superior Consulting Servs., Inc. v. Steeves-Kiss*, 2018 WL 2183295, at *5 (N.D. Cal. May 11, 2018) ("district courts in Northern California have found that rates of $475-$975 per hour for partners and $300-$490 per hour for associates are reasonable"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates, and $245 to $350 for paralegals were reasonable).

## C. Class Counsel's effective multiplier is well below that typically awarded in contingent litigation.

"After determining the lodestar, the Court divides the total fees sought by the lodestar to arrive at the multiplier . . . . If the multiplier falls within an acceptable range, it further supports the conclusion that the fees sought are, in fact, reasonable." *Schuchardt v. Law Off. of Rory W. Clark*, 314 F.R.D. 673, 690 (N.D. Cal. 2016). A "negative multiplier," which exists where the requested fee is less than the lodestar, "strongly suggests the reasonableness of [a] negotiated fee." *Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, 2021 WL 4895084, at *6 (N.D. Cal. Oct. 20, 2021) (brackets in original); *Moreno v. Capital Bldg. Maint. & Cleaning Servs.*, 2021 WL 4133860, at *6 (N.D. Cal. Sept. 10, 2021) (same).

Here, multiplying the reasonable total number of hours worked by counsel's hourly rates, the total lodestar value of Class Counsel's services is $1,851,892. By contrast, the total award sought is $1,000,000. Dividing the award sought ($1,000,000) by the calculated lodestar ($1,851,892) yields a multiplier under 0.54. When the compensable costs are deducted the multiplier falls below 0.52. When one considers that Plaintiffs cutoff their fee request at preliminary approval, and thus are not seeking fees for the time spent seeking final approval and answering class member inquiries about the notice and claim process, that multiplier falls below 0.50. And that multiplier will continue to fall in the coming months, as Class Counsel continues to work with SquareTrade to effectuate the settlement and help guide class members through the settlement process. Class Counsel Declaration ¶ 15.

This makes the requested fee modest under California law—particularly when accounting for the fact that the settlement makes full relief available to the class. Multipliers in complex contingency fee matters under California law often "range from 2 to 4 or even higher."

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001), *overruled on other grounds by Hernandez v. Restoration Hardware, Inc.*, 4 Cal. 5th 260 (2018); *see, e.g.*, *Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009) (affirming a 1.75 multiplier). Courts award fee multipliers when attorneys achieve full recovery for Plaintiffs and class members, even when those cases were not deemed particularly novel or difficult. *See Valdez v. FCA US LLC*, 2020 WL 5088093, at *2 (C.D. Cal. July 21, 2020) (awarding a 1.2 multiplier where the "questions involved were neither novel nor difficult, "but the attorneys "secure[d] Plaintiff's full recovery without adverse settlement terms"); *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 2004 WL 7333894, at *7 (C.D. Cal. Oct. 20, 2004) (awarding a 1.25 multiplier under the same circumstances).

Here, the fee request incorporates a negative multiplier of Class Counsel current lodestar, rather than a positive multiplier they could have sought given the settlement's full relief and the difficulty of the questions at issue in this case. Class Counsel Declaration ¶¶ 17, 25. Thus, the negative multiplier, too, demonstrates the reasonableness of the fees, and the Court should approve them.

### D.    A percentage-of-the-fund cross-check is not applicable here.

The Ninth Circuit has made clear that a percentage-of-the-fund "crosscheck" is not required when using the lodestar method. *Hyundai & Kia*, 926 F.3d at 571. According to the court, to do so would make "little logical sense" because "the lodestar method yields a fee that is presumptively reasonable." *Id.* (cleaned up).

