UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SHUMAN, et al.,<br><br>　　　Plaintiffs,<br><br>　　v.<br><br>SQUARETRADE INC.,<br><br>　　　Defendant. | Case No. 20-cv-02725-JCS<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND FOR ATTORNEY'S FEES, LITIGATION COSTS, AND SERVICE AWARDS**<br><br>Re: Dkt. No. 128 |

## I.　INTRODUCTION

The parties in this case have entered into a class action settlement. Following preliminary approval of the settlement by the Court, *see* dkt. no. 124, notice was sent to class members, who were given the opportunity to object to the settlement or opt out and notice that the Court would be holding a fairness hearing and instructions on how to participate. Presently before the Court is Plaintiffs' Motion for Final Approval of Settlement and for Attorney's Fees, Litigation Costs, and Service Awards ("Motion"). In the Motion, Plaintiffs ask the Court to: 1) certify the settlement class under Rule 23 of the Federal Rules of Civil Procedure and grant final approval of the settlement agreement; 2) award attorneys' fees and costs in the combined total amount of $1 million ($41,318.39 in costs and $958,681.61 in attorneys' fees); and 3) award each of the three named plaintiffs a service award of $5,000. SquareTrade "fully supports approval of the settlement and the application for the service awards to the named Plaintiffs." Opposition (dkt. no. 133) at 1. It also stipulated at the fairness hearing that it does not object to the litigation costs requested by Plaintiffs. However, it "does not . . . agree with the excessive amount of attorney's fees requested." *Id.*

The fairness hearing was held on February 24, 2023 via Zoom Webinar. Counsel for the

parties were present but no class members appeared. For the reasons set forth below, the Court GRANTS the Motion.[1]

## II.  CLASS CERTIFICATION AND NOTICE

The parties' settlement is set forth in the Amended and Restated Settlement Agreement, dated September 15, 2022, dkt. no. 120-2 ("Settlement Agreement"). The definitions of words and terms contained therein are incorporated by reference in this Order.  Under the Settlement Agreement, the Settlement Class consists of two subclasses: the Fast Cash Subclass and the SKU-cap Subclass. Settlement Agreement ¶ 1.41.  The Fast Cash Subclass is defined as follows: "[A]ny person who, during the Class Period, (i) submitted a claim for coverage under a Protection Plan, and (ii) whose claim was resolved via a Fast Cash payment from Defendant." *Id.* ¶ 1.16.  The SKU-cap Subclass is defined as: "[A]ny person who, during the Class Period, (i) submitted a claim for coverage under a Protection Plan, (ii) resolved the claim by receiving a monetary payment from Defendant, and (iii) received less than the amount the person should have received were it not for the SKU-cap Error." *Id.* ¶ 1.43. The Settlement Class excludes "the judge approving the Settlement and his or her immediate family; Defendant; any entities in which Defendant has a controlling interest or which have a controlling interest in Defendant; the officers, directors, employees, affiliates and attorneys of Defendant, and the immediate family members of any such person; and any person who has submitted a timely and valid Opt-Out Request." *Id.* ¶ 1.41.  The Class Period is "the time period between April 20, 2016, through June 27, 2022." *Id.* ¶ 1.10.

The Court finds that, for purposes of settlement, the prerequisites for a class action under Federal Rule of Civil Procedure 23(a) and (b)(3) are satisfied for the following reasons:

- Numerosity: The Settlement Class, which consists of 705,575 SquareTrade customers who filed over 884,000 claims for reimbursement during the Class Period, appears so numerous that joinder of all members is impracticable. *See* Declaration of Jennifer Keough Regarding Notice Administration ("Keough

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

Decl.") (dkt. no. 128-7) ¶ 4.

- Common Questions: There are questions of law or fact common to the Settlement Class for purposes of determining whether the Settlement should be approved, and those questions of law predominate over any questions affecting any individual class member. The Court finds that, for settlement purposes, the common questions raised by this action include the nature of SquareTrade's obligations to Protection Plan purchasers under its contract, under common law principles, and consumer protection statutes.