A percentage cross-check would make particularly little sense here, where the settlement provides full relief to the class, but where the total amount in controversy is relatively modest. To "arbitrarily reduce[]" a lodestar based on the size of the monetary recovery alone would contravene the purpose of one-way fee-shifting statutes like § 1021.5. *Parkinson*, 796 F. Supp. 2d at 1171. "One-way fee shifting statutes encourage litigation in cases that are not likely to produce high-dollar judgments . . . because only modest amounts of money are at stake." *Id.* (quoting James R. Maxeiner, *Cost & Fee Allocation in Civil Procedure*, 58 Am. J. Comp. L. 195, 201 (2010)). Because a percentage cross-check may, in these cases, disincentivize counsel reducing their lodestar, courts have declined to apply this cross-check. *See id.* (declining to use a

percentage method to evaluate fees); *Congdon v. Uber Techs., Inc.*, 2019 WL 2327922, at *3 (N.D. Cal. May 31, 2019) (collecting cases, and explaining that "[i]n fee-shifting cases like this one, a percentage cross-check is of less usefulness").

Finally, while some courts have applied the percentage method (rather than the lodestar method) to *capped* claims-made settlements, here there is no cap, so the use of the percentage method is inappropriate. *See, e.g., Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 500 (2016) (collecting cases endorsing the lodestar method where no common fund was formed); *Castellon v. Penn-Ridge Transp., Inc.*, 2020 WL 7786659, at *9 (C.D. Cal. Nov. 3, 2020) (discussing this concept in the context of a capped, partially-claims-made settlement); *Wahl*, 2018 WL 6002323, at *5-6 (approving fees by applying only the lodestar method to an uncapped settlement under California Code of Civil Procedure § 1021.5).

Finally, the injunctive relief obtained by this settlement creates substantial class benefits going forward that cannot be precisely calculated immediately. But it cannot be gainsaid that the class will benefit from these business practice changes for years to come. Given the scope of the Fast Cash Program alone, the reforms secured in this Settlement—including more prominent disclosures about the program and a streamlined process to seek supplemental funds—may save future consumers millions of dollars.

## IV.    Class Counsel's costs are compensable.

California law provides for an award of costs to Plaintiffs in addition to an award of attorney fees. Cal. Civ. Code § 1780(e) ("[t]he court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section."). Because Plaintiffs' right to recover certain costs arises under California substantive law, the Court should apply California law in calculating the amount of those costs as well. *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1064 (9th Cir. 2003).

Class Counsel have incurred $41,318.39 in compensable unreimbursed costs and expenses prosecuting this case on behalf of the class. Class Counsel Dec. ¶ 31. As explained below and detailed in the accompanying declaration, Plaintiffs seek $22,953.89 in mandatory costs and $18,364.50 in discretionary costs. Additionally, more than $13,500.00 in non-taxable costs

under California law were also incurred. While not compensable, these costs may be considered by the Court in evaluating the fee multiplier to be awarded, as those out-of-pockets costs add to the contingent risk Plaintiff's counsel took on to prosecute this case.

1. Mandatory Costs

General Costs: California Code of Civil Procedure § 1033.5(a)(1) and (a)(4) state that the court must award costs for filing fees and service-of-process fees. Plaintiffs seek reimbursement of those costs in the amount of $1,389.00. *Id.*

Deposition Costs: California Code of Civil Procedure § 1033.5(a)(3) provides that the Court must award deposition related costs for transcribing, recoding, and travel. Plaintiffs' counsel took or defended eight depositions. They seek reimbursement for the transcribing and video recording incurred in connected with these depositions, which total $21,564.89. *Id.*

2. Discretionary Costs

California Code of Civil Procedure § 1033.5(c) gives the Court discretion to award costs for "[i]tems not mentioned in this section" if the costs are "reasonably necessary to the conduct of the litigation, rather than merely convenient or beneficial to its preparation." *Sci. Applications Int'l Corp. v. Superior Court*, 39 Cal. App. 4th 1095, 1103 (1995). Plaintiffs seek recovery of the following expenses, which were reasonably necessary to the conduct of the litigation.

Mediation Costs: Class Counsel also incurred $8,677.00 in mediations costs. Class Counsel Decl. ¶ 31. This cost was reasonably necessary to the furtherance of the litigation; indeed, the mediation was successful and resulted in the Settlement Agreement that is currently before the Court. *Id.* at ¶ 13; *see Gibson v. Bobroff*, 49 Cal. App. 4th 1202, 1207-10 (1996) (award of mediation fees was not an abuse of discretion).