- Typicality: Plaintiffs' claims are typical of the claims of the Settlement Class in that Plaintiffs have alleged the same claims that would be pursued by anyone else who was paid under the SKU-cap error and the Fast Cash program.

- Adequacy: Plaintiffs and their counsel are adequate representatives of the Class as neither Plaintiffs nor their counsel have any conflicts of interest with absent class members and Plaintiffs, who bought SquareTrade Protection Plans and were paid under either the SKU-cap error or the Fast Cash program, share Settlement Class members' interest in recouping at least some of the payout remainder allegedly owed. In addition, Plaintiffs and their counsel have demonstrated their commitment to the class over the last three years by participating in the case and vigorously litigating their claims.

- Superiority: A class action on behalf of the proposed class is superior to other available means of adjudicating this dispute because the class consists of thousands of members who would be unlikely to bring individual claims for the relatively small amounts of money at issue. The Court also concludes that, because the action is being settled rather than litigated, the Court need not consider manageability issues that might be presented by the trial of a nationwide class action involving the issues in this case. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Pursuant to Rule 23(e)(1)'s notice requirement, the Court approved the parties' notice plan, which included postcard notice, email notice, and a settlement website. Dkt. no. 124. As of

3

February 10, 2023, 703,729 Class Members were mailed or emailed at least one Notice that was not returned as undeliverable, representing over 99.76% of the total Class Member population. Supplemental Declaration of Jennifer Keough Regarding Notice Administration (dkt. no. 140-2) ("Keough Supp. Decl."), ¶ 7. The Court finds that notice was provided in the best practicable manner to class members and fulfills the requirements of due process. Fed. R. Civ. P. 23(e)(1). In addition, the notice provided to the appropriate State and federal officials pursuant to 28 U.S.C. § 1715 fully satisfied the requirements of that statute. *See* Supplemental Declaration of Jennifer Keough Regarding CAFA Notice (dkt. no. 144).

### III.     WHETHER SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

Judicial policy strongly favors settlement of class actions, "particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, "judges have the responsibility of ensuring fairness to all members of the class presented for certification." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Under Rule 23 of the Federal Rules of Civil Procedure, a district court may approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate . . . ." Fed. R. Civ. P. 23(e)(2).

In the Ninth Circuit, "a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight '*Churchill* factors,' *viz.*, '(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.'" *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004))).

Based on its review of the record and its consideration of the *Churchill* factors, the Court finds that the settlement is fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e)(2). The settlement was reached after the parties had engaged in extensive discovery and

1  vigorous litigation. Joint Declaration of Class Counsel in Support of Motion for Final Approval of
2  Settlement and for Attorneys' Fees, Litigation Costs, and Service Awards (dkt. no. 128-1) ("Class
3  Counsel Final Approval Decl.") ¶¶ 10-12.  As a result, counsel on both sides had a good
4  understanding of the strengths and weaknesses of their positions and the risks going forward when
5  they entered into the Settlement Agreement.

6  Moreover, counsel for Plaintiffs, who are experienced practitioners in the field of
7  consumer law, believe that the settlement is fair, reasonable and adequate.  *Id.*  ¶ 2.  Likewise,
8  SquareTrade's counsel "fully support[ ]" approval of the settlement even though they challenge
9  the amount of Plaintiffs' attorneys fee request.  Opposition (dkt. no. 133) at 1.

10 In addition, the response of the class has been positive.  As set forth in the supplemental
11 declaration of the settlement administrator, some form of notice appears to have reached almost
12 100 percent of the 700,000 plus class members but only 322 class members requested exclusion
13 (and several subsequently asked to withdraw their requests for exclusion). Keough Supp. Decl. ¶
14 11.[2]  Likewise, there were only nine objections to the settlement, all of which appear to have been
15 accidental and four of which were formally withdrawn.  *See* Keough Supp. Decl.  ¶ 13;
16 Declaration of William H. Anderson, in Support of Plaintiffs' Reply in Support Of their Motion
17 for Final Settlement Approval (dkt. no. 140-1) ("Anderson Supp. Decl.") ¶¶ 4-13.

18 It also appears that there has been a healthy response from the Fast Cash Subclass with
19 respect to claims. According to the settlement administrator, as of February 21, 2023, JND had
20 received 49,542 Fast Cash Subclass claims, representing claims on 71,474 distinct Fast Cash
21 transactions.  Anderson Post-Hearing Supp. Decl. ¶ 3.  This appears to reflect a claims rate of
22 about 6 percent.  Courts have approved settlements with significantly lower claims rates. *See, e.g.,*
23 *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (affirming

---

[2] Although two of those requests were deficient to the extent that they were missing contact information, SquareTrade has agreed to accept them as valid.  Supplemental Declaration of William H. Anderson in Support of Plaintiffs' Motion for Final Settlement Approval ("Anderson Post-Hearing Supp. Decl.") (dkt. no. 143) ¶ 4.  Two requests for exclusion were withdrawn timely. Keough Supp. Decl. ¶ 11. Another was withdrawn after the deadline, but SquareTrade has agreed to accept that request as valid.  Anderson Post-Hearing Supp. Decl. ¶ 4.  The final list of opt-outs is attached as Exhibit A to the Anderson Post-Hearing Supp. Decl., dkt. no. 143-1.

1    approval of settlement where 1,183,444 of 35 million class members—less than 3.4%—filed

2    claims); *Moore v. Verizon Commc'ns Inc.*, No. C 09–1823 SBA, 2013 WL 4610764, at *8 (N.D.

3    Cal. Aug. 28, 2013) (granting final approval of class action settlement with 3% claims rate);

4    *Evans v. Linden Rsch., Inc.*, No. C-11-01078 DMR, 2014 WL 1724891, at *4 (N.D. Cal. Apr. 29,

5    2014) (approving settlement were claims rate was 4.3%); *Touhey v. United States*, No. EDCV 08-

6    01418-VAP (RCx), 2011 WL 3179036, at *7-8 (C.D. Cal. July 25, 2011) (approving a settlement

7    with a 2% claims rate); *see also Keil v. Lopez*, 862 F.3d 685, 696-97 (8th Cir. 2017) ("a claim rate

8    as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness").

9    Therefore, this factor also supports final approval.

10         The Court also finds that the settlement provides relief for the class that is adequate, taking

11   into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed

12   method of distributing relief to the class; (iii) the proposed award of attorneys' fees, costs, and

13   service awards, including timing of payment; and (iv) the strengths and weaknesses of the parties'

14   claims and defenses. In particular, under the settlement the SKU-cap Subclass will be reimbursed

15   the full amount of their damages without the need to file a claim; the Fast Cash Subclass members

16   will also be entitled to the full amount of their damages.

17         Although the Fast Cash Subclass is subject to a claim requirement, which will result in a

18   payout to this subclass that is far lower than their total alleged damages, the Court concluded on

19   preliminary approval that this requirement could not be avoided in light of the need to establish

20   that each class member suffered actual damage. Moreover, the process for filing a claim was

21   simple as class members were given unique login information and could file a claim through the

22   settlement website. Further, as to class members whose damages are under $35, no documentation

23   showing the purchase price of the replacement is required. Therefore, the Court finds that the

24   relief provided to the Fast Cash Subclass is adequate despite the claim requirement. *See, e.g.,*

25   *Bozarth v. Envision Healthcare Corp.*, 2020 WL 11028383, at *6 (C.D. Cal. June 30, 2020) (class

26   settlement where class members could receive "potentially 100%" after filing a valid claim was

27   "more than adequate").

28         Finally, the Court notes that the Settlement Agreement offers relief that will benefit future

purchasers of SquareTrade policies. In particular, it provides for enhanced disclosures to customers, informing them in advance that if they participate in the Fast Cash Program and the payment they receive from SquareTrade is less than the cost of an item with equal features and functionality, they can submit documentation of replacement cost to SquareTrade and SquareTrade will reimburse them the difference. Settlement Agreement ¶ 3.1. SquareTrade has also promised to maintain corrections to its technical processes to ensure that the SKU-cap error that led to underpayment of that subclass will not recur. *Id.* ¶ 3.3.

Therefore, the Court concludes that the *Churchill* factors point in favor of final approval of the settlement.

Consideration of the *Churchill* factors, however, is not sufficient where, as here, a settlement agreement is negotiated prior to formal class certification. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). This is because "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Id.* Consequently, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.*

In determining whether a settlement is the result of collusion, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Id.* at 947. The Ninth Circuit has identified three such signs:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
>
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* (internal quotation marks and citations omitted).

7

Here, two of these red flags are present. First, the requested attorneys' fees exceed SquareTrade's payout to the settlement class. In particular, according to the settlement administrator, it appears that the payout to the two subclasses combined will be around $750,000 whereas Plaintiffs seek $958,681.61 in attorneys' fees. *See* Keough Supp. Decl. ¶¶ 15-16. Second, under the settlement agreement any reduction in Plaintiffs' fee request by the Court will amount to a savings for SquareTrade and will not be added to any class settlement fund. Despite these red flags, however, the Court does not find that the parties' settlement agreement resulted from collusion. The settlement agreement was reached only after extensive discovery and vigorous litigation, there is no clear sailing provision in the agreement, and the settlement was negotiated with the assistance of an experienced neutral mediator, Judge James L. Warren (Ret.). Class Counsel Final Approval Decl. ¶ 13. In addition, Plaintiffs' counsel seeks an award that is barely more than half their lodestar amount, as discussed further below. The Court is therefore satisfied that the settlement agreement was the result of arms-length negotiation rather than collusion.

## IV.     ATTORNEYS' FEES

In diversity cases, federal courts apply state law to determine whether a party is entitled to attorneys' fees and to decide the appropriate amount of the fee award. *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). Here, Plaintiffs have requested fees pursuant to Cal. Civ. Proc. Code section 1021.5. That section provides, in relevant part:

> Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

Cal. Civ. Proc. Code § 1021.5. "An award is appropriate under this section where the burden of pursuing litigation is out of proportion to the individual plaintiff's stake in the matter." *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010) (citing *Ryan v. California Interscholastic Federation*, 94 Cal.App.4th 1033, 1044 (2001)). The Court finds that an award of attorneys' fees to Class Counsel under this section is appropriate here.

1    As an initial matter, Plaintiffs have been "successful" within the meaning of this section. "The California Supreme Court has 'taken a broad, pragmatic view of what constitutes a "successful party."'" *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 844 (9th Cir. 2007) (quoting *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 565 (2004)). Under *Graham*, a plaintiff is "successful" under section 1021.5 if they "achieve[ ] [their] objectives[,]" 3 Cal. 4th at 571, even if the plaintiff is only "partially successful." *Lyons v. Chinese Hosp. Ass'n*, 136 Cal. App. 4th 1331, 1345 (2006) (citation omitted). Further, "[i]t is undisputed that relief obtained through a settlement may qualify a plaintiff as the prevailing party" under Section 1021.5. *Id.* Having entered into a settlement agreement that provides for damages to tens of thousands of class members, the Court has no trouble concluding that Plaintiffs have been "successful" under this provision.

Plaintiffs have also satisfied the three further conditions for awarding attorneys' fees set forth in section 1021.5. First, the settlement confers a significant benefit on both the Settlement Class (who will be reimbursed for past underpayments on their claims or at least, have the opportunity to obtain such reimbursement) and on future purchasers of SquareTrade policies (who will receive enhanced disclosures about the Fast Cash program and will be less likely to be harmed by the technical problems that led to the underpayment of the SKU-cap Subclass). Second, this benefit has resulted from the enforcement efforts of Plaintiffs' counsel, who have borne a significant burden that far exceeds the damages of the individual named plaintiffs in this case. Therefore, it is appropriate that counsel be awarded fees and costs for their work. Finally, the fee award will not reduce the recovery of the class members. The Court also notes that while SquareTrade objects to the amount of fees Plaintiffs request, it does not challenge Plaintiffs' assertion that they are entitled to an award of attorneys' fees under this section.

Next, the Court must determine whether the amount Plaintiffs request for attorneys' fees is reasonable. Under a fee-shifting statute like section 1021.5, courts use the "lodestar method." *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003) (citation omitted). Under that approach, the lodestar is obtained by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 984 (N.D. Cal.

1    2017) (citing *Laffitte v. Robert Half Int'l Inc.*, 1 Cal.5th 480, 489 (2016)). "Courts may then apply

2    a positive or negative multiplier." *Id.* (citing *Laffitte*, 1 Cal. 5th at 489). A downward multiplier

3    may be imposed where the total amount recovered by class members is significantly less than the

4    requested fees. *See, e.g., Create-A-Card, Inc. v. Intuit, Inc.*, No. C 07-06452 WHA, 2009 WL

5    3073920, at *2 (N.D. Cal. Sept. 22, 2009).

6        Plaintiffs request $958,681.61 in attorneys' fees based on work performed on behalf of the

7    class by the Gibbs Law Group LLP ("Gibbs") and Handley Farah & Anderson PLLC ("HF&A"),

8    which have been appointed jointly as Class Counsel. Final Approval Motion at 2; Order Granting

9    Preliminary Approval (dkt. no. 124) ¶ 6. According to Plaintiffs, this amount is based on 1,481.5

10   hours billed by Gibbs attorneys and 1,368.1 hours billed by HF&A attorneys, with a negative

11   multiplier of .52. Final Approval Motion at 2; Class Counsel Final Approval Decl. ¶¶ 17, 25.

12   According to Plaintiffs, these hours do not include 489.6 hours billed by Gibbs and 188.7 hours by

13   HF&A, which were excluded from the lodestar as an exercise of billing judgment. Class Counsel

14   Final Approval Decl. ¶¶ 17, 25. Plaintiffs have also voluntarily excluded from their lodestar hours

15   worked after the Court granted preliminary approval of the Settlement Agreement, on October 17,

16   2022. *Id.* ¶ 14.

17       Upon reviewing Class Counsel's motion for fees, and the attached contemporaneous

18   billing records, the Court finds that Class Counsel's time expended on the case was reasonable,

19   particularly in light of the billing judgment exercised by Class Counsel, discussed above, which

20   significantly reducing the time billed. The Court further finds that Class Counsel's billing rates are

21   reasonable; the rates are consistent with those billed for non-contingent complex litigation work

22   and with the rates approved by courts in this District. The Court also notes that that SquareTrade

23   does not challenge the reasonableness of the rates Plaintiffs seek.

24       The Court's conclusion that Plaintiffs' fee request is reasonable is further supported by the

25   fact that Plaintiffs seek materially less in attorneys' fees than their voluntarily reduced lodestar,

26   resulting in a negative multiplier of approximately .53.[3] A "negative multiplier . . . strongly

---

[3] As stated above, Plaintiffs have calculated their multiplier as .52. This calculation, however, appears to be based on a comparison of Plaintiffs' fee request (in the amount of $958,681.61) to

1  suggests the reasonableness of [a] negotiated fee." *Del Castillo v. Cmty. Child Care Council of*

2  *Santa Clara Cnty., Inc.*, 2021 WL 4895084, at *6 (N.D. Cal. Oct. 20, 2021); *Moreno v. Capital*

3  *Bldg. Maint. & Cleaning Servs.*, 2021 WL 4133860, at *6 (N.D. Cal. Sept. 10, 2021) (same).

4        The Court rejects SquareTrade's assertion that Plaintiffs' attorney fees should be reduced

5  to account for work pursuing legal theories that had no merit. SquareTrade's position is based on

6  a mischaracterization of Plaintiffs' theory of the case. In particular, it contends Plaintiffs asserted

7  unfounded claims based on an alleged obligation on SquareTrade's part to reimburse policy

8  holders the full purchase price of a covered product when, in fact, SquareTrade promised only that

9  it would cover the replacement cost. According to SquareTrade, "[o]nce Plaintiffs were forced to

10 accept this fact, this litigation swiftly came to an end. And the settlement that the parties struck

11 was and is predicated on SquareTrade's actual commitment to its customers, not on Plaintiffs'

12 unsupportable purchase price contention." Opposition at 6. The Court, however, has already

13 rejected SquareTrade's attempt to cabin Plaintiffs' theory in this manner. In its summary

14 judgment order, the Court explained as follows:

> [T]he allegations as to Shuman raise a plausible inference that failure to pay the original purchase price of his bag amounted to a failure to pay the replacement cost because the cost of the bag had not dropped in the intervening period. In particular, Shuman alleges that two days after he received his payment on the SquareTrade claim for the original bag he returned to a different Staples Store and bought an "identical" bag "at the same price as he had originally purchased it in 2017 ($129.99)." FACC ¶ 48. Likewise, Shuman testified at his deposition that he bought a replacement bag for the same price he had paid for the bag originally. Anderson Decl., Ex. D (Shuman Depo.) at 183. SquareTrade fails to address Shuman's allegation that he paid the same amount for his replacement bag as for his original bag.
>
> Given that Plaintiffs allege in the breach of contract claim that

---

the total lodestar amount, which they calculate as $1,851,892. *See* Class Counsel Final Approval Decl. ¶¶ 20, 28. Plaintiffs' lodestar, however, includes $32,237.50 in fees charged by an investigator who worked with HF&A, who is not an attorney. *See id.*, ¶ 28. Typically, investigator's fees are considered costs rather than attorneys' fees and therefore are not included in the lodestar calculation. *See, e.g., In re Chiron Corp. Sec. Litig.*, No. C-04-4293 VRW, 2007 WL 4249902, at *5 (N.D. Cal. Nov. 30, 2007) (observing that certain charges, including those for investigators, were improperly included in lodestar calculation when they should have been treated as reimbursable expenses). Even deducting this amount from Plaintiffs' lodestar calculation, however, the amount of fees requested by Plaintiffs reflects a significant negative multiplier that is almost the same as the one calculated by Plaintiffs and generally supports their assertion that the fees they seek are reasonable.

11

> SquareTrade "offered Plaintiffs and Class members product protection that provided reimbursement of purchase price *(or reimbursement of the cost of replacing the product)*," FACC ¶ 92 (emphasis added), the Court concludes that the theory upon which Plaintiffs base Shuman's breach of contract claim is not new. Moreover, there is a genuine dispute of material fact as to whether SquareTrade breached its contractual obligation to Shuman by paying less than the full purchase price of his bag. For the same reasons, the Court rejects SquareTrade's argument that it is entitled to summary judgment on Shuman's unjust enrichment claim because "nothing unjust has occurred." Reply at 8.
>
> Finally, because the FACC makes clear that Shuman's allegation that he was owed the original purchase price on his claim are based, in part, on the fact that the replacement cost was the same as the original purchase price, the Court rejects SquareTrade's argument that it would be unfair to allow Shuman to proceed on that theory.

Summary Judgment Order (dkt. no. 84) at 23-24 (emphasis in original).

Furthermore, while it is proper to reduce a fee award to eliminate time spent litigating claims unrelated to the successful claims, "fees are not reduced when a plaintiff prevails on only one of several factually related and closely intertwined claims." *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010). To the extent Plaintiffs' claims were based on the theory that SquareTrade promised to reimburse policy holders their full purchase price *regardless* of whether or not the replacement cost was lower, the factual underpinnings of that claim are closely intertwined with their claims based on SquareTrade's obligation to pay the replacement cost given that in some scenarios (including the case of Mr. Shuman) the purchase price and the replacement cost were the same. Given that these two theories are so closely intertwined, a reduction for work on the former theory would be improper. Moreover, as a practical matter it would be virtually impossible to separate out the work performed on the former theory for the purposes of determining the magnitude of the reduction. Nor has SquareTrade made any attempt to do so. Indeed, SquareTrade has offered no details about the amount of the reduction it requests, much less cited any case authority addressing the magnitude of the reduction that should be imposed.

For these reasons, the Court approves Plaintiffs' request for $958,681.61 in attorneys' fees.

## V. LITIGATION COSTS

Plaintiffs seek an award of their litigation costs under Cal. Civ. Code section 1780(e), which provides that "[t]he court shall award court costs and attorney's fees to a prevailing plaintiff

12

1  in litigation filed pursuant" to California's Consumer Legal Remedies Act ("CLRA"). In this
2  case, Plaintiffs asserted a claim under California's Unfair Competition Law based on alleged
3  violation of the CLRA. Further, for the reasons stated above, the Court concludes that Plaintiffs
4  are the prevailing party for the purposes of this provision. Therefore, to the extent Plaintiffs seek
5  any costs that are not taxable under Rule 54(d) of the Federal Rules of Civil Procedure and Civil
6  Local Rule 54-3, they are entitled to an award of costs under this section. *Edwards v. Ford Motor
7  Co.*, No. 11CV1058-MMA (BLM), 2016 WL 1665793, at *11 (S.D. Cal. Jan. 22, 2016) ("The
8  term 'prevailing plaintiff' as used in the CLRA is synonymous with 'successful party' pursuant to
9  California's Private Attorney General Statute."). Further, the nontaxable costs recoverable
10 pursuant to the CLRA are governed by California Code of Civil Procedure section 1033.5, which
11 Plaintiffs rely on in the Motion. *See id.*
12 The Court finds that all of the costs requested by Plaintiffs, set forth in Class Counsel Final
13 Approval Decl. ¶ 31 and in the Motion at 36-37, are reasonable and allowable. First, Plaintiffs are
14 entitled to the filing fee ($400) and service of process costs ($989) under Civ. L.R. 54-3(a) and
15 California Code of Civil Procedure section 1033.5(a)(1) and (a)(4). Second, they are entitled to
16 $21,564.89 for the costs of transcribing and recording depositions under California Code of Civil
17 Procedure section 1033.5(a)(3). The Court further exercises its discretion under section 1033.5(c)
18 to award the costs sought by Plaintiffs for mediation ($8,677.00) and document hosting and analysis
19 ($9,687.50), which it finds to be "reasonably necessary to the conduct of the litigation" and reasonable
20 in amount. The Court also notes that SquareTrade has stipulated that it does not object to Plaintiffs'
21 request for litigation costs, as discussed above. Therefore, the Court awards $41,318.39 in costs.

## VI.    SERVICE AWARDS

23 Plaintiffs ask the Court to approve a service award of $5,000 each to Class Representatives
24 Michael Shuman, Kathleen Abbott, and Tommy Gonzales. Motion at 17. They have offered
25 evidence that each of the named Plaintiffs sat for a full-day deposition and responded to extensive
26 discovery requests. Class Counsel Final Approval Decl. ¶¶ 32-34. The Court finds that the
27 requested awards are reasonable in light of the work that the named Plaintiffs have done on behalf
28 of the class. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Therefore,

the Court grants Plaintiffs' request.

**VII. CONCLUSION**

For the reasons stated above, the Court GRANTS the parties' request for final approval of the Settlement Agreement and awards $958,681.61 in attorneys' fees, $41,318.39 in costs and $5,000 each to named Plaintiffs Michael Shuman, Kathleen Abbott, and Tommy Gonzales. The Clerk is instructed to enter judgment consistent with this order.

**IT IS SO ORDERED.**

Dated: March 1, 2023

_____
JOSEPH C. SPERO
Chief Magistrate Judge