Document Hosting and Analysis Costs: Class Counsel incurred $9,687.50 in document hosting and analysis costs, which includes fees for the software and services required to host, review, and maintain security for SquareTrade's and third parties' documents, as well the fees associated with uploading and processing those documents to make them accessible for review. Class Counsel Decl. ¶ 31. Document hosting was necessary because, among other reasons, the customer claims data sheet provided by SquareTrade, which included thousands

of claims, was so large it caused multiple computers to crash. This cost was reasonably necessary in the litigation as it enabled Class Counsel to effectively review documents produced by SquareTrade and third parties, prepare for depositions, and ultimately mediate and settle the case. *See id.* at ¶¶ 10-13.

3. Prohibited Costs

California Code of Civil Procedure § 1033.5(b) provides that the Court is to not award certain categories of costs. *Sci. Applications Int'l*, 39 Cal. App. 4th at 1103. Plaintiffs nevertheless identify these costs because the Court should be aware of the non-recoverable costs when it evaluates Plaintiffs' request for attorneys' fees.

<u>Research and Litigation Support Costs</u>: Class Counsel incurred more than $13,500 in costs associated with research photocopying, postage and other miscellaneous charged. Class Counsel Decl. ¶ 31.

## V. Class representative service awards are appropriate.

Finally, Plaintiffs request that the Court authorize service awards of $5,000 to each of the three class representatives in this case. Service awards (also called incentive awards) recognize "work done on behalf of the class." *Rodriguez*, 563 F.3d at 958-59. "Many courts in the Ninth Circuit have . . . held that a $5,000 incentive award is 'presumptively reasonable.'" *Hawthorne v. Umpqua Bank*, 2015 WL 1927342, *8 (N.D. Cal. Apr. 28, 2015) (citation omitted); *see also In re Toys R Us FACTA Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) (awards of $5,000 to each named plaintiff "are consistent with the amount courts typically award" as service payments).

Here, Plaintiffs committed substantial time and effort to prosecute this case on behalf of other SquareTrade customers, even though their own alleged losses were small. *See* ECF. No. 102 ¶¶ 46-47 (Shuman); *id.* at ¶¶ 58, 61 (Gonzales); *id.* at ¶¶ 74, 79 (Abbott); Class Counsel Decl. ¶¶ 32-34. They took time off work for full-day depositions, searched for and produced documents, and responded to written discovery: Plaintiff Shuman responded to fourteen requests for production and seven interrogatories; Plaintiff Abbott responded to fifteen requests for production and seven interrogatories; and Plaintiff Gonzales responded to fifteen requests for production and eleven interrogatories. Class Counsel Decl. ¶ 33 They were also in

37

regular contact with Class Counsel throughout the litigation. *Id.* at ¶ 32. Their commitment to their fellow class members fueled this class action, warranting the full service award requested here.

**Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement with Defendant SquareTrade, certify Plaintiffs' proposed settlement class, enter final judgment dismissing Plaintiffs' claims, and approve Plaintiffs' plan of allocation.

Dated: December 22, 2022

*/s/ Amanda M. Karl*

Eric H. Gibbs (SBN 178658)
David Stein (SBN 257465)
Amanda M. Karl (SBN 301088)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
amk@classlawgroup.com

William H. Anderson *(admitted pro hac vice)*
**HANDLEY FARAH & ANDERSON PLLC**
5353 Manhattan Circle, Suite 204
Boulder, CO 80303
Telephone: (303) 800-9109
Facsimile: (844) 300-1952
wanderson@hfajustice.com

Rebecca P. Chang *(admitted pro hac vice)*
**HANDLEY FARAH & ANDERSON PLLC**
33 Irving Pl.
New York, NY 10003
Telephone: (347) 480-1030
Facsimile: (844) 300-1952
rchang@hfajustice.com

*Counsel for Plaintiffs and the Proposed Class